LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
BRIAN A. PROCEL (State Bar No. 218657)
bprocel@millerbarondess.com
AMNON Z. SIEGEL (State Bar No. 234981)
asiegel@millerbarondess.com
CASEY B. SYPEK (State Bar No. 291214)
csypek@millerbarondess.com
DAVID I. BOSKO (State Bar No. 304927)
dbosko@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

PAUL R. KIESEL (State Bar No. 119854)
kiesel@kiesel.law
JEFFREY A. KONCIUS (State Bar No. 189803)
koncius@kiesel.law
NICOLE RAMIREZ (State Bar No. 279017)
ramirez@kiesel.law
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

Attorneys for Plaintiffs and the Class

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| REMY MCCARTHY and ROBERT PHILLIPS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., and DOE DEFENDANTS 1-10,<br><br>Defendants. | **CASE NO. 8:18-cv-201**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

Page

NATURE OF ACTION .......... 3

JURISDICTION AND VENUE .......... 6

PARTIES .......... 6

FACTUAL BACKGROUND .......... 7

A. Toyota's Unintended Acceleration Crisis .......... 7

B. The New Crisis: Prius .......... 8

C. Toyota Issues Inadequate Repairs for Life-Threatening Inverter Defects .......... 9

D. The Misleading Warranty Enhancement .......... 10

E. The Prius V Wagon .......... 11

F. Post-Remedy Inverter Failures .......... 11

G. Statutory and Regulatory Framework .......... 13

H. Toyota Certifies Unsafe Cars as "Toyota Certified Used Vehicles .......... 14

PLAINTIFFS .......... 15

CLASS ACTION ALLEGATIONS .......... 15

TOLLING .......... 18

FIRST CAUSE OF ACTION .......... 18

SECOND CAUSE OF ACTION .......... 21

THIRD CAUSE OF ACTION .......... 23

FOURTH CAUSE OF ACTION .......... 24

FIFTH CAUSE OF ACTION .......... 26

SIXTH CAUSE OF ACTION .......... 29

SEVENTH CAUSE OF ACTION .......... 30

EIGHTH CAUSE OF ACTION .......... 32

PRAYER FOR RELIEF .......... 33

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**NATURE OF ACTION**

1. Toyota is the largest car manufacturer in the world and the global leader in hybrid technology. To benefit its bottom line, it has been concealing safety-related defects in its popular Prius and Prius V hybrid models that pose a risk of accidents and bodily injury or death. Toyota's conduct in this regard endangers Toyota drivers, passengers and others on the road.

2. Toyota has a history of concealing safety defects. In 2009-2014, Toyota was forced to recall millions of vehicles for unintended acceleration caused by "sticky pedals" and/or "floor mat entrapment." The defects and accidents relating thereto were widespread and horrific—people were injured; lives were lost. Despite becoming aware of these dangerous defects, Toyota knowingly concealed them. Toyota's cover-up was eventually discovered, and it was charged by the U.S. Department of Justice with a crime under 18 U.S. Code § 1343.

3. Regulators linked deaths to crashes caused by unintended acceleration. Toyota's malfeasance was the subject of Congressional hearings.

4. Toyota was fined $1.2 billion dollars by the U.S. government for hiding dangerous defects, lying to the public and to regulators about defects, and failing to timely notify regulators as required by federal law. Although Toyota was fined, no individuals at Toyota were ever held responsible for the massive harm Toyota caused.

5. Afterwards, Toyota claimed it cleaned up its act. Not so. Toyota continues to mislead the public about safety defects in its vehicles. Even after the sudden unintended acceleration fiasco, Toyota continues to put its bottom line over the safety and welfare of the people who drive its cars—corporate greed at its worst.

6. The inverter is the electrical brain of Toyota's hybrid system. It converts electricity derived from a DC (Direct Current) source to AC (Alternating Current), powering the electrical systems of the car. The inverter is a critical component of a hybrid vehicle.

7. The inverters in Prius liftback and Prius V wagon vehicles have been failing at alarming rates, causing the car to either shut down while driving or to enter "limp-home" (or "fail-safe") mode. This defect has put customers at serious risk of injury or even death.

8. A car shutting down while driving is dangerous. Limp-home mode is also not safe. It renders inoperable systems in the car such as power steering, and it immediately and drastically reduces the speed of the car while driving.

9. In February 2014—four years after the problem arose—Toyota issued Safety Recall E0E to address defective inverters in the Prius. Eighteen months later, in July 2015, Toyota issued Safety Recall F0R to address this same issue on the Prius V wagon.

10. Safety Recalls E0E and F0R called for two different remedies, depending on whether the car's inverter had already failed. If the inverter/components had *not yet* failed, the recall remedy was a software "re-flash." If the inverter/components had *already* failed, the recall remedy called for a replacement of the faulty inverter.

11. The software "re-flash" does not adequately protect drivers of these vehicles. Customers whose Prius and Prius V cars received the software "re-flash" under Safety Recalls E0E and F0R still experienced inverter failures. Their cars either shut down while driving or suddenly decelerated and lost power steering.

12. The recall did not fix the problem, and Toyota knew it. Hundreds of thousands of Prius and Prius V cars that have not yet experienced an inverter failure are still on the road with defective inverters; and drivers are at risk.

13. Toyota issued a cheap, inadequate fix that did not remedy the problem. Toyota knows that inverters are failing even after the software "re-flash," jeopardizing the safety of its consumers and others on the road. Toyota has admitted this.

14. Toyota concealed from customers that the software "re-flash" did not

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

make them safe. Toyota wanted to save money: the defective software "re-flash" costs $80 per vehicle, whereas the necessary inverter replacement would have cost Toyota $3,000 per vehicle—a difference of several billion dollars to Toyota.

15. Toyota also concealed from customers that the software "re-flash" decreased the car's fuel efficiency—defeating the very purpose of owning these hybrid vehicles. Customers choose the Prius because of its fuel efficiency. Toyota knows that, so it hid the cars' reduced fuel efficiency.

16. Moreover, many of the Prius and Prius V cars have been certified by Toyota as Toyota Certified Used Vehicles, or "TCUVs." Toyota classifies vehicles as TCUVs only after they successfully complete a supposedly rigorous "160-point Quality Assurance Inspection" and reconditioning. Toyota dealers pay Toyota $450 for each certification, a fee that is then passed on to the customer.

17. By advertising a Toyota vehicle as a TCUV, Toyota falsely claims publicly that the vehicle is the best of the best. Toyota even certifies Priuses with defective inverters as TCUVs, knowing that these vehicles are not safe. It continues to mislead the public.

18. This case addresses Toyota's corporate culture and ongoing fraudulent practices. For Toyota, it's all about profits and the bottom line. Toyota is unwilling to spend money on safety recalls unless and until it gets caught.

19. The $1.2 billion fine for Toyota's hiding of sudden unintended acceleration issues had no effect. It is time to indict, prosecute and convict Toyota's top executives in the U.S. and Japan; and impose meaningful punitive damages to send a message that disregard of public safety is not acceptable. Nothing short of this will stop Toyota from endangering the public.

20. Toyota's conduct violates federal law, California's consumer protection statutes and common law, and is a breach of applicable warranties. Plaintiffs bring this suit on behalf of themselves and proposed nationwide and California classes to obtain damages (both actual and punitive), restitution, and injunctive relief.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**JURISDICTION AND VENUE**

21. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). At least one class member is of diverse citizenship from at least one defendant; there are at least 100 members in the proposed Class; and the aggregate amount in controversy exceeds $5 million.

22. This Court has personal jurisdiction over Defendants because Defendant Toyota Motor Sales, U.S.A., Inc. is headquartered in California, and both Defendants conduct business in this state. Toyota Motor Corporation manufactures the inverters in these hybrid vehicles.

23. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the acts giving rise to Plaintiffs' claims occurred in this District.

**PARTIES**

24. Plaintiff Remy McCarthy is a citizen and resident of Ventura County, California.

25. Plaintiff Robert Phillips is a citizen and resident of Orange County, California.

26. Defendant Toyota Motor Sales, U.S.A. ("Toyota US") is a California corporation with its principal place of business in Los Angeles County. Toyota US is responsible for the manufacture, distribution and sale of all Toyota automobiles in the United States.

27. Defendant Toyota Motor Corporation ("Toyota Japan") is a Japanese corporation with its headquarters in Japan. Toyota Japan is the parent company of Toyota US and conducts business in this District.

28. Toyota US and Toyota Japan are referred to collectively in this complaint as "Toyota."

29. The names and capacities of DOE Defendants 1-10 are currently unknown to Plaintiffs. Each of the DOE Defendants is legally responsible for the unlawful acts alleged herein.

30. At all relevant times, each defendant was acting as an agent or employee of each of the other and was acting within the course or scope of the agency with knowledge and consent of the other defendants. Each of the acts and omissions complained of were made known to, and ratified by, each of the other defendants.

## FACTUAL BACKGROUND

### A. Toyota's Unintended Acceleration Crisis

31. In 2009 and 2010, Toyota made false and misleading statements to consumers and governmental regulators about defects that caused sudden unintended acceleration—sticking gas pedals and floor mats trapping the pedals. It turns out that Toyota had been concealing these safety defects for years.

32. Toyota recalled millions of vehicles in connection with these life-threatening safety issues, and Toyota issued a "stop-sale" on millions of cars globally.

33. In 2014, Toyota was charged criminally and fined over a billion dollars for its misleading statements to the public, regulators and Congress.

34. After millions of recalls and significant damage to the Toyota brand, Toyota made numerous statements about its commitment to safety. Toyota assured the public that something like this would never happen again and that Toyota had cleaned up its act. Toyota said that it would commit itself to safety. Unbeknownst to customers, Toyota did not handle safety issues appropriately and continued to hide dangerous defects from the public.

35. In October 2017, the United States District Court in the Southern District of New York (the Honorable William H. Pauley III presiding), stated on the record that Toyota's misleading statements "represented a reprehensible picture of corporate misconduct." "Regrettably," Judge Pauley continued, "the payment of a $1.2 billion fine and the appointment of a monitor concluded the government's investigation into this tragic episode." Judge Pauley also expressed concern that

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

Toyota and its executives were not held accountable for misleading the public and regulators.

36. Despite Toyota's representations after the sudden unintended acceleration crisis, it has continued to deliberately hide life-threatening safety issues.

**B. <u>The New Crisis: Prius</u>**

37. Hybrid vehicles are a blend of gasoline-powered vehicles, which have a fuel tank and internal combustion engine, and electric vehicles, which operate with batteries and an electric motor. The gasoline component allows a hybrid vehicle to be refueled quickly and drive for a long distance before needing to be refueled. The electric component reduces emissions and the driver's fuel budget.

38. With rising fuel prices and the subsidies available for environmentally friendly vehicles, the number of hybrid vehicles on the road is rising dramatically. The Toyota Prius is the world's most popular hybrid vehicle. Because of the Prius, Toyota has become the global leader in hybrid technology and fuel economy.

39. Toyota markets the Prius as an environmentally and financially better alternative to conventional vehicles because it uses less fuel and has lower emissions. Customers buy and lease Toyota Priuses not only because they emit less pollution than standard vehicles, but also because of their fuel efficiency.

40. Hybrid vehicles like the Toyota Prius are equipped with an inverter that functions as the electrical brain, or electrical choreographer, of Toyota's hybrid system. Inverters and their components are critical parts of the electrical power system in Prius hybrids.

41. In the Prius, electrical currents are constantly flowing back and forth from many components such as the hybrid battery, the brakes, gauges, and the motor generators, among others. The inverter takes electrical currents and boosts them up to power the wheels and reduces them to power smaller electrical components. It also converts currents to the proper type (DC to AC and vice versa) in order to power the electrical systems of the car.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

42. When an inverter overheats, the car can completely shut down or enter what Toyota calls "limp-home" mode. When a vehicle enters "limp-home" or "fail-safe" mode, the vehicle's speed drastically reduces in order to avoid further strain on the engine and "limp" you home. This is a dangerous safety defect. If a car is traveling on the highway at 65 miles per hour and is surrounded by other cars traveling at similar speeds, a sudden switch into "limp-home" mode could disrupt traffic and cause a serious accident.

**C. Toyota Issues Inadequate Repairs For Life-Threatening Inverter Defects**

43. Beginning in 2010, drivers of 2010-2014 Toyota Prius (liftback) models were experiencing problems with their inverters. The inverters were failing, causing the car to either shut down while driving or to enter "limp-home" mode.

44. Despite knowing about this safety concern since at least 2010 (if not earlier), Toyota took no action until 2014. In February 2014, Toyota finally issued Safety Recall E0E to address this issue in over 700,000 Prius vehicles in the U.S., including many that had already been on the road for years. In several documents prepared by Toyota in connection with Safety Recall E0E (the Defect Information Report submitted to NHTSA, the customer notification and dealer notification), Toyota admitted that these failing inverters were "increasing the risk of a crash."

45. Safety Recall E0E requires a software "re-flash," *i.e.*, a reboot of the software, costing Toyota approximately $80 per vehicle. Once a car is given the software "re-flash," the recall is deemed completed.

46. But this dilatory "remedy" did not fix the safety defect. Many customers who received the software "re-flash" have experienced failing inverters. Thus, they were still at risk of experiencing a shut-down or loss of power while driving, jeopardizing their safety.

47. Toyota claims that a vehicle on which the software "re-flash" has been performed will not shut down, but instead will go into limp-home mode. "Limp-home" mode is dangerous and can be life-threatening. It is a serious threat to the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

safety of drivers, passengers and others on the road. When a car enters "limp-home" mode, the speed reduces dramatically, and power steering is disabled. A sudden decrease in speed while driving on a major road or highway puts not only the driver and passengers in danger, but also others on the road. The software "re-flash" is not an adequate remedy for this defect.

48. Under Safety Recall E0E – the software reboot – Toyota did not correct the root cause of the inverter failure. Instead, Toyota chose to perform an ineffective fix that cost a fraction of what the appropriate fix would have cost. Prius drivers who believed they had completed the necessary recall repair work were thus put back on the road with defective inverters still in their vehicles.

49. In cases where the inverter has already failed (a customer's vehicle has already experienced this defect while driving), the remedy under Safety Recall E0E is different. There, *after* the inverter has failed, Toyota replaced the faulty inverter—the only way to guarantee the vehicle will perform safely.

50. Toyota issued the $80 software reboot, knowing it would not fix the inverter, to save repair costs ($3,000 for full replacement versus the $80 reboot), at the expense of Toyota drivers and their safety.

51. In addition, unbeknownst to customers, Toyota's software "re-flash" decreased the fuel efficiency of the Priuses. Toyota's so-called "remedy" manipulated the inverters so that the cars became more dependent on the gas engine and less dependent on the electric engine. By doing so, unbeknownst to drivers, Toyota reduced the vehicles' fuel efficiency, which is the main reason why consumers purchase Priuses. Toyota suppressed this material information from drivers and misled them into believing that their cars' fuel efficiency would remain the same after the "re-flash."

**D. <u>The Misleading Warranty Enhancement</u>**

52. To cover its tracks, Toyota issued the ZE3 Warranty Enhancement, which extended warranty coverage on inverters to 15 years in Prius cars that had the

inverter software "re-flash" under Safety Recall E0E. Under this warranty, Toyota will replace the inverters only *after* they fail. This is insufficient and does not protect driver safety. A customer should not have to face a life-threatening loss or reduction of power while driving in order to obtain the necessary inverter replacement.

53. Toyota saved billions of dollars by replacing inverters only *after* they failed instead of fixing them up front. The ZE3 Warranty Enhancement looks good to customers but is misleading. In fact, it is further evidence that Toyota knew inverters would fail after receiving the software "re-flash." If the "re-flash" fixed the problem, then there would be no need for Toyota to extend the warranty.

**E. <u>The Prius V Wagon</u>**

54. The Toyota Prius V is the wagon version of the Toyota Prius. These two models have the same inverter.

55. In July 2015, Toyota issued Safety Recall F0R to address defective inverters in 2012-2014 Prius Vs. Safety Recall F0R calls for the same software "re-flash," *i.e.*, a reboot of the software, as Safety Recall E0E.

56. Toyota did not issue a safety recall for the Prius V *until 18 months after* issuance of the Safety Recall E0E for the Prius. Toyota knew about the danger of driving Prius V vehicles with defective inverters for 18 months and did nothing about it during that period of time.

57. In May 2016, Toyota issued the ZF5 Warranty Enhancement, which extended warranty coverage on inverters to 15 years in Prius V cars that had the software "re-flash" under Safety Recall F0R. The ZF5 Warranty Enhancement was identical to the ZF3 Warranty Enhancement issued on the Toyota Prius.

**F. <u>Post-Remedy Inverter Failures</u>**

58. Thousands of customers have experienced post-Safety Recall E0E or post-Safety Recall F0R inverter failures. This is happening all over the country, and the number will increase as inverters continue to fail.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

59.     In or about February 2011, a driver of a 2010 Prius experienced an inverter failure while driving on the interstate highway.  Four different warning lights illuminated on the dashboard, and the vehicle lost power.  The Prius had only 3,400 miles on it.

60.     In or about April 2015, another Toyota driver experienced an inverter failure while driving, causing the car to lose power.  The driver had the car towed to the nearest Toyota facility.

61.     In or about October 2015, a Toyota driver experienced an inverter failure while driving, causing her car to completely stop working.

62.     In or about December 2015, another Toyota driver experienced an inverter failure while driving in the rain.  Although her car had the software "re-flash" under Safety Recall E0E in April 2014, the car lost power and would not restart.

63.     In or about January 2017, another Toyota driver experienced an inverter failure that caused his car to suddenly enter "limp-home" mode while driving 65 miles per hour on a California highway.

64.     In October 2017, a Toyota driver had a dangerous, life-threatening experience while driving her Toyota Prius on a major road.  Although her car had Safety Recall E0E completed in 2014 and only had 31,222 miles on it, she experienced an inverter failure that caused her car to shut down while driving.  The dashboard flashed with lights telling her to turn off the engine and park the car immediately.  She lost power and was lucky to avoid a major crash.  She had her Prius towed to the nearest Toyota dealer.

65.     In January 2018, another Toyota driver experienced inverter failure in her 2012 Toyota Prius while driving approximately 50 miles per hour on a major road.  This was after her car had Safety Recall E0E (the software "re-flash") completed in 2014.  Her vehicle lost power, and the dashboard and airbag lights flashed.  She had her Prius towed to the nearest Toyota dealer, and the inverter was

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

replaced under warranty. She was too afraid to drive the car again, so she sold her Prius to CarMax.

66. Toyota has information about many other inverters that have failed across the country because it has received thousands of manual allocation email requests for replacement parts from dealers when an inverter fails. Toyota has learned about other failed inverters that it has replaced under Toyota's ZE3 and ZF5 warranty extensions, original factory warranty, and E0E and F0R safety recalls. But Toyota has refused to issue a proper fix, continuing to jeopardize customer safety.

67. Toyota has still not issued a safety recall to replace the inverters or their components. Toyota's concealment of this safety defect has diminished the value of the vehicles and continues to endanger Toyota drivers and others on the road.

## G. Statutory And Regulatory Framework

68. Toyota's practice of "repairing" defective inverters by performing an ineffective, cheap software "re-flash," and offering to fix defective inverters only *after* they fail, violates the National Traffic and Motor Vehicle Safety Act of 1966 (the "Safety Act").

69. The Safety Act requires that manufacturers remedy recalled vehicles with safety defects in one of three ways: (1) repairing the vehicle/equipment; (2) replacing the vehicle/equipment with an identical or equivalent vehicle/equipment; or (3) refunding the vehicle's purchase price. 49 U.S.C.A. § 30120(a)(1)(A).

70. If a manufacturer decides to repair a vehicle and the repair is not done adequately within a reasonable time, the manufacturer must either (a) replace the vehicle or equipment without charge with an identical or equivalent vehicle or equipment; or (b) refund the purchase price. *Id.* § 30120(c)(1).

71. The purpose of the Safety Act is to prevent serious injuries stemming from established defects *before* they occur, not to fix safety defects only *after* they occur. The Safety Act does not permit Toyota to recall vehicles and then ignore the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

statutory remedy requirements.

72. Federal regulations also set forth the responsibilities of manufacturers of motor vehicles under the Safety Act with respect to safety-related defects. Car manufacturers must file defect information reports with NHTSA within five days of discovering safety-related defects. 49 C.F.R. § 573.6.

**H. <u>Toyota Certifies Unsafe Cars As "Toyota Certified Used Vehicles"</u>**

73. Many 2010-2014 Toyota Priuses and 2012-2014 Prius Vs have been certified as Toyota Certified Used Vehicles, or "TCUVs." Toyota identifies vehicles as TCUVs only after they successfully complete a "160-point Quality Assurance Inspection" and reconditioning. Toyota charges its dealers $450 for each certification. This charge then gets passed on to the customers.

74. Toyota has stated that its TCUV program is "vital to keeping [its] residual values strong." By advertising a Toyota vehicle as a TCUV, Toyota represents that the vehicle is the best of the best. But the Prius and Prius Vs with faulty inverters have serious safety issues creating a substantial risk of accidents and injuries.

75. As set forth on its website for TCUVs (www.toyotacertified.com), Toyota advertises, "The Best New Cars Make the Best Used Cars." Toyota also claims: "Only the best get to be Toyota Certified Used Vehicles."

76. The "re-flash" recall remedy is clearly deficient, and Toyota is fully aware of abundant inverter failures post-"re-flash"; yet Toyota refuses to do the right thing and replace these inverters unless and until customers face life-threatening engine failures on the road. And Toyota continues to certify these unsafe vehicles as TCUVs.

77. Prius inverters continue to fail after obtaining Toyota's cheap recall. Toyota is knowingly jeopardizing customer safety by continuing to put drivers back on the road with defective inverters that can cause the car to shut down while driving or enter "limp-home" mode.

Miller Barondess, LLP
Attorneys at Law
1999 Avenue of the Stars, Suite 1000 Los Angeles, California 90067
Tel: (310) 552-4400 Fax: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

## PLAINTIFFS

78. Plaintiff Remy McCarthy owned or owns a 2010 Toyota Prius, a model affected by the E0E recall. Mr. McCarthy's vehicle received the software "re-flash" under Safety Recall E0E.

79. Plaintiff Robert Phillips owned or owns a 2013 Toyota Prius V, a model affected by the F0R recall. Mr. Phillips' vehicle received the software "re-flash" under Safety Recall F0R.

## CLASS ACTION ALLEGATIONS

80. "Class Vehicles" includes:

a. All 2010-2014 Toyota Prius liftback vehicles; and

b. All 2012-2014 Toyota Prius V wagon vehicles.

81. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action individually and on behalf of the following proposed classes of persons, initially defined as:

**Nationwide Class:**

All persons who bought or leased a Class Vehicle in the United States.

**California Class:**

All persons who bought or leased a Class Vehicle in California.

82. The Class does not include Defendants; any affiliate, parent or subsidiary of Defendants; any entity in which Defendants have a controlling interest; any officer, director or employee of Defendants; any successor or assign of Defendants; or any judge to whom this case is assigned and any member of his or her immediate family.

83. Also excluded from the class are individuals who have claims for personal injury as a result of failed inverters or inverter components. The claims at issue in this case do not seek damages for physical injury. Thus, individualized determinations as to causation of bodily injury will not be required. This class action only seeks the economic and equitable relief requested herein.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

84. Numerosity. The Class is comprised of millions of persons, making joinder of such cases impracticable. Disposition of the claims in a class action context will provide substantial benefits to the parties and the Court.

85. Existence and predominance of common questions. Common questions of law and fact exist as to all members of the proposed Class and predominate over questions affecting only individual Class members. These common questions include, but are not limited to, the following:

a. Whether inverters were defective in the Class Vehicles;

b. Whether those defective inverters created an unreasonable risk of accidents and bodily injury;

c. Whether Toyota's software "re-flash" under Safety Recalls E0E and F0R is an adequate repair under the statutory and regulatory framework;

d. Whether Toyota's software "re-flash" under Safety Recalls E0E and F0R decreases the vehicle's fuel efficiency;

e. Whether Toyota had a duty to disclose the Class Vehicles' safety defects to customers;

f. Whether Toyota concealed safety defects in connection with the Class Vehicles from customers;

g. Whether Toyota concealed from customers that Safety Recalls E0E and F0R did not fix the defective inverters;

h. Whether Toyota's conduct violated the California Unfair Competition law;

i. Whether Toyota's conduct constituted false advertising;

j. Whether Toyota's marketing of Class Vehicles was likely to deceive or mislead consumers;

k. Whether Toyota's classification of Class Vehicles as TCUVs was likely to deceive or mislead consumers;

l. Whether Toyota's conduct constituted a breach of the implied

warranty of merchantability;

m. Whether Toyota's conduct constituted a breach of the implied warranty of fitness for a particular purpose; and

n. Whether Plaintiffs were injured as a result of Toyota's conduct.

86. Typicality. Plaintiffs' claims are typical of the claims of the proposed Classes. Plaintiffs and the Class members they propose to represent purchased or leased Class Vehicles that are affected by the same safety defects, giving rise to substantially the same claims.

87. Adequacy. Plaintiffs will fairly and adequately represent and protect the interests of the proposed Classes. Plaintiffs have no interests that are antagonistic to or that irreconcilably conflict with those of the other Class members they seek to represent. Plaintiffs have retained counsel competent and experienced in the prosecution of class action litigation and intends to prosecute this action vigorously.

88. Superiority. Class certification is appropriate under Rule 23(b)(3). A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. This litigation involves technical issues that will require expert testimony and targeted discovery of sophisticated defendants, and could not practically be taken on by individual litigants. In addition, individual litigation of Class members' claims would be unduly burdensome to the court system and has potential to lead to repetitious litigation with inconsistent results. A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

89. Class certification is also appropriate under Rule 23(b)(2) because Toyota has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

90. The nature of notice to the proposed Classes is contemplated to be by direct mail or, if such notice is not practicable, by the best notice practicable under the circumstance including email, publication in major newspapers and/or on the Internet.

**TOLLING**

91. Any applicable statutes of limitations that might otherwise bar any of Plaintiffs' claims are tolled by Defendants' knowing and active concealment of the defective inverters in the Class Vehicles, and the safety risks and diminished fuel economy resulting therefrom.

92. Defendants kept Plaintiffs in the dark as to necessary information essential to the pursuit of their claims. Because of Toyota's cover-up, proposed Class members could not have reasonably discovered their defective inverters.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL")**

(CAL. BUS. & PROF. CODE § 17200, et seq.)

(On Behalf of the California Class)

93. Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

94. Plaintiffs assert this claim on behalf of themselves and on behalf of all persons and entities that purchased or leased a Class Vehicle.

95. California Business and Professions Code section 17200 prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising..."

96. Defendants have engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL. Defendants have engaged in unfair, deceptive, untrue, or misleading advertising in violation of the UCL.

97. Defendants have engaged in unlawful acts or practices under section

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

17200 by their violations of the Consumers Legal Remedies Act, California Civil Code § 1750, et seq., as set forth in Count VII, through the acts and practices set forth in this Complaint.

98. Defendants have engaged in unlawful acts and practices because they violated the Safety Act as defined here in, codified at 49 U.S.C. § 30101, et seq., and its regulations.

99. 49 U.S.C.A. § 30120(c)(1) requires that if a manufacturer repairs a vehicle and the repair is not done adequately within a reasonable time, the manufacturer must either (a) replace the vehicle or equipment without charge with an identical or equivalent vehicle or equipment; or (b) refund the purchase price. Under 49 U.S.C.A. § 30120(c)(2), failure to repair a vehicle or equipment adequately within 60 days is prima facie evidence of failure to repair within a reasonable time.

100. Here, Defendants' practice of "repairing" defective inverters and inverter components by performing an ineffective, cheap software "re-flash," and offering to fix defective inverters only *after* they fail, violates the Safety Act.

101. Defendants have engaged in unlawful acts and practices because they violated federal regulations requiring manufacturers to file defect information reports with NHTSA within five days of discovering safety-related defects. 49 C.F.R. § 573.6. Toyota knows its software "re-flash" remedy does not fix defective inverters, but it has not filed defect information reports in connection with these remaining defects.

102. Defendants also violated the "TREAD Act," 49 U.S.C. §§ 30101-30170, when they allowed Class Vehicles to be sold with the defect.

103. Defendants have engaged in fraudulent business acts or practices under section 17200 because their misrepresentations and omissions regarding the safety, fuel efficiency, reliability and dependability of the Class Vehicles were intended to, were likely to, and did deceive reasonable consumers. The information Defendants

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

misrepresented and concealed would be and is material to reasonable consumers.

104. Defendants have engaged in unfair acts and practices under section 17200 based on the acts and practices set forth in the Complaint, including the manufacture, sale, lease, and ineffective repair of vehicles with an inverter defect that causes vehicles to shut down while driving or enter into "limp-home" mode. Defendants' failure, over a long period of time, to adequately disclose the inverter defect or adequately address it, caused and causes excessive, undue harm and risk to consumers.

105. Defendants have engaged in unfair acts and practices under section 17200 because the acts and practices set forth in the Complaint, including the manufacture and sale of vehicles with an inverter defect that causes vehicles to shut down while driving or enter into "limp-home" mode, and Defendants' failure, over a long period of time, to adequately disclose the defect or address it, offend public policy.

106. Defendants have engaged in unfair, deceptive, untrue or misleading advertising under section 17200 because Defendants advertised the Class Vehicles as safe and advertised them as having greater fuel efficiency than they actually have.

107. Defendants' conduct, misrepresentations and omissions have also impaired competition within the automobile market. Defendants' conduct, misrepresentations and omissions have also prevented Plaintiffs from making fully informed decisions about whether to purchase or lease Class Vehicles and/or the price to be paid to purchase or lease Class Vehicles.

108. Plaintiffs have suffered an injury in fact, including the loss of money and/or property, as a result of Defendants' unfair, unlawful and/or deceptive practices. In purchasing or leasing their vehicles, Plaintiffs relied on Defendants' misrepresentations and/or omissions with respect to the safety, fuel efficiency, reliability and dependability of the vehicles.

109. Defendants' representations were untrue. The Class Vehicles can

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

unexpectedly and dangerously shut down while driving. The Class Vehicles can unexpectedly and dangerously enter "limp-home" mode while driving. The Class Vehicles are less fuel efficient than Defendants represented. Had Plaintiffs known these facts, they would not have purchased or leased the Class Vehicles and/or paid as much for them.

110. The wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

111. Plaintiffs request that this Court enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs any money Defendants acquired through unfair competition, including but not limited to restitution and disgorgement.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW**

(CAL. BUS. & PROF. CODE § 17500, et seq.)

(On Behalf of the California Class)

112. Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

113. Plaintiffs assert this claim on behalf of themselves and on behalf of any person or entity that purchased or leased a Class Vehicle.

114. California Business and Professions Code § 17500 states: "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any

circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

115. Defendants made, disseminated, or caused to be made or disseminated through California and the United States, through advertising, marketing and publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to Plaintiffs.

116. Defendants have violated section 17500 because the misrepresentations and omissions regarding the safety and reliability of the Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

117. Defendants have violated section 17500 because the misrepresentations and omissions regarding the fuel efficiency of the Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

118. Plaintiffs have suffered an injury, including the loss of money or property, as a result of Defendants' unfair, unlawful and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiffs relied on the misrepresentations and/or omissions of Defendants with respect to the safety, reliability and fuel efficiency of the Class Vehicles. Defendants' representations were untrue.

119. The Class Vehicles are less fuel efficient than Defendants led Plaintiffs to believe because of their defective inverters. Had Plaintiffs known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them.

120. The Class Vehicles were less safe and reliable than Defendants led Plaintiffs to believe because of their defective inverters. Had Plaintiffs known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

121. Plaintiffs overpaid for their Class Vehicles and did not receive the benefit of their bargain. Plaintiffs have also overpaid for fuel, relative to what they would have expected to pay based on Defendants' statements, on an ongoing basis since Plaintiffs purchased or leased the Class Vehicles.

122. The wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

123. Plaintiffs request that this Court enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs any money Defendants acquired through their unfair competition, including but not limited to restitution and disgorgement.

## THIRD CAUSE OF ACTION

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

(CAL. COM. CODE § 2314)

(On Behalf of the California Class)

124. Plaintiffs incorporate by reference and reallege all paragraphs alleged herein.

125. Plaintiffs assert this claim on behalf of themselves and on behalf of any person or entity that purchased or leased a Class Vehicle.

126. Toyota US is and was at all relevant times a merchant with respect to the Class Vehicles under California Commercial Code § 2104.

127. A warranty that the Class Vehicles were in merchantable condition was implied by law in all contracts for their sale or lease, pursuant to California Commercial Code § 2314(1).

128. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles were and are defective in that

there were and are defects in their inverters that cause the cars to shut down while driving or to enter "limp-home" mode; the Class Vehicles do not have an adequate fail-safe to protect against such events; the Class Vehicles were sold with software that was not programmed according to industry standards; the inverters were not adequately designed, manufactured and tested; and Defendants issued inadequate repairs for these dangerous defects.

129. Defendants were and are aware of these issues. Toyota admitted in its Defect Information Report submitted to the NHTSA that its failing inverters were "increasing the risk of a crash." Toyota also has notice of these issues based on the many other inverters that have failed across the country. Toyota has received thousands of email requests for replacement parts from dealers when inverters fail. Toyota has issued recalls, acknowledging awareness of these issues, but it has failed to issue any proper fixes.

130. Plaintiffs have had sufficient direct dealings with either the Defendants or their agents (dealerships) to establish privity of contract between Plaintiffs and Defendants.

131. Privity is not required in this case because Plaintiffs are intended third-party beneficiaries of contracts between Defendants and their dealers. Plaintiffs are the intended beneficiaries of Toyota's implied warranties.

132. As a direct and proximate result of Defendants' breaches of the warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF MAGNUSON-MOSS WARRANTY ACT**

(15 U.S.C. § 2301, et seq.)

(On Behalf of the Nationwide Class)

133. Plaintiffs incorporate by reference and reallege all paragraphs alleged herein.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

134. Plaintiffs assert this claim on behalf of themselves and on behalf of any person or entity that purchased or leased a Class Vehicle.

135. This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

136. The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

137. Plaintiffs are "consumers" under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

138. Defendants are "suppliers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4).

139. Defendants are "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(5).

140. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

141. The Class Vehicles' had implied warranties within the meaning of 15 U.S.C. § 2301(7).

142. Defendants breached the implied warranties on the Class Vehicles as described above, including by not repairing or adjusting the defective inverters; providing Class Vehicles not in merchantable condition and which present an unreasonable risk of sudden shut down or entering "limp-home" mode, and not fit for the ordinary purpose for which the Class Vehicles are used; providing Class Vehicles that were not fully operational, safe or reliable; and inadequately repairing and not curing defects and nonconformities once they were identified.

143. Plaintiffs have had sufficient direct dealings with either the Defendants or their agents (dealerships) to establish privity of contract between Plaintiffs and Defendants.

144. Privity is not required in this case because Plaintiffs are intended third-party beneficiaries of contracts between Defendants and their dealers. Plaintiffs are

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

the intended beneficiaries of Toyota's implied warranties.

145. Affording Defendants an opportunity to cure their breach of warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle, Defendants knew of the Class Vehicles' inability to perform as warranted and lower fuel efficiency based on the inverter defect, but nonetheless failed to rectify the situation and/or disclose the inverter defect. Defendants have still failed to rectify the situation. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

146. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

147. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages and continue to suffer damages, including but not limited to the difference between the value of the vehicle paid and the actual value of the vehicle. Plaintiffs are entitled to legal and equitable relief against Defendants, including damages, costs, attorneys' fees, and other relief as appropriate.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**FIFTH CAUSE OF ACTION**

FRAUD BY CONCEALMENT

(BASED ON CALIFORNIA LAW)

(On Behalf of the Nationwide Class)

148. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

149. Plaintiffs assert this claim on behalf of themselves and on behalf of any person or entity that purchased or leased a Class Vehicle.

150. As set forth above, Defendants concealed and/or suppressed material facts concerning the fuel efficiency, safety, dependability and reliability of the Class Vehicles. Defendants also concealed and/or suppressed material facts about the Class Vehicles when it certified them to consumers and the public as TCUVs.

151. Defendants had a duty to disclose material facts concerning the fuel efficiency, safety, dependability and reliability of the Class Vehicles because they marketed the Class Vehicles as safe and fuel efficient. Defendants made representations to the public about the fuel efficiency, safety, dependability and reliability of the Class Vehicles.

152. Defendants were under a duty to disclose material facts that they omitted. Defendants had a duty to disclose material facts because they were known or accessible only to Defendants. Defendants knew that material facts they did not disclose were not known to or reasonably discoverable by Plaintiffs.

153. Facts undisclosed by Defendants were and are material because they directly impact the fuel efficiency, safety, reliability and dependability of the Class Vehicles. A defective inverter that causes a car to either shut down while driving or enter "limp-home" mode is a material safety concern. Whether a vehicle is a reliable product and has been manufactured and designed according to industry standards are material facts for a reasonable consumer. The reduced fuel efficiency of a Toyota Prius is a material fact for a reasonable consumer. The inadequacy of Toyota's software "re-flash" safety recalls is a material fact that Toyota concealed from consumers. The fact that Class Vehicles identified as TCUVs could fail or go into limp-home mode is a material fact Toyota suppressed. Toyota possessed exclusive knowledge of the defects rendering the Class Vehicles more dangerous and less fuel efficient than Toyota led Plaintiffs to believe.

154. Defendants actively concealed material facts, in whole or in part, with the intent to induce Plaintiffs to purchase Class Vehicles, and to induce Plaintiffs to purchase Class Vehicles at a higher price than the vehicles' true value and a higher

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

price than Plaintiffs would otherwise have paid.

155. Defendants still have not made full and adequate disclosure and continue to defraud Plaintiffs, and Plaintiffs continue to be harmed and have their safety put at risk.

156. Plaintiffs were unaware of material facts undisclosed and deliberately omitted by Defendants. Plaintiffs would not have acted as they did in purchasing the Class Vehicles, and in purchasing them at the price they did, if Plaintiffs had known of the concealed facts.

157. Plaintiffs' actions were reasonable and justified. Defendants had exclusive control of the concealed material facts. The concealed material facts were not known to the public or Plaintiffs.

158. As a result of Defendants' concealment, Plaintiffs sustained damage. Damages may include, but are not limited to, the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, plus damages arising from the sales transaction, amounts expended in reliance upon the fraudulent concealment, compensation for loss of use and enjoyment of the vehicles, and/or lost profits pursuant to California Civil Code § 3343; restitution and consequential damages pursuant to California Civil Code § 1692; diminution in resale value of the vehicles; increased risk of physical harm to the driver and others as well as concern therefor; and increased fuel costs in the past and future.

159. Defendants' acts were done oppressively, with intent to defraud, with malice, and/or in reckless disregard of Plaintiffs' rights. Defendants acts were done to satisfy their voracious greed and enrich themselves at the expense of Plaintiffs. Defendants should be punished for their conduct with an assessment of exemplary and punitive damages pursuant to California Civil Code § 3294. The amount of exemplary and punitive damages should be sufficient to make an example of Defendants and deter such callous fraudulent conduct in the future. The amount of exemplary and punitive damages is to be determined at trial.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**SIXTH CAUSE OF ACTION**

**VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

**BREACH OF IMPLIED WARRANTY**

(CAL. CIV. CODE §§ 1791, et seq.)

(On Behalf of the California Class)

160. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

161. Plaintiffs assert this claim on behalf of themselves and on behalf of all persons and entities that purchased or leased a Class Vehicle.

162. The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

163. Defendants are "manufacturers" within the meaning of Cal. Civ. Code § 1791(j).

164. Defendants impliedly warranted to Plaintiffs that Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792.

165. Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1) Pass without objection in the trade under the contract description.

(2) Are fit for the ordinary purposes for which such goods are used.

(3) Are adequately contained, packaged, and labeled.

(4) Conform to the promises or affirmations of fact made on the container or label.

166. The Class Vehicles would not pass without objection in the automotive trade because the Class Vehicles do not conform with federal and California standards, and were sold with an inverter defect, as described above.

167. The Class Vehicles are not fit for ordinary purposes for which they are used.

168. The Class Vehicles are not adequately labeled because the labeling misrepresents that the vehicles are compliant with federal and California standards or fails to disclose such noncompliance. The Class Vehicles are not adequately labeled because the labeling misrepresents their fuel efficiency.

169. The Class Vehicles do not conform to the promises or affirmations of fact made on their label because their label misrepresents their fuel efficiency.

170. Defendants' conduct deprived Plaintiffs of the benefit of their bargain, caused Plaintiffs to spend more on fuel for the Class Vehicles, and have caused the Class Vehicles to be worth less than what Plaintiffs paid.

171. As a direct and proximate result of Defendants' conduct, Plaintiffs received goods whose condition substantially impairs their value. Plaintiffs have been damaged by the diminished value of the vehicles, the additional costs of fuel, the vehicles' malfunctioning, and actual and potential increased maintenance and repair costs.

172. Plaintiffs have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct.

173. Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs are entitled to damages and other legal and equitable relief including, but not limited to the purchase price of the Class Vehicles or the overpayment or diminution in value of the Class Vehicles, and attorney fees and costs.

**SEVENTH CAUSE OF ACTION**

**VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT**

(CAL. CIV. CODE § 1750, et seq.)

(On Behalf of the California Class)

174. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

175. Plaintiffs assert this claim on behalf of themselves and on behalf of all

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

persons and entities that purchased or leased a Class Vehicle.

176. Defendants violated the Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1770(a), by engaging in unfair methods of competition and unfair and deceptive acts and practices in connection with their sale and lease of Class Vehicles to Plaintiffs. Defendants' unfair methods of competition and unfair and deceptive acts and practices were intended to, and did result in the sale and lease of Class Vehicles to consumers, including Plaintiffs.

177. Defendants concealed and failed to disclose that the Class Vehicles do not meet federal and state safety standards and that they are less fuel efficient than represented by Defendants as a result of defective inverters. These facts are material to a reasonable consumer in that they reduced the value of the Class Vehicles and increase the amount consumers have to spend on fuel.

178. Plaintiffs have incurred, and will incur, additional fuel costs as a result of Defendants' unfair practices. Plaintiffs have been exposed to, and continue to be exposed to, undue risk of harm as a result of Defendants' unfair practices.

179. Defendants had a duty to disclose the material fact of the defective inverters and their ramifications – reduced safety, performance and fuel efficiency – to Plaintiffs. Defendants had exclusive knowledge of the defective inverters and the reduced safety, performance, and fuel efficiency they caused; these facts were unknown or not reasonably known to Plaintiffs.

180. Defendants actively and deliberately concealed material facts from Plaintiffs. At the same time, Defendants made misrepresentations, partial representation, and half-truths concerning material facts.

181. As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed. Consumers who bought or leased Class Vehicles they otherwise would not have, or paid more for Class Vehicles than they otherwise would have, including Plaintiffs, did not receive the benefit of their bargain. The Class Vehicles were worth less than Defendants represented and less than consumers, including

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

Plaintiffs, were led to believe at the time they purchased or leased the Class Vehicles.

182. Defendants have sold or leased Class Vehicles at higher prices than they could have without their unfair methods of competition and unfair and deceptive acts and practices.

183. Plaintiffs are entitled to equitable relief and a declaration that Defendants' conduct violates the Consumers Legal Remedies Act.

184. Plaintiffs disclaim any request for monetary relief, including punitive damages, under the Consumers Legal Remedies Act at this time but reserve the right to seek relief after providing Defendants with the notice required by the Act.

**EIGHTH CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

(On Behalf of the Nationwide Class)

185. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

186. Plaintiffs assert this claim on behalf of themselves and on behalf of all persons and entities that purchased or leased a Class Vehicle.

187. Defendants had a duty to disclose material facts concerning the fuel efficiency, safety, dependability and reliability of the Class Vehicles and/or the existence of the defective inverter, as well as a duty to provide an adequate fix for the defective inverter, because Defendants possessed superior and exclusive knowledge regarding, and risks associated with, these material facts.

188. Defendants negligently misrepresented and omitted material facts regarding the fuel efficiency, safety, dependability and reliability of the Class Vehicles and/or the existence of the defective inverter, as well as the inadequacy of the software "re-flash" under Safety Recalls E0E and F0R.

189. As a direct result of Defendants' negligent conduct, members of the Classes have suffered actual damages.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

190. The fact that Defendants failed to disclose that the inverter in the Class Vehicles is defective is material because Plaintiffs and members of the Classes reasonably expected that the vehicles would not suffer from inverter failure while driving, causing the car to either shut down while driving or to enter "limp-home" (or "fail-safe") mode, exposing Class members to a serious risk of injury or even death. No reasonable consumer expects a vehicle to experience a defect such as inverter failure while driving which causes the car to shut down or to enter "limp-home" mode, thereby exposing drivers, occupants, and others to a serious risk of injury or death.

191. Plaintiffs and members of the Classes would not have purchased the Class Vehicles but for Defendants' negligent misrepresentations and omissions of material facts regarding the existence of the defective inverter and fuel efficiency, safety, dependability and reliability, or would have paid less for the Class Vehicles. Plaintiffs and members of the Classes justifiably relied upon Defendants' negligent misrepresentations and omissions of material facts.

192. As a direct and proximate result of Defendants' negligent misrepresentations and omissions of material facts regarding the fuel efficiency, safety, dependability and reliability and/or the existence of the defective inverter, Plaintiffs and members of the Classes have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

a. For an order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs as the representatives of the Class and their counsel as Class Counsel;

b. For an order requiring Toyota US to buy back Class Vehicles, refund the purchase price of Class Vehicles, or otherwise, free of charge, replace the defective inverters from Class Vehicles, ensure that Class Vehicles comply with applicable

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

safety standards, and ensure that Class Vehicles conform to promised performance and fuel economy guarantees;

c. For an order awarding Plaintiffs actual, statutory or any other form of damages provided by statute or required by law, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

d. For an order awarding Plaintiffs punitive damages in an amount sufficient to serve as an appropriate punishment in light of all the facts and circumstances, including Defendants' financial conditions.

e. For an order awarding Plaintiffs restitution, disgorgement or any other equitable relief provided by statute or as the Court deems proper, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

f. For an order awarding Plaintiffs pre-judgment and post-judgment interest;

g. For an order awarding Plaintiffs reasonable attorney fees and costs of suit, including expert witness fees; and

h. For an order awarding such other and further relief as this Court may deem just and proper.

DATED: February 5, 2018

Respectfully submitted,

MILLER BARONDESS, LLP

By: [signature]
LOUIS R. MILLER
Attorneys for Plaintiffs and the Class

DATED: February 5, 2018

KIESEL LAW LLP

By: [signature]

PAUL R. KIESEL
JEFFREY A. KONCIUS
NICOLE RAMIREZ
Attorneys for Plaintiffs and the Class

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury for all issues so triable.

DATED: February 5, 2018

Respectfully submitted,

MILLER BARONDESS, LLP

By: [signature]

LOUIS R. MILLER
Attorneys for Plaintiffs and the Class

DATED: February 5, 2018

KIESEL LAW LLP

By: [signature]

PAUL R. KIESEL
JEFFREY A. KONCIUS
NICOLE RAMIREZ
Attorneys for Plaintiffs and the Class

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400