Louis R. Miller (54141) (smiller@millerbarondess.com)
Amnon Z. Siegel (234981) (asiegel@millerbarondess.com)
Casey B. Sypek (291214) (csypek@millerbarondess.com)
David I. Bosko (304927) (dbosko@millerbarondess.com)
**MILLER BARONDESS, LLP**
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
T: (310) 552-4400
F: (310) 552-8400

Attorneys for Plaintiffs
Remy McCarthy, Kathleen Ryan-Blaufuss,
Cathleen Mills, Jason Reid, Khek Kuan, on
behalf of themselves and all others similarly situated

Jeffrey L. Fazio (146043) (jlf@fazmiclaw.com)
Dina E. Micheletti (184141) (dem@fazmiclaw.com)
**FAZIO | MICHELETTI LLP**
1111 Broadway, Suite 400
Oakland, CA  94607
T: 925-543-2555
F: 925-369-0344

Attorneys for Plaintiffs
Jevdet Rexhepi, Stephen Kosareff, and
Laura Kakish, on behalf of themselves
and all others similarly situated

(*Other Counsel Listed at End of Document*)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REMY MCCARTHY, KATHLEEN RYAN-BLAUFUSS, CATHLEEN MILLS, JASON REID, and KHEK KUAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., and DOE DEFENDANTS 1-10,<br><br>Defendants. | **18-cv-00201-JLS-KES**<br><br>**NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL AND LIAISON COUNSEL**<br><br>**Date: August 2, 2019**<br>**Time: 10:30 a.m.**<br>**Place: Courtroom 10A**<br>**Trial Date: Not Set**<br><br>**Hon. Josephine L. Staton** |



00502146-7421820.1

1

2

JEVDET REXHEPI, LAURA
KAKISH, and STEPHEN
KOSAREFF, on behalf of themselves
and all others similarly situated,

3

Plaintiffs,

4

vs.

5

6

TOYOTA MOTOR SALES USA,
INC., and DOES 1-10, inclusive,

7

Defendants.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



00502146-7421820.1

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that at 10:30 a.m. on August 2, 2019, or as soon thereafter as the matter may be heard by the Honorable Josephine L. Staton at Courtroom 10A on the 10th Floor of the United States District Court for the Central District of California, Southern Division, 411 West Fourth Street, Santa Ana, California, 92701, Plaintiffs Remy McCarthy, Kathleen Ryan-Blaufuss, Cathleen Mills, Jason Reid, Khek Kuan, Jevdet Rexhepi, Laura Kakish, and Stephen Kosareff on behalf of themselves and all others similarly situated (collectively, "Plaintiffs") will and hereby do move the Court for an order appointing Louis R. Miller and Amnon Z. Siegel of Miller Barondess, LLP and Jeffrey L. Fazio and Dina E. Micheletti of Fazio | Micheletti LLP as Interim Lead Class Counsel, and Kiesel Law LLP as Liason Counsel, pursuant to Federal Rule of Civil Procedure 23(g) and the Court's Order Granting in Part and Denying in Part Stipulation (Oct. 5, 2018), Dkt No. 38.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying declarations of Louis R. Miller, Jeffrey L. Fazio, and Jeffrey A. Koncius, any of the evidence on file with the Court and/or that may be presented in support of the motion during the hearing, and on such other written and oral argument presented to the Court.

DATED: April 23, 2019          **MILLER BARONDESS, LLP**


by ___ */s/ Louis R. (Skip) Miller* ___
               Louis R. (Skip) Miller

Louis R. (Skip) Miller (54141)
(smiller@millerbarondess.com)



**NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION TO APPOINT
INTERIM LEAD CLASS COUNSEL AND LIAISON COUNSEL**

1  Amnon Z. Siegel (234981)
   (asiegel@millerbarondess.com)
2  Casey B. Sypek (291214)
   (csypek@millerbarondess.com)
3  David I. Bosko (304927)
   (dbosko@millerbarondess.com)
4  **MILLER BARONDESS, LLP**
   1999 Avenue of the Stars, Suite 1000
5  Los Angeles, California 90067
   T: (310) 552-4400
6  F: (310) 552-8400

7  Paul R. Kiesel (119854)
   kiesel@kiesel.law
8  Jeffrey A. Koncius (189803)
   koncius@kiesel.law
9  Nicole Ramirez (279017)
   ramirez@kiesel.law
10 **KIESEL LAW LLP**
   8648 Wilshire Boulevard
11 Beverly Hills, CA 90211-2910
   T: 310-854-4444
12 F: 310-854-0812

13 Attorneys for Plaintiffs
   Remy McCarthy, Kathleen Ryan-Blaufuss,
14 Cathleen Mills, Jason Reid, Khek Kuan, on
   behalf of themselves and all others similarly
15 situated

16 DATED:  April 23, 2019      **FAZIO | MICHELETTI LLP**

17
                              by     /s/ *Jeffrey L. Fazio*
18                                   Jeffrey L. Fazio

19 Jeffrey L. Fazio (146043)
   (jlf@fazmiclaw.com)
20 Dina E. Micheletti (184141)
   (dem@fazmiclaw.com)
21 **FAZIO | MICHELETTI LLP**
   1111 Broadway, Suite 400
22 Oakland, CA 94607
   T:  925-543-2555
23 F:  925-369-0344

24 Charles J. LaDuca (*pro hac vice*)
   (charles@cuneolaw.com)
25 Michael J. Flannery (196266)
   (mflannery@cuneolaw.com)
26 **CUNEO GILBERT & LADUCA. LLP**
   4725 Wisconsin Ave. NW, Suite 200
27 Washington. D.C. 20016
   T: 202-789-3960
28 F: 202-789-1813



-ii-                                    18-cv-0201-JLS-KES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

William M. Audet (117456)
(waudet@audetlaw.com)
Clint S. Woods (246054)
(cwoods@audetlaw.com)
Ling (David) S. Kuang (296873)
(lkuang@audetlaw.com)
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102-3275
T: 415-568-2555
F: 415-568-2556

Donald R. Pepperman (109809)
(dpepperman@bakermarquart.com)
**BAKER & MARQUART LLP**
2029 Century Park East, Sixteenth Floor
Los Angeles, CA 90067
**T:** 424-652-7804
**F:** 424-652-7850

Attorneys for Plaintiffs
Jevdet Rexhepi, Laura Kakish, and Stephen
Kosareff on behalf of themselves and all
others similarly situated



# **TABLE OF CONTENTS**

PAGE

NOTICE OF MOTION .................................................................................i

I.      INTRODUCTION ...........................................................................1

II.     ARGUMENT ...................................................................................3

        A.      APPOINTMENT OF INTERIM LEAD CLASS COUNSEL
                IS NECESSARY AND APPROPRIATE ......................................3

        B.      PROPOSED INTERIM CO-LEAD COUNSEL AND LIAISON
                COUNSEL READILY MEET EACH OF THE FACTORS
                SET FORTH IN RULE 23(g)(1)(A) .........................................6

                1.      Proposed Co-Lead Counsel and Liaison Counsel
                        Have Performed Substantial Amounts
                        of Work Idenitfying and Investigating the Claims
                        Set Forth in Their Clients' Respective Complaints ........7

                2.      Proposed Co-Lead Counsel and Liaison Counsel
                        Have Extensive Experience in Handling Class Actions,
                        Other Complex Litigation, and the Types
                        of Claims Asserted in This Action ................................11

                3.      Proposed Co-Lead Counsel and Liaison Counsel
                        Are Well-Versed in the Law That Applies
                        to This Litigation .........................................................17

                4.      Proposed Co-Lead Counsel and Liaison Counsel
                        Have the Resources Required to Successfully
                        Prosecute This Litigation .............................................20

                5.      Proposed Co-Lead Counsel and Liaison Counsel
                        Will Work Cooperatively with All Other Interested
                        Counsel to Achieve the Best Possible Result for the
                        Putative Class ...............................................................22

IV.     CONCLUSION ..............................................................................22



## <u>TABLE OF AUTHORITIES</u>

PAGE

### <u>*Cases*</u>

*Azpeitia v. Tesoro Refining and Marketing Co. LLC,*
    2017 WL 4071368, *2 (N.D. Cal., Sept. 14, 2017) ......................... 4

*Bartling v. Apple Inc.,*
    2018 WL 4804735 (N.D. Cal. Apr. 27, 2018) .................................. 4

*Davis v. Ford Motor Credit Co.,*
    *LLC,* 179 Cal. App. 4th 581 (2009) ................................................ 19

*Friedman v. Guthy-Renker LLC,*
    2016 WL 2758240, at *2 (C.D. Cal. May 12, 2016) ........................ 5

*Graham v. DaimlerChrysler Corp.,*
    34 Cal. 4th 553 (2004) ................................................................... 19

*In re Biolase, Inc. Sec. Litig.,*
    2015 WL 12697736 (C.D. Cal. June 5, 2015) ................................. 7

*In re Hannaford Bros Co. Customer Data Sec. Breach Litig.,*
    252 F.R.D. 66, 67 (D. Me. 2008) ..................................................... 5

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ................................................................... 19

*In re: Kia Engine Litigation,*
    8:17-cv-00838-JLS-JDE (C.D. Cal. 2018)........................................ 5

*In Re: Vizio, Inc., Consumer Privacy Litig.,*
    No. 8:16-ml-02693-JLS (KESx) ....................................................... 6

*Mazza v. Am. Honda Motor Co., Inc.,*
    666 F.3d 581 (9th Cir. 2011) ......................................................... 19

*Miller v. Bank of Am., N.T. & S.A.,*
    46 Cal. 4th 630 (2009) ................................................................... 19

*Rollazo v. BMW of No. Am, LLC,*
    2016 WL 9173465, *3 (C.D. Cal., Sept. 15, 2016) ......................... 4

*Scott v. HSS Inc.,*
    2017 WL 10378568 (C.D. Cal. Apr. 11, 2017) ................................ 7

*Smith v. State Farm Mut. Auto. Ins. Co.,*
    301 F.R.D. 284, 288 (N.D. Ill. 2014) .............................................. 6

### <u>*Rules*</u>

Fed. R. Civ. P. 23(g)(1)(A)...............................................i, 1, 2, 6

Rule 23(g)(1)(A) ....................................................................... 3



1

### *Treatises*

2  MANUAL FOR COMPLEX LITIGATION § 21.11 (4th ed. 2004)......................... 3

3  Richard M. Goodman, Clarence M. Ditlow, Michael Brooks,
       Jeffrey L. Fazio, Dina Micheletti and Jon Robinson,
4      AUTOMOBILE DESIGN LIABILITY (West 3d ed. 2016)..................... 13

5  William B. Rubenstein,
       1 NEWBERG ON CLASS ACTIONS § 3:85 (5th ed. 2018)....................... 3

6

### *Other Authorities*

7

   Michael G. Pecht, Arun Ramakrishnan, Jeffrey L. Fazio
8      and Carl E. Nash,
       *The Role of the U.S. National Highway Traffic Safety*
9      *Administration in Automotive Electronics and Safety Assessment,*
       28 IEEE TRANS. ON COMPONENTS & PACKAGING
10        TECH. 571 (2005) ........................................................................ 14

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION TO APPOINT
INTERIM LEAD CLASS COUNSEL AND LIAISON COUNSEL

## I.    INTRODUCTION

In response to the stipulation the parties submitted to the Court last September in support of appointing Louis R. Miller and Amnon Z. Siegel of Miller Barondess, LLP (collectively, "MB") and Jeffrey L. Fazio and Dina E. Micheletti of Fazio | Micheletti LLP (collectively, "FM") as Interim Lead Class Counsel, and Kiesel Law LLP ("KL") as Liason Counsel (collectively, "Plaintiffs' counsel"), the Court instructed Plaintiffs' counsel to file a motion demonstrating the need to appoint interim class counsel and establishing that counsel meet the factors set forth in Federal Rule of Civil Procedure 23(g)(1)(A). *See* Order Granting in Part and Denying in Part Stipulation ("Order re Stipulation"), Dkt. No. 30 at 3.[1] Plaintiffs hereby submit this motion in compliance with the Court's instructions.

As discussed in more detail below, the appointment of interim co-lead class counsel and liaison counsel is necessary to protect the interests of the proposed class and to prevent potential delay in the event "copycat" cases are filed now that certain technical and legal issues have been addressed in connection with the briefing of Toyota's motion to dismiss the Consolidated Master Complaint. Formally establishing a leadership structure would enable counsel in the formerly competing actions to focus on the joint development and execution of an effective and cohesive litigation strategy and to allocate work among Plaintiffs' counsel in a fair and orderly manner that is free of disruptions—including those that may

---

[1] A copy of the Stipulation and the Order re Stipulation are attached as Exhibits A and B, respectively, to the Declaration of Jeffrey L. Fazio in Support of Motion to Appoint Interim Class Counsel ("Fazio Decl.") that accompanies this Motion.

1    be caused by the filing of additional lawsuits as this litigation matures and
2    progresses.

3          As Plaintiffs also demonstrate below, the proposed leadership
4    structure satisfies each of the factors set forth in Rule 23(g)(1)(A).
5    Plaintiffs' counsel have decades of experience successfully managing class
6    actions and other complex cases involving defective products, consumer
7    fraud, breaches of warranty, unfair competition, and false advertising, and
8    they have the resources to vigorously prosecute and successfully resolve
9    class members' claims—regardless of whether those claims are resolved
10   by dispositive motion, by trial, or by negotiated settlement.

11         Plaintiffs' counsel have already performed a fairly extensive amount
12   of work in the present litigation, identifying and investigating the factual
13   bases for the claims against Defendants and analyzing the law that
14   applies to each of those claims. For example, MB represents a Toyota
15   dealer who has provided a wealth of non-proprietary information
16   underlying the claims for relief in this case, FM has uncovered a
17   considerable amount of information pertaining to the defect at issue in this
18   litigation, which they have reviewed and analyzed with the assistance of
19   one of the foremost experts in automotive electronics, and KL has been
20   involved in the research and drafting of the McCarthy complaints and
21   communicating with plaintiffs and other class members.

22         Each of the firms comprising the proposed leadership structure have
23   the skills and experience required to manage complex litigation
24   effectively, efficiently, and successfully; together, their capabilities
25   complement one another and enable them to be even more productive. The
26   proposed structure will protect class members' interests by enabling
27   counsel to streamline the development and execution of litigation strategy
28   and litigation-related decision-making; by coordinating communications

with the Court and Defendants' counsel; and by promoting the fair and efficient allocation of the work performed by each of the six firms that represent Plaintiffs in this action, thereby obviating internecine disputes and insuring against the disorder and disruption that can arise in the absence of a formal leadership structure, particularly if other, competing class actions are filed.

In short, each of the criteria set forth in Rule 23(g)(1)(A) are readily satisfied. Accordingly, Plaintiffs respectfully request that this unopposed motion be granted.[2]

## II.   ARGUMENT

### A.   APPOINTMENT OF INTERIM LEAD CLASS COUNSEL IS NECESSARY AND APPROPRIATE

As explained in a leading treatise on class-action practice,

> Rule 23(g)(3) explicitly gives courts the authority to designate interim counsel "to act on behalf of a putative class before determining whether to certify the action as a class action." This reflects the importance of class counsel prior to certification. Before certification, counsel is often responsible for preparing the motion for certification, responding to dispositive motions, conducting discovery, and participating in settlement negotiations.

William B. Rubenstein, 1 NEWBERG ON CLASS ACTIONS § 3:85 (5th ed. 2018) (footnote omitted); *see also* MANUAL FOR COMPLEX LITIGATION § 21.11 (4th ed. 2004) ("designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities,

---

[2] Pursuant to an agreement among the parties, the following statement has been included at Toyota's behest: Toyota did not see this motion or the arguments raised or grounds for it prior to filing, so Toyota does not agree with the arguments or representations made herein. Nevertheless, Toyota does not generally oppose the relief requested, subject to preserving Toyota's right to oppose class certification on any grounds, including adequacy of representation.



1   such as making and responding to motions, conducting any necessary
2   discovery, moving for class certification, and negotiating settlement").

3       For these reasons, interim class counsel are routinely appointed at
4   early stages in the litigation. *See, e.g., Bartling v. Apple Inc.*, 2018 WL
5   4804735, at *2 (N.D. Cal. Apr. 27, 2018) ("In exercising this discretion,
6   the court weighs the saving of time and effort consolidation would
7   produce against any inconvenience, delay, or expense that it would
8   cause") (citation and internal quotation marks omitted); *Azpeitia v.
9   Tesoro Refining and Marketing Co. LLC,* 2017 WL 4071368, *2 (N.D. Cal.,
10  Sept. 14, 2017) (appointing interim class counsel in consolidated actions
11  that were "in the early stages of litigation"); *Rollazo v. BMW of No. Am,
12  LLC,* 2016 WL 9173465, *3 (C.D. Cal., Sept. 15, 2016) (noting that interim
13  counsel appointed before discovery had been conducted and no trial date
14  had been set).

15      In the present litigation, Plaintiffs' counsel agreed to seek the
16  Court's approval for the appointment of interim class counsel as a means
17  of establishing a leadership structure that would promote a cooperative
18  working relationship, notwithstanding that their cases were filed as
19  competing class actions. *See* Fazio Decl., Ex. A (Stipulation) at 2-5.

20      The proposed leadership structure furthers the interests of the
21  class by clarifying counsel's respective roles and responsibilities and by
22  streamlining the management of the litigation, thereby preventing
23  disruptions that might otherwise arise as a result of the "rivalry or
24  uncertainty" inherent in litigation involving multiple law firms
25  representing the proposed classes in more than one class action—
26  including class actions that have yet to be filed. *See, e.g., Friedman v.
27  Guthy-Renker LLC*, 2016 WL 2758240, at *2 (C.D. Cal. May 12, 2016)
28  ("where there is 'rivalry or uncertainty' regarding which attorney or law

FAZIO | MICHELETTI LLP
Attorneys

1  firm is authorized to act on behalf of the putative class—such as when

2  'overlapping, duplicative, or competing class suits are pending before a

3  court'—appointment of interim class counsel is often appropriate"); *In re*

4  *Hannaford Bros Co. Customer Data Sec. Breach Litig.*, 252 F.R.D. 66, 67

5  (D. Me. 2008) ("In this consolidated case, efficiency and effectiveness

6  suggest the need for one leadership structure to lead the plaintiffs'

7  approach prior to certification").

8      The situation presented here is virtually identical to the one

9  presented by *In re: Kia Engine Litigation,* No. 8:17-cv-00838-JLS-JDE

10  (cited at page 3 of Order re Stipulation). As in *Kia,* the present litigation

11  involves allegations that an automaker conducted a safety recall that did

12  not eliminate the defect that led to the recall and, like the present

13  litigation, competing actions had been filed against the defendant

14  automaker in this Court and elsewhere (*i.e.,* the Southern District of New

15  York in *Kia*; the Los Angeles County Superior Court in the present

16  litigation). *Compare* Fazio Decl., Ex. C at 2:17-26 (*Kia* Motion) *with*

17  *McCarthy* First Amended Complaint (Dkt. No. 20) *and Bhandari*

18  Complaint (Dkt. No. 2 in Case No. 18-cv-06184).

19      The situation presented here is nearly the same as another aspect of

20  *Kia* as well: the *Kia* plaintiffs sought appointment of interim class counsel

21  after the parties had stipulated to the consolidation of the competing

22  actions, to the filing of a master complaint, and to establishing a

23  leadership structure that included interim co-lead class counsel and liason

24  counsel (and, in *Kia,* a one-firm Executive Committee). *Compare* Fazio

25  Decl., Ex. D (Order adopting stipulation to appoint interim class counsel

26  in *Kia*) *with* Fazio Decl., Ex. A at 1-4; *see also Smith v. State Farm Mut.*

27

28

1  *Auto. Ins. Co.*, 301 F.R.D. 284, 288 (N.D. Ill. 2014) (discussing various
2  duties liaison counsel may perform).[3]

3      At bottom, appointing interim class counsel will formally establish
4  a leadership structure that will maximize the efficient management of
5  this litigation during some of its most critical phases, and will neutralize
6  potential conflicts **before** they occur—particularly with respect to cases
7  that may be filed now that Toyota's Rule 12 motions have been
8  adjudicated, and discovery is beginning.

9  ### B. PROPOSED CO-LEAD AND LIAISON COUNSEL READILY MEET EACH OF THE FACTORS SET FORTH IN RULE 23(g)(1)(A)

10  As this Court has explained,

11  courts look to the factors set forth in Rule 23(g)(1)(A) to
12  determine the propriety of [appointing interim class counsel].
   These factors include: (1) the work counsel has done in
13  identifying or investigating potential claims in the action; (2)
   counsel's experience in handling class actions, other complex
14  litigation, and the types of claims asserted in the action; (3)
   counsel's knowledge of the applicable law; and (4) the resources
15  that counsel will commit to representing the class.

16  Fazio Decl., Ex. B at 2-3 (citations omitted); *see also Scott v. HSS Inc.*, 2017
17  WL 10378568, at *5 (C.D. Cal. Apr. 11, 2017) (Staton, J.) (discussing
18  same); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12697736, at *4 (C.D. Cal.
19  June 5, 2015) (Staton, J.) (same). As discussed below, proposed interim
20  class counsel readily satisfy each of these factors.

21

22

23

---

24      [3] In the present action, the parties propose that KL serve as Liaison
25  Counsel for the purpose of, *inter alia,* establishing and maintaining an
   online document repository and coordinateaing communications among
26  the parties, third parties, and the Court. *See* Proposed Order Granting
   Motion to Appoint Interim Class Counsel at 3:1-20 (filed herewith). Those
27  functions are essentially the same as those of the firms the Court
   appointed to serve in the *Vizio* litigation. *See In Re: Vizio, Inc., Consumer
28  Privacy Litig.*, No. 8:16-ml-02693-JLS (KESx) (Dkt. No. 85) at 5:23-6:18
   (C.D. Cal. June 8, 2016).



1. ***Proposed Co-Lead and Liaison Counsel Have Performed Substantial Amounts of Work Idenitifying and Investigating the Claims Set Forth in Their Clients' Respective Complaints***

**Miller Barondess.** In July 2017, MB filed an action in Orange County Superior Court on behalf of Toyota dealer Roger Hogan and his two dealerships—Claremont Toyota and Capistrano Toyota—against Toyota Motor Sales, U.S.A., Inc. ("TMS") for fraudulent concealment and breach of the implied covenant in connection with TMS's scheme to unlawfully oust Mr. Hogan from the Toyota franchise in retaliation for Mr. Hogan's efforts to increase safety recall completion rates. *See* Declaration of Louis R. Miller in Support of Motion to Appoint Interim Lead Class Counsel ("Miller Decl.") ¶ 2.

MB interviewed Prius owners who had Safety Recall E0E and Safety Recall F0R completed and later experienced inverter failure, causing their cars to either shut down while driving or enter "limp-home" mode. *Id.* ¶ 3.  MB began analyzing the documents Defendants sent to Toyota dealers, Prius owners and NHTSA in connection with these safety recalls, including Toyota's Defect Information Reports, owner letters, dealer notifications and technical instructions. *Id.*

In November 2017, MB amended the *Hogan* complaint to include allegations regarding Toyota's concealment of dangerous safety defects in its vehicles provided to dealers, like Mr. Hogan—particularly, Toyota's issuance of a software "re-flash" recall remedy for faulty inverters in 2010-2014 Toyota Prius and 2012-2014 Toyota Prius V vehicles  that it knew would not fix the root cause of the problem.  Miller Decl. ¶ 4 & Ex. A (First Amended Complaint in *Hogan* case).

During discovery in the *Hogan* case, MB deposed Martha Anderson, a Prius owner who experienced an inverter failure while driving on a

1  major road after having received the software "re-flash" remedy under

2  Safety Recall E0E. *Id.* ¶ 5. MB also consulted with Tom Lepper, an

3  automotive forensic expert employed by Impact General, Inc. with over 25

4  years of experience in forensic analysis involving collision reconstruction,

5  manufacturing defects, design defects and service or maintenance

6  issues. Mr. Lepper inspected Ms. Anderson's vehicle and its inverter,

7  which had been removed from the vehicle, and concluded that the safety

8  recall was unsuccessful in solving the problem of the electrical overload of

9  the Insulated-Gate Bipolar Transistors (IGBT)s) on the inverter circuit

10  board. *Id.* ¶ 6.

11  **Fazio | Micheletti.** FM filed the initial complaint against Toyota

12  on behalf of Plaintiff Rexhepi, in the Los Angeles Superior Court on

13  January 30, 2018. Fazio Decl. ¶ 6. The complaint was the culmination of

14  extensive factual and legal research FM conducted, which included

15  analyzing the documents Defendants submitted to the National Highway

16  Traffic Safety Administration ("NHTSA") in connection with the Prius

17  safety recalls that Toyota conducted in February 2014 and July 2015,

18  which stated that Prius engines were stalling unexpectedly at highway

19  speeds or going into "limp-home" mode when transistors in the Intelligent

20  Power Module ("IPM") failed or malfunctioned as a result of exposure to

21  thermal stress. *Id.* ¶¶ 6-7.

22  FM's research confirmed that large numbers of Prius owners

23  continued to complain about their vehicles' engines stalling even after

24  Toyota had updated their vehicles' Engine Control Unit software, even

25  though Toyota claimed that the software update solved the problem. *Id.* ¶

26  8. FM also found that Prius owners whose vehicles were ***not*** included in

27  the recall were complaining about the same problem. *Id.* Accordingly, FM

28  sought to determine whether the problem that was causing IPM failure

was confined to the Prius, or whether other Toyota hybrid vehicles suffered from it as well. *See id.*

FM found that the owners of other Toyota hybrids had complained about IPM failure and sudden stalling, and that Toyota had recalled tens of thousands of those vehicles—twice (once in 2011 and once again in 2013)—to solve that problem. *Id.* ¶ 9. In short, FM learned that, in 2011, NHTSA had opened an investigation into stalling complaints by owners of 2006 and 2007 model-year Toyota Highlander hybrid SUVs whose IPMs were failing when those vehicles engines were driven under various conditions, including heavy load (*e.g.,* hard acceleration, climbing a grade). *Id.* ¶¶ 9-10.

To obtain a more thorough understanding of the problem, FM retained Michael G. Pecht, Ph.D., the founder and Director of the Center for Advanced Life Cycle Engineering ("CALCE") at the University of Maryland, as a litigation consultant. *Id.* ¶ 7.[4] With Dr. Pecht's assistance, FM discovered that, as early as 2005, Toyota had become aware that the solder attaching IPM transistors to the control boards in those vehicles' inverter assemblies were developing "voids" (*i.e.,* small cracks), which significantly reduced the IPMs' ability to dissipate heat and caused the IPMs to fail a result of thermal stress—and that the IPMs in the recalled Priuses were failing for the same reason. *Id.* ¶¶ 7-11.[5]

---

[4] CALCE employs over a dozen faculty members and research scientists and is among the world's most well-respected physics-of-failure laboratories. *See, e.g.,* https://calce.umd.edu/our-team. Dr. Pecht is an expert in electronics with whom FM's principals have had a relationship for over 20 years, having first retained his services in connection with a series of class actions against Ford Motor Company involving defective ignition modules. *Id.*

[5] Specifically, documents Toyota submitted to NHTSA in connection with the hybrid SUV recalls showed that the solder attaching

1    FM used the information it obtained through these efforts to prepare
2    the Consolidated Master Complaint, which addressed (among other
3    things) Toyota's assertion that the software update it performed in
4    connection with Safety Recalls E0E and F0R solved the IPM problem. *Id.*
5    ¶ 11. FM found there was ***no*** valid basis for believing that software either
6    caused or would prevent IPM failure.[6]

7    Nonetheless, FM discovered that on February 6, 2018 (days after
8    this litigation began), Toyota circulated a bulletin to its dealers in which
9    it instructed them to assure Prius drivers that the ECU software update
10   their vehicles received in connection with the 2014 and 2015 safety recalls
11   "addresses the safety issue." *See* Fazio Decl. ¶ 12. Eight months later,
12   however, Toyota conceded that Prius engines continued to stall despite the
13   software update, and that a second update of the ECU software was
14   required to ensure that class vehicles would enter what Toyota
15   euphemistically calls "fail-safe mode" after their IPMs malfunctioned or
16   failed. *Id.* When FM ran the VINs of Plaintiffs Rexhepi and Kosareff in
17   Toyota's recall website, it found that the "updated" software was not

18

19

20   the transistors to the IPM control board cracks as a result of the thermal
     stress produced by the inverter assembly's boost converter (which
21   increases the operating voltage from 201 to 650 volts); that the cracks
     prevent the IPMs from dissipating sufficient amounts of heat; that the
22   resulting thermal stress deforms the IPM transistors; and that the
     damaged IPM causes the hybrid engine to suddenly and unexpectedly stall
23   or radically decelerate (*i.e.,* enter "fail-safe" or "limp-home" mode),
     exposing those in and around the vehicle to an increased risk of a collision.
24   Fazio Decl. ¶ 10. The IPMs Toyota installed in the Prius fail for the same
     reason. *See id.*

25   [6] FM found that, in February 2014, Toyota falsely represented to
     NHTSA that "software characteristics" had caused the IPMs to fail in Prius
26   hatchbacks because no IPM failures had occurred in the otherwise
     identical Prius V wagons—which Toyota recalled for the same reason a
27   year after it recalled the Prius hatchbacks. *Id.* ¶ 11. Moreover, FM found
     no valid basis for Toyota's assertion that the software update it performed
28   in connection with Safety Recalls E0E and F0R solved the IPM problem *Id.*

1  available until several months after the October 2018 recall was
2  announced. *Id.*

3    **Kiesel Law LLP.** KL worked extensively with MB in the drafting
4  and filing of the comprehensive 67-page First Amended Complaint on
5  behalf of the McCarthy Plaintiffs and the putative class, detailing their
6  allegations and claims in this case. Declaration of Jeffrey A. Koncius
7  ("Koncius Decl.") ¶ 4. Since the initial filing of the McCarthy action, KL
8  has also communicated with numerous potential plaintiffs throughout the
9  country. Koncius Decl. ¶ 4. As a result, KL is uniquely situated to
10  efficiently prosecute this case based on its familiarity with the claims and
11  its contacts with affected class members.

12
13          2.    ***Proposed Co-Lead and Liaison Counsel Have
                  Extensive Experience in Handling Class Actions,
14                Other Complex Litigation, and the Types of Claims
                  Asserted in This Action***

15    **Miller Barondess.** MB has extensive experience litigating class
16  actions on behalf of both plaintiffs and defendants.

17    MB recently represented a class of plaintiff law students in a
18  groundbreaking action against Thomas Jefferson School of Law for
19  misrepresenting employment statistics to students.  This was the first
20  such case to successfully reach trial.

21    MB has also secured a $6 million judgment on behalf of a nationwide
22  class of plaintiffs against a moving company based on a fraud claim.

23    MB attorneys represented Union Bank in a class action that arose
24  from the infamous Reed Slatkin Ponzi Scheme.  In that case, plaintiffs
25  sought more than $250,000,000. MB attorneys were able to secure a
26  successful settlement.

27    MB has also litigated and prevailed on multiple class certification
28  motions on behalf of Natrol, Inc., a multinational nutraceutical company.

1   These victories involved allegations of fraud in connection with

2   advertising.

3       MB attorneys represented Nextel in a nationwide class action

4   involving early termination fees, and EZ Lube in multiple class actions.

5       Aside from class actions, MB litigates complex litigation of a myriad

6   of varieties on a daily basis.

7       **Fazio | Micheletti.** Both of FM's principals, Jeffrey Fazio and Dina

8   Micheletti, have more than two decades of experience with consumer-

9   fraud class actions involving automotive defects. For the first five years of

10  practice, Mr. Fazio worked for large firms that defended automakers in

11  product liability cases, and companies and government entities in class

12  actions, derivative litigation, and other complex cases involving mass

13  torts, securities fraud, and intellectual property theft. As Special Counsel

14  at Hancock Rothert & Bunshoft LLP, a 120-lawyer firm with offices in

15  San Francisco, Los Angeles, Lake Tahoe, and London, Mr. Fazio became

16  lead plaintiffs' counsel in a series of six class actions involving claims

17  that Ford Motor Company fraudulently concealed the defective nature

18  of the Thick Film Ignition ("TFI") modules Ford installed in over 30

19  million vehicles it manufactured and sold throughout the United States.

20  Fazio Decl. ¶ 14.

21      Ms. Micheletti began working with Mr. Fazio on the TFI litigation

22  as a Hancock associate shortly after receiving her law degree in 1996

23  and continued working on it for the next six years. *Id.* During that time,

24  due to its breadth and the unique issues it presented, the TFI litigation

25  received national media attention that became even more pronounced

26  when the California action went to trial, which resulted in the first court-

27  ordered motor vehicle recall in a private civil action. *See id.* ¶ 15.

28

1  Mr. Fazio became a partner at the Hancock firm in 1999 and

2  Chairman of the firm's Class Action & Unfair Competition practice

3  group a year later. *Id.* ¶ 16. Among the cases Mr. Fazio and Ms.

4  Micheletti prosecuted during that period was a UCL class action against

5  General Motors in which Public Citizen was a named plaintiff. *Id.* In

6  2001, Mr. Fazio negotiated a nationwide settlement of the TFI litigation

7  that was valued at more than $2.7 billion. *Id.* ¶¶ 16-18.

8  The same year, the Director of the Center for Auto Safety ("CAS"),

9  with whom Mr. Fazio and Ms. Micheletti had then worked for more than

10  five years on the TFI class actions and other automotive litigation,

11  invited them to contribute to CAS's treatise on automotive issues,

12  AUTOMOBILE DESIGN LIABILITY (West 3d ed. 2003), as co-authors. *Id.* ¶

13  19.

14  Mr. Fazio and Ms. Micheletti continued to prosecute class actions

15  involving fraud, false advertising, breaches of warranty, and other issues

16  at HRB through October 2003, when they founded a boutique litigation

17  firm, Fazio | Micheletti LLP. *Id.* ¶ 20. Since then, FM has served as lead

18  and co-lead counsel in class actions against automakers (including

19  Toyota) and other manufacturers in cases involving product defects,

20  breaches of warranty, and false advertising. *Id.*[7]

21  For example, in a case against Toyota, FM negotiated a nationwide

22  settlement providing full reimbursement of all costs that current and

23  former Scion Xb owners incurred in connection with the repair and

24

---

25  [7] In 2005, Mr. Fazio and Dr. Pecht co-authored an article on the

26  federal government's role in assessing the safety and reliability of electronics in automobiles. *See* Michael G. Pecht, Arun Ramakrishnan, Jeffrey L. Fazio and Carl E. Nash, *The Role of the U.S. National Highway Traffic Safety Administration in Automotive Electronics and Safety Assessment,* 28 IEEE TRANS. ON COMPONENTS & PACKAGING TECH. 571 (2005).

27

28



replacement of defective windshields, together with a warranty extension that virtually doubled class members' coverage. And in a case involving defective electronic throttle modules in nearly 500,000 Volvos, FM's lawsuit ultimately resulted in a settlement that provided 100% reimbursement of repair and replacement costs (approximately $1,200 per class vehicle). *Id.* ¶ 21.

In a false-advertising case against the makers of Airborne Health, FM led settlement negotiations that resulted in a then record-setting non-reversionary cash settlement of $23.3 million. *Id.* ¶ 22. And in a unique breach-of-warranty class action in which Apple refused to honor warranty claims based solely on so-called "Liquid Submersion Indicators" that were triggered by, among other things, humidity, FM negotiated a non-reversionary cash settlement of $53 million, the largest consumer-class-action settlement against Apple on record. *Id.*

**Kiesel Law LLP.** The attorneys at KL have wide-ranging experience in the areas of complex actions in both State and Federal Courts. They have held lead, liaison or co-lead positions in several mass tort and class action cases. KL's extensive experience in class action law, combined with its knowledge, experience, and expertise in similar cases, and the automotive industry in particular, demonstrates its unique qualifications to serve as liaison counsel. Courts throughout the country have appointed KL and its attorneys as class counsel in numerous class and coordinated actions, including many in this district. Koncius Decl. ¶¶ 3, 7, Ex. A. Further, many of these cases have gone to trial or reached settlement, and KL has recovered millions of dollars for aggrieved class members and consumers generally. *Id*. Indeed, KL obtained a $25 million personal injury verdict against Nissan. Koncius Decl. ¶ 7, Ex. A. As a result, Class members in this case will benefit by the appointment of

liaison counsel who has the experience of taking cases through trial, as well as devising fair settlement structures and claims protocols in similar cases should these cases resolve before trial. Thus, not only is KL highly competent, but it has developed a particular expertise in actions brought against motor vehicle manufacturers, through extensive investigation of the industry, consultation with industry professionals, and the prosecution of similar cases. Koncius Decl. ¶ 7, Ex. A. KL's experience is described in further detail below:

*Clergy Cases I, II, & III*, California JCCPs 4286, 4297, and 4359. KL was appointed Liaison Counsel on behalf of hundreds of survivors of childhood sexual abuse against the Dioceses of Orange, Los Angeles, San Diego, and Fresno. The cases resolved for over $1 billion.

*In re Ford Motor Co. DPS6 Powershift Transmission Products Liability Litig.*, MDL 2814 (C.D. Cal.). KL was appointed Lead/Liaison Counsel for this MDL comprised of over 1,000 lemon law cases which contend that the transmission in Ford Focus and Fiesta vehicles is defective. Similar litigation has been filed statewide in California Superior Courts and coordinated in *In re Ford Motor Warranty Cases*, California JCCP No. 4856 (Southern California) and *In re Ford Motor Transmission Cases*, JCCP No. 4924 (Northern California). KL was appointed Liaison Counsel on behalf of more than 200 plaintiffs in these proceedings.

NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION TO APPOINT
INTERIM LEAD CLASS COUNSEL AND LIAISON COUNSEL

1    *Southern California Gas Leak Cases*, California JCCP No.
2    4861. The Porter Ranch gas leak has been widely reported as
3    the single worst natural gas leak in U.S. history. KL was
4    appointed by the Court as Liaison Counsel for the private
5    plaintiffs, which include the business class action complaints
6    filed by local businesses for economic losses, individual class
7    action complaints, and more than 38,000 individual plaintiffs'
8    claims.
9
10   *Echeverria v. Johnson & Johnson*, Los Angeles Case No.
11   BC628228. Working closely with a number of other highly
12   regarded Plaintiffs' law firms, KL obtained a record-setting
13   jury verdict of $417 million dollars against J&J and its
14   subsidiary for the companies' failure to warn of the elevated
15   risk of ovarian cancer associated with its Baby Powder and
16   Shower to Shower talcum powder products. The award
17   included punitive damages of $347 million.
18
19   *In re: Avandia Marketing, Sales Practices and Product*
20   *Liability Litig.*, MDL 1871 (E.D. Pa.). The Plaintiffs' steering
21   committee for this MDL selected Paul Kiesel to serve as Co-
22   Lead Counsel for the Plaintiffs' steering committee. This
23   national litigation involved numerous federal lawsuits
24   brought against defendant GlaxoSmithKline PLC,
25   manufacturer of the onetime "blockbuster" type 2 diabetes
26   drug Avandia, which was pulled from the shelves in Europe,
27   India, and New Zealand, and which is only available in the
28   United States as a drug of last resort. KL represents the

1 | County of Santa Clara in its claim for the return of all moneys

2 | used to purchase this toxic drug.

3 |

4 | *In re: Wright Medical Technology, Inc., Conserve Hip Implant*

5 | *Products Liability Litig.*, MDL 2329 (N.D. Ga.). KL was

6 | appointed Co-Lead Counsel in this MDL arising out of injuries

7 | sustained as a result of implantation of defective metal-on-

8 | metal hip devices. KL was then part of the trial team that

9 | obtained an $11 million verdict in Atlanta, GA in November

10 | 2015. The verdict included $10 million in punitive damages.

11 |

12 | *Skeen v. BMW*, Case No. 2:13-cv-1531-WHW-CLW (Dist.

13 | N.J.). Nationwide class action alleging defective timing chain

14 | tensioner in certain turbo model MINI Cooper automobiles

15 | which resulted in engine damage. Class settlement approved

16 | which provided for refunds to consumers, free repairs and an

17 | extended warranty.

18 |

19 | Koncius Decl. ¶ 7, Ex. A. KL leads an experienced team of attorneys that

20 | have worked on this case from its inception, and that will continue to

21 | staff this matter through its resolution. Koncius Decl. ¶ 3, Ex. A.

22 |        3.    *Proposed Co-Lead Counsel and Liason Counsel Are*

23 |            *Well-Versed in the Law That Applies to This Litigation*

24 |    **Miller Barondess.** MB's Amnon Siegel, who will be among the trial

25 | lawyers in this case, has recently litigated, and obtained a $259 million

26 | jury verdict in a case against Nissan. Though a new trial was granted, the

27 | case exposed Siegel and MB to the modus operandi of auto manufacturers

28 |

NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION TO APPOINT
INTERIM LEAD CLASS COUNSEL AND LIAISON COUNSEL

1  when faced with significant liability for fraud and negligent
2  misrepresentation.

3        MB's litigation of the Hogan Case, described above, has provided MB
4  with experience litigating against Toyota and its culture of indifference
5  toward customer safety. The Hogan Case has also provided a wealth of
6  knowledge on Toyota's statutory and common law disclosure obligations,
7  as well as the laws relating to Toyota's advertising and safety checks.

8        Further, MB recently represented the County of Los Angeles in
9  obtaining a landmark $119 million settlement from Southern California
10  Gas Company resulting from the Porter Ranch Gas Leak.  The County's
11  claim is based on California's Unfair Competition Law, Business &
12  Profession's Code 17200 *et. seq.*  That is the same claim that is the first
13  cause of action in this case, and MB has substantial experience with its
14  requirements, remedies, and existing case law addressing it.

15        MB has also litigated hundreds of fraud and negligent
16  misrepresentation claims under California law, many from the plaintiff
17  side.  MB has significant expertise in proving fraud claims and eliciting
18  critical discovery from recalcitrant plaintiffs such as Toyota.

19        **Fazio | Micheletti.** Since its formation nearly two decades ago, FM
20  has consistently and successfully litigated claims in a broad array of
21  substantive areas against the largest corporations and the most elite law
22  firms in the United States. Fazio Decl. ¶ 23. As mentioned above, FM's
23  principals have prosecuted consumer class actions against automakers
24  and other manufacturers and service providers for more than 20 years—
25  including the trial of a class action that resulted in the first court-ordered
26  motor vehicle recall in U.S. history and, ultimately, a settlement valued
27  at more than $2.7 billion—are co-authors of leading treatise on automobile
28  design liability, and have deep experience in complex litigation in a variety

1  of substantive areas at the trial and appellate levels in state and federal

2  courts, in California and other parts of the country. Fazio Decl. ¶¶ 23-24

3  & Ex. E.[8]

4      As lead and co-lead counsel in numerous actions over the past two

5  decades, Mr. Fazio and Ms. Micheletti have also been the principal

6  authors of the vast majority of pleadings, pre-trial motions, trial briefs,

7  writ petitions, and appellate briefs; they have developed discovery

8  strategies and have executed those strategies by preparing myriad written

9  discovery requests and engaging in discovery-motion practice, and taking

10  and defending depositions; and they have drawn upon and have

11  participated in a variety of litigation-related activities, including

12  appearances before federal and state legislative bodies and speaking

13  engagements pertaining to class-action practice. *Id.* ¶ 23.

14      **Kiesel Law LLP.** As mentioned above, KL has a vast amount of

15  knowledge, experience, and expertise with cases involving the automotive

16  industry. Indeed, KL obtained a $25 million personal injury verdict

17  against Nissan. Koncius Decl. ¶ 7, Ex. A. Additionally, KL is currently

18  serving as Lead/Liaison Counsel in *In re Ford Motor Co. DPS6 Powershift*

19  *Transmission Products Liability Litig.*, MDL 2814 (C.D. Cal.), comprised

20  of over 1,000 lemon law cases which contend that the transmission in Ford

21

22

---

23  [8] FM has worked with consumer organizations as litigation
consultants, Fazio Decl. ¶ 16, and successfully represented Public Citizen
24  as a plaintiff in a UCL action against General Motors Corporation, *id.* ¶
18. FM has also represented Public Citizen, CAS, and other organizations
25  as *amicus curiae* in matters before the California Supreme Court, the
California Court of Appeal, and the Ninth Circuit. *See In re Tobacco II*
26  *Cases,* 46 Cal. 4th 298 (2009) (CAS and Public Citizen); *Miller v. Bank of
Am., N.T. & S.A.,* 46 Cal. 4th 630 (2009) (Iowa Attorney General);
*Graham v. DaimlerChrysler Corp.,* 34 Cal. 4th 553 (2004) (Friends of the
27  Earth); *Davis v. Ford Motor Credit Co., LLC,* 179 Cal. App. 4th 581 (2009)
(Consumers for Automotive Safety and Reliability); *Mazza v. Am. Honda
28  Motor Co., Inc.,* 666 F.3d 581 (9th Cir. 2011) (Public Citizen).



Focus and Fiesta vehicles is defective. Similar litigation has been filed statewide in California Superior Courts and coordinated in *In re Ford Motor Warranty Cases*, California JCCP No. 4856 (Southern California) and *In re Ford Motor Transmission Cases*, JCCP No. 4924 (Northern California). KL was appointed Liaison Counsel on behalf of more than 200 plaintiffs in these proceedings.

### 4. *Proposed Co-Lead and Liaison Counsel Have the Resources Required to Successfully Prosecute This Litigation*

**Miller Barondess.** MB employs more than 25 attorneys who are prepared to prosecute this action to the fullest.

Louis R. Miller has been in practice for more than 45 years.  He is one of the most prominent and successful trial lawyers in the United States.  His biography is attached hereto as Exhibit C to the Miller declaration that accompanies this motion.

Amnon Siegel has become a renowned expert in litigation involving automobile manufacturers, from the Nissan case, to the Hogan case, to investigating and filing this case.  Amnon is also an experienced and successful trial lawyer.

MB's track record amply demonstrates that MB has the resources to successfully prosecute this litigation.  MB has litigated huge cases against large multi-national companies.  For example, MB sucessfully litigated a $2.3 billion case against Lehman Brothers.

Several of Southern California's most prominent companies routinely turn to MB for help with their most important cases.  In addition, MB litigates cases in state and federal courts all over the United States. MB was recently honored as a "Top Boutique" by the Daily Journal, Miller Decl. ¶ 7 & Ex. B.



1   **Fazio | Micheletti.** As demonstrated by FM's management of
2   large, complex, resource-intensive cases since the firm was founded over
3   15 years ago, FM has organized and successfully prosecuted those cases
4   by managing resources in a cost-efficient manner, leveraging technology,
5   and recruiting other firms that have the expertise, experience, and ability
6   to contribute to that effort. FM has routinely advanced the costs of
7   litigation and has dedicated its resources to vigorously prosecuting the
8   claims of proposed class members. As reflected by the time and funds it
9   has already committed to the present litigation, and by retaining and
10  working with one of the foremost experts on electronics failure analysis,
11  FM is prepared to continue to commit the resources necessary to
12  effectively and vigorously prosecute this case to a successful conclusion.
13  Fazio Decl. ¶¶ 23-24 & Ex. E.

14  **Kiesel Law LLP.** KL has 11 attorneys in its Beverly Hills office.
15  Koncius Decl. Ex. A. In addition to its lawyers who have developed
16  national and international reputations for top quality work, KL also
17  maintain a staff of paralegals, investigators, litigation support staff, and
18  others. KL also has the financial resources necessary to represent the
19  putative class, and will commit the resources necessary to litigate this case
20  vigorously to its conclusion. *See* Koncius Decl. ¶ 8. KL has already
21  committed the full resources of its firm, including the time and efforts of
22  senior attorneys and financial resources, to perform research and fact
23  investigation in this case, and will continue to do so. Accordingly, KL
24  easily satisfies the adequacy requirement of Rule 23(g).

25
26
27
28

NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION TO APPOINT
INTERIM LEAD CLASS COUNSEL AND LIAISON COUNSEL

**5.** ***Proposed Co-Lead and Liaison Counsel Will Work Cooperatively with All Other Interested counsel to Achieve the Best Result Possible for the Putative Class***

The Court may also consider any other factors that are relevant to the appointment of lead counsel. Fed. R. Civ. P. 23(g)(1)(B). Here, one important factor is Proposed Interim Class Counsel's demonstrated ability to work efficiently and cooperatively with other counsel who are expected to file their own cases or who have already done so. As demonstrated in their firm resumes, Proposed Interim Class and Liaison Counsel have worked in a leadership capacity on countless nationwide cases involving hundreds of firms with demonstrated success. Miller Decl. Ex. A; Fazio Decl. Ex. E; Koncius Decl. Ex. A. Thus, by appointing Proposed Interim Class and Liaison Counsel, the Court will be assured that they have the knowledge and experience necessary to include any other potentially interested parties and act upon consensus views, thereby minimizing conflicts that can otherwise hamper complex, nationwide litigation such as this.

## III.   CONCLUSION

Plaintiffs' counsel have made significant progress in this action, but this stage of the litigation is replete with many other issues that must be addressed and resolved, strategies that must be developed and executed, discovery that must be propounded, motions that must be prepared and opposed, and tasks that must be allocated among Plaintiffs' counsel in a fair and orderly manner. MB, FM, and KL have the skill, experience, and resources needed to discharge those responsibilities, and they meet each of the criteria set forth in Rule 23(g)(1).

An order establishing the leadership structure Plaintiffs propose will add certainty to the management of the litigation, and will obviate

1    the prospect of disruption that exists in any case in which competing class

2    actions have been filed or may be filed before the litigation is finally

3    resolved. This is why courts regularly appoint interim class counsel at an

4    early juncture in class-action litigation, and why Plaintiffs respectfully

5    request that the Court grant this motion and appoint MB and FM as

6    interim co-lead class counsel and KL as liaison counsel.

7    DATED:  April 23, 2019        **MILLER BARONDESS, LLP**

8
                                    by___ */s/ Louis R. Miller*_____
9                                          Louis R. Miller

10   Louis R. (Skip) Miller (54141)
     (smiller@millerbarondess.com)
11   Amnon Z. Siegel (234981)
     (asiegel@millerbarondess.com)
12   Casey B. Sypek (291214)
     (csypek@millerbarondess.com)
13   David I. Bosko (304927)
     (dbosko@millerbarondess.com)
14   **MILLER BARONDESS, LLP**
     1999 Avenue of the Stars, Suite 1000
15   Los Angeles, California 90067
     T: (310) 552-4400
16   F: (310) 552-8400

17   Paul R. Kiesel (119854)
     (kiesel@kiesel.law)
18   Jeffrey A. Koncius (189803)
     (koncius@kiesel.law)
19   Nicole Ramirez (279017)
     (ramirez@kiesel.law)
20   **KIESEL LAW LLP**
     8648 Wilshire Boulevard
21   Beverly Hills, CA 90211-2910
     T: 310-854-4444
22   F: 310-854-0812

23   Attorneys for Plaintiffs
     Remy McCarthy, Kathleen Ryan-Blaufuss,
24   Cathleen Mills, Jason Reid, Khek Kuan, on
     behalf of themselves and all others similarly
25   situated

26   DATED:  April 23, 2019        **FAZIO | MICHELETTI LLP**

27
                                    by  */s/ Jeffrey L. Fazio*
28                                        Jeffrey L. Fazio



                                    **-23-**                    18-cv-00201-JLS-KES

1   Jeffrey L. Fazio (146043)
    (jlf@fazmiclaw.com)
2   Dina E. Micheletti (184141)
    (dem@fazmiclaw.com)
3   **FAZIO | MICHELETTI LLP**
    1111 Broadway, Suite 400
4   Oakland, CA 94607
    T: 925-543-2555
5   F: 925-369-0344

6   Charles J. LaDuca (*pro hac vice*)
    (charles@cuneolaw.com)
7   Michael J. Flannery (196266)
    (mflannery@cuneolaw.com)
8   **CUNEO GILBERT & LADUCA. LLP**
    4725 Wisconsin Ave. NW, Suite 200
9   Washington. D.C. 20016
    T: 202-789-3960
10  F: 202-789-1813

11  William M. Audet (117456)
    (waudet@audetlaw.com)
12  Clint S. Woods (246054)
    (cwoods@audetlaw.com)
13  Ling (David) S. Kuang (296873)
    (lkuang@audetlaw.com)
14  **AUDET & PARTNERS, LLP**
    711 Van Ness Avenue, Suite 500
15  San Francisco, CA 94102-3275
    T: 415-568-2555
16  F: 415-568-2556

17  Donald R. Pepperman (109809)
    (dpepperman@bakermarquart.com)
18  **BAKER & MARQUART LLP**
    2029 Century Park East, Sixteenth Floor
19  Los Angeles, CA 90067
    **T:** 424-652-7804
20  **F:** 424-652-7850

21  Attorneys for Plaintiffs
    Jevdet Rexhepi, Laura Kakish, and Stephen
22  Kosareff, on behalf of themselves
    and all others similarly situated

23

24          **L.R. 5-4.3.4(a)(2)(i) Certification**

25          The filer of the document attests that concurrence in the filing of

26  the document has been obtained from each of the other Signatories.

27                  by   */s/ Jeffrey L. Fazio*

28                       Jeffrey L. Fazio



-24-                                    18-cv-00201-JLS-KES