# EXHIBIT A

# CLOSED END MOTOR VEHICLE LEASE AGREEMENT CALIFORNIA

TOYOTA FINANCIAL SERVICES

**1. Parties** [illegible]

Lease Date [illegible]

| LESSOR (DEALER) NAME AND ADDRESS | LESSEE AND CO-LESSEE NAME AND LESSEE'S BILLING ADDRESS | VEHICLE GARAGING ADDRESS, IF DIFFERENT THAN LESSEE'S BILLING ADDRESS |
|---|---|---|
| TOYOTA SANTA MONICA [illegible] SANTA MONICA BLVD SANTA MONICA, CA [illegible] | [illegible] [redacted] | |
| PHONE NUMBER: [illegible] | COUNTY: [illegible] | COUNTY: |

This is a Lease for the Vehicle described below. The words "you", "your" and "yours" refer to the Lessee and any Co-Lessee. The words "we", "us" and "our" refer to the Lessor, and after assignment, the Toyota Lease Trust ("TLT") and any subsequent assignee. Toyota Motor Credit Corporation ("TMCC") will be servicing this Lease on behalf of TLT. By signing this Lease, you are leasing this Vehicle according to all of the terms of this Lease.

**2. Description of Leased Vehicle, Trade-In Vehicle and Trade-In Agreements**
You are leasing from us, and received in satisfactory condition, the following Vehicle:

| New, Used or Demo | Year | Make | Model | Body Style | Vehicle Identification No. and License Plate No. | Odometer Mileage |
|---|---|---|---|---|---|---|
| NEW | 2010 | TOYOTA | PRIUS | [illegible] | [redacted] [illegible] | [illegible] |

**Primary Use:** ☒ Personal, Family or Household ☐ Business, Agricultural or Commercial

N/A Year N/A Make N/A Model or Description of other Property Traded-In

The above Vehicle or Property is being traded in today. The Agreed Upon Value of this Vehicle or Property is $ N/A. You agree to pay Lessor (Dealer) any deficiency between the payoff used to calculate the amount in 8a or 13i and the actual payoff.
The box below memorializes trade-in, turn-in and other individualized agreements between you and the Lessor (Dealer). Obligations of the Lessor set forth in this box shall be the sole responsibility of the Lessor (Dealer). If this box conflicts with any other section of this Lease, the other section of this Lease shall control.

This lease is subject to assignee approval within ten days of execution. Otherwise, the lease shall be void, and Lessee shall return the Vehicle as [illegible].

## FEDERAL CONSUMER LEASING ACT SEGREGATED DISCLOSURES

**3. Amount Due at Lease Signing or Delivery** (Itemized in Section 7 below) $ 891.97

**4. Monthly Payments**
Your first Monthly Payment of $ 445.83 is due on 09/19/10, followed by 35 payments of $ 445.83 due on the 19th of each month. The total of your Monthly Payments is $ 16049.88.

**5. Other Charges** (not part of your Monthly Payment)
Disposition fee (if you do not purchase the Vehicle) $ N/A
Total $ N/A

**6. Total of Payments** (The amount you will have paid by the end of the Lease) $ 16496.[illegible]

### Itemization of Amount Due at Lease Signing or Delivery

**7. Amount Due at Lease Signing or Delivery:**

| | | |
|---|---|---|
| a. Capitalized Cost Reduction | $ | N/A |
| b. First Monthly Payment | $ | 445.83 |
| c. Refundable Security Deposit | $ | N/A |
| d. Title, Registration and License Fees | $ | 3[illegible] |
| e. Tax on Capitalized Cost Reduction | $ | N/A |
| f. Document Preparation Fee (Not a Government Fee) | $ | 45.00 |
| g. Acquisition Fee | $ | N/A |
| h. California Tire Fee | $ | 8.75 |
| i. Optional DMV Electronic Filing Fee | $ | N/A |
| j. TAX ON DOC FEE | $ | 4.39 |
| k. N/A | $ | N/A |
| l. N/A | $ | N/A |
| m. Total | $ | 891.97 |

**8. How the Amount Due at Lease Signing or Delivery will be Paid:**

| | | |
|---|---|---|
| a. Net Trade-In Allowance | $ | N/A |
| b. Rebates and Noncash Credits | $ | 891.97 |
| c. Amount to be Paid in Cash | $ | N/A |
| d. Total | $ | 891.97 |

### 9. Your Monthly Payment is determined as shown below:

**9a. Gross Capitalized Cost.** The Total Agreed Upon Value of the Vehicle ($ 28514.00) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance). For an itemization of this amount, see Section 13. $ [illegible]

**b. Capitalized Cost Reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost. – $ N/A

**c. Adjusted Capitalized Cost.** The amount used in calculating your Base Monthly Payment. = $ [illegible]

**d. Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your

**e. Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term. = $ [illegible]

**f. Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts. + $ [illegible]

**g. Total of Base Monthly Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge. = $ [illegible]

**h. Lease Payments.** The number of payments in your Lease. ÷ [illegible]

**i. Base Monthly Payment** = $ [illegible]

**j. Monthly Sales/Use Tax** + $ [illegible]

9a. Gross Capitalized Cost. The Total Agreed Upon Value of the Vehicle ($ 28514.00 ) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance). For an itemization of this amount, see Section 13. $ 29759.00

b. Capitalized Cost Reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost. – $ N/A

c. Adjusted Capitalized Cost. The amount used in calculating your Base Monthly Payment. = $ 29759.00

d. Residual Value. The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment. – $ 15708.00

e. Depreciation and any Amortized Amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term. = $ 14051.00

f. Rent Charge. The amount charged in addition to the Depreciation and any Amortized Amounts. + $ 572.92

g. Total of Base Monthly Payments. The Depreciation and any Amortized Amounts plus the Rent Charge. = $ 14623.92

h. Lease Payments. The number of payments in your Lease. ÷ 36

i. Base Monthly Payment = $ 406.22

j. Monthly Sales/Use Tax + $ 39.61

k. N/A + $ N/A

l. Total Monthly Payment ("Monthly Payment") = $ 445.83

**Early Termination. You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.**

10. **Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 36000 miles over the odometer mileage disclosed above, at the rate of .15 per mile.

11. **Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease Term for $ 15708.00 .

12. **Other Important Terms.** See your Lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

## Gross Capitalized Cost Itemization and Other Items

**13. Itemization of Gross Capitalized Cost**

You will pay for the following items over the Lease Term, as part of your Monthly Payment:

| | | | |
|---|---|---|---|
| a.1. | Agreed Upon Value of the Vehicle as equipped at time of signing the Lease | $ | 28514.00 |
| a.2. | Agreed Upon Value of each accessory and item of optional equipment the Lessor (Dealer) agrees to add to the Vehicle after signing the Lease: | | |
| i. | N/A | + | N/A |
| ii. | N/A | + | N/A |
| iii. | N/A | + | N/A |
| iv. | N/A | + | N/A |
| a.3. | Total Agreed Upon Value of the Vehicle | = | 28514.00 |
| b. | Taxes | + | N/A |
| c. | Initial Title, License and Registration Fees | + | N/A |
| d. | Service Contract | + | N/A |
| e. | Maintenance Agreement | + | N/A |
| f. | Credit Life Insurance Premium | + | N/A |
| g. | Credit Disability Insurance Premium | + | N/A |
| h. | Guaranteed Automobile Protection | + | 595.00 |
| i. | Outstanding Prior Credit or Lease Balance | + | N/A |
| j. | Document Preparation Fee (Not a Government Fee) | + | N/A |
| k. | Acquisition Fee | + | 650.00 |
| l. | California Tire Fee | + | N/A |
| m. | Optional DMV Electronic Filing Fee | + | N/A |
| n. | N/A | + | N/A |
| o. | N/A | + | N/A |
| p. | Gross Capitalized Cost | = | 29759.00 |

**14. Lease Term and Scheduled Maturity Date**

The Lease Term of this Lease is 36 months, and the Scheduled Maturity Date of this Lease is 09/18/2013.

**15. Required Insurance**

You must provide the following insurance during the Lease Term with the Lessee and/or Co-Lessee as an insured driver. No other types of insurance are required:

a) primary automobile liability insurance with minimum limits for bodily injury or death of

i) $ 15,000 for any one person, and

ii) $ 30,000 for any one accident, and

iii) $ 5,000 for property damage; and

b) physical damage insurance for the full value of the Vehicle, with a maximum deductible of $1,000.

See Section 24 for additional information.

You have provided us today with the following insurance information:

MERCURY INSURANCE 0401 04 049001355 SVE# SJ00TH

Insurance Provider — Policy No. — Insurance Coverage Verification By: Dealer Employee

**17. Warranty**

If the Vehicle is new, the Vehicle is subject to the standard new warranty from the manufacturer. If the Vehicle is used, it is not covered by a warranty unless identified below:

☐ Remainder of standard new vehicle warranty from manufacturer

☐ Used vehicle warranty from manufacturer

**YOU ARE LEASING THIS VEHICLE "AS IS." WE MAKE NO WARRANTIES AS TO THE VEHICLE'S CONDITION, MERCHANTABILITY, SUITABILITY, OR FITNESS FOR A PARTICULAR PURPOSE.**

**18. Optional Insurance and Other Products**

You are not required to buy any of the Optional Insurance or Other Products listed below to enter into this Lease, and they are not a factor in our credit decision. These insurance and other products will not be provided unless the appropriate box is checked, all information is filled in, you initial below, and you are accepted by the Provider. By your initials below, you agree that you have received a notice of the terms of the insurance or product, and you want to obtain the insurance or product for the premium or charge shown. A portion of the premium or charge shown may be retained by the Lessor (Dealer).

**GAP LIABILITY NOTICE: In the event of theft or damage to the Vehicle that results in a total loss, there may be a GAP between the amount due upon early termination and the proceeds of your insurance settlement and deductible. THIS LEASE PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. Optional coverage for the GAP amount may be offered for an additional price.**

☐ **Optional Credit Life Insurance** $ N/A (Beginning Coverage)

Insured(s): N/A

Provider: N/A — Premium: $ N/A — Lessee / Co-Lessee Initials: N/A

☐ **Optional Credit Disability Insurance** $ N/A (Maximum Monthly Coverage)

Provider: N/A — Premium: $ N/A — Lessee / Co-Lessee Initials: N/A

☐ **Optional Service Contract** ______ miles/ ______ months Coverage

Provider: N/A — Premium or Charge: $ N/A — Lessee / Co-Lessee Initials: N/A

☐ **Optional Guaranteed Automobile Protection (see Section 33)**

Provider: IMSA GAP — Premium or Charge: $ 595.00 — Lessee / Co-Lessee Initials: SK

☐ **Optional Maintenance Agreement**

Provider: ______ — Premium or Charge: $ N/A — Lessee / Co-Lessee Initials: N/A

Total Premiums and Charges $ 595.00

**19. Complete Agreement or Modification**

By your initials, you acknowledge that this Lease contains the entire agreement for the Lease of this Vehicle. There are no other agreements. Any

| | | | |
|---|---|---|---|
| c. | Insurance, Dealer and Registration Fees | + | |
| d. | Service Contract | + | N/A |
| e. | Maintenance Agreement | + | N/A |
| f. | Credit Life Insurance Premium | + | N/A |
| g. | Credit Disability Insurance Premium | + | N/A |
| h. | Guaranteed Automobile Protection | + | 595.00 |
| i. | Outstanding Prior Credit or Lease Balance | + | N/A |
| j. | Document Preparation Fee (Not a Government Fee) | + | N/A |
| k. | Acquisition Fee | + | 650.00 |
| l. | California Tire Fee | + | N/A |
| m. | Optional DMV Electronic Filing Fee | + | N/A |
| n. | N/A | + | N/A |
| o. | N/A | + | N/A |
| p. | Gross Capitalized Cost | = | 29759.00 |

**14. Lease Term and Scheduled Maturity Date**
The Lease Term of this Lease is 36 months, and the Scheduled Maturity Date of this Lease is 09/18/2013.

**15. Required Insurance**
You must provide the following insurance during the Lease Term with the Lessee and/or Co-Lessee as an insured driver. No other types of insurance are required:

a) primary automobile liability insurance with minimum limits for bodily injury or death of
 i) $ 15,000 for any one person, and
 ii) $ 30,000 for any one accident, and
 iii) $ 5,000 for property damage; and

b) **physical damage insurance for the full value of the Vehicle, with a maximum deductible of $1,000.**

See Section 24 for additional information.

You have provided us today with the following insurance information:

MERCURY INSURANCE [redacted] SKEB SAMBIN

Insurance Provider — Policy No. — Insurance Coverage Verification By: Dealer Employee

PO BOX 10730, SANTA ANA, (800) 824-6194

Agent's Name / Address — Agent's Phone No.

**16. Estimated Official Fees and Taxes** $ 3550.55
This is an estimate of the total amount you will pay over the Lease Term for official and license fees, registration, title, and taxes (including personal property taxes), whether included in your Total Monthly Payment (Section 9.I), the Amount Due at Lease Signing or Delivery (Section 7) or billed separately. The actual total of Official Fees and Taxes may be higher or lower than this estimate depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed. **This estimate is based on your current address and may increase if you move or if tax rates change. You are responsible for paying any increases.** See Section 28 for additional information.

you are accepted by the Provider. By your initials below, you agree that you have received a notice of the terms of the insurance or product, and you want to obtain the insurance or product for the premium or charge shown. A portion of the premium or charge shown may be retained by the Lessor (Dealer).

**GAP LIABILITY NOTICE: In the event of theft or damage to the Vehicle that results in a total loss, there may be a GAP between the amount due upon early termination and the proceeds of your insurance settlement and deductible. THIS LEASE PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. Optional coverage for the GAP amount may be offered for an additional price.**

☐ **Optional Credit Life Insurance** $ N/A (Beginning Coverage)
N/A — Insured(s)
N/A (Provider) $ N/A (Premium) N/A (Lessee / Co-Lessee Initials)

☐ **Optional Credit Disability Insurance** $ N/A (Maximum Monthly Coverage)
N/A (Provider) $ N/A (Premium) N/A (Lessee / Co-Lessee Initials)

☐ **Optional Service Contract** ____ miles/ ____ months Coverage
N/A (Provider) $ N/A (Premium or Charge) N/A (Lessee / Co-Lessee Initials)

☐ **Optional Guaranteed Automobile Protection (see Section 33)**
JM&A GAP (Provider) $ 595.00 (Premium or Charge) SK (Lessee / Co-Lessee Initials)

☐ **Optional Maintenance Agreement**
(Provider) $ N/A (Premium or Charge) N/A (Lessee / Co-Lessee Initials)

Total Premiums and Charges $ 595.00

**19. Complete Agreement or Modification**
By your initials, you acknowledge that this Lease contains the entire agreement for the Lease of this Vehicle. There are no other agreements. Any change to this Lease must be in writing, and signed by you and by us.

SK — Lessee / Co-Lessee Initials

**20. Agreement to Arbitrate**
**By initialing below, you agree that at the request of either you or us any controversy or claim (defined in Section 48 of this Lease) between you and us shall be determined by neutral binding arbitration. See Section 48 for further terms and conditions.**

SK — Lessee / Co-Lessee Initials

**Lease Signatures and Notices**

**THERE IS NO COOLING OFF PERIOD**
**California law does not provide for a "cooling off" or other cancellation period for vehicle leases. Therefore, you cannot later cancel this Lease simply because you change your mind, decided the vehicle costs too much, or wish you had acquired a different vehicle. You may cancel this Lease only with the agreement of the Lessor or for legal cause such as fraud.**

**By signing below, you acknowledge that: (1) You have read the entire Lease, including the back side; (2) You agree to all of the provisions of this Lease; (3) This is a lease; you have no ownership interest in the Vehicle unless and until you exercise your option to purchase set forth in this Lease.**

**Notice to the Lessee: (1) Do not sign this Lease before you read it or if it contains any blank spaces to be filled in; (2) You are entitled to a completely filled in copy of this Lease; (3) Warning – Unless a charge is included in this Lease for public liability or property damage insurance, payment for that coverage is not provided by this Lease.**

**You acknowledge that you have received a completely filled-in copy of this Lease.**

Lessee Signature [signature] Co-Lessee Signature

**Notice Regarding Assignment.** As part of a like-kind exchange program, Toyota Motor Credit Corporation ("TMCC") has engaged TQI Exchange, LLC ("TQI") as a qualified intermediary. Lessor is hereby notified that TMCC has assigned to TQI its rights (but not its obligations) in agreements to acquire the Vehicle.

The Lessor hereby accepts this Lease and assigns to the Toyota Lease Trust all rights, title and interest in the Lease and in the Vehicle, and Lessor's rights under any guaranty executed in connection with this Lease, with full powers to the Toyota Lease Trust to collect and discharge all obligations related to this Lease, any guaranty, and this assignment.

Lessor TOYOTA SANTA MONICA By [signature] Title Manager Date 09/19/10

California — **PREVIOUS EDITIONS MAY NOT BE USED** — 6205CA 04/10

**LESSEE COPY**

## YOUR OBLIGATIONS DURING THIS LEASE

21. **Vehicle Maintenance and Damage.**
You are responsible for all maintenance, repair, service, and operating expenses of the Vehicle. You agree to follow the owner's manual and maintenance schedule, and to provide us with written proof of such maintenance. You are responsible for all damage to the Vehicle and for its loss, seizure or theft. You must tell us immediately if any of these events happen, and cooperate with your insurance company.

22. **Prohibited Uses of the Vehicle.** You agree that you will not, nor permit others to:
a. use the Vehicle in any illegal manner, in violation of your insurance policy, or without the insurance coverage described in Sections 15 and 24;
b. alter the Vehicle without our written consent. Any accessions to the Vehicle become our property;
c. subject the Vehicle to any lien, seizure or other involuntary transfer;
d. use the Vehicle to transport goods or people for hire;
e. remove the Vehicle from the state where it was first titled, for more than 30 days, without our written consent;
f. take the Vehicle outside the United States or Alaska (except to Canada or Mexico for less than 30 days, if you have our consent and have provided us with proof of insurance); or
g. allow anyone else to regularly use the Vehicle without our written consent.

**Assignment or subleasing by you of the Vehicle or Lease is strictly prohibited.**

23. **Title and Registration.** Legal title to the Vehicle will be in our name and the Vehicle will be registered as we direct. You must promptly pay all title, registration and license fees.

24. **Required Insurance.** We have the right to change the amounts of Required Insurance shown in Section 15. The limits we require may not be sufficient for your needs. See your insurance provider for more information. You may obtain the required coverages through any insurance company, agent, or broker you choose. The insurance policy must be acceptable to us, name the Toyota Lease Trust as **additional insured** and **loss payee,** and give us at least 10 days written notice before any cancellation or reduction in coverage. You authorize us to endorse your name(s) on any check or draft from your insurance company for any claim. You must provide us with written proof of this insurance.

25. **Charges for Late Payments.** If we do not receive a full Monthly Payment within 10 days after it is due, you must pay a late payment charge of 5% of the unpaid amount, or $10, whichever is greater.

26. **Payment Obligations.** You may not change or stop your Monthly Payments for any reason, even if the Vehicle is stolen, destroyed, seized by the government, non-operable, experiences any mechanical problem, or does not perform satisfactorily. If you do not return the Vehicle by the Scheduled Maturity Date, you must continue to pay the Monthly Payment. However, continued payment does not mean you have our permission to keep the Vehicle. Payments will be applied in the following order: past due payments, current payment due, late charges, other amounts due under this Lease.

27. **Change in Address.** You must notify us in writing within 30 days of any change in your address.

28. **Official Fees, Taxes and Fines.** You must promptly pay all official fees and taxes related to this Vehicle and this Lease, including title, license and registration fees, and sales, use, excise and personal property taxes. You must also promptly pay any fines incurred on the Vehicle such as traffic or parking tickets.

Some bills for official fees and taxes may be sent to you for payment. Other bills may be paid by us on your behalf and we will charge you the amount paid. You must pay all fees incurred during the Lease Term, even if they are assessed and billed after the Lease has ended. We may charge you an estimated amount for the remaining fees and taxes at the time this Lease ends. You are responsible for any shortage in this estimate, and we will refund you any excess.

We are not obligated to apply for any refund or abatement of official fees and taxes, including personal property taxes. If you make a written request that we apply for a refund of an official fee or tax that you paid to us, to which you are entitled, we will file an application for refund. We will send any refund we receive, less any amounts due under this Lease, to you.

We may pay any title, registration, license fee, tax or fine which you fail to pay, and charge you the amount paid. You are responsible for any fines or penalties if you fail to pay the bill when due.

29. **Default and Loss of the Vehicle.** You will be in default if:
a. you fail to make any payment when it is due; or
b. you fail to keep any other agreement in this Lease; or
c. you provided false or misleading information when applying for this Lease; or
d. you become the subject of a bankruptcy or insolvency proceeding; or
e. the Vehicle is lost, stolen, seized, or damaged beyond reasonable repair.

If you are in default we may do any of the following after giving any legally required notices, and after expiration of any legally required cure or reinstatement periods:
i. terminate this Lease and your right to use the Vehicle;
ii. take possession of the Vehicle from your property or elsewhere, in any manner not prohibited by law;
iii. require you to pay the amounts set forth in Section 33;
iv. pursue any other remedy allowed by law; and
v. require you to pay all of our expenses for taking these actions, including, but not limited to, expenses for repossession, transportation, storage, collection, and legal costs, including reasonable attorneys' fees paid to an attorney who is not our salaried employee, as allowed by applicable law.

## ENDING YOUR LEASE

30. **Early Termination by Us.** We may terminate this Lease at any time if you are in default (see Section 29) and you must pay us the amounts set forth in Section 29(v) and Section 33.

31. **Early Termination by You.** If you are not in default, you may terminate your lease at any time prior to the end of the Lease, provided you do so in accordance with the terms contained in Sections 32 or 33 of this Lease.

**If you terminate this Lease early and do not elect, at the time you turn in your Vehicle, the Remaining Payments Liability set forth in Section 32, you will be liable for the Standard Early Termination Liability set forth in Section 33 below.**

32. **Remaining Payments Liability.** If you are not in default, you have the option to terminate your Lease at any time if you return the Vehicle to us, at a location we specify, and pay us, upon demand, the following amounts:
a. any Monthly Payments that have become due, and are unpaid at termination; plus,
b. any remaining Monthly Payments from date of termination to the end of this Lease; plus,
c. any other amounts you owe under this Lease; plus,
d. any charges for Excessive Wear and Use and excess mileage (Sections 10 and 36); plus,
e. any official fees or taxes charged in connection with the Lease termination; minus,
f. any remaining Refundable Security Deposit (Section 37) and any amounts we receive from cancelled Optional Insurance or Other Products (Section 39).

33. **Standard Early Termination Liability.** If you are not in default, you have the option to terminate your Lease at any time if you return the Vehicle to us, at a location we specify, and pay us, upon demand, the following amounts:
a. any Monthly Payments that have become due, and are unpaid at termination; plus,
b. an Early Termination Charge equal to the difference, if any, between the "Adjusted Lease Balance" and the "Fair Market Value" (as defined below); plus,
c. any other amounts due under this Lease except charges for

If the Vehicle is subject to a total loss or theft resulting in a total loss, the Fair Market Value will equal the amount of any insurance proceeds we receive from your Required Insurance. If there are no insurance proceeds the Fair Market Value will be zero.

If you have purchased and received Guaranteed Automobile Protection in connection with this Lease, and the Vehicle is subject to a total loss or a theft resulting in a total loss, and if you have met the conditions set forth in the Guaranteed Automobile Protection agreement, the Early Termination Charge set forth in Section 33b will be waived.

34. **Your Option to Purchase the Vehicle.** You may purchase the Vehicle at any time during the Lease or at the Scheduled Maturity Date (unless a governmental agency has seized the Vehicle and instructed us not to release the Vehicle to you). The price to purchase the Vehicle at the Scheduled Maturity Date is the Purchase Option Price shown in Section 11, plus 34a, 34b and 34c below. The price to purchase the Vehicle during the Lease is:
a. any Monthly Payments that have become due or other amounts due under this Lease, except charges for Excessive Wear and Use and excess mileage (Sections 10 and 36); plus,
b. any official fees and taxes, or documentary fees charged in connection with the purchase; plus,
c. any amounts necessary to meet any legal selling requirements; plus,
d. the Adjusted Lease Balance as defined in Section 33.

As part of a like-kind exchange program, TMCC has engaged TQI Exchange, LLC ("TQI") as a qualified intermediary. Lessor and Lessee are hereby notified that TMCC has assigned to TQI its rights (but not its obligations) in any agreement for the sale of the Vehicle at lease termination.

35. **Obligations If You Do Not Purchase the Vehicle at the Scheduled Maturity Date.** At the Scheduled Maturity Date, you must return the Vehicle to us at the location we specify, and pay us, upon demand, the following amounts:
a. any Monthly Payments or other amounts due under this Lease; plus,
b. any official fees or taxes charged in connection with the Lease termination; plus,
c. any Excessive Wear and Use charges disclosed in Section 36; plus,

termination; minus,

f. any remaining Refundable Security Deposit (Section 37) and any amounts we receive from cancelled Optional Insurance or Other Products (Section 39).

33. **Standard Early Termination Liability.** If you are not in default, you have the option to terminate your Lease at any time if you return the Vehicle to us, at a location we specify, and pay us, upon demand, the following amounts:

a. any Monthly Payments that have become due, and are unpaid at termination; plus,

b. an Early Termination Charge equal to the difference, if any, between the "Adjusted Lease Balance" and the "Fair Market Value" (as defined below); plus,

c. any other amounts due under this Lease, except charges for Excessive Wear and Use and excess mileage (Sections 10 and 36); plus,

d. any out of pocket costs paid by us for the sale of the Vehicle, including costs for transporting, storing, preparing for sale, and auctioning the Vehicle; plus,

e. any official fees or taxes charged in connection with the Lease termination; minus,

f. any remaining Refundable Security Deposit (Section 37), or refund we receive from Optional Insurance or Other Products (Section 39).

The "Adjusted Lease Balance" is calculated by adding the remaining Base Monthly Payments not yet due and the Residual Value, then subtracting the unearned portion of the Rent Charge. The unearned portion of the Rent Charge is calculated according to the "constant yield" method.

The "Fair Market Value" is equal to the price we receive when we dispose of the Vehicle at wholesale. The Fair Market Value may also be determined by an appraisal of the wholesale value of the Vehicle, which you may obtain, at your own expense, from a professional independent appraiser agreed to by us. If you obtain such an appraisal, the appraised value will be used as the Fair Market Value. The appraisal must be obtained by you within 10 days after the Vehicle is returned to us.

As part of a like-kind exchange program, TMCC has engaged TQI Exchange, LLC ("TQI") as a qualified intermediary. Lessor and Lessee are hereby notified that TMCC has assigned to TQI its rights (but not its obligations) in any agreement for the sale of the Vehicle at lease termination.

35. **Obligations If You Do Not Purchase the Vehicle at the Scheduled Maturity Date.** At the Scheduled Maturity Date, you must return the Vehicle to us at the location we specify, and pay us, upon demand, the following amounts:

a. any Monthly Payments or other amounts due under this Lease; plus,

b. any official fees or taxes charged in connection with the Lease termination; plus,

c. any Excessive Wear and Use charges disclosed in Section 36; plus,

d. any excess mileage charge disclosed in Section 10. You will not receive a refund if you do not use all of the mileage set forth in Section 10.

36. **Excessive Wear and Use Charges.** If you do not purchase the Vehicle at the scheduled Maturity Date, or if you elect to terminate your Lease in accordance with Section 32, you must pay us the estimated cost to repair damage to the Vehicle which is excessive wear and use. Excessive wear and use includes, but is not limited to:

a. inoperative mechanical and electrical parts;

b. damage (including but not limited to, damage to the engine) due to your failure to maintain the Vehicle in accordance with Section 21;

c. damage to the body, lights, trim or paint;

d. damaged, broken or tinted glass;

e. torn, damaged or stained interior;

f. damage from flood, water, hail or sand;

g. damage from removal of equipment or signs placed on the Vehicle;

h. missing equipment, parts and accessories, including missing keys or remote-entry devices; or

i. tires with less than 3/32 inch of tread remaining, or any tire not part of a matching set of 5 tires (or 4 with an emergency spare if the Vehicle was originally equipped with one).

## ADDITIONAL INFORMATION

37. **Refundable Security Deposit.** Your security deposit may be used by us to pay amounts that you owe under this Lease. If you elect to purchase your Vehicle, your security deposit may be applied by us to the amount you owe to purchase your Vehicle. Any unused security deposit will be returned to you at the end of the Lease Term. No interest, increase or profits will be paid to you on the security deposit.

38. **Assignment.** We can assign our interest in this Lease and in the Vehicle without your consent. After you sign this Lease, we will assign it to TLT and you agree to make all payments to TLT.

39. **Refund of Optional Insurance or Other Products.** If any optional insurance or product included in the Gross Capitalized Cost is cancelled before the end of the Lease Term, or if you are not accepted by the Provider for a requested optional insurance or product, we will credit any refunds to your account.

40. **Indemnity.** You agree to indemnify us from, and to pay on our behalf, any claim or loss (including damages, costs, expenses and legal fees) which arises from or is related to the use, maintenance or operation of the Vehicle. Any insurance we provide is secondary to the Required Insurance.

41. **Credit Information.** You authorize us, at any time, to investigate any information provided on your credit application in order to establish, maintain and collect on this Lease account. You authorize us to provide information concerning your account to credit reporting agencies and others who may lawfully receive such information. You waive the provisions of Calif. Veh. Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your address to us.

42. **Nonapproval of Credit Application. You have the right to return the Vehicle, and receive a refund of any payments made if the credit application is not approved, unless nonapproval results from an incomplete application or from incorrect information provided by you.**

43. **Liability.** Lessee and Co-Lessee are jointly and severally liable. If there is both a Lessee and Co-Lessee signing this Lease, we can release, waive or delay the enforcement of our rights against one of you, without affecting our rights as to the other one.

44. **Notices.** All Lessee and Co-Lessee correspondence and notices will be sent to the Lessee's Billing Address shown on the Lease, unless you give us a different address in writing. All correspondence and notices will be given solely in TMCC's name, and will be given on behalf of TLT.

45. **Choice of Law and Severability.** You agree that the law of the state in which this Lease is signed applies to this Lease. If certain provisions of this Lease violate the law, those provisions will be void, and the rest of the Lease will be enforceable.

46. **No Waiver by Us.** If we delay or refrain from exercising our rights under this Lease, we do not lose those rights. If we accept late or partial payments from you, we do not waive our right to receive full and timely payments.

47. **Odometer Disclosure Statement.** Federal law requires that you disclose the Vehicle's odometer reading to us upon termination of this Lease or transfer of ownership. Failure to complete an Odometer Disclosure Statement, failure to return it to us, or making a false statement therein, may result in fines and/or imprisonment. You will be provided an Odometer Disclosure Statement to complete prior to the termination of this Lease.

## ARBITRATION

48. **Arbitration Provision.** You agree that any claims arising from or relating to this Lease or related agreements or relationships, including the validity, enforceability, arbitrability or scope of this Provision, at your or our election, are subject to arbitration. This includes, without limitation, claims in contract, tort, pursuant to statute, regulation, ordinance or in equity or otherwise, and claims asserted by you against us, and the following Covered Parties: Toyota Lease Trust, Toyota Motor Credit Corporation and/or any of our or its affiliates and/or any of our or their employees, officers, successors, assigns or against any third party providing any product or service in connection with the Lease that you name as a co-defendant in any action against any of the foregoing. However, only a court (and not an arbitrator) shall determine the validity and effect of this Provision's ban on class actions, classwide arbitrations and similar proceedings (which appears in bold type below) (the "Class Action Waiver"). Any arbitration shall be administered by this Administrator: JAMS (its rules can be obtained by contacting it at 1920 Main Street, Suite 300, Irvine, CA 92614); provided that no arbitration may be administered without the consent of all parties to the arbitration by any organization that has in place any formal or informal policy that is inconsistent with and purports to override the terms of this Provision. In all cases, the arbitrator must be a lawyer with at least 10 years of experience or a retired judge. Such claims shall be resolved in accordance with (i) the Federal Arbitration Act (the "FAA"); (ii) the Administrator's rules and procedures in effect at the time the claim is filed; and (iii) this Provision. Any arbitration hearing at which you appear shall be conducted at a location that is reasonably convenient to where you live. The Arbitrator shall apply applicable substantive law consistent with the FAA (and not by any state law concerning arbitration) and shall award such remedies, if any, that would be available in court if arbitration had not been elected. The Arbitrator shall follow applicable statutes of limitations and shall honor claims of privilege recognized at law and, at the timely request of either party, shall provide a brief written explanation of the basis for the award. If you cannot afford to pay and cannot obtain a waiver of the fees charged by the Administrator or Arbitrator or if you believe that such fees are or will be prohibitively expensive or excessive, we and the Covered Parties will entertain in good faith any reasonable written request by you for us and the Covered Parties to pay or reimburse you for all or part of such fees. In any event, if applicable law requires us and the Covered Parties to pay or reimburse you for any such fees, such law will control. Each party shall bear the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law and/or the Lease gives a party the right to recover any of those fees from the other party. **We, the Covered Parties and you are prohibited from participating in a class action or private attorney general action. In court or classwide arbitration with respect to any claims we, the Covered Parties or you have asserted against one another or other beneficiaries of this Provision. There should also be no joinder or consolidation of parties, except for multiple parties to this Lease.** In the event of a conflict or inconsistency between this Provision, on the one hand,

interest, increase or profits will be paid to you on this security deposit.

38. **Assignment.** We can assign our interest in this Lease and in the Vehicle without your consent. After you sign this Lease, we will assign it to TLT and you agree to make all payments to TLT.

39. **Refund of Optional Insurance or Other Products.** If any optional insurance or product included in the Gross Capitalized Cost is cancelled before the end of the Lease Term, or if you are not accepted by the Provider for a requested optional insurance or product, we will credit any refunds to your account.

40. **Indemnity.** You agree to indemnify us from, and to pay on our behalf, any claim or loss (including damages, costs, expenses and legal fees) which arises from or is related to the use, maintenance or operation of the Vehicle. Any insurance we provide is secondary to the Required Insurance.

41. **Credit Information.** You authorize us, at any time, to investigate any information provided on your credit application in order to establish, maintain and collect on this Lease account. You authorize us to provide information concerning your account to credit reporting agencies and others who may lawfully receive such information. You waive the provisions of Calif. Veh. Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your address to us.

42. **Nonapproval of Credit Application. You have the right to return the**

is both a Lessee and Co-Lessee signing this Lease, we can release, waive or delay the enforcement of our rights against one of you, without affecting our rights as to the other one.

44. **Notices.** All Lessee and Co-Lessee correspondence and notices will be sent to the Lessee's Billing Address shown on the Lease, unless you give us a different address in writing. All correspondence and notices will be given solely in TMCC's name, and will be given on behalf of TLT.

45. **Choice of Law and Severability.** You agree that the law of the state in which this Lease is signed applies to this Lease. If certain provisions of this Lease violate the law, those provisions will be void, and the rest of the Lease will be enforceable.

46. **No Waiver by Us.** If we delay or refrain from exercising our rights under this Lease, we do not lose those rights. If we accept late or partial payments from you, we do not waive our right to receive full and timely payments.

47. **Odometer Disclosure Statement.** Federal law requires that you disclose the Vehicle's odometer reading to us upon termination of this Lease or transfer of ownership. Failure to complete an Odometer Disclosure Statement, failure to return it to us, or making a false statement therein, may result in fines and/or imprisonment. You will be provided an Odometer Disclosure Statement to complete prior to the termination of this Lease.

## ARBITRATION

48. **Arbitration Provision.** You agree that any claims arising from or relating to this Lease or related agreements or relationships, including the validity, enforceability, arbitrability or scope of this Provision, at your or our election, are subject to arbitration. This includes, without limitation, claims in contract, tort, pursuant to statute, regulation, ordinance or in equity or otherwise, and claims asserted by you against us, and the following Covered Parties: Toyota Lease Trust, Toyota Motor Credit Corporation and/or any of our or its affiliates and/or any of our or their employees, officers, successors, assigns or against any third party providing any product or service in connection with the Lease that you name as a co-defendant in any action against any of the foregoing. However, only a court (and not an arbitrator) shall determine the validity and effect of this Provision's ban on class actions, classwide arbitrations and similar proceedings (which appears in bold type below) (the "Class Action Waiver"). Any arbitration shall be administered by this Administrator: JAMS (its rules can be obtained by contacting it at 1920 Main Street, Suite 300, Irvine, CA 92614); provided that no arbitration may be administered without the consent of all parties to the arbitration by any organization that has in place any formal or informal policy that is inconsistent with and purports to override the terms of this Provision. In all cases, the arbitrator must be a lawyer with at least 10 years of experience or a retired judge. Such claims shall be resolved in accordance with (i) the Federal Arbitration Act (the "FAA"); (ii) the Administrator's rules and procedures in effect at the time the claim is filed; and (iii) this Provision. Any arbitration hearing at which you appear shall be conducted at a location that is reasonably convenient to where you live. The Arbitrator shall apply applicable substantive law consistent with the FAA (and not by any state law concerning arbitration) and shall award such remedies, if any, that would be available in court if arbitration had not been elected. The Arbitrator shall follow applicable statutes of limitations and shall honor claims of privilege recognized at law and, at the timely request of either party, shall provide a brief written explanation of the basis for the award. If you cannot afford to pay and cannot obtain a waiver of the fees charged by the Administrator or Arbitrator or if you believe that such fees are or will be prohibitively expensive or excessive, we and the Covered Parties will entertain in good faith any reasonable written request by you for us and the Covered Parties to pay or reimburse you for all or part of such fees. In any event, if applicable law requires us and the Covered Parties to pay or reimburse you for any such fees, such law will control. Each party shall bear the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law and/or the Lease gives a party the right to recover any of those fees from the other party. **We, the Covered Parties and you are prohibited from participating in a class action or private attorney general action in court or classwide arbitration with respect to any claims we, the Covered Parties or you have asserted against one another or other beneficiaries of this Provision. There should also be no joinder or consolidation of parties, except for multiple parties to this Lease.** In the event of a conflict or inconsistency between this Provision, on the one hand, and the applicable arbitration rules of the Administrator or the other provisions of the Lease on the other hand, this Provision shall govern. If any portion of this Provision is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the other provisions of this Provision or this Lease; provided however, that if the Class Action Waiver is deemed invalid, then this entire Provision shall be null and void, subject to the right of any party to appeal the determination of invalidity with respect to the Class Action Waiver. You and we retain rights to self-help remedies, such as repossession of the Vehicle. (However, the other party against whom the self-help remedy is sought may initiate an action in court only to enjoin the party from using a self-help remedy. No monetary relief may be sought in such a court action.) You also will not be subject to this Provision for any individual claim brought by you in small claims court or your state's equivalent court, unless such claim is transferred, removed or appealed to a different court. With respect to any claims covered by this Provision, a party who has asserted a claim in a lawsuit or in any action for replevin in court may elect arbitration, or may be required to arbitrate, with respect to any claim(s) subsequently asserted in that lawsuit by that party or any other party(ies). IF ANY PARTY ELECTS ARBITRATION WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE NOR ANY COVERED PARTY WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT; TO HAVE A JURY TRIAL ON THAT CLAIM; TO ENGAGE IN PREARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE RULES OF THE ADMINISTRATOR; OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO SUCH CLAIM. THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING EXCEPT FOR A LIMITED RIGHT TO APPEAL AS PROVIDED IN THE FAA. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY NOT BE AVAILABLE IN ARBITRATION. This Provision is made pursuant to a transaction in interstate commerce, and shall be governed by the FAA. Judgment upon the award may be entered in any court having jurisdiction. This Provision will survive your full payment of the Lease; our sale or transfer of the Lease; any repossession of the Vehicle; and your (or our) bankruptcy.

## CALIFORNIA CREDIT DISABILITY INSURANCE CLAIM PROCEDURE NOTICE

If you have applied for and received Optional Credit Disability Insurance (Section 18), and become disabled, tell us right away. We will tell you where to get claim forms. Send in the completed form to the Insurance Provider as soon as possible and tell us as soon as you do.

If your disability insurance covers all of your missed payment, WE CANNOT TRY TO COLLECT WHAT YOU OWE OR REPOSSESS THE VEHICLE UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, or repossess the vehicle if you have money due and owing us or are otherwise in default when your disability claim is made or if a senior lien holder is foreclosing.

If the insurance company pays the claim within three calendar months, we must accept the money as though you paid on time. If the insurance company rejects the claim within the three calendar months or accepts the claim within the three calendar months as a partial disability and pays less than for a total disability, you will have 35 days from the date that the rejection or the acceptance of the partial disability claim is sent to pay past due payments, or the difference between the past due payments and what the insurance company pays for the partial disability, plus late charges. You can contact us, and we will tell you how much you owe. After that time, we can take action to collect or foreclose or repossess any collateral you may have given.

If the insurance company accepts your claim but requires that you send in additional forms to remain eligible for continued payments, you should send in these additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying, and we will be able to take action to collect or foreclose or repossess any collateral you may have given.