1   MORGAN, LEWIS & BOCKIUS LLP
    David L. Schrader, Bar No. 149638
2   david.schrader@morganlewis.com
    Joseph Duffy, Bar No. 241854
3   joseph.duffy@morganlewis.com
    Lisa Weddle, Bar No. 259050
4   lisa.weddle@morganlewis.com
    300 South Grand Avenue
5   Twenty-Second Floor
    Los Angeles, CA  90071-3132
6   Tel:   +1.213.612.2500
    Fax:   +1.213.612.2501
7
    Attorneys for Defendants
8   TOYOTA MOTOR CORPORATION and
    TOYOTA MOTOR SALES, U.S.A., INC.
9

10                  UNITED STATES DISTRICT COURT

11               CENTRAL DISTRICT OF CALIFORNIA

12  KATHLEEN RYAN-BLAUFUSS,              Case No. 8:18-CV-00201-JLS-KES
    CATHLEEN MILLS, and KHEK
13  KUAN, on behalf of themselves and all   **DEFENDANTS TOYOTA
    others similarly situated,            MOTOR CORPORATION AND
14                                         TOYOTA MOTOR SALES,
                      Plaintiffs,          U.S.A., INC.'S REPLY IN
15                                         SUPPORT OF THEIR AMENDED
            vs.                            MOTION TO COMPEL
16                                         ARBITRATION AND STAY
    TOYOTA MOTOR CORPORATION,              PROCEEDINGS AS TO
17  TOYOTA MOTOR SALES, U.S.A.,            PLAINTIFFS KOSAREFF,
    INC., and DOE DEFENDANTS 1-10,         KAKISH, AND KUAN**
18
                      Defendants.
19
20  STEPHEN KOSAREFF and LAURA      Date:      August 21, 2020
    KAKISH, on behalf of themselves and   Time:      10:30 a.m.
21  all others similarly situated,          Ctrm:      10A, 10th Floor
                                            Judge:     Hon. Josephine L. Staton
22                    Plaintiffs,
                                            Amended Consolidated Master
23          vs.                             Complaint filed:   July 23, 2019

24  TOYOTA MOTOR SALES USA, INC.,
    TOYOTA MOTOR CORPORATION,
25  and DOES 1-10, inclusive,

26                    Defendants.

27

28

DB2/ 39357777

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................. 1

II.    ARGUMENT ................................................................................... 2

    A.    Judicial Estoppel Does Not Apply .................................... 2

    B.    The Arbitration Provision in Kosareff's Lease Agreement
           Applies and Requires Him to Arbitrate His Claims in This Case ....... 4

    C.    Toyota May Compel Arbitration as a Non-Signatory Under
           Third Party Beneficiary Theories, Including as an Affiliate and
           Assign ................................................................................ 9

    D.    Toyota May Compel Arbitration on Equitable Estoppel
           Principles ........................................................................... 13

    E.    Toyota Has Not Waived the Right to Compel Arbitration ................ 15

           1.    Toyota Did Not Unreasonably Delay in Moving to
                    Compel Arbitration After Plaintiffs Produced Their
                    Agreements ............................................................... 15

           2.    Toyota Did Not Act Inconsistently With Its Right to
                    Arbitrate ................................................................... 18

           3.    Plaintiffs Have Not Demonstrated Prejudice ......................... 20

    F.    Plaintiffs' CLRA and UCL Claims Are Not for Public Injunctive
           Relief, But Even If They Were, the Court Should Stay Them
           While Plaintiffs' Other Claims Are Arbitrated ................................. 23

III.    CONCLUSION ............................................................................. 25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
  785 F.3d 1320 (9th Cir. 2015) ...................................................................... 15, 16

*Balsam v. Tucows Inc.*,
  627 F.3d 1158 (9th Cir. 2010) ............................................................................. 9

*Banh v. American Honda Motor Company, Inc.*,
  Case No. 2:19-CV-05984-RGK-AS, Slip Op. (C.D. Cal. July 28,
  2020) ................................................................................................... 12, 19, 20

*Blau v. AT & T Mobility*,
  2012 WL 566565 (N.D. Cal. Feb. 21, 2012) ................................................ 19, 20

*Britton v. Co-Op Banking Grp.*,
  916 F.2d 1405 (9th Cir. 1990) ........................................................................... 20

*Brown v. Dillard's, Inc.*,
  430 F.3d 1004 (9th Cir. 2005) ........................................................................... 19

*Cadena v. Am. Honda Motor Co.*,
  2020 WL 3107797 (C.D. Cal. June 10, 2020) ....................................... 16, 18, 19

*Conde v. Open Door Mktg., LLC*,
  2017 WL 5172271 (N.D. Cal. Nov. 8, 2017) ............................................... 19, 20

*Copelan v. Techtronics Indus. Co.*,
  95 F. Supp. 3d 1230 (S.D. Cal. 2015) ............................................................ 2, 3, 4

*Crown Capital Sec., L.P. v. Liberty Surplus Ins. Corp.*,
  2015 WL 12748815 (C.D. Cal. Mar. 30, 2015) .................................................... 9

*Fikhman v. BMW of N. Am. LLC*,
  2019 WL 6721626 (C.D. Cal. Oct. 15, 2019) ..................................................... 12

*First Am. Title Ins. Co. v. Lochland Holdings, LLC*,
  2012 WL 13019940 (C.D. Cal. Feb. 8, 2012) .................................................. 5, 9

*Fisher v. AG Becker Paribas Inc.*,
  791 F. 2d 691 (9th Cir. 1986) ..................................................................... 15, 20

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Gutierrez v. Wells Fargo Bank,*
  704 F.3d 712 (9th Cir. 2012) ................................................................. 23

*Hamilton v. State Farm Fire & Cas. Co.,*
  270 F.3d 778 (9th Cir. 2001) ................................................................... 4

*Homestake Lead Co. of Mo. v. Doe Run Res. Corp.,*
  282 F. Supp. 2d 1131 (N.D. Cal. 2003) .............................................. 5, 7

*Hughes v. S.A.W. Entm't, Ltd.,*
  2019 WL 2060769 (N.D. Cal. May 9, 2019) ...................................... 5, 6

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
  Practices, & Prod. Liab. Litig.,*
  838 F. Supp. 2d 967 (C.D. Cal. 2012) ................................................. 21

*John Wiley & Sons, Inc. v. Livingston,*
  376 U.S. 543 (1964) ................................................................................ 5

*Kelly v. Pub. Util. Dist. No. 2 of Grant Cty.,*
  552 F. App'x 663 (9th Cir. 2014) ........................................................ 22

*Kelly v. Pub. Util. Dist. No. 2 of Grant Cty.,*
  2012 WL 12886214 (E.D. Wash. July 30, 2012) ................................. 22

*Kramer v. Toyota Motor Corp.,*
  705 F.3d 1122 (9th Cir. 2013) ....................................................... *passim*

*Litton Fin. Printing Div., Inc. v. NLRB,*
  501 U.S. 190 (1991) ................................................................................ 5

*Magana v. DoorDash, Inc.,*
  343 F. Supp. 3d 891 (N.D. Cal. 2018) ................................................. 24

*Martin v. Yasuda,*
  829 F.3d 1118 (9th Cir. 2016) ............................................................. 22

*Murphy v. Direct TV, Inc.,*
  724 F.3d 1218 (9th Cir. 2013) ............................................................. 14

*Nguyen v. Tesla, Inc.,*
  2020 U.S. Dist. LEXIS 80784 (C.D. Cal. April 6, 2020) ............... 24, 25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Nolde Bros., Inc. v. Local. No. 358, Bakery & Confectionary Workers Union*,
  430 U.S. 243 (1977) ............................................................... 5, 6

*Phillips-Harris v. BMW of N. Am., LLC*,
  2020 WL 2556346 (C.D. Cal. May 20, 2020) ...................................... 12

*Pleitez v. BMW of N. Am., LLC*,
  2020 WL 2084954 (C.D. Cal. Feb. 27, 2020) ...................................... 12

*Quevedo v. Macy's, Inc.*,
  798 F. Supp. 2d 1122 (C.D. Cal. 2011) ............................................ 20

*Rizvi v. BMW of N. Am. LLC*,
  2020 WL 2992859 (N.D. Cal. June 4, 2020) ....................................... 12

*Saponjic v. BMW of N. Am., LLC*,
  2020 WL 4015671 (S.D. Cal. July 16, 2020) ....................................... 12

*Stafford v. Rite Aid Corp.*,
  2020 WL 905606 (S.D. Cal. Feb. 25, 2020) ........................................ 17

*Tourgeman v. Collins Fin. Servs., Inc.*,
  2010 U.S. Dist LEXIS 60551 (S. D. Cal. May 25, 2010) ......................... 16

*United States v. Jackson*,
  2010 WL 3325611 (N.D. Cal. Aug. 23, 2010) ..................................... 13

*Wright v. Sirius XM Radio Inc.*,
  2017 WL 4676580 (C.D. Cal. June 1, 2017) ....................................... 24

*Youngevity Int'l Corp. v. Smith*,
  2018 WL 3458390 (S.D. Cal. July 18, 2018) ....................................... 19

**STATE CASES**

*Augusta v. Keehn & Assocs.*,
  193 Cal. App. 4th 331 (2011) ....................................................... 23

*Berman v. Health Net*,
  80 Cal. App. 4th 1359 (2000) ....................................................... 22

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Foti v. Toyota Motor Sales, U.S.A., Inc.*,
 2017 WL 1436253 (N.J. Super. Ct. App. Div. Apr. 24, 2017) ...................... 3, 10

*Guess?, Inc. v. Superior Court*,
 79 Cal. App. 4th 553 (2000) ................................................................. 23

*Iqbal v. Ziadeh*,
 10 Cal. App. 5th 1 (2017) ............................................................. 11, 12

*Jenks v. DLA Piper Rudnick Gray Cary US LLP*,
 243 Cal. App. 4th 1 (2015) .................................................................... 8

*McGill v. Citibank, N.A.*,
 2 Cal. 5th 945 (2017) .......................................................................... 24

*Oregel v. PacPizza, LLC*,
 237 Cal. App. 4th 342 (2015) .............................................................. 22

*Oxford Preparatory Acad. v. Edlighten Learning Sols.*,
 34 Cal. App. 5th 605 (2019) .................................................................. 8

*Rodriguez v. American Technologies, Inc.*,
 136 Cal. App. 4th 1110 (2006) ............................................................. 14

*Ronay Family Limited Partnership v. Tweed*,
 216 Cal. App. 4th 830 (2013) .................................................... 9, 10, 11

*Spinks v. Equity Residential Briarwood Apartments*,
 171 Cal. App. 4th 1004 (2009) .............................................................. 9

**STATE STATUTES**

Cal. Civ. Code § 1791(b) ......................................................................... 14

Cal. Civ. Code § 1794(a) ......................................................................... 13

Cal. Corp Code § 150 .............................................................................. 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

v

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

1
2

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

3

**OTHER AUTHORITIES**

4
5
6

A Timeline of COVID-19 Developments in 2020 (July 3, 2020),
    *available at* https://www.ajmc.com/view/a-timeline-of-covid19-
    developments-in-2020 ........................................................................................ 18

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

## I.     **INTRODUCTION**

In their Amended Motion to Compel Arbitration ("Motion"),[1] Defendants Toyota Motor Sales USA, Inc. ("TMS") and Toyota Motor Corporation ("TMC") (collectively, "Toyota") conclusively established that the Court must compel Plaintiffs Stephen Kosareff's, Laura Kakish's, and Khek Kuan's (collectively, "Plaintiffs")[2] claims because Toyota may enforce Plaintiff Kosareff's arbitration provision as a third party beneficiary and because equitable estoppel requires all Plaintiffs to arbitrate their claims.  Plaintiffs responded to Toyota's Motion by filing over 680 pages in opposition, launching a bevy of specious arguments as to why this Court should not compel arbitration.  These arguments fail for at least the following reasons:

- Plaintiffs fail to establish that the elements of judicial estoppel are met based on TMS's prior positions in *Quraishi v. Keylex, Inc., et al*.

- The arbitration provision in Plaintiff Kosareff's original Lease Agreement survives his later purchase agreement.

- Under the plain language of Plaintiff Kosareff's arbitration provision, affiliates (*i.e.*, Toyota) of entities named in the contract have standing to enforce the arbitration provision.

- The Ninth Circuit's decision in *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013), does not apply to Plaintiff Kosareff's Lease Agreement (including whether he agreed to arbitrate arbitrability), given the affiliate language therein, and all three Plaintiffs' fraud and Song-Beverly Act-related allegations and claims make *Kramer* distinguishable.

---

[1] Toyota originally moved to compel arbitration as to Plaintiffs Kosareff and Kakish on May 22, 2020 and subsequently filed an amended motion to compel on July 22, 2020, also moving to compel as to Plaintiff Kuan.

[2] As stated in its opening Amended Motion to Compel ("Motion"), Toyota refers collectively to the agreements Plaintiffs produced, and which contain enforceable arbitration provisions, as the "Lease/Purchase Agreements" or individually as "Lease Agreement" or "Purchase Agreement."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

- Plaintiffs have not met their heavy burden to prove waiver. Toyota diligently sought copies of Plaintiffs' agreements, acted consistently with its right to arbitrate, and there is no prejudice to Plaintiffs.
- Plaintiffs' UCL and CLRA claims do not seek public injunctive relief, given that the relief they seek primarily accrues to individual class members and any public benefit is incidental at best.

Accordingly, this Court should grant Toyota's Motion and stay the proceedings as to Plaintiffs Kosareff, Kakish, and Kuan.[3]

## II.   ARGUMENT

### A.   Judicial Estoppel Does Not Apply.[4]

The positions TMS[5] asserted in *Quraishi v. Keylex, Inc.* are irrelevant to those asserted here, and judicial estoppel does not apply. Contrary to Plaintiffs' conclusory argument, *none* of the factors courts consider for judicial estoppel are present.

First, TMS did not take positions in *Quraishi* that are "clearly inconsistent" with its current motion to compel. *See Copelan v. Techtronics Indus. Co.*, 95 F. Supp. 3d 1230, 1237 (S.D. Cal. 2015) (listing factors). In *Quraishi*, TMS filed a limited opposition to a Lexus dealer's motion compel arbitration as to the plaintiff's claims against the dealer, not the claims against TMS. *See* Plaintiffs' RJN, Ex. A at 1. The issue was whether the Court should also send claims against TMS to arbitration when

---

[3] In their Opposition, Plaintiffs do not oppose Toyota's motion to stay the action if the Court compels arbitration. The title of their opposition pleading does not even address Toyota's request to stay any of Plaintiffs' claims pending arbitration.

[4] As explained in Toyota's Opposition to Plaintiffs' Request for Judicial Notice, Plaintiffs ask the Court to take judicial notice of the contents of certain *Quraishi* court documents, but the Court cannot do so. Denying Plaintiffs' Request for Judicial Notice necessarily means that Plaintiffs provide no admissible evidence of any prior statements underlying their judicial estoppel argument, and it fails for that reason alone. While Toyota maintains that the Court should not consider the contents of those documents for their truth, Toyota must rely on those documents in order to respond to Plaintiffs' argument, or in the event the Court takes judicial notice of them for the purpose Plaintiffs seek. Toyota provides the below argument without waiving those made in opposition to Plaintiffs' Request for Judicial Notice.

[5] Plaintiffs make a judicial estoppel argument only as to TMS, and therefore, even if the principle were to apply (it does not), it would not apply to TMC.

2

the motion to compel did not involve TMS's claims.  In contrast, the issue here is whether or not Toyota has standing as a non-signatory to compel arbitration.

Specifically, TMS did not assert positions contrary to the estoppel and third-party beneficiary arguments TMS makes in its Motion here.  TMS argued there, consistent with its position here, that non-signatories to a contract may arbitrate claims when either (1) there is a preexisting relationship with a party to the arbitration agreement *or*, (as relevant here), (2) the non-signatory is a third party beneficiary. *See id.* at 3:6-11.  TMS also took the position that this latter third-party beneficiary rule "only applies when the non-signatory <u>wants</u> to arbitrate." *Id.*[6]  TMS's positions there are irrelevant to (and consistent with) Toyota's position here that, as TMS demonstrates in its Motion, a non-signatory may compel arbitration under third-party and estoppel theories. *See* Motion at pp. 16-22.

Moreover, Plaintiffs misconstrue TMS's statements in *Quraishi* about its status as a distributor, taking the statements out of context.  TMS did not state it was "just" a distributor such that "claims involving fraud, CLRA violations, and warranty" cannot be intertwined with a vehicle lease or purchase contract for purposes of compelling arbitration under third-party beneficiary or equitable estoppel principles. *See* Opp. at 2.  Instead, in *Quraishi*, TMS explained that under a third-party beneficiary theory, there was "no preexisting relationship" between TMS, a non-signatory, and the dealer, such that the dealer had the authority "to bind TMS by its arbitration agreement," because TMS "is the distributor of the subject vehicle." RJN, Ex. A at p. 3.  The lack of a preexisting relationship with a dealer is of no import here, and TMS does not argue that Plaintiffs Kosareff, Kakish, and Kuan's claims

---

[6] The posture of the parties in *Quraishi* was not that of the parties here.  Here, non-signatory Toyota *wants* to arbitrate and is the moving party.  Indeed, this action is not the first in which Toyota has moved to compel arbitration as a non-signatory. *See e.g.*, *Foti v. Toyota Motor Sales, U.S.A., Inc.*, 2017 WL 1436253, at *2 (N.J. Super. Ct. App. Div. Apr. 24, 2017).  In *Quraishi*, by contrast, Toyota filed a limited opposition to a *signatory's* motion to compel, which explains the difference in arguments as between the cases.  That context, however, cannot be ignored.

1  should be compelled to arbitration because of one.  *See* Motion, *passim.*

2  Second, in applying judicial estoppel, Courts consider "whether the party was

3  successful in persuading the earlier court to follow its first position (such that the

4  finding of the earlier court would now be incorrect and one court or the other appears

5  to be misled in a finding.)"  *Copelan,* 95 F. Supp. 3d at 1237.  Plaintiffs make no

6  showing as to this factor, particularly as to which of TMS's specific positions, if any,

7  were successful in the prior action or relied on by the *Quraishi* Court.  "The Ninth

8  Circuit 'has restricted the application of judicial estoppel to cases where the court

9  relied on, or 'accepted,' the party's previous inconsistent position.'"  *Id.* (citing

10  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001)).

11  Plaintiffs merely cite to a short, vague minute order compelling the plaintiff's claims

12  against the dealer to arbitration, and stating that Toyota shall continue its demurrer

13  in Court.  *See* Plaintiffs' RJN, Ex. C.  The *Quraishi* court did not determine whether

14  TMS could compel claims to arbitration under non-signatory theories.  As a result,

15  there is no risk here of "inconsistent court determinations . . . and thus no threat to

16  judicial integrity."  *Hamilton*, 270 F.3d at 783.

17  Plaintiffs do not even address the third factor—whether Toyota would derive

18  an unfair advantage or impose an unfair detriment if not estopped.  And there is no

19  evidence that this would occur, particularly given the different postures, contexts,

20  and positions as between the two cases.  Judicial estoppel therefore does not apply in

21  the instant case and is not grounds for the Court to deny Toyota's Motion.

**B.**  **The Arbitration Provision in Kosareff's Lease Agreement Applies
and Requires Him to Arbitrate His Claims in This Case.**

24  Plaintiff Kosareff's 2013 Retail Installment Sales Contract ("RISC")[7] has no

---

26  [7] Toyota moved to compel based on Plaintiff Kosareff's Lease Agreement given that
27  (1) the arbitration clause in that agreement survives any latter agreements; and (2) his
claims are based on and arise at the time of his original lease, rather than his
subsequent purchase.  *See* Docket No. 73 (Amended Consolidated Master
28  Complaint) ("Complaint") ¶¶ 173, 212, 216, as cited below.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

effect on Toyota's right to compel arbitration.  It is "well settled jurisprudence that holds arbitration agreements to a life and validity separate and apart from the agreement in which they are embedded" and therefore, "parties' duties under an arbitration clause survive contract termination when the dispute is over an obligation arguably created by the expired contract." *Homestake Lead Co. of Mo. v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131, 1140 (N.D. Cal. 2003); *see also*, *Hughes v. S.A.W. Entm't, Ltd.*, 2019 WL 2060769, at *21 (N.D. Cal. May 9, 2019) (holding that the arbitration provisions in prior contracts executed annually "survive[] those contracts' termination dates and continue to apply to any claims that arose under those contracts"); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 554-55 (1964); *see generally Litton Fin. Printing Div., Inc. v. NLRB*, 501 U.S. 190, 206 (1991) (noting that "[t]he object of an arbitration clause is to implement a contract, not to transcend it"); *see also*, *First Am. Title Ins. Co. v. Lochland Holdings, LLC*, 2012 WL 13019940 (C.D. Cal. Feb. 8, 2012) (arbitration clause not superseded).

Plaintiffs' argument that the duty to arbitrate automatically extinguishes upon termination of a lease agreement and entry into a purchase agreement runs contrary to the goal of the FAA and arbitration.  As the Supreme Court explains, holding that termination of an agreement automatically extinguishes a party's duty to arbitrate grievances arising under the contract "would preclude the entry of a post-contract arbitration order even when the dispute arose during the life of the contract but arbitration proceedings had not begun before termination. The same would be true if arbitration processes began but were not completed, during the contract's term. Yet it could not seriously be contended in either instance that the expiration of the contract would terminate the parties' contractual obligation to resolve such a dispute in an arbitral, rather than a judicial forum." *Nolde Bros., Inc. v. Local. No. 358, Bakery & Confectionary Workers Union*, 430 U.S. 243, 251 (1977).  Moreover, where a contract expires or is superseded, and "a dispute is over a provision in an expired agreement, the presumptions favoring arbitrability must be negated expressly

or by clear implication." *Hughes*, 2019 WL 2060769, at *21 (holding, *inter alia*, arbitration provision in expired contracts not superseded by new contract without such provision as to claims arising under that agreement, where latter contract did "not expressly or by clear implication negate any of [the] prior . . . contracts' arbitration provisions") (citing *Nolde Bros., Inc.*, 430 U.S. at 255 (1977)).

Here, Plaintiff Kosareff's 2013 RISC (purportedly containing no arbitration provision) does not extinguish the arbitration clause in his Lease Agreement.  First, Plaintiff Kosareff premises his claims on allegations that Toyota knew of the IPM defect before he leased his vehicle, and that information was allegedly "fraudulently concealed" from him in connection with that transaction.  *See* Docket No. 73 (Complaint) ¶ 173 (alleging "Toyota knew or should have known that the Class Vehicles were defective at the time of the sale or lease and that the inverter defect posed a safety hazard.") (emphasis added); *id.* (alleging Toyota "knowingly sold or leased a defective product" and did so "without informing consumers about the IPM Defect"); *see also*, ¶ 212 (alleging that at the time of sale or lease, Toyota "knew of the Class Vehicles' inability to perform as warranted and lower fuel efficiency based on the IPM Defect"); ¶ 216 (alleging that "at the time Toyota sold or leased Class Vehicles to Plaintiffs and proposed Class Members, Toyota knew they were equipped with defective IPMs.") (emphasis added).  Kosareff further alleges that that purported conduct continued throughout his lease.  *Id.* ¶ 172 (alleging that class vehicles "when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose . . ."); *id.* ¶ 180 (alleging that the safety risk to drivers "is present from the moment a Class Vehicle is turned on and whenever and wherever it is driven").

Plaintiff Kosareff cannot now argue that he bases his claims on facts arising solely after he purchased his vehicle, or that Plaintiffs make a distinction in their claims and allegations between Toyota's purported knowledge prior to the time of lease and a later, subsequent sale out of a lease of a Prius vehicle.  Indeed, Plaintiff

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

Kosareff does not disclaim his right to damages associated with the three years during which he leased his vehicle, including any payments he made toward the vehicle during that time.[8]

Second, the RISC does not state that it extinguishes the arbitration agreement in Plaintiff Kosareff's Lease Agreement, and, thus, the RISC does not supersede and eviscerate the arbitration agreement in his Lease Agreement.  *See Homestake Lead Co.*, 282 F. Supp. 2d at 1142 ("[a]bsent the explicit intention to rescind an arbitration clause . . . the clause will survive even where the prior agreement itself is rescinded by the latter agreement.").   By contrast, the plain language of the arbitration agreement specifically applies to "claims arising from or relating to this Lease or *related agreements or relationships*." (emphasis added).  *See* Docket No. 110-2 (Amended Declaration of Lisa Weddle In Support of Motion to Compel Arbitration) ("Weddle Decl.") ¶ 3, Ex. A at KOSAREFF001336.  Plaintiff Kosareff's RISC is an agreement and/or relationship "related" to the original lease of Plaintiff Kosareff's vehicle, as they both concern his ownership/possession of the same vehicle. Moreover, the Lease Agreement's arbitration provision also indicates that it was intended to survive the lease term.  *See id.* (stating arbitration provision "will survive your full payment of the Lease.").

Plaintiffs do not point to any binding case law[9] holding that a later RISC rescinds or supersedes a prior lease agreement's arbitration provision, particularly where the RISC's integration clause narrowly relates only to the subject of "this

---

[8] If Plaintiff Kosareff now contends that his claims and damages sought are not related to his original lease of his vehicle and are solely related to its later purchase, he should clarify.  Specifically, if Mr. Kosareff claims his injury occurred at the time he purchased his vehicle after the lease, and not at the time he took initial possession of his vehicle through the lease, Mr. Kosareff should answer the question as to whether he is foregoing damages related to his 3-year lease period.

[9] Instead, Plaintiffs rely on non-binding case law from other jurisdictions, and which interpret other states' contract interpretation schemes.   Plaintiffs have made no showing that these states' contract interpretation laws are applicable.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

contract." *See* Kosareff Decl., Ex. A at 1380. Plaintiffs try to distinguish *Oxford Preparatory Acad. v. Edlighten Learning Sols.*, 34 Cal. App. 5th 605, 611 (2019), but that case is on point. There, the Court held that the arbitration agreement survived and was not superseded by a later contract containing an integration clause, even where the parties expressly agreed to terminate the relevant contract. *Oxford Preparatory*, 34 Cal. App. 5th at 610 (holding later "Termination Agreement does not demonstrate any intent that it would supersede the Arbitration Clause, or, for that matter, any other right or obligation which arose under the parties' agreements before the termination date"). In trying to distinguish *Oxford Preparatory*, Plaintiffs ignore that the integration clause in Plaintiff Kosareff's RISC is limited to "this contract," just like the clause in *Oxford Preparatory*, which terminated prior agreements "with respect to the subject matter hereof." *See* Kosareff Decl., Ex. A at 1380 ("This contract contains the entire agreement between you and us relating to *this contract*.") (emphasis added); *see also, Jenks v. DLA Piper Rudnick Gray Cary US LLP*, 243 Cal. App. 4th 1 (2015) (finding termination agreement containing an integration clause did not terminate an arbitration clause contained in an offer letter for employment).

Nor does Plaintiffs' interpretation make any logical sense. If it were the case that the right to compel expired with a lease, for example, any plaintiff in an automotive-related case could evade their agreement to arbitrate by purchasing their vehicle under an agreement without an arbitration clause, despite having previously agreed to arbitrate claims regarding the condition of the vehicle, as Plaintiff Kosareff did here. Accordingly, Plaintiffs fail to demonstrate an explicit intent to revoke the arbitration agreement found in Plaintiff Kosareff's Lease Agreement. The arbitration provision in his Lease Agreement survives and must be analyzed based on its differences from Plaintiffs Kakish and Kuan's Purchase Agreements.

///

///

**C.**   **Toyota May Compel Arbitration as a Non-Signatory Under Third Party Beneficiary Theories, Including as an Affiliate and Assign.**

Plaintiffs' arguments that Toyota lacks the right to compel arbitration as a third party beneficiary to Plaintiff Kosareff's Lease Agreement fail.  Consistent with the plain language of the arbitration agreements and the terms of the contract, Toyota benefits under the agreements and may compel arbitration. [10]   "The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract." *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1022 (2009); *see also*, *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1161 (9th Cir. 2010).  "If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person. The parties are presumed to intend the consequences of a performance of the contract." *Spinks*, 171 Cal. App. 4th at 1022.

Germane is whether the third party "shows that he is a member of a class of persons for whose benefit it was made." *Ronay Family Limited Partnership v. Tweed*, 216 Cal. App. 4th 830, 836 (2013) (citations omitted).  "It is not necessary that the beneficiary be named and identified as an individual. A third party may enforce a contract where he shows that he is a member of a class of persons for whose

---

[10] It is of no import that Mr. Kosareff now claims that he did not know what he was signing as to arbitration or that he never intended Toyota to benefit under his Lease Agreement. *See First Am. Title Ins. Co.*, 2012 WL 13019940, at *4 (C.D. Cal. Feb. 8, 2012) ("The Hull declaration does not establish that the [contract] superseded the arbitration clause in the Title Policy . . . Mr. Hull's conclusory and speculative statements regarding the parties' intentions in entering into the [contract] do not constitute 'factual, evidentiary matter' that may properly be asserted in a declaration. L.R. 7-7 . . . In any event, his testimony is contrary to the plain meaning of the document. Therefore, the Court does not rely on those statements in its analysis."); *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1022 (2009) ("[P]arties are presumed to intend the consequences of a performance of the contract."); *see also Crown Capital Sec., L.P. v. Liberty Surplus Ins. Corp.*, 2015 WL 12748815, at *4 (C.D. Cal. Mar. 30, 2015) ("A cardinal rule of contract law is that a party's failure to read a contract, or to read carefully a contract, before signing it is no defense to the contract's enforcement.").

benefit it was made." *Id.* at 838-39 (citations omitted).  This test is met here.

First, Plaintiff Kosareff's arbitration clause expressly extends to affiliates (*i.e.*, Toyota) of Toyota Lease Trust ("TLT") or Toyota Motor Credit Corporation ("TMCC").  *See* Motion at pp. 2-4 (also explaining the corporate relationship between the relevant entities).[11]  Plaintiffs argue that not explicitly identifying TMC and TMS means there was no intent to benefit them as third parties.  Opp. at 10-12. But, as Toyota demonstrates in its Motion (at pp. 16-19) and above, arbitration provisions are enforceable by third party beneficiaries even when their name does not appear in the agreement.  *See Ronay*, 216 Cal. App. 4th at 836.

Plaintiffs argue *Ronay* is irrelevant.  Not so.  In *Ronay*, the Court examined an arbitration clause which required arbitration of "any controversy arising out of or related to my (our) accounts, the transactions with [signatory CapWest], its officers, directors, agents, registered representatives and/or employees for me (us), or related to this agreement or breach thereof."  The *Ronay* Court concluded that the non-signatory defendants (agents of the signatory CapWest) were third party beneficiaries of the arbitration clause "intended to benefit" thereunder because the arbitration clause "expressly require[ed] arbitration of claims against CapWest's agents and registered representatives."  216 Cal. App. 4th at 835.

The instant case presents a similar situation.  Though not specifically named in the Lease Agreement, Toyota is an intended beneficiary because the arbitration provision expressly requires arbitration of claims against affiliates of TLT and/or

---

[11] While Plaintiffs object to the evidence supporting Toyota's arguments, as set forth in Toyota's response to Plaintiffs' evidentiary objections, Plaintiffs are wrong.  As in *Foti*, there is sufficient evidence to determine that Toyota is an affiliate of assigns who are Covered Parties under Plaintiffs' arbitration agreement.  *See e.g.*, *Foti v. Toyota Motor Sales, U.S.A., Inc.*, 2017 WL 1436253, at *2 (N.J. Super. Ct. App. Div. Apr. 24, 2017) (also explaining that California decisions federal Ninth Circuit Court of Appeals decisions such as *Kramer* are not particularly persuasive, because the arbitration agreement at issue in those decisions did not include the "affiliate" language contained in this lease); *see Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1124, 1127 n.3 (9th Cir. 2013) (arbitration provisions did not include "covered party" language and Toyota did not contend it was an affiliate that could compel arbitration).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

TMCC, which as described in Toyota's Motion and herein, include Toyota.  *See e.g.*, Motion at pp. 16-19; *see Ronay*, 216 Cal. App. 4th at 835.   Plaintiff Kosareff's arbitration provision covers:

> [A]ny claims. . . asserted by you against us, and the following *Covered Parties: Toyota Lease Trust, Toyota Motor Credit Corporation and/or any of our or its affiliates and/or any of our or their employees, officers, successors, assigns*, or against any third party providing any product or service in connection with the Lease that you name as a co-defendant in any action against any of the foregoing.

Weddle Decl. at ¶ 3, Exh. A, at KOSAREFF001336 (emphasis added).  His Lease also defines the Lessee as Plaintiff Kosareff, and the Lessor as the dealer, "and after assignment, the Toyota Lease Trust ('TLT') and any subsequent assignee." *Id.* at KOSAREFF001331.  Plaintiffs entirely ignore that the Lease Agreement defines Lessor as extending to assigns.  Because TMS and TMC are affiliates of "Covered Parties" TLT and/or TMCC, which are subsidiaries of TMC, and to which Plaintiff Kosareff's Lease Agreement was assigned (Weddle Decl. at ¶ 3, Exh. A, at KOSAREFF001331, 1333; Docket No. 110-5 (Declaration of Pamela J. Boyd In Support of Toyota's Motion) ("Boyd Decl.") ¶¶ 2-5), Plaintiff Kosareff's Lease Agreement explicitly applies to claims between him and TMS and TMC via the term "affiliates," making them third party beneficiaries to the agreement.  Therefore, the express language of the arbitration clause makes clear that Toyota is a third party beneficiary intended to benefit from its protections.

Plaintiffs' conclusory argument that Toyota does not fall under the definition of an affiliate or assign fails.  *See* Opp. at pp. 16-17.  They provide no authorities setting forth a different standard, or showing that Toyota's authorities regarding what constitutes a corporate affiliate do not apply.  *See* Motion at p. 17 n. 9 (citing *Iqbal v.*

1   *Ziadeh*, 10 Cal. App. 5th 1, 10 (2017) ("[T]he common meaning of an affiliate

2   generally is one who is dependent upon, subordinate to, an agent of, or part of a larger

3   or more established organization or group.")); *see also* Cal. Corp Code § 150 ("A

4   corporation is an 'affiliate' of … another specified corporation if it directly, or

5   indirectly through one or more intermediaries, controls, is controlled by or is under

6   common control with the other specified corporations.").  Plaintiff Kosareff signed a

7   Lease Agreement that did not define the meaning of "affiliates," so its commonly

8   understood meaning as set forth in *Iqbal v. Ziadeh* and Cal. Corp Code § 150 applies

9   here.  Pursuant to this chain of parent-subsidiary relationships, TMC and TMS are

10  affiliates of TLT and TMCC and, as such, can enforce the Lease Agreement as a third

11  party beneficiary.

12      Plaintiff Kosareff simply cannot ignore the language of the arbitration

13  provision in his Lease Agreement and the myriad cases allowing non-signatory

14  vehicle manufacturers to compel arbitration as affiliates and assigns under third party

15  beneficiary theories.  *See Saponjic v. BMW of N. Am., LLC*, 2020 WL 4015671, at *2

16  (S.D. Cal. July 16, 2020); *Rizvi v. BMW of N. Am. LLC*, No. 5:20-CV-00229-EJD,

17  2020 WL 2992859, at *3 (N.D. Cal. June 4, 2020); *Fikhman v. BMW of N. Am. LLC,*

18  No. 219CV03963VAPMRWX, 2019 WL 6721626, at *2 (C.D. Cal. Oct. 15, 2019);

19  *Pleitez v. BMW of N. Am., LLC*, No. CV 19-10422 PA (JCX), 2020 WL 2084954, at

20  *4 (C.D. Cal. Feb. 27, 2020); *Phillips-Harris v. BMW of N. Am., LLC*, No.

21  CV202466MWFAGRX, 2020 WL 2556346, at *12 (C.D. Cal. May 20, 2020); *Banh,*

22  Case No. 2:19-CV-05984-RGK-AS, Slip Op. at 6, 7 (C.D. Cal. July 28, 2020).

23      Plaintiffs' last-ditch effort to rely on the word "and" in Plaintiff Kosareff's

24  agreement is similarly unavailing.  While the mere presence of "and" alone would

25  not defeat Toyota's argument, Plaintiffs ignore the preceding comma, which is

26  necessary to interpret the language.  *See* Weddle Decl. ¶ 3, Ex. A at 1336 ("claims

27  asserted by you against us, and the following Covered Parties . . .").  A comma before

28  "and" (or any coordinating conjunction) links independent clauses – the "and the

following Covered Parties" cannot be read in conjunction with "us," because the latter phrase is set apart from the former word ("us") by a comma and conjunction (", and").  *See e.g., United States v. Jackson*, No. CR-09-1115 JF, 2010 WL 3325611, at *5 (N.D. Cal. Aug. 23, 2010) ("The general rule is that when a conjunction connects two coordinate clauses or phrases, a comma should precede the conjunction if it is intended to prevent following qualifying phrases from modifying the clause which precedes the conjunction.")  The phrase "and the following Covered Parties," including those parties' affiliates, stands apart from "us" and does not limit Toyota to compelling arbitration only where it is a co-defendant with a signatory.  In other words, the use of ", and" in Plaintiff Kosareff's agreement does not refer to claims where a dealer *and* affiliates are codefendants, but both (1) claims asserted "by you" against "us", *and* (2) claims asserted "by you" against "the following Covered Parties: Toyota Lease Trust, Toyota Motor Credit Corporation and/or any of our or its affiliates [*i.e.*, TMC and TMS]."  Weddle Decl., ¶ 3, Ex. A at KOSAREFF001336.

### D.      Toyota May Compel Arbitration on Equitable Estoppel Principles.

Toyota also established in its Motion that it can invoke the arbitration clause in Plaintiffs' lease and purchase agreements under the theory of equitable estoppel. *See* Docket No. 110 (Motion) at pp. 19-22.  In response, Plaintiffs go all in on *Kramer* and hide from the distinguishable circumstances here, including Plaintiffs' intertwined fraudulent concealment allegations related to their sale/lease transactions and their corresponding allegations that their damages occurred and arise from the lease and sale of their vehicles.  *See id.* at pp. 21-22.

Moreover, unlike in *Kramer*, Plaintiffs here rely on allegations regarding the lease and purchase of Plaintiffs' vehicles, the condition of the vehicles, and assert a related claim for violations of the Song-Beverly Act.  *See e.g.,* Complaint, ¶¶ 196 ("Defendants' conduct deprived Plaintiffs of the benefit of their bargain, caus[ing] the Class Vehicles to be worth less than what Plaintiffs paid.").  Standing to bring a Song-Beverly Act claim is limited to a "buyer of consumer goods" (*see* Cal. Civ.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

Code § 1794(a)), which the Song-Beverly Act defines as "any individual who buys consumer goods from a person engaged in the business of manufacturing, distributing, or selling consumer goods at retail" (Cal. Civ. Code § 1791(b)).  Without Plaintiffs' Lease/Purchase Agreements, Plaintiffs could not meet this standing requirement.  Plaintiffs, therefore, must rely on the terms of their agreements to make their argument that they have standing to pursue Song-Beverly Act claims, which Plaintiffs concede is grounds for equitable estoppel to apply.  *See* Docket No. 113 (Opp.) at 6:3-6 ("'Equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely ***on the terms of the written agreement in asserting claims against the nonsignatory.***'") (citing *Murphy v. Direct TV, Inc.*, 724 F.3d 1218 (9th Cir. 2013) (emphasis added in Plaintiffs' opposition). The claims and allegations at issue here, therefore, are intertwined with Plaintiffs' Lease/Purchase Agreements.

Additionally, as Toyota demonstrated in its Motion, the arbitration provision in Plaintiff Kosareff's Lease Agreement extending to claims against "affiliates" is broader than the arbitration clauses at issue in *Kramer*.  Motion at p. 22:7-15.  That distinction, and because TMS and TMC are intended third-party beneficiaries through that "affiliates" language, also means *Kramer* does not control as to Kosareff's claims.  Unlike *Kramer¸* Plaintiff Kosareff's Lease Agreement is **not** "expressly limited to Plaintiffs and the Dealerships."  *See Kramer*, 705 F.3d at 1127.

For that same reason, Plaintiffs' argument that, under *Kramer*, the parties did not agree to arbitrate arbitrability fails as to Plaintiff Kosareff.  The arbitration provision in his Lease Agreement constitutes a clear and unmistakable agreement to have the arbitrator determine the scope and arbitrability of that provision.  *See* Weddle Decl., ¶ 3, Ex. A at KOSAREFF001336 ("You agree that any claims arising from or relating to this Lease or related agreements or relationships, *including the validity, enforceability, arbitrability or scope of this Provision*, at your or our election, are subject to arbitration.") (emphasis added); *Rodriguez v. American*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

*Technologies, Inc.*, 136 Cal. App. 4th 1110, 1123 (2006) ("[T]he parties may, by clear and unmistakable agreement, elect to have the arbitrator, rather than the court, decide which grievances are arbitrable.").  While Plaintiffs argue that the parties did not agree to arbitrate arbitrarily because under *Kramer*, the agreements are limited to signatories (Plaintiffs and Dealership), Plaintiff Kosareff's arbitration agreement differs in that it extends to "affiliates," which includes Toyota, as demonstrated above and in Toyota's Motion.  Therefore, the arbitrator must decide all appropriate issues relating to Plaintiff Kosareff's agreement, including its scope and applicability to Plaintiff Kosareff's claims.

**E.     <u>Toyota Has Not Waived the Right to Compel Arbitration.</u>**

Plaintiffs have not met their heavy burden to prove waiver.  *Fisher v. AG Becker Paribas Inc.*, 791 F. 2d 691, 694 (9th Cir. 1986) (waiver is disfavored and there is a heavy burden to prove waiver).

**1.     *Toyota Did Not Unreasonably Delay in Moving to Compel Arbitration After Plaintiffs Produced Their Agreements.***

First, it is axiomatic that the right to compel arbitration is based in contract—it requires evidence of a valid, written and enforceable arbitration agreement between the parties that encompasses the dispute at issue.  *See Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323-24 (9th Cir. 2015).  Without an agreement with an arbitration clause, a party cannot move to compel arbitration.  Plaintiffs implausibly suggest that Toyota should have moved to compel arbitration (presumably against all named plaintiffs) *before* Plaintiffs produced their agreements.  Opp. at 18-19.  They seem to contend that Toyota should have done so based off sample agreements, or other customer's agreements, because arbitration agreements are "standard provisions" in dealer agreements.  *Id.*  But had Toyota done so, Plaintiffs undoubtedly would have argued that there was no basis for the motion because evidence of a valid arbitration agreement is critical to determine whether (and which) parties agreed to arbitrate, the exact terms of the agreement, and the relevant date and context of the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

agreement.  *See Ashbey*, 785 F.3d at 1323-24.  Like the arbitration provisions here, terms and parties can vary as between agreements.  Plaintiffs have been aware of the contents of their agreements since before they filed their lawsuits and they cannot take cover in the fact that they did not produce them until almost two years after they initiated this litigation by arguing that Defendants should have demanded third parties produce the very documents Plaintiffs possess.

Plaintiffs' arguments regarding what happened in the former state court action in early 2018, before Plaintiffs Kakish and Kosareff were named plaintiffs, are similarly unavailing and do not prove any waiver.  *See* Docket No. 1 (not naming Kosareff or Kakish); Docket No. 20 (adding Plaintiff Kuan on May 16, 2018, but not indicating from where Plaintiff Kuan purchased his 2013 Prius V); *see also*, Plaintiffs' RJN, Ex. F (July 2, 2018 Joint Status Conference Statement) (not including Plaintiff Kosareff or Kakish in the former *Rexhepi* state court action).  It was not until November 19, 2018, that Plaintiffs Kosareff and Kakish were first added to this action.  *See* Docket Nos. 42, 43.

Plaintiffs cite to no case law stating that in order to bring a motion to compel arbitration and preserve the right to arbitration, a party has an affirmative duty and obligation to immediately search for all potential arbitration agreements that could apply to any potential plaintiffs.  That is because there is none.  *Cf. Cadena v. Am. Honda Motor Co*., No. CV 20-511-MWF (PJWX), 2020 WL 3107797, at *3 (C.D. Cal. June 10, 2020) ("Honda was not under an obligation to investigate whether every potential Plaintiff to this action had an arbitration agreement.")  Indeed, Plaintiffs' case law primarily relates to standards and duties with respect to producing documents in response to discovery, which do not apply here.  *See Tourgeman v. Collins Fin. Servs., Inc.*, 2010 U.S. Dist LEXIS 60551 (S. D. Cal. May 25, 2010).

///

///

///

Nor is there evidence that Toyota did not diligently seek and investigate whether the Lease/Purchase Agreements contained valid arbitration agreements.[12] With respect to the prior actions ultimately dismissed and/or consolidated, a discovery stay was in place in the *Rexhepi* state court action through July 2018. *See* Plaintiffs RJN, Ex. F at p. 10 (July 2, 2018 *Rexhepi* Joint Status Conference Statement noting a discovery and litigation stay in place…").  Similarly, pursuant to stipulation of the parties, the Court ordered a stay of discovery in this consolidated action until the Rule 26(f) conference, which took place on April 12, 2019.  See Docket Nos. 30; 60 at 2:5-9, 2:20-23.   In the parties' Joint Rule 26(f) Report, however, Toyota indicated it would seek discovery about each Plaintiff's purchase or lease of their vehicle (Docket No. 60 at 4:23-25), which is exactly the discovery it sought in September 2019 once the case was at issue and in order to evaluate whether Plaintiffs agreed to arbitrate their claims in their purchase or lease agreements. *See* Micheletti Decl., ¶ 28, Exs. 13-15.  Toyota does not state in its Initial Disclosures that it would produce Plaintiffs' specific lease and sales agreements.  Toyota refers to "sales" and "leasing" type documents, among others, related to the vehicles—*i.e.*, marketing-type documents that would have been available to dealers.

On June 7, 2019, Toyota filed its answer and asserted the affirmative defense of arbitration, indicating that Toyota intended to investigate whether claims of putative class members could be compelled to arbitration.  Plaintiffs' attempt to distinguish Toyota's arbitration defense as only applying to putative class members, and not named plaintiffs (who represent and are part of that class) is a parsing of words.  Nothing indicates that Toyota distinguished between named plaintiffs and the class members they represent, and simply referred to all as "putative class members." Throughout the affirmative defenses, Toyota varies in its reference to "Plaintiffs" and putative class members.  Toyota certainly confirmed the intent of its affirmative

---

[12] Plaintiffs citation to *Stafford v. Rite Aid Corp.*, 2020 WL 905606 (S.D. Cal. Feb. 25, 2020) is therefore not dispositive.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

1 defense asserting the right to arbitrate in this case when it acted consistent with that

2 intent in bringing the pending motion.  As noted therein, Plaintiffs did not produce

3 their Lease/Purchase Agreements until November 26, 2019, January 24, 2020, and

4 June 9, 2020.  *See* Docket No. 110 (Motion) at p. 7:6-12.  Following the holidays,

5 and a company navigating through the Coronavirus pandemic, Toyota was finally in

6 a position to bring the motion in May 2020.[13]

7      As to Plaintiffs' argument that Toyota cannot rely on its affiliate and subsidiary

8 relationships for purposes of standing to compel arbitration and simultaneously claim

9 that it did not have access to Plaintiffs' agreements, this argument is of no import.

10 Whether companies are affiliates for purposes of the terms in a contract (here, an

11 arbitration provision) is an entirely separate inquiry from what the documents Toyota

12 possesses or are in its control, and any corresponding duty to locate such documents

13 in order to compel arbitration.  Given these facts, Toyota did not unreasonably delay

14 amounting to a waiver of its right to compel arbitration.  *See e.g.*, *Cadena*, 2020 WL

15 3107797, at *1 (no waiver found, even where Honda filed motion over seven months

16 after it was charged with being aware of the right to compel arbitration).

17          **2.**     ***Toyota Did Not Act Inconsistently With Its Right to Arbitrate.***

18      As Plaintiffs admit, Toyota has consistently taken the position that it would

19 compel arbitration if any valid arbitration agreements existed.  Opp. at 20 (citing

20 Plaintiffs' RJN, Ex. F at p. 8) (stating Toyota is continuing to investigate Plaintiffs'

21 agreements that may contain an arbitration provision and, in the event it determines

22 any Plaintiff entered into an agreement with an enforceable arbitration provision,

23 Toyota reserves the right to compel arbitration), p. 11 (referencing potential

24

---

25 [13] Plaintiffs entirely ignore Toyota's argument about the intervening COVID-19 pandemic, which significantly impacted Toyota in the United States and Japan.  *See*
26 Motion at p. 24, fn. 10; *see also*, Docket No. 105; *see also*, *e.g.*, A Timeline of COVID-19 Developments in 2020 (July 3, 2020), *available* at
27 https://www.ajmc.com/view/a-timeline-of-covid19-developments-in-2020 (discussing, for example, spread of transmission in Japan and United States, early
28 cases in Japan in January 2020, and travel restrictions implemented).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

18

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

arbitration clauses).  Nor does Toyota's litigation activity, including filing motions to dismiss, engaging in limited discovery, responding to Plaintiffs' inquiries, and negotiating to extend deadlines[14] amount to inconsistent acts, particularly because this case involves both arbitrable and non-arbitrable claims.[15]  *See Conde v. Open Door Mktg., LLC*, 2017 WL 5172271, at * 6 (N.D. Cal. Nov. 8, 2017); *Banh v. American Honda Motor Company, Inc.,* Case No. 2:19-CV-05984-RGK-AS, Slip Op. at 6-7 (C.D. Cal. July 28, 2020) (engaging in discovery, participating in the meet and confer process, and responding to Plaintiffs' motion for class certification was not necessarily inconsistent with the right to compel arbitration where defendant "would have had to engage in at least some of this discovery, meet and confer, and respond to the class certification motion regardless . . . because this case involves both arbitrable and non-arbitrable claims.").

In a recent Central District case with similar facts, for example, the Court held that Honda did not waive its right to compel arbitration where "much of Honda's alleged inconsistent actions were necessary regardless of its right to compel . . . as Honda has no right to compel the other Plaintiffs . . . . In other words, the remaining [] Plaintiffs' claims will continue regardless of the Court's ruling." *Cadena*, 2020 WL 3107797, at *5 (citing *Youngevity Int'l Corp. v. Smith*, 2018 WL 3458390, at *2 (S.D. Cal. July 18, 2018) ("no acts inconsistent with right to arbitrate when defendant 'participated in discovery and case management' as 'those actions were necessitated

---

[14] Despite Plaintiffs' suggestion, there was no nefarious intent to extend case deadlines prior to Toyota's motion to compel arbitration.  As stated in the parties' stipulation, the extension of deadlines related solely to issues arising from the COVID-19 crisis, including the fact that witnesses and counsel could not travel for depositions that had been scheduled in April and May 2020.  *See* Docket No. 105.

[15] Toyota has not acted inconsistently with its right to arbitrate by filing its motions to dismiss and engaging in limited litigation activity. *See Blau v. AT & T Mobility*, 2012 WL 566565, at *2–3 (N.D. Cal. Feb. 21, 2012) (concluding plaintiff was not prejudiced when defendants participated in litigation for nearly a year before moving to arbitrate); *Brown v. Dillard's, Inc.,* 430 F.3d 1004, 1012 (9th Cir. 2005) ("Unsurprisingly, courts are reluctant to find prejudice to the plaintiff who has chosen to litigate, simply because the defendant litigated briefly (*e.g.*, by filing a motion to dismiss or requesting limited discovery).").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

19

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

by a suit that would have proceeded regardless of the outcome of a motion to compel arbitration'"); *Conde*, 2017 WL 5172271, at *6 (same).

### 3. *Plaintiffs Have Not Demonstrated Prejudice.*

Despite their litany of prejudice claims that focus on spent resources by Plaintiffs' counsel, Plaintiffs' opposition fails to show that Plaintiffs will be prejudiced by having their claims compelled to arbitration.  Plaintiffs argue, for example, that the time and money spent in developing this case "will have been for nothing." Opp. at 23.  This is clearly not the case.  Even if they have spent time and money developing theories and consulting with experts, these costs would have been incurred in order to litigate the non-arbitrable claims in this case.  *See Fisher*, 792 F. 2d. at 697 ("discovery concerning the non-arbitrable claims does not constitute sufficient prejudice to establish waiver"); *see also, Banh,* Case No. 2:19-CV-05984-RGK-AS, Slip Op. at 6, 7 (discussing the same and also holding that while perhaps the defendant could have moved to compel discovery sooner and prevented unnecessary discovery, Plaintiffs' counsel also could have expedited the process by producing complete, legible copies of the arbitration agreements in a timely fashion, and thus "Plaintiff's wounds are thus largely self-inflicted.").

In contrast to the cases cited by Plaintiffs, this case remains in the early stages and the parties have discussed further moving out the case deadlines due to the current heightened status of the COVID-19 pandemic in the United States and Japan. Specifically, the parties have not yet engaged in expert discovery, taken depositions, and no trial date has been set—generally, prejudice does not result where the party has only expended litigation-related costs and is not on the eve of trial.  *See Blau*, No. C 11-00541 CRB, 2012 WL 566565, at *2–3; *Britton v. Co-Op Banking Grp.*, 916 F.2d 1405, 1413 (9th Cir. 1990); *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1132 (C.D. Cal. 2011) ("prejudice typically is found only where the petitioning party's conduct has substantially undermined the important public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution or

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

20

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

1    substantially impaired the other side's ability to take advantage of the benefits and

2    efficiencies of arbitration.")

3        Further unlike the bevy of cases cited by Plaintiffs, this action has been delayed

4    at several points, no depositions have occurred, discovery has been much more

5    limited, Toyota's motion practice occurred *before* Plaintiffs produced the applicable

6    arbitration agreements, and there have been far fewer filings and resources expended.

7    Plaintiffs rely on *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales*

8    *Practices, & Prod. Liab. Litig.*, 838 F. Supp. 2d 967, 978–79 (C.D. Cal. 2012) ("*UA*

9    *Litig.*"), but in that case, Toyota's pre-motion activity was significantly larger in

10   scope.   There, the litigation activity included 1,400 filings, extensive motions

11   practice, the certification of a standing issue for interlocutory appeal, resolving

12   numerous discovery disputes before the Court-appointed Special Masters, extensive

13   arrangements with Plaintiffs' experts, a technical tutorial to the Court, working

14   toward a joint schedule for completion of three bellwether trials, countless meet and

15   confers, and seventeen hearings.

16       As to Plaintiffs' contention that a potential reduction in class size would have

17   altered their strategy and allocation of resources, this claim is dubious at best.  The

18   situation regarding strategy and resources present in *UA Litig.* is not present to the

19   same degree here given the size and scope of the potential classes—there, "with

20   millions of potential class members." *UA Litig.*, 838 F. Supp. 2d at 980.  In *UA Litig.*,

21   potentially *30 to 32 million* of the estimated *40 million* potential class members might

22   have been compelled to arbitration.   Here, Plaintiffs present no evidence of any

23   specific number of class members that may have agreed to arbitrate their claims as

24   well, thereby likewise not serving as any evidence that it would significantly affect

25   Plaintiffs' strategy or result in less discovery served.  Indeed, Plaintiffs have not

26   offered any concrete, viable arguments as to how they would have changed course or

27   strategy if Toyota had brought its motion earlier (it is Plaintiffs' *heavy* burden to

28   prove waiver), particularly where other named plaintiffs remain in the court action.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

21

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

Indeed, the named plaintiffs in this case have changed many times at Plaintiffs' counsel's choosing, and this does not appear to have prejudiced Plaintiffs in any way. *See*, *e.g.*, Docket Nos. 20, 42, 43, 91, 92 (adding and dismissing individual plaintiffs).

The additional cases cited by Plaintiffs (*see Opp.* at 24:10-25:8) are also distinguishable given the activity here is far more limited.  In each of those cases, the litigation conduct prior to the motion to compel far exceeded Toyota's in this case:

- *Berman v. Health Net*, 80 Cal. App. 4th 1359, 1364 (2000) (Health Net itself conducted "full blown" extensive discovery aimed at the heart of the case, including requesting the "production of documents in 103 categories, several sets of special interrogatories, form interrogatories, notices of deposition . . . and subpoenas for medical records."*)*;

- *Martin v. Yasuda*, 829 F.3d 1118, 1128 (9th Cir. 2016) (in addition to the 17-month delay in moving for arbitration and extensive litigation activity, "the plaintiffs have shown prejudice here because, should this case go to arbitration, they would have to relitigate a key legal issue on which the district court has ruled in their favor.");

- *Kelly v. Pub. Util. Dist. No. 2 of Grant Cty.*, 552 F. App'x 663, 664 (9th Cir. 2014) and *Kelly v. Pub. Util. Dist. No. 2 of Grant Cty.*, No. CV-11-023-JLQ, 2012 WL 12886214, at *8 (E.D. Wash. July 30, 2012) (Defendants filed Rule 26(f) report agreeing "that this case shall not be referred to a master or magistrate to arbitrate," over three decades of review of the relevant agreement occurred without any party opting to invoke the arbitration clause, and extensive time was spent on matters prior to the motion to compel arbitration, the 267th docket entry.);

- *Oregel v. PacPizza, LLC*, 237 Cal. App. 4th 342, 359, 361 (2015) (moving party propounded "class discovery and engaged in motion practice to obtain discovery from putative class members, allowed Oregel to conduct extensive class discovery and file his class

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

22

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

certification motion revealing legal positions and evidence regarding the class members' claims, and deposed 25 absent class members who provided declarations in support of class certification.");

- *Augusta v. Keehn & Assocs.*, 193 Cal. App. 4th 331, 339 (2011) (movant engaged in extensive affirmative discovery, including filing two discovery-related motions to compel arbitration, seeking sanctions for violations of discovery rules, and scheduling a two-day deposition of the opposing party, but refused to participate in reciprocal discovery); and

- *Guess?, Inc. v. Superior Court*, 79 Cal. App. 4th 553, 558 (2000) (defendant did not plead right to compel arbitration as an affirmative defense, engaged in extensive discovery, attended depositions, and took "full advantage of the opportunity to test the validity of [plaintiff's] claims, both legally and factually, primarily at [plaintiff's] expense.").

Similarly, *Gutierrez v. Wells Fargo Bank*, NA, is irrelevant, as it involved an order to arbitration after an appeal, which is nothing close to the current procedural posture and activity in this case. *See* 704 F.3d 712, 720 (9th Cir. 2012) (ordering arbitration *post-appeal* would severely prejudice plaintiffs *after* trial of the case and the argument for arbitration was based on new case law).

**F.** **Plaintiffs' CLRA and UCL Claims Are Not for Public Injunctive Relief, But Even If They Were, the Court Should Stay Them While Plaintiffs' Other Claims Are Arbitrated.**

Plaintiffs' argue that their CLRA and UCL claims cannot be compelled to arbitration because they seek public injunctive relief. *See* Opp. at 25 (citing ECF 73 ¶ 164, 227-29, 232-33) (arguing that Plaintiffs seek injunctive relief under the CLRA and UCL "in the form of an order requiring Defendants to notify class members of the true nature and scope of the IPM defect and to replace the defective IPMs at Defendants' expense."). But that is not relief that benefits the public. "[P]ublic injunctive relief . . . has 'the primary purpose and effect of' prohibiting unlawful acts

that threaten future injury to the general public. Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 900 (N.D. Cal. 2018) (citing *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955 (2017) (citation omitted).

The relief sought under Plaintiffs' UCL and CLRA is not like that sought in *Nguyen v. Tesla, Inc.,* No. 8:19-cv-001422-JLS-JDE, 2020 U.S. Dist. LEXIS 80784 (C.D. Cal. April 6, 2020), and is more analogous to the relief sought in *Wright v. Sirius XM Radio Inc.*, 2017 WL 4676580 (C.D. Cal. June 1, 2017), which solely benefitted class members.  For their CLRA claim, Plaintiffs only seek an order "enjoining Toyota from continuing to engage in the deceptive business practices described in this Complaint."  Docket No. 73, ¶ 226(a).  The rest of their allegations and requested relief under the CLRA is specific to putative class members and their damages.  *See id.*, ¶ 229; *see also*, ¶ 151(q), 153, 225, 227.

Despite Plaintiffs' tenuous claim that the relief sought will prevent future injury to class members and those "in or around" class vehicles, the heart of Plaintiffs' request is that Toyota replace a component part within each class member's vehicle after informing class members that the part does not function as intended. *See e.g.*, Docket No. 73 (Complaint) ¶ 164.  This is the very definition of relief that benefits a plaintiff (or similarly situated group) who allegedly has been injured already, and not relief "prohibiting unlawful acts that threaten *future* injury to the general public."  Any "safety" benefit claims to those "in and around" class members' vehicles is incidental at best and does not make Plaintiffs' single request to enjoin alleged fraudulent conduct a request for public injunctive relief.  That is particularly the case here, as Toyota has already conducted several recalls, in which it disclosed the defect to the public at large, *see e.g.*, *id.* ¶¶ 10, 12, 16, and therefore there is no public injunctive relief that is necessary with respect to disclosure.  Not to mention that two plaintiffs would remain in the court action and will continue to seek

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

24

REPLY IN SUPPORT OF TOYOTA'S AMENDED
MOTION TO COMPEL ARBITRATION
CASE NO. 8:18-CV-00201-JLS-KES

1    any public injunctive relief requested.

2        As to their UCL claim, Plaintiffs do not request an injunction for the public's

3    benefit.   Instead, the injunctive relief they seek is private and limited to class

4    members.  *See id.* ¶ 164 ("Plaintiffs seek an order of this Court pursuant to section

5    17203 of the UCL, requiring Toyota: (a) to notify the proposed Class Members of the

6    existence, nature, and scope of the IPM Defect in Class Vehicles; (b) to replace

7    defective IPMs in Class Vehicles at its expense; and (c) to make full restitution of all

8    monies wrongfully obtained directly or indirectly from Plaintiffs and the proposed

9    Class Members as a result of the conduct described in this Complaint.").

10        Even if the Court finds (it should not) that Plaintiffs' requests for injunctions

11    under the CLRA and UCL seek public injunctive relief, any ruling regarding public

12    injunctive relief does not preclude sending all of Plaintiffs' other claims and their

13    CLRA request for damages to arbitration.  Indeed, a merits finding must first be made

14    as to liability before any public injunction could be ordered.  As a result, if the Court

15    is inclined to find that Plaintiffs' requested injunctive relief is for the public, rather

16    than the putative class members, the Court should stay Plaintiffs' non-arbitrable

17    public injunctive relief claims, pending a determination of Plaintiffs' claims on the

18    merits in arbitration, just as it did in *Nguyen*.

19    **III.**   **CONCLUSION**

20        For the foregoing reasons, Defendants respectfully request that this Court grant

21    Defendants' motion to compel arbitration.

22    Dated:    August 7, 2020        MORGAN, LEWIS & BOCKIUS LLP

23                       David L. Schrader<br>Joseph Duffy

24                       Lisa Weddle

25                       By   /s/ Lisa Weddle

26                          Lisa Weddle<br>Attorneys for Defendants

27                          TOYOTA MOTOR CORPORATION, and<br>TOYOTA MOTOR SALES USA, INC.

28