UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-00201-JLS-KES                           Date: October 20, 2020
Title: Remy McCarthy et al. v. Toyota Motor Corporation et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Melissa Kunig | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:       ATTORNEYS PRESENT FOR DEFENDANT:
Not Present                                            Not Present

**PROCEEDINGS:   (IN CHAMBERS) ORDER DENYING DEFENDANTS'
MOTION TO COMPEL ARBITRATION AND STAY
PROCEEDINGS AS TO PLAINTIFFS KOSAREFF, KAKISH,
AND KUAN (Doc. 110)**

Before the Court is a Motion to Compel Arbitration and Stay Proceedings as to
Plaintiffs Kosareff, Kakish, and Kuan, filed by Defendants Toyota Motor Corporation
("TMC") and Toyota Motor Sales, U.S.A., Inc. ("TMS") (collectively, "Toyota").  (Mot.,
Doc. 110.)  The three Plaintiffs[1] opposed, and Toyota replied.  (Opp., Doc. 118-1; Reply,
Doc. 119.)  The Court heard oral argument on the Motion on August 21, 2020.  Having
considered the parties' briefs and oral argument, the Court DENIES the Motion.

I.   **BACKGROUND**

The facts of the case are well known to the parties, and the Court has recounted
them at length in prior orders.  (*See* Docs. 35, 59.)  Here, therefore, the Court sets forth
only the factual allegations and procedural history relevant to Toyota's instant Motion.

A.   **General Background**

This is a consolidated class action concerning an alleged defect in 2010–2014
model year Toyota Priuses.  (Am. Master Compl., Doc. 73 [hereinafter "AMC"] ¶ 1.)

---

[1] For purposes of this Order, the Court refers to the three Plaintiffs as "Plaintiffs."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-00201-JLS-KES                                    Date: October 20, 2020
Title: Remy McCarthy et al. v. Toyota Motor Corporation et al.

Specifically, Plaintiffs allege that the Priuses' inverters overheat and cause the vehicles to enter "fail-safe" mode, which causes the vehicle to drastically reduce speed—or shut down completely—in order to avoid further strain on the engine.  Plaintiffs filed the operative complaint on July 23, 2019, after the Court ruled on Toyota's motion to dismiss the first Master Complaint.  The operative Master Complaint asserts the following claims for relief:  (1) violation of California's Unfair Competition Law ("UCL"); (2) breach of the implied warranty of merchantability under the Uniform Commercial Code; (3) breach of implied warranty in violation of California Commercial Code § 2314; (4) violation of the Song-Beverly Consumer Warranty Act; (5) violation of the Magnuson-Moss Warranty Act; (6) fraudulent concealment; (7) violation of the Consumer Legal Remedies Act ("CLRA"); and (8) unjust enrichment.  (*Id.* ¶¶ 159–233.)

## B.   The Arbitration Agreements[2]

On May 22, 2020, Toyota filed a motion to compel arbitration as to Plaintiffs Kosareff's and Kakish's claims.  (Doc. 109.)  On July 22, 2020, after Plaintiff Kuan produced his vehicle purchase agreement (Weddle Decl. ISO Mot., Doc. 110-1 ¶ 5), Toyota filed the instant Motion—an amended version of its original motion—to also compel arbitration as to Plaintiff Kuan's claims.

### 1.   Plaintiff Kosareff's Agreement

On September 19, 2010, Kosareff entered into a Closed End Motor Vehicle Lease Agreement with Toyota Santa Monica to lease a new 2010 Toyota Prius.  (*Id.* ¶ 3; AMC ¶

---

[2] Both parties accompanied their papers with numerous, largely boilerplate evidentiary objections to the opposing party's evidence.  In such instances, it is "unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised."  *Doe v. Starbucks, Inc.*, No. SACV 08-0582-AG-CW, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009).  Therefore, to the extent that the Court relies on objected-to evidence, the relevant objections are overruled.  *See Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-00201-JLS-KES                    Date: October 20, 2020
Title: Remy McCarthy et al. v. Toyota Motor Corporation et al.

38.)  The lease agreement contains an arbitration provision that provides, *inter alia*, as follows:

> You agree that any claims arising from or relating to this Lease or related agreements or relationships, including the validity, enforceability, arbitrability or scope of this Provision, at your or our election, are subject to arbitration.   This includes, without limitation, claims in contract, tort, pursuant to statute, regulation, ordinance or in equity or otherwise, and claims asserted by you against us, *and the following Covered Parties*:  Toyota Lease Trust, Toyota Motor Credit Corporation and/or any of our or its affiliates and/or any of our or their employees, officers, successors, assigns, or against any third party providing any product or service in connection with the Lease that you name as a codefendant in any action against any of the foregoing.

(Ex. A to Weddle Decl. ISO Mot., Doc. 110-2 [hereinafter Kosareff Lease] at 1336 (emphasis added).)

Toyota explains that "Toyota Motor Credit Corporation ('TMCC') is an indirect automotive leasing and lease servicing company, which accepts assignment of consumer leases from originating automotive dealers" and "services consumer leases on behalf of Toyota Lease Trust ('TLT')."  (Boyd Decl. ISO Mot., Doc. 110-5, ¶ 3.)  In Kosareff's lease agreement, Toyota Santa Monica assigns the lease to TLT.  (Kosareff Lease at 1331.)  Toyota argues that, in so assigning the lease, Toyota Santa Monica also assigned the lease to TMCC.  (*See* Boyd Decl. ISO Mot. ¶ 4 ("Santa Monica Toyota assigned Plaintiff Stephen Kosareff's . . . Closed End Motor Vehicle Lease to TMCC by way of TLT.").)

In September 2013, at the end of his lease term, Kosareff purchased the Prius by entering into a Retail Installment Sales Contract with Toyota Santa Monica.  (Kosareff Decl. ISO Opp., Doc. 113-28 ¶ 7; Ex. 1 to Kosareff Decl., Doc. 113-28.)  Unlike the lease agreement, the Sales Contract does not contain an arbitration provision.  (*See* Ex. 1 to Kosareff Decl.)

---

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-00201-JLS-KES                              Date: October 20, 2020
Title: Remy McCarthy et al. v. Toyota Motor Corporation et al.

### 2. Plaintiffs Kakish And Kuan's Agreements

Both Kakish and Kuan purchased, rather than leased, their Priuses: Kakish purchased a new 2010 Prius in 2010 from Longo Toyota, and Kuan purchased a new 2013 Prius in 2014 from Claremont Toyota. (Weddle Decl. ISO Mot. ¶¶ 4–5; AMC ¶¶ 36, 39.) To do so, both entered Retail Installment Sale Contracts with their respective dealerships. (Weddle Decl. ISO Mot. ¶¶ 4–5.) Both agreements contain arbitration provisions that provide, in relevant part, as follows:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration [Clause/Provision], and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by court action.

(Ex. B to Weddle Decl. ISO Mot., Doc. 110-3 [hereinafter Kakish Sale] at 1490; Ex. C to Weddle Decl. ISO Mot., Doc. 110-4 [hereinafter Kuan Sale] at 36.[3])

Toyota is not a signatory to any of the three agreements. Accordingly, it moves to compel arbitration of the three Plaintiffs' claims on different theories. It seeks to enforce the arbitration provision in all three agreements based on an equitable estoppel theory. And it also argues that it can enforce the arbitration provision in Plaintiff Kosareff's lease as a third-party beneficiary.

_____

[3] The Kuan agreement is illegible, except the Court was able to make out the words "arbitration provision" on page 36 of the agreement. Because Plaintiffs do not object to Toyota's representations about the language of the agreement's arbitration provision (*see* Doc. 116), the Court accepts those representations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-00201-JLS-KES                           Date: October 20, 2020
Title: Remy McCarthy et al. v. Toyota Motor Corporation et al.

## II.    <u>LEGAL STANDARD</u>

Congress enacted the Federal Arbitration Act "to overcome courts' reluctance to enforce arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). The Act applies to written contractual provisions "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract[s.]" 9 U.S.C. § 2. The rest of Section 2 "provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, *save upon such grounds that exist at law or in equity for the revocation of any contract*.'" *Circuit City*, 279 F.3d at 892 (quoting 9 U.S.C. § 2). In other words, "although 'courts may not invalidate arbitration agreements under state laws applicable *only* to arbitration provisions,' general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." *Circuit City*, 279 F.3d at 892 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

"The court's role under the [FAA] is [] limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000). The "party seeking to compel arbitration has the burden under the FAA to show [these two elements]." *Ashbey v. Archstone Property Mgmt., Inc*., 785 F.3d 1320, 1323 (9th Cir. 2015).

"In addition, the parties can agree to delegate arbitrability—or [other] 'gateway' issues concerning the scope and enforceability of the arbitration agreement, and whether the dispute should go to arbitration at all—to the arbitrator." *Armstrong v. Michaels Stores, Inc.*, No. 17-CV-06540-LHK, 2018 WL 6505997, at *5 (N.D. Cal. Dec. 11, 2018). But courts "should not assume that the parties agreed to arbitrate" gateway issues "unless there is clear and unmistakable evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (internal quotation marks and brackets omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-00201-JLS-KES                                Date: October 20, 2020
Title: Remy McCarthy et al. v. Toyota Motor Corporation et al.

## III.   <u>DISCUSSION</u>

Toyota, as a non-signatory to Plaintiffs' lease and purchase agreements, argues that it can enforce the relevant arbitration provisions against each of the three Plaintiffs based on an equitable estoppel theory.  It further argues that it can enforce the arbitration provision of Kosareff's lease agreement as a third-party beneficiary.

Plaintiffs oppose Toyota's Motion on several grounds, among them that Toyota has no standing to enforce the arbitration provisions, either as a third-party beneficiary or on equitable estoppel grounds.  (Opp. at 3–17.)  Because the Court agrees that Toyota lacks standing to enforce the provisions, the Court does not address Plaintiffs' remaining arguments.

### A.   **Equitable Estoppel – All Three Plaintiffs**

"Because arbitration is a creature of contract law," non-signatories cannot enforce arbitration provisions against signatories unless an exception applies.  *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001); *Jensen v. U-Haul Co. of California*, 18 Cal. App. 5th 295, 300–01 (2017).  The doctrine of equitable estoppel provides one such exception.  *In re Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017).  "The theory behind equitable estoppel is that a plaintiff may not, 'on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.'"  *Id.* (quoting *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013); *see also NORCAL Mutual Ins. Co. v. Newton*, 84 Cal. App. 4th 64, 84 (2000) ("No person can be permitted to adopt that part of an entire transaction which is beneficial to him/her, and then reject its burdens.").  The Ninth Circuit has "adopted as a controlling statement of California law the equitable estoppel rule set forth in *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209 (2009)."  *Murphy*, 724 F.3d at 1229.  That is:

Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-00201-JLS-KES                                    Date: October 20, 2020
Title: Remy McCarthy et al. v. Toyota Motor Corporation et al.

> rely on the terms of the written agreement in asserting its claims against the
> nonsignatory or the claims are intimately founded in and intertwined with the
> underlying contract, and (2) when the signatory alleges substantially
> interdependent and concerted misconduct by the nonsignatory and another
> signatory and the allegations of interdependent misconduct are founded in or
> intimately connected with the obligations of the underlying agreement.

*Kramer v. Toyota Motor Corp.,* 705 F.3d 1122, 1128–29 (9th Cir. 2013) (internal
citations and quotation marks omitted) (quoting and citing *Goldman*, 173 Cal. App. 4th at
219, 221).

    Here, Toyota relies on the first circumstance, arguing that "Plaintiffs' claims
against [it] rely upon and are intimately founded on and intertwined with Plaintiffs'
agreements" such that Toyota may enforce the arbitration provision in Plaintiffs'
agreements based on equitable estoppel.  (Mot. at 19–20.)  This equitable estoppel
argument is foreclosed by Ninth Circuit precedent.

    In *Kramer*, 705 F.3d 1122, Toyota sought review of the district court's denial of
its motion to compel arbitration, in a case that involved arbitration provisions
substantially similar (if not identical) to those at issue here.  *See id.* 1123–25.  The
plaintiffs in *Kramer*, owners of 2010 Priuses purchased between June 2009 and February
2010, brought a putative class action alleging that "they experienced defects in their
antilock brake systems (ABS), resulting in increased stopping distances.  Plaintiffs
further allege[d] that Toyota had notice of the defect as early as July 2009 but failed to
disclose the defect and continued to manufacture and sell vehicles with defective ABS."
*Id.* at 1124.  The plaintiffs asserted claims for violation of the CLRA, unfair competition
under the UCL, false advertising under California's False Advertising Law, breach of the
implied warranty of merchantability under California Commercial Code § 2314, and
common law breach of contract.  *Id.*

    In rejecting Toyota's argument that it could compel arbitration as a non-signatory
"because Plaintiffs [we]re equitably estopped from avoiding arbitration," the Ninth
Circuit found, "as did the district court, that Toyota erroneously equate[d] Plaintiffs'
purchase of the Class Vehicles and the existence of Purchase Agreements between

---

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-00201-JLS-KES                    Date: October 20, 2020
Title: Remy McCarthy et al. v. Toyota Motor Corporation et al.

Plaintiffs and the Dealerships with interrelatedness between Plaintiffs' claims and the obligations of the Purchase Agreements." *Kramer*, 705 F.3d at 1128, 1132. In other words, the Ninth Circuit explained, the plaintiffs were neither relying on nor otherwise seeking "to enforce or challenge the terms, duties, or obligations of the Purchase Agreements." *Id.* at 1131–32. The Ninth Circuit's reasoning in *Kramer* applies here with equal force.

Toyota argues here, as it did in *Kramer*, *see id.* at 1130, that Plaintiffs' claims are intimately intertwined with their lease and purchase agreements because the claims presuppose "the purchase or lease of a vehicle," without which "plaintiffs' warranty and consumer claims would fail." (Mot. at 20.) The Ninth Circuit very clearly rejected this argument in *Kramer*, explaining that while plaintiffs' claims "presume[d] a transaction involving a purchase of a Class Vehicle," they did not mean that the claims *intimately relied* on the existence of the Purchase Agreements. *See Kramer*, 705 F.3d at 1132.

Here, as in *Kramer*, "Plaintiffs' claims [arise] independently of *the terms of the agreements* containing arbitration provisions." *Id.* (emphasis added). Toyota argues that Plaintiffs' claims are more closely intertwined with the agreements than plaintiffs' claims in *Kramer* because here Plaintiffs allege "[Toyota] purportedly hid information *at the time of lease/purchase* and intentionally caused Plaintiffs to pay more for *their lease/purchase under their agreements*." ((Mot. at 21) (emphasis added).) But Toyota's argument amounts to an assertion that Plaintiffs' claims "presume a transaction involving a purchase of a [vehicle]." *Kramer*, 705 F.3d at 1132. Like the claims in *Kramer*, none of Plaintiffs' claims here reference or rely on the terms of the agreements. Instead, Plaintiffs allege fraudulent, deceptive, and/or misleading conduct in connection with Toyota's alleged knowledge of and failure to disclose an alleged defect. Plaintiffs also allege that Toyota misrepresented the Prius's "characteristics, uses or benefits." (AMC ¶ 225(a).) As such, Plaintiffs' claims "arise[] independently from" their agreements. *See Kramer*, 705 F.3d at 1130. Plaintiffs' implied warranty claims, too, arise independently from their agreements because the agreements "expressly differentiate dealer warranties from manufacturer warranties." *See id.* at 1131. (*See* Kosareff Lease at 1332; Kakish

---

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-00201-JLS-KES                    Date: October 20, 2020
Title: Remy McCarthy et al. v. Toyota Motor Corporation et al.

Sale at 1490.[4])  As the panel explained in *Kramer*, "a consumer who purchased a vehicle with cash instead of credit [as provided by the agreements at issue in that decision] would still state a claim for which relief could be granted, absent a Purchase [or Lease] Agreement."  705 F.3d at 1132.  In short, from an equitable-estoppel perspective, the claims here are indistinguishable from the claims in *Kramer*.

Toyota also attempts to distinguish *Kramer* by arguing that "the plaintiffs in *Kramer* did not allege a claim for fraudulent concealment, and the court rejected Toyota's equitable estoppel arguments where . . . Toyota cited to only 'sparse portions' of the plaintiffs' complaint alleging concealment."  (Mot. at 21–22.)  Toyota does not explain how the presence or absence of a fraudulent concealment claim, without more, is relevant to the holding in *Kramer*.  Indeed, it is not.  And the panel's reference to "the sparse portions of the First Amended Complaint that Toyota cite[d] to" was related to Toyota's argument that equitable estoppel applied because the plaintiffs "allege[d] collusion and interdependent misconduct between Toyota and the Dealerships."  705 F.3d at 1132–33.  Toyota does not make the collusion argument here.

In sum, *Kramer* controls, equitable estoppel does not apply, and Toyota may not compel arbitration of Plaintiffs' claims on this basis.

### B. Third-Party Beneficiary Theory – Plaintiff Kosareff's Agreement

Toyota additionally argues that it can enforce the arbitration provision of Kosareff's lease agreement as a third-party beneficiary of that provision.  "A third party beneficiary is someone who may enforce a contract because the contract is made expressly for his benefit."  *Matthau v. Super. Ct*., 151 Cal. App. 4th 593, 602 (2007).  Like equitable estoppel, the third-party beneficiary theory provides an exception to the rule that a non-signatory generally cannot enforce an arbitration provision against a signatory.  *Jensen*, 18 Cal. App. 5th at 300; *see also Ronay Family Ltd. P'ship v. Tweed*,

_____

[4] Because Kuan's agreement is illegible, the Court cannot determine whether the agreement similarly distinguishes manufacturer warranties from dealer warranties.  The Court assumes that it does.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-00201-JLS-KES                    Date: October 20, 2020
Title: Remy McCarthy et al. v. Toyota Motor Corporation et al.

216 Cal. App. 4th 830, 838 (2013). The party seeking to enforce the agreement "bears the burden of proving that it is a third-party beneficiary of the [agreement]." *Murphy*, 724 F.3d at 1233–34 (citing *Garcia v. Truck Ins. Exch.*, 36 Cal. 3d 426, 436 (1984) (in bank)).

Whether a non-signatory has standing to enforce a contractual arbitration provision is a question of law for the trial court in the first instance. *See Smith v. Microskills San Diego L.P.*, 153 Cal. App. 4th 892, 900 (2007). "The test for determining whether [a person has standing as a third-party beneficiary] is whether an intent to benefit a third person appears from the terms of the contract." *Jensen*, 18 Cal. App. 5th at 301. Whether the parties intended an arbitration provision to benefit a third-party is a matter of ordinary contractual interpretation. *Gravillis v. Coldwell Banker Residential Brokerage Co.*, 143 Cal. App. 4th 761, 774–75 (2006) (internal citations omitted) ("The rules of construction generally applicable to contracts [also] govern the interpretation of . . . arbitration provisions."). While doubts regarding the scope of arbitrable issues should be resolved in favor of arbitrability, where the question is "not whether a particular issue is arbitrable, but whether a particular *party* is bound by the arbitration agreement . . . the liberal federal policy regarding the scope of arbitrable issues is inapposite." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (internal citations and quotation marks omitted) (emphasis in original).

Toyota argues that it is an "affiliate" of TMCC within the meaning of the arbitration provision and therefore a third-party beneficiary. (Mot. at 16–19.) Specifically, it argues that the two entities collectively referred to in this Order as "Toyota" are affiliates because one of them (TMC) is TMCC's ultimate parent company, and the other (TMS) shares the same ultimate parent company as TMCC. (Boyd Decl. ISO Mot. ¶¶ 5, 6.) Toyota avers that this indirect parent-subsidiary relationship is enough to make it an "affiliate" of TMCC under the lease. (*See* Mot. at 17.) Kosareff counters that the decisions Toyota cites are inapposite, that Toyota has "failed to draw any link between [the] definitions [used in the decisions it cites] and the circumstances surrounding the Kosareff lease agreement," and that Toyota therefore fails to carry its

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-00201-JLS-KES                              Date: October 20, 2020
Title: Remy McCarthy et al. v. Toyota Motor Corporation et al.

burden of showing that the parties intended to benefit it.  (Opp. 14–17.)[5]  The Court agrees.

The lease agreement provides no definition for the term "affiliates"; so, the parties' intended meaning must be ascertained according to the term's ordinary meaning and in light of the lease agreement's language and context.  *See Gravillis*, 143 Cal. App. 4th at 774–75.  Kosareff contracted with a dealership to lease a new Prius.  His lease agreement included an arbitration provision that covers any claims "*arising from or relating to [the] Lease or related agreements or relationships*" that he brings against the following "Covered Parties": (1) the dealership, (2) two named entities that *service consumer leases* (TLT and TMCC), (3) affiliates of the dealership or the two named entities, (3) *employees, officers, successors, assigns of* the dealership or the two named entities, and (4) any third-party that *provides products or services in connection with the lease* and is named as a co-defendant along with the foregoing.  (Kosareff Lease at 1336 (emphasis added); *see also* Boyd Decl. ISO Mot. ¶ 3.)

Nothing about the plain language of this provision indicates that the parties intended to include within the meaning of "affiliate" any entity—however removed from the lease agreement—that has a corporate tie to the dealership or the two other named entities.  To the contrary, *all* other persons listed as "Covered Parties" in the arbitration provision have a direct connection to the lease itself.  The two named third-party beneficiaries are TLT, the *assignee of the lease*, and TMCC, an entity that *services the lease* on TLT's behalf.  (Boyd Decl. ISO Mot. ¶ 3.)  The provision also extends to employees, officers, successors, and assigns of the dealership or the two named entities.  This category includes persons who service the lease as agents of the named entities (*i.e.,* officers and employees) or persons who can be legally bound by the named entities'

_____

[5] Kosareff also advocates for a reading of the arbitration provision that applies to the listed third-party beneficiaries only in a suit where the third-party beneficiary is named as co-defendant with the dealership.  (Opp. at 12.)  Because the Court finds that Toyota's third-party beneficiary argument fails even under a broader reading of the provision, it does not address this issue.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-00201-JLS-KES                    Date: October 20, 2020
Title: Remy McCarthy et al. v. Toyota Motor Corporation et al.

servicing of the lease (*i.e.,* successors and assigns).  Finally, the arbitration provision also extends to third parties who provide products or services *in connection with the lease* but *only when* those third parties are named as a co-defendant with one of the aforementioned "Covered Parties."  (Kosareff Lease at 1336.)  Reading the term "affiliate" to include any and all corporate entities with ties to TLT, TMCC, or the dealership—as Toyota urges the Court to do here—would render the term incongruously broad as compared to the other listed "Covered Parties."

Other language in the provision and the lease supports the conclusion that Toyota is not an "affiliate."  The lease creates no rights or obligations on the part of the manufacturer (*i.e.*, Toyota).  Indeed, the lease states that, if the vehicle is new "[it] is subject to the standard new warranty from the manufacturer" but that "we [the seller] make no warranties as to the vehicle's condition, merchantability, suitability, or fitness for a particular purpose."  (Kosareff Lease at 1332.)  That the lease explicitly disclaimed any effect on the warranties at issue in this action further dictates that Toyota is not within the scope of persons the parties intended to benefit or oblige under the lease.  Moreover, the arbitration provision itself applies only to "any claims *arising from or relating* to this Lease or related agreements or relationships."  ((*Id.* at 1336) (emphasis added).)  California courts interpreting similar language have held that a non-signatory cannot invoke third-party beneficiary standing to enforce an arbitration provision against a signatory when the provision does not name that party and plaintiff is bringing claims unrelated to the contract.  *Smith*, 153 Cal. App. 4th at 898–900 ("[R]ead in the context of other provisions of the note which limit arbitration to claims related to the note, the reference 'to relationships which arise from this Note' cannot be extended to a dispute with [a potentially related third-party] which is entirely unrelated to the note.").

Toyota argues for a more generic definition of "affiliate."  Specifically, it argues that the "commonly understood meaning" of the term is "one who is dependent upon, subordinate to, an agent of, or part of a larger or more established organization or group," and that this definition necessarily encompasses Toyota's relationship to TMCC here, because Toyota and TMCC are part of the same organization.  (Mot. at 17 n. 9; Reply at 11 (citing *Iqbal v. Ziadeh*, 10 Cal. App. 5th 1, 10 (2017).)

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-00201-JLS-KES                    Date: October 20, 2020
Title: Remy McCarthy et al. v. Toyota Motor Corporation et al.

The decision Toyota cites in support, however, undermines its position. In that decision, *Ziadeh*, the defendant argued that it was covered by a release that applied to "affiliates" of the signatory. 10 Cal. App. 5th at 5. Defendant owned the property where the events giving rise to the suit had occurred and had leased that property to the signatory at all relevant times. *Id.* The court of appeal disagreed with defendant and the trial court's conclusion that defendant was an "affiliate" of the signatory, and therefore covered by the release, under these facts, holding that the term "refers to a relationship that is closer than a mere arm's length contractual relationship." *Id.* at 9–10. In language that Toyota quotes in its brief, the *Ziadeh* court noted that the dictionary definitions of the term "affiliate" center around corporate ownership and control. *Id.* But it did not hold, as Toyota seems to suggest, that corporate ownership—however indirect—always creates an "affiliate" relationship or that the dictionary definition supersedes the contracting parties' intended meaning. To the contrary, the *Ziadeh* court stated that the definition of the term "[was] not to be determined by isolating any single clause or group of clauses" but to be ascertained from the contract as whole. *Id.* at 10. The court therefore looked to the language of the release, and noted that it "extend[ed] primarily to persons or entities who are owners, fiduciaries, employees, or agents of the former defendants" and that "[interpreting] 'affiliate' as meaning one who has only a contractual relationship with the former defendants is inconsistent with the intent demonstrated by the remainder of the release." *Id.* at 11.

As stated above, the arbitration provision here similarly discloses an intent to cover persons that are related to the named entities and the lease agreement by something more than indirect ownership. And Toyota fails to argue that the contract, read as a whole, supports a broader interpretation of the term "affiliate." Nor does Toyota provide any evidence that it controls or directs TLT or TMCC in servicing the lease.

Finally, Toyota argues that—notwithstanding the "affiliate" language—it can enforce the provision as a third-party beneficiary because its corporate relationship with TMCC places it "within the class of persons (*i.e.*, assigns) whom the arbitration provision[] [was] intended to benefit." (Mot. at 16–19.) Specifically, Toyota argues that it "may compel arbitration under the assigns language in the arbitration provision"

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-00201-JLS-KES                           Date: October 20, 2020
Title: Remy McCarthy et al. v. Toyota Motor Corporation et al.

because Toyota Santa Monica assigned the agreement "to TMCC by way of TLT" and TMCC has a relationship with one of the Toyota entities sued here (TMC).  (*See* Mot. at 19.)  But the purported assignment of the lease to TMCC "by way of" assignment to TLT is a creature of Toyota's interpretation—the lease agreement provides only for assignment to TLT.  (*See* Kosareff Lease at 1331 ("The words 'we,' 'us,' and 'our' refer to the Lessor, and after assignment, the Toyota Lease Trust ('TLT') and any subsequent assignee.  [TMCC] will be servicing this Lease on behalf of TLT . . . .").)  Nor does Toyota provide other evidence of an assignment to TMCC.  At the hearing on the Motion, Toyota conceded this deficiency.

For the foregoing reasons, Toyota lacks standing to enforce the arbitration provision against Kosareff as a third-party beneficiary.

**IV.    <u>CONCLUSION</u>**

For the foregoing reasons, the Court DENIES Toyota's Motion.

Initials of Preparer:  mku