

EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KATHLEEN RYAN-BLAUFUSS, CATHLEEN MILLS and KHEK KUAN, on behalf of themselves and all others similarly situated, | **Case No. 8:18-CV-00201-JLS-KES** |

Plaintiffs,

vs.

TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., and DOE DEFENDANTS 1-10,

Defendants.

___

STEVEN KOSAREFF and LAURA KAKISH, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES USA, INC., and DOES 1-10, inclusive,

Defendants.

# SETTLEMENT AGREEMENT

# TABLE OF CONTENTS

Section                                                                    Page

**I.**     PROCEDURAL HISTORY...............................................................................2

**II.**    DEFINITIONS.................................................................................................6

**III.**   SETTLEMENT RELIEF ..............................................................................14

**IV.**    NOTICE TO THE CLASS ............................................................................29

**V.**     REQUESTS FOR EXCLUSION ...................................................................36

**VI.**    OBJECTIONS TO SETTLEMENT ..............................................................37

**VII.**   RELEASE AND WAIVER ............................................................................37

**VIII.**  ATTORNEYS' FEES, COSTS, LITIGATION EXPENSES AND INDIVIDUAL CLASS REPRESENTATIVE SERVICE AWARDS ..................................................45

**IX.**    PRELIMINARY APPROVAL ORDER, FINAL ORDER, FINAL JUDGMENT AND RELATED ORDERS................................................................................45

**X.**     MODIFICATION OR TERMINATION OF THIS SETTLEMENT AGREEMENT ......47

**XI.**    GENERAL MATTERS AND RESERVATIONS...........................................50

WHEREAS, Plaintiffs' Amended Consolidated Master Complaint in the above-referenced actions allege that the inverters of certain Prius vehicles are defective;

WHEREAS, Class Counsel have investigated the facts and underlying events relating to the subject matter of the claims, have conducted substantial discovery, have carefully analyzed the applicable legal principles and, taking into account the substantial benefits to be received pursuant to this Settlement Agreement as well as the burden, risks, uncertainties, and costs of further prosecution of their claims, have concluded that a resolution and compromise on the terms set forth herein is fair, reasonable, adequate, and in the best interests of the Class Representatives and the Class;

WHEREAS, Toyota, for the purpose of avoiding burden, expense, risk, and uncertainty of continuing to litigate the claims, and for the purpose of putting to rest all controversies with Class Representatives, the Class, and the Action, and claims that were or could have been alleged, except as otherwise set forth herein, and without any admission of liability or wrongdoing, desires to enter into this Settlement Agreement;

WHEREAS, Class Counsel represent and warrant that they are fully authorized to enter into this Settlement Agreement on behalf of Class Representatives and the Class, and that Class Counsel have consulted with and, as demonstrated by their signatures below, all Class Representatives fully support and have no objection to this Settlement Agreement; and

WHEREAS, it is agreed that this Settlement Agreement shall not be deemed or construed to be an admission, concession, or evidence of any violation of any federal, state, or local statute, regulation, rule, or other law, or principle of common law or equity, or of any liability or wrongdoing whatsoever, by Toyota or any of the Released Parties (as defined below), or of the truth or validity of any of the claims that Class Representatives have asserted;

**WHEREAS**, as a result of extensive arm's length negotiations, including numerous mediation sessions amongst the Parties before Settlement Special Master Patrick A. Juneau, Class Representatives, Class Counsel (all terms as defined below) and Toyota have entered into this Settlement Agreement;

**NOW, THEREFORE**, without any admission or concession by Class Representatives or Class Counsel of any lack of merit to their allegations and claims, and without any admission or concession by Toyota of any liability or wrongdoing or lack of merit in its defenses, in consideration of the mutual covenants and terms contained herein, and subject to both the preliminary and final approval by the Court, Class Counsel, Class Representatives, and Toyota agree as follows:

I.  <u>**SUMMARY OF PROCEDURAL HISTORY**</u>

A.      On January 31, 2018, Jevdet Rexhepi filed a class action complaint in the California Superior Court, County of Los Angeles, captioned <u>Rexhepi v. Toyota Motor Sales, U.S.A., Inc.</u>, No. BC692528, alleging, among other things, that Toyota (as defined below) manufactured, distributed, and sold certain Prius vehicles that contained inverters with Intelligent Power Modules ("IPMs") that allegedly caused the vehicles to decelerate or stall under certain conditions, and that Jevdet Rexhepi and others similarly situated sustained economic losses as a result of Toyota's alleged fraudulent concealment of the alleged IPM defect, violating the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ l750-1784, and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17209, and unjust enrichment ("Rexhepi Case").

B.      On February 5, 2018, Remy McCarthy and others filed a class action complaint in <u>McCarthy et al. v. Toyota Motor Corp. et al.</u>, No. 8:18-cv-00201-JLS-KES (C.D. Cal.) ("McCarthy Case") making allegations similar to those alleged in the Rexhepi Case, and including claims for breaches of implied and express warranties, intentional and negligent misrepresentation, violations

2

of the CLRA and the UCL, and violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

C.      On April 5, 2018, the plaintiffs in the Rexhepi Case filed and served a First Amended Complaint that included causes of action based on common law fraudulent concealment, violations of the CLRA and UCL (including predicate claims of, *inter alia*, violations of the Computer Fraud and Abuse Act), breaches of warranty, trespass to chattels, and unjust enrichment.

D.      On April 24, 2018, in response to the Parties' stipulations in the McCarthy Case, the Court ordered the McCarthy plaintiffs to file and serve an amended complaint no later than May 16, 2018, and gave Toyota forty-five (45) days to respond. *See* Dkt. No. 16. Accordingly, a First Amended Complaint was filed in the McCarthy on May 16, 2018, *see* Dkt. No. 20, to which Toyota responded with a motion to dismiss and a motion to strike on July 2, 2018, *see* Dkt Nos. 22-23.

E.      On July 16, 2018, the Rexhepi Case was voluntarily dismissed after the state court stayed that action pending the final resolution of the McCarthy Case, the Rexhepi case was voluntarily dismissed. The following day (on July 17, 2018), Rajdave Bhandari and Jevdet Rexhepi filed a federal class action complaint Bhandari et al. v. Toyota Motor Sales, U.S.A., Inc., No. 18-cv-6183 (C.D. Cal.), making allegations similar to those alleged in the Rexhepi Case ("Bhandari Case").

F.      On September 14, 2018, the Court issued an order denying Toyota's motion to strike and denying the motion to dismiss as to all but three of the eight claims for relief alleged in the McCarthy Case. *See* Dkt. No. 35.

G.      On October 5, 2018, Toyota announced that it was conducting Safety Recall J0V for the purpose of updating the ECU software in each of the vehicles that had been included in Safety Recalls E0E and F0R.

H.      The same day (October 5, 2018), the Court adopted the Parties' stipulation to consolidate the Bhandari Case with the McCarthy Case and ordered that the Bhandari Case be administratively closed.

I.      On November 20, 2018, Plaintiffs filed a Consolidated Master Complaint in the McCarthy Case. Dkt. No. 43. Toyota responded on January 11, 2019, by filing a motion to dismiss the Consolidated Master Complaint together with stipulations regarding a briefing schedule for the motion to dismiss and to continue the initial Scheduling Conference until April 26, 2019. *See* Dkt. Nos. 44-46. The Court adopted both stipulations. *See* Dkt. No. 47.

I.      On March 22, 2019, the Court conducted a hearing of the motion to dismiss the Consolidated Master Complaint. Dkt. No. 58. On April 9, 2019, the Court denied the motion with respect to all claims for relief except those pertaining to express warranty and trespass to chattels. Dkt. No. 59.

J.      On July 23, 2019, Plaintiffs filed an Amended Consolidated Master Complaint (which remains the operative complaint). Dkt. No. 73. Toyota responded by filing an Answer on August 22, 2019. Dkt. No. 77.

K.      As a result of the pandemic, the Parties stipulated to modify the Scheduling Order to postpone Plaintiffs' motion for class certification until deposition discovery could be completed. *See, e.g.,* Dkt. Nos. 93-94, 105-106.

L.      On May 22, 2020, Toyota moved to compel arbitration, *see* Dkt. Nos. 109-110, which the Court denied on October 20, 2020, *see* Dkt. No. 131.

M.      On June 24, 2020, Toyota announced publicly that it would be conducting Safety Recall 20TA10 for the purpose of installing in certain 2013 to 2015 model year Prius and certain 2014 to 2017 model year Prius V vehicles the same ECU software that it deployed in the vehicles that were the subject of Safety Recall J0V.

N.      In the interim, the Parties stipulated to modifying the Scheduling Order for the purpose of postponing Plaintiffs' motion for class certification, which the Court granted on August 31, 2020. Dkt. Nos. 126-127. When it became evident that the pandemic would continue to preclude deposition discovery of witnesses located in Japan, the Parties stipulated to a procedure by which Plaintiffs would use interrogatories as the principal means of obtaining the discovery they needed to proceed with a motion for class certification. *See* Dkt. Nos. 126-130. The Parties then stipulated to a proposed order appointing Patrick A. Juneau as Settlement Special Master. Dkt. No. 134, 143, 160.

O.      Plaintiffs filed their motion for class certification on April 9, 2021, *see* Dkt. Nos. 161-167. Toyota filed its opposition to class certification on June 22, 2021. *See* Dkt. Nos. 192-196.

P.      On July 20, 2021, the Parties entered into a stipulation to stay all proceedings, which the Court granted on July 23, 2021. *See* Dkt. Nos. 205-206.

Q.      Settlement discussions began in or about June 2020, continued on a parallel track with the litigation, and culminated in this Settlement Agreement. During this period, the parties negotiated with and without the assistance of the Settlement Special Master.

R.      Counsel have conducted an extensive investigation regarding the facts and the law relevant to the claims and defenses in this case. Before commencing the Class Actions and during the litigation and settlement negotiations, Class Counsel and, where relevant, their consultants conducted a thorough examination and evaluation of the facts and relevant law to assess the merits

of Plaintiffs' claims and potential claims, and to determine how best to serve the interests of the class. After litigation commenced, Class Counsel conducted extensive party discovery, and also conducted third-party discovery.  Discovery included propounding multiple sets of document demands and requests for production, interrogatories, and requests for admissions, as well as the filing of multiple motions to compel.  In response, Toyota produced approximately 200,000 pages of documents.  Class Counsel have reviewed and analyzed documents produced by Toyota, as well as material they obtained through their own investigative efforts.

S.     Plaintiffs have assessed the evidence Toyota submitted to the Court in opposition to Plaintiffs' motion for class certification and confirmatory discovery pertaining to Toyota's testing and analyses of the software installed in Subject Vehicles by way of Safety Recalls J0V and 20TA10 ("Recall Software"), by which Toyota confirmed that the Recall Software fail-safe modes ensure that the malfunction or failure of an Insulated-Gate Bipolar Transistor in a Subject Vehicle's IPM will not "result in rapid deceleration of the vehicle, a loss in the vehicle's power steering or an impact on the ability to brake normally in the vehicle [and that] the vehicle can be driven at safe speeds above approximately 60 mph while in the fail-safe mode of operation." ECF No. 193-9.

T.     In addition, in Toyota's initial and supplemental responses to Cathleen Mills Interrogatory No.  7 (which response Toyota updated and supplemented in a verified response on November 4, 2021 and November 26, 2021), Toyota confirmed that the Recall Software ensures that Subject Vehicles will enter fail-safe mode in the event of an IPM or Inverter malfunction or failure, and that Toyota is aware of no incident in which a Subject Vehicle equipped with the Recall Software was unable to travel ~60 miles per hour after entering fail-safe mode.

II.   **DEFINITIONS**

A.     As used in this Settlement Agreement and the attached exhibits (which are an integral part of this Settlement Agreement and are incorporated herein in their entirety by

reference), the following terms have the following meanings, unless this Settlement Agreement specifically provides otherwise:

1. "Action" means the consolidated action composed of <u>Remy McCarthy et al., v. Toyota Motor Corp., et al.</u>, No. 8:18-CV-00201-JLS-KES (C.D. Cal.), and <u>Bhandari et al. v. Toyota Motor Sales, U.S.A., Inc.</u>, No. 18-cv-6183 (C.D. Cal.).

2. "Agreement" or "Settlement Agreement" means this Settlement Agreement and the exhibits attached hereto or incorporated herein, as well as any and all subsequent amendments and any exhibits to such amendments.

3. "Attorneys' Fees, Costs, and Expenses" means such funds as may be awarded by the Court to compensate any and all attorneys representing plaintiffs who have assisted in conferring the benefits upon the Class under this Settlement Agreement for their fees and expenses in connection with the Action and the Settlement Agreement, as described in Section VIII of this Agreement, which are to be paid separately by Toyota.

4. "Claim Period" means the time period in which Class Members may submit a Registration and Reimbursement Claim Form to the Settlement Notice Administrator, which shall run for a period of three months following the Final Effective Date.

5. "Claimant" means a Class Member who has submitted a Claim for reimbursement.

6. "Class" means, for settlement purposes only, all persons, entities or organizations (a) who own or lease a Subject Vehicle as of the date of the entry of the Preliminary Approval Order, or (b) who, at any time before the entry of the Preliminary Approval Order, owned or leased a Subject Vehicle.  Excluded from the Class are: (a) Toyota, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and

7

distributors' officers, directors and employees; and Toyota Dealers and Toyota Dealers' officers and directors; (b) Plaintiffs' Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly exclude themselves from the Class as provided in this Settlement Agreement.

7.     "Class Counsel" means Jeffrey Fazio and Dina Micheletti of Fazio Micheletti LLP and Amnon Siegel of Miller Barondess LLP.

8.     "Class Member" means a member of the Class.

9.     "Class Notice" means the notice program described in Section IV of this Agreement.

10.     "Class Representatives" means Kathleen Ryan-Blaufuss, Catherine Mills, Khek Kuan, Steven Kosareff and Laura Kakish.

11.     "Court" means the United States District Court for the Central District of California.

12.     "Current Warranty Enhancement Programs" means Warranty Enhancement Programs ZE3, ZF5 and/or 20TE10 related to the Subject Vehicles.

13.     "Customer Confidence Program" means the program as further described in Section III.C below.

14.     "Direct Mail Notice" means the notices substantially in the form as attached hereto as Exhibits 6 and 7.

15.     "DTC" means Toyota's Diagnostic Trouble Codes.

16.     "Escrow Account" means the custodial or investment account administered by the Escrow Agent and the Settlement Special Master in which the funds to be deposited will be held, invested, administered, and disbursed pursuant to this Agreement and an Escrow Agreement.

17.    "Escrow Agent" means JPMorgan Chase & Co., the agreed-upon entity to address and hold for distribution the funds identified in this Agreement pursuant to the terms of an Escrow Agreement.  Toyota shall select the Escrow Agent, which shall be agreed to by Class Counsel, whose approval shall not be unreasonably withheld.

18.    "Escrow Agreement" means the agreement by and among Class Counsel, Toyota and the Escrow Agent with respect to the escrow of the funds to be deposited into the Escrow Account pursuant to this Agreement, which agreement, among other things, shall specify the manner in which the Settlement Special Master shall direct and control, in consultation with Toyota and Class Counsel, the disbursement of funds in the Qualified Settlement Fund.

19.    "Fairness Hearing" means the hearing for the purposes of the Court determining whether to approve this Settlement Agreement as fair, reasonable, and adequate.

20.    "Final Effective Date" means the latest date on which the Final Order and/or Final Judgment approving this Settlement Agreement becomes final. For purposes of this Settlement Agreement:

(a)    if no appeal has been taken from the Final Order and/or Final Judgment, "Final Effective Date" means the date on which the time to appeal therefrom has expired; or

(b)    if any appeal has been taken from the Final Order and/or Final Judgment, "Final Effective Date" means the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc and petitions for certiorari or any other form of review, have been finally disposed of in a manner that affirms the Final Order or Final Judgment; or

9

(c)      in the event of an appeal or other effort to obtain review, and subject to Court approval, if Class Counsel and Toyota agree in writing, the "Final Effective Date" can occur on a date prior to final resolution, however, there is no obligation to agree to advance the Final Effective Date.

21.     "Final Judgment" means the Court's final judgment as described in Section IX of this Settlement Agreement, which is to be substantially in the form attached hereto as Exhibit 2.

22.     "Final Order" means the Court's order approving the Settlement Agreement, as described in Section IX, which is to be substantially in the form attached hereto as Exhibit 3.

23.     "First Use" means the date that the Subject Vehicle is originally sold or leased.

24.     "Initial Notice Date" means the date on which the first notice is disseminated to the Class.

25.     "Insert" means the Direct Mail Notice that will be in substantially the same form as attached as Exhibits 6 and 7.  The Insert shall be inserted by the current owner/lessee of a Class Vehicle into the Subject Vehicles' Warranty & Maintenance Guides.  The failure to insert the Insert to the Warranty & Maintenance Guide in no way affects the right of subsequent owners of a Subject Vehicle to avail themselves of the benefits described in this Settlement Agreement, including, but not limited to, the Customer Confidence Program and/or the Loaner/Towing Program.

26.     "Inverter" means an inverter with converter assembly.

27.     "IPM" means Intelligent Power Module.

10

28.  "Loaner/Towing Program" means the program as further described in Section III.B, below.

29.  "Loaner Vehicle" means a vehicle of any potential make, model or year, provided pursuant to Section III.B.4.

30.  "Long Form Notice" means the Long Form Notice substantially in the form attached hereto as Exhibit 4.

31.  "Out-of-Pocket Claim" means a claim for Reimbursement by a Class Member or his or her or its representative submitted on a Registration and Reimbursement Claim Form, as provided in this Settlement Agreement.

32.  "Out-of-Pocket Claims Process" means the process for submitting and reviewing Claims described in this Settlement Agreement.

33.  "Parties" means Class Representatives and Toyota, collectively, as each of those terms is defined in this Settlement Agreement.

34.  "Plaintiffs' Counsel" means counsel for plaintiffs in the Action, Fazio Micheletti LLP, Cuneo Gilbert & LaDuca LLP, Waymaker LLP, Audet & Partners LLP, Miller Barondess LLP and Kiesel Law LLP.

35.  "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving the settlement as outlined in Section IX and to be substantially in the form attached hereto as Exhibit 5.

36.  "Publication Notice" means the publication notice substantially in the form as attached hereto as Exhibit 8.

37.  "Recall(s)" means Safety Recalls E0E, F0R, J0V, and/or 20TA10.

38.     "Recall Remedy" means the repairs and/or countermeasures performed in connection with Recalls E0E, F0R, J0V, and/or 20TA10.

39.     "Registration and Reimbursement Claim Form" means the document, in substantially the same form as Exhibit 1 attached to this Settlement Agreement.

40.     "Reimbursement" and "Reimbursement Payment" mean to pay a Class Member for the cost of repairing or replacing an IPM or an Inverter in a Subject Vehicle before the Final Effective Date and/or towing and/or car rental expenses incurred in connection with the repair or replacement of an IPM or Inverter, as set forth in Section III.D, below.

41.     "Release" means the release and waiver set forth in Section VII of this Settlement Agreement and in the Final Judgment and Final Order.

42.     "Released Parties" or "Released Party" means any Toyota entity, including, but not limited to, Toyota Motor Corporation, and Toyota Motor Sales, U.S.A., Inc., and each of their past, present and future parents, predecessors, successors, spin-offs, assigns, holding companies joint-ventures and joint-venturers, partnerships and partners, members, divisions, stockholders, bondholders, subsidiaries, related companies, affiliates, officers, directors, employees, associates, dealers, representatives, suppliers, vendors, advertisers, service providers, distributors and sub-distributors, agents, attorneys, administrators and advisors. The Parties expressly acknowledge that each of the foregoing is included as a Released Party even though not identified by name herein.  Notwithstanding the definition of Released Parties, any independant claims against Toyota Dealers unrelated to the Subject Matter of this lawsuit, including but not limited to any claims for damage to a vehicle in connection with repairing or replacing an IPM or Inverter, are expressly retained by Class Members.

43.    "Settlement Claims Administrators" shall mean Patrick A. Juneau and Thomas Juneau of Juneau David, APLC, agreed to by the Parties and submitted to the Court for appointment.

44.    "Settlement Fund" means the payments made by Toyota, in accordance with the terms and schedule set forth in Section III.A.3, below, which are to be used pursuant to the terms of this Agreement.

45.    "Settlement Notice Administrator" means the Court-appointed third-party agent or administrator agreed to by the Parties and submitted to the Court for appointment to implement the notice plan and address the Out-of-Pocket Claims Process. The Parties agree that Jeanne Finegan of Kroll Notice Media shall serve as Settlement Notice Administrator, subject to approval by the Court.

46.    "Settlement Special Master" means Patrick A. Juneau, who was appointed by this Court in an Order dated February 23, 2021, to serve as Settlement Special Master to administer, coordinate and preside over all settlement-related proceedings.

47.    "Subject Vehicles" means 2010 to 2015 model year Prius vehicles, and 2012 to 2017 model year Prius V vehicles that were the subject of Safety Recall E0E, F0R, J0V, and/or 20TA10.

48.    "Subject Matter of the Action" means claims that Toyota engaged in common law fraud, breaches of warranty, and violations of the California Consumers Legal Remedies Act and Unfair Competition Law in connection with the sale of Subject Vehicles, without disclosing the existence of an alleged defect that causes the IPM and/or Inverters Toyota installed in those vehicles to malfunction or fail due to Thermal Stress, for which Plaintiffs sought

restitution, injunctive relief, and compensatory and punitive damages and for which Toyota issued the Recalls.

49.     "Supporting Documentation" means evidence supporting an Out-of-Pocket Claim (*e.g.,* proof of ownership of a Subject Vehicle, a receipt, invoice, credit card statement, canceled check, or a sworn statement establishing the nature and amount of an expenditure for repairing or replacing an IPM or Inverter or an associated towing or car rental expense).

50.     "Thermal Event" means damage to casings and other parts of an Inverter, as Toyota has used the term in connection with its Thermal Event Protocol.

51.     "Thermal Stress" means exposure of one or more Insulate-Gate Bipolar Transistors in the IPM to excessive amounts of heat and/or electrical current.

52.     "Toyota" or "Defendant" means Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc.

53.     "Toyota Dealers" means authorized Toyota dealers.

54.     "Toyota's Counsel" means John P. Hooper, King & Spalding LLP, David Schrader and Morgan, Lewis & Bockius LLP.

B.     Other capitalized terms used in this Settlement Agreement but not defined in this Section II shall have the meanings ascribed to them elsewhere in this Settlement Agreement.

C.     The terms "he or she" and "his or her" include "it" or "its" where applicable.

## III.     <u>SETTLEMENT RELIEF</u>

In consideration for the dismissal of the Action with prejudice, as contemplated in this Settlement Agreement, and for the full and complete Release, Final Judgment and Final Order, as further specified herein, Toyota agrees to provide the relief specified in this Section. The costs and expenses associated with providing the relief and otherwise implementing the relief specified in Section III of this Settlement Agreement shall be the sole obligation of, and paid by, Toyota.

### A.  <u>Qualified Settlement Fund</u>

1.      The Parties, through their respective counsel, shall establish and move the Court to establish and create a Qualified Settlement Fund ("QSF"), pursuant to Internal Revenue Code § 468B and the Regulations issued thereto, with the QSF to be held by the Escrow Agent.  All payments to be made by Toyota pursuant to this Agreement shall be made by wire transfer into an Escrow Account, established and controlled consistent with and pursuant to an Escrow Agreement at JPMorgan Chase & Co., a mutually-agreed-upon bank. The Escrow Agent shall invest the payments in short-term United States Agency or Treasury Securities (or a mutual fund invested solely in such instruments), or in a United States Government fully-insured account, and shall collect and reinvest any and all interest accrued thereon, if applicable, unless interest rates are such that they would effectively preclude investment in interest-bearing instruments as defined herein. All (i) taxes on the income of the Escrow Account and (ii) expenses and costs incurred with taxes paid from the Escrow Account (including, without limitation, expenses of tax attorneys, accountants, and the Tax Administrator) (collectively, "Taxes") shall be timely paid out of the Escrow Account without prior Order of the Court. All other expenses related to the Escrow Account and/or QSF (including but not limited to the payment of the Escrow Account officer), shall be paid for separately, by Toyota.  The Parties agree that the Escrow Agent, with the assistance of the Tax Administrator, shall be responsible for filing tax returns for the QSF and paying from the Escrow Account any Taxes owed with respect to the QSF. The Parties hereto agree that the Escrow Account shall be treated as a QSF from the earliest date possible and agree to any relation-back election required to treat the Escrow Account as a QSF from the earliest date possible. The Escrow Account shall be initially comprised of one fund which shall be a single QSF. Toyota, the Settlement Special Master, Class Representatives, and Class Counsel shall have no responsibility with

15

respect to taxes owed by the QSF or Class Members who receive distributions from the QSF pursuant to this Settlement Agreement.

2.      Toyota agrees to pay a total of $20,000,000.00 into the QSF to fund the Settlement Fund, as provided below.   If the Court does not grant final approval to the Settlement, any funds remaining in the QSF shall revert to Toyota, and any such funds paid into the QSF and not returned to Toyota will be credited towards any eventual settlement that may be approved.

3.      **Settlement Fund**: Subject to the provisions of Paragraphs 1 and 2, above, Toyota shall establish a non-reversionary Settlement Fund containing a total of $20,000,000.00, which shall be primarily used to make Reimbursement Payments, as further described in this Settlement Agreement.

(a)      Class Members who receive a Reimbursement Payment shall be given a minimum of 180 days to cash those checks, and will be advised, by notice included with the Reimbursement Payment checks, that, if those checks are not cashed within this timeframe, the uncashed checks will revert to the QSF to be redistributed to persons who received and cashed checks pursuant to this Settlement ("Redistribution Checks"), at which time the Class Member shall no longer be entitled to proceeds from the Settlement.  At or about the 90th day following the issuance of Reimbursement Payments in the form of checks to Class Members, the Settlement Notice Administrator shall take reasonable steps to contact those Class Members who have not yet cashed their checks to remind them that they will expire as of the date printed on the checks and advise them again of the consequences of not cashing the checks. This information shall also be set forth in the Long Form Notice. This time limit shall not apply to those Class Members who have challenged the amount of the initial check.

(b)     The same time limits and procedures (including reminders) shall apply to Redistribution Checks.

(c)     If there is a balance in the QSF after all valid Out-of-Pocket Claims have been paid and after all uncashed checks are redeposited pursuant to Section III.C.3(a), as determined by the Settlement Claims Administrators, the balance shall be distributed pro rata, unless it is administratively unfeasible, as Redistribution Checks to Class Members who cashed their initial Reimbursement Payment check, and to those Class Members who had their Inverter and/or IPM replaced prior to the Final Effective Date, regardless of whether those Class Members incurred reimbursable Out-of-Pocket expenses in connection with the replacement.  Each eligible Class Member is entitled to one Redistribution Check, which shall be capped at $250, unless the Parties agree to a higher cap and jointly recommend the amount to the Settlement Special Master for approval.  Redistribution Checks shall be treated in the same manner as Reimbursement payments.

(d)     If the Settlement Claims Administrators determine that issuing Redistribution Checks pursuant to Section III.C.3(c) is administratively unfeasible (e.g., because the cost of distributing the remaining funds would consume them), then those remaining funds in the Settlement Fund shall be distributed cy pres to Texas A&M Transportation Institute[1] with the Court's approval.  If a cy pres is ultimately determined to be administratively feasible and necessary, the parties

---

[1]  For 70 years, Texas A&M's Transportation Institute ("TTI") has addressed complex transportation challenges and opportunities with innovation, objectivity and unmatched technical expertise. With expertise in engineering, planning, economics, policy, public engagement, environmental sciences, data sciences, and social sciences, TTI researchers play a key role in educating the next generation of transportation professionals, training students both in the laboratory and in the classroom.  See generally https://tti.tamu.edu/about/.

reserve their right to make a recommendation to the Court as to the specific program(s) at Texas A&M Transportation Institute that the remaining funds will be distributed.

4.    To the extent the amount in the Settlement Fund is insufficient to pay all eligible Out-of-Pocket Claims, Toyota shall provide additional funds sufficient to pay all such eligible Out-of-Pocket Claims. The Settlement Claims Administrators shall determine the validity of all Out-of-Pocket Claims.Toyota shall deposit 100% of the Settlement Fund into the QSF, not later than thirty (30) calendar days after the Final Effective Date.

**B.**    <u>**Loaner/Towing Program**</u>

1.    Pursuant to the Loaner/Towing Program, and without cost to Class Members and/or subsequent purchasers or transferees of Subject Vehicles other than as reflected in the subparagraphs below, upon request from the Class Member, Toyota shall provide the following for the duration of the Customer Confidence Program:

    (a)    A complimentary Loaner Vehicle, while the repair and/or replacement of the Subject Vehicle's IPM and/or Inverter is being performed, only if the repair and/or replacement exceeds 4 hours to perform and/or the Subject Vehicle is required by the Toyota Dealer to remain at the dealership overnight.   A Loaner Vehicle is available starting with the day on which the Subject Vehicle is brought to a Toyota Dealer for repair and/or replacement of the Inverter and/or IPM until the day that work is completed.

    (b)    A complimentary tow to a Toyota Dealer in order for the Subject Vehicle to undergo an Inverter and/or IPM repair and/or replacement pursuant to the terms of this Settlement Agreement:

18

i.      If a Class Member or subsequent purchaser or transferee of a Subject Vehicle is uncomfortable driving their Subject Vehicle to a Toyota Dealer, and the Subject Vehicle is not on a public roadway, they must contact a Toyota Dealer to arrange for towing.  If a Class Member or subsequent purchaser or transferee of a Subject Vehicle is uncomfortable driving their Subject Vehicle to a Toyota Dealer and the Subject Vehicle is on a public roadway, they should contact a Toyota Dealer to arrange for towing and/or contact Toyota's 24/7 Roadside Assistance Hotline at 1-800-444-4195 to obtain towing to the nearest Toyota Dealer.

ii.     If a Class Member is uncomfortable driving their  Subject Vehicle to a Toyota Dealer and the Class Member is unable to obtain a tow from a Toyota Dealer or Toyota's 24/7 Roadside Assistance Hotline within a reasonable amount of time, then Toyota will reimburse reasonable towing expenses to the nearest Toyota Dealer, up to a maximum of $250 per tow. Toyota Dealers shall provide reimbursement for such towing expenses.

2.     Toyota shall begin the Loaner/Towing Program on the Final Effective Date.

**C.**     **Customer Confidence Program**

1.     Toyota will offer the Customer Confidence Program to all Class Members, subsequent purchasers and/or transferees of a Subject Vehicle as specified in this Section C, which shall begin on the Final Effective Date.  A Class Member's rights under the Customer Confidence Program are transferred with the sale or transfer of the Subject Vehicle. As of the Final Effective Date, the Customer Confidence Program will provide prospective coverage for repairs to and/or

19

replacement of the Inverter and/or IPM for twenty (20) years from the date of First Use of the Subject Vehicle on the following terms. This coverage shall extend to all Subject Vehicles, regardless of whether the Recall Remedy has been performed.

      (a)    Toyota shall extend coverage for the Subject Vehicles under the Current Warranty Enhancement Programs (which relates to DTCs P0A94, P0A1A, P324E, and P3004) to provide coverage for a total of twenty (20) years from the date of First Use of the Subject Vehicle.

      (b)    In addition to the coverage provided for in Section C.1(a) above, Toyota shall provide coverage for repairs and/or replacement of the Inverter if a Toyota Dealer: (i) identifies that either DTC P0A7A and/or DTC P0A78 have been triggered; (ii) confirms that the Inverter has failed; and (iii) determines that the Inverter needs to be repaired and/or replaced.

      (c)    Toyota shall also provide repairs and/or replacement of the Inverter, at no cost to the Class Member, if a Toyota Dealer: (i) confirms that the Inverter has failed due to a Thermal Event, regardless of what DTC is triggered; and (ii) determines that the Inverter needs to be repaired and/or replaced.

      (d)    Toyota shall also provide coverage for repairs and/or replacement of the IPM, regardless of which DTC is triggered (if any), if a Toyota Dealer: (i) confirms that the IPM has failed; and (ii) cannot demonstrate that the IPM failure was due to anything other than Thermal Stress.

      (e)    Nothing about this Settlement Agreement or the implementation of the Customer Confidence Program shall be interpreted, construed or read to diminish any pre-existing warranty coverage. All rights otherwise available to

owners and lessees under pre-existing warranties will continue to remain available to Class Members notwithstanding the implementation of the Customer Confidence Program.

(f)     Nothing about this Settlement Agreement or the implementation of the Customer Confidence Program shall be interpreted, construed or read to diminish any duty to abide by Toyota's obligations under applicable law, including, but not limited to, the Motor Vehicle Traffic Safety Act, the Federal Clean Air Act, and any state equivalents, including those implemented by the California Air Resources Board.

2.     Class Members and/or subsequent purchasers or transferees of a Subject Vehicle who are denied coverage or other benefits under the Customer Confidence Program and/or the Loaner/Towing Program and wish to appeal the denial shall complete and submit the Appeal Form attached hereto as Exhibit 11 and any necessary documentation within forty-five (45) days of being notified of such denial.  Toyota shall instruct Toyota Dealers that they are to provide each Class Member or subsequent purchaser/transferee who is denied coverage or other benefits eligible for payment under the Customer Confidence Program and/or the Loaner/Towing Program with a repair order or work order that includes the following language: "To appeal the denial of a loaner, tow or repair related to the Inverter and/or IPM, you must submit an Appeal Form, which can be found at www.toyotapriusinvertersettlement.com.  Your appeal must be submitted within 45 days from the date on this document."     In the event a Toyota Dealer fails to include the required language on a work or repair order, a Class Member or subsequent purchaser/transferee shall have the right to appeal for one year from the date of the denial of such coverage. This appeal process shall also be referenced in the Direct Mail Notice, and the Appeal Form shall be made available

21

on the settlement website and may be submitted, along with all applicable documentation, by mail or electronically via the settlement website.  The Settlement Claims Administrators shall make a final determination as to whether coverage or other benefits should be provided in accordance with the terms of this Settlement Agreement, and shall do so within forty-five (45) days of the Appeal Form's submission. In the event an appeal of a denial related to the Customer Confidence Program is decided in the favor of the Class Member or subsequent purchaser/transferee, and the Class Member and/or subsequent purchaser or transferee of a Subject Vehicle paid to replace or repair an IPM or Inverter in the Subject Vehicle during this time (whether at a Toyota Dealer or an independent mechanic) a check for the amount of the repair will be sent as soon as practicable after that decision, subject to the submission of proof of payment for that IPM/Inverter repair or replacement.

3.      Toyota shall provide the Settlement Notice Administrator with the names, addresses and VIN of all owners and lessees of Subject Vehicles in its possession, custody or control, including but not limited to the names, addresses and VIN of all original owners and lessees of Subject Vehicles, and shall identify the VIN numbers for the Subject Vehicles utilizing R.L. Polk & Co. data to identify current names and addresses for Class Members. All such information shall be verified by the National Change of Address database or the equivalent.

4.      Toyota shall take affirmative, reasonable steps to ensure that its customer service personnel and all Toyota dealerships are sufficiently notified of and educated about the terms of the Loaner/Towing Program and the Customer Confidence Program.  This notice shall remain available in a manner that is easily accessible to Toyota dealership and Toyota customer service personnel (similar to the manner in which Toyota Dealers and Toyota customer-service representatives are informed about recalls and service campaigns) for the duration of the Customer

22

Confidence Program.  For example, information advising Toyota Dealers and Toyota Customer Service personnel of the terms of the Loaner/Towing Program and the Customer Confidence Program shall be associated with a Subject Vehicle's identification number ("VIN") for the duration of these programs, and shall be readily available when a VIN is accessed by a Toyota Dealer or by Toyota Customer Service personnel, including Toyota's 24/7 Roadside Assistance Hotline.  Toyota has advised Plaintiffs that customer service personnel are trained to request a VIN over the telephone, and that Toyota Dealers input a VIN to look for available programs when a vehicle is brought to a Toyota Dealer for repair or service.

> **D.** **<u>Out-of-Pocket Claims Process</u>**

1.      The Out-of-Pocket Claims Process shall be used to make Reimbursement Payments for enumerated expenses not previously reimbursed by Toyota.

2.      The Parties agree that the following list of types of reasonable expenses incurred prior to the Final Effective Date are eligible for Reimbursement under the Out-of-Pocket Claims Process:

> (a)      rental car expenses incurred in connection with the repair or replacement of an IPM or an Inverter;

> (b)      towing charges that had been incurred in connection with the repair or replacement of an IPM or an Inverter; and

> (c)      the cost of repairing or replacing an IPM or an Inverter.

3.      Out-of-pocket expenses that are the result of damage to an Inverter or IPM as a result of a collision, misuse/abuse, and/or other similar instances of vehicle damage will not be eligible for reimbursement under this Section III.D.  Toyota bears the burden of proving any exception to coverage under this Settlement Agreement.  Consistent with the terms and conditions provided for in the New Vehicle Limited Warranty and the current Warranty Enhancement

Programs, the exclusion from coverage relating to "Salvage or Total-Loss Vehicles" (*i.e.,* Subject

Vehicles that have been issued a "salvage" title or similar title under any state's law; or has ever

been declared a "total loss" or equivalent by a financial institution or insurer, such as by payment

for a claim in lieu of repairs because the cost of repairs exceeded the cash value of the Subject

Vehicle, does not apply to or in any way affect eligibility for reimbursement under this Section

III.D.

      4.     As part of the Out-of-Pocket Claims Process, Class Members shall be eligible for

the relief in this Settlement Agreement, provided that Class Members: (a) complete and timely

submit Registration and Reimbursement Claim Forms, with Supporting Documentation, to the

Settlement Notice Administrator within the Claim Period; (b) have Claims that are eligible for

reimbursement; and (c) do not opt out of the settlement. For those Class Members who verify that

they incurred the expense of an IPM or Inverter repair or replacement at a Toyota Dealer and

despite best efforts are unable to obtain proof of that repair or replacement, the Settlement Claims

Administrator will request that Toyota confirm whether the repair and/or replacement was

performed at a Toyota Dealer and how much the Class Member was charged.  The Registration

and Reimbursement Claim Form shall be available on the settlement website and can be submitted,

along with all applicable documentation, in either hard-copy or entirely on-line.

      5.     The Settlement Notice Administrator shall receive the Claims, whether submitted

electronically via the settlement website or by U.S. Mail and will perform an initial review to

determine whether a Claim meets certain threshold requirements for processing (*e.g.,* whether it

was submitted prior to the applicable deadline; is for a Class Vehicle; includes supporting

documentation and/or is signed).  If the Claim is sufficient, it will be transmitted to the Settlement

Claims Administrators for substantive review.   The Settlement Claims Administrators shall

24

administer the final review and processing of Claims and shall have the authority to determine whether Registration and Reimbursement Claim Forms submitted by Class Members are complete and timely in accordance with this Settlement Agreement.

      (a)    The Settlement Notice Administrator shall send all timely and completed Registration and Reimbursement Claim Forms within fifteen (15) days of receipt, to the Settlement Claims Administrators.

      (b)    If a Claim is deemed deficient, the Settlement Claims Administrators shall mail a notice of deficiency letter to the Class Member requesting that the Class Member complete the deficiencies and resubmit the Registration and Reimbursement Claim Form within sixty (60) days of the date of the letter from the Settlement Claims Administrators. If the Class Member fails to provide the requested documentation or information within thirty (30) days, the Class Member will be mailed a reminder. If the Class Member fails to provide the requested documentation and information within thirty (30) days of the reminder, that Claim shall be denied without further processing. The Settlement Claims Administrators shall maintain appropriate staffing at all times and use best efforts to complete their review of timely and completed Registration and Reimbursement Claim Forms within ninety (90) days of receipt of a completed Claim. If accepted for payment, the Settlement Claims Administrators  shall authorize payment of the Claim of the Class Member and shall use its best efforts to ensure the payment of timely, valid and approved Claims within ninety (90) days after receipt of the Claim, or within ninety (90) days of the Final Effective Date, whichever is later. The processing of Registration and Reimbursement Claim Forms shall begin upon

receipt of the Registration and Reimbursement Claim Forms, without regard to the Final Effective Date, however, payments may be made prior to the occurrence of the Final Effective Date only at Toyota's sole discretion.

(c)     If the Claim is rejected for payment, in whole or in part, the Settlement Claims Administrators shall notify Class Counsel and Toyota's Counsel of said rejection of Class Member's Claim and the reason(s) why. The decision of the Settlement Claims Administrators shall be final if consistent with the terms of the Settlement Agreement, provided, however, that Class Counsel and Toyota's Counsel may meet and confer in an attempt to resolve these denied Claims. If Class Counsel and Toyota jointly recommend payment of the Claims or payment of a reduced claim amount, then Toyota's Counsel shall inform the Settlement Claims Administrators that the Claim should be paid. If Class Counsel and Toyota's Counsel disagree, they shall notify the Settlement Claims Administrators who shall make a final determination as to whether the Claim shall be paid. If a Claim is rejected in full or in part, the Settlement Claims Administrators shall direct the Settlement Notice Administrator to mail a notice of rejection letter to the Class Member via First-Class mail, and also email notice to the Class member if an e-mail address was provided.

6.     The Settlement Claims Administrators shall timely provide copies of all rejection notices to Class Counsel and to Toyota's Counsel.  Any Class Member whose Claim is rejected in full shall not receive any payment for the Claim submitted and shall, in all other respects, be bound by the terms of the Settlement Agreement and by the Final Order and Final Judgment entered in the Action, unless such Class Member has submitted a timely request for exclusion pursuant to

26

Section V. Similarly, any Class Member whose Claim is approved in part and rejected in part shall not receive any payment for that portion of the Claim that is rejected and shall, in all other respects, be bound by the terms of the Settlement Agreement and by the Final Order and Final Judgment entered in the Action, unless such Class Member has submitted a timely request for exclusion pursuant to Section V.

7.       No person shall have any claim against Toyota, the Settlement Special Master, the Settlement Claims Administrators, the Class Representatives, the Class, Plaintiffs' Counsel, Class Counsel, Toyota's Counsel, or the Settlement Notice Administrator based on any eligibility determinations made in accordance with the Settlement Agreement.

8.       All costs of settlement and claims administration incurred pursuant to or related to this Settlement Agreement, including, but not limited to, expenses associated with the Settlement Claims Administrators and the provision of Class Notice, shall be paid by Toyota.

### E.       Duties of the Settlement Claims Administrators

1.       The Settlement Claims Administrators shall carry out the terms and conditions of the Out-of-Pocket Claims Process in this Agreement, as well as the towing reimbursement claims review for the Loaner/Towing Program and the appeals process outlined above in Section III.C.2. The Settlement Claims Administrators shall be responsible for, without limitation: (a) timely and efficiently coordinating with the Settlement Notice Administrator regarding the transfer, receipt and review of Out-of-Pocket Claims from Claimants; (b) reviewing Out-of-Pocket Claims; (c) determining whether additional information is needed to process Out-of-Pocket Claims and instructing the Settlement Notice Administrator to inform the Claimants of said requests; (d) determining if Out-of-Pocket Claims are valid and entitled to relief; (e) providing a chart of relief awards, if any, for Out-of-Pocket Claims received by the Settlement Claims Administrators to the Settlement Notice Administrator; (f) providing such other information that is reasonably requested

by the Settlement Notice Administrator and/or the Parties; (g) reviewing and approving/rejecting, in whole or in part, the prospective towing charges of Class Members relating to the Loaner/Towing Program; and (h) coordinating with the Parties and the Settlement Notice Administrator to address and resolve the appeals brought by Class Members related to denials of coverage under the Customer Confidence Program.

2.     If the Settlement Claims Administrators makes a material or fraudulent misrepresentation to any party, conceals requested material information, or fails to perform adequately on behalf of Toyota or the Class, the Parties may agree to remove the Settlement Claims Administrators. Disputes regarding the retention or dismissal of the Settlement Claims Administrators shall be referred to the Court for resolution.

3.     The Settlement Claims Administrators shall maintain staffing sufficient to perform all duties delegated to the Settlement Claims Administrators in this Agreement.

4.     In the event of a misdirected communication, the Settlement Special Master and the Parties, through their respective counsel, shall promptly, after receipt, provide copies of any correspondence to each other that should properly be delivered to the Settlement Special Master and/or counsel for the other Party.

### F.     Catalyst Credit for J0V and 20TA10 Recalls

1.     The Parties have submitted the issue of whether this lawsuit served to catalyze Toyota's decision to implement Safety Recalls J0V and 20TA10 and the 20TE10 Warranty Enhancement Program established in connection with Safety Recall 20TA10, and whether Plaintiffs and their counsel should be given catalyst credit for same to the Settlement Special Master for his consideration and determination.

2.      Attached as Exhibit 10 are the findings by the Settlement Special Master related to the catalyst credit for the J0V and 20TA10 Safety Recalls and the 20TE10 Warranty Enhancement Program.

## IV.   NOTICE TO THE CLASS

### A.      Class Notice

Class Notice will be accomplished through a combination of the Direct Mail Notice, Publication Notice, notice through the settlement website, Long Form Notice, social media notice, and other applicable notice, each of which is described below, as specified in the Preliminary Approval Order, the Declaration of the Settlement Notice Administrator (attached hereto as Exhibit 9), and this Settlement Agreement and in order to comply with all applicable laws, including but not limited to, Fed. R. Civ. P. 23, the Due Process Clause of the United States Constitution, and all other applicable statutes, laws and rules. Notice shall be provided in English. Notice shall also be provided in Spanish on the settlement website, and the Direct Mail Notice and Long Form Notice shall contain a statement "Para ver este aviso en español, visita www.toyotapriusinvertersettlement.com". The costs of disseminating the notice and otherwise implementing the notice specified in Section IV of this Settlement Agreement shall be paid by Toyota.

### B.      Direct Mail Notice

1.      The Settlement Notice Administrator shall send the Direct Mail Notice, substantially in the forms attached hereto as Exhibits 6 and 7, by U.S. Mail, proper postage prepaid, to the current and former registered owners of Subject Vehicles, as identified by data to be forwarded to the Settlement Notice Administrator by R.L. Polk & Co.

2.      There shall be two versions of the Direct Mail Notice, as follows:

29

(a)     The Direct Mail Notice attached hereto as Exhibit 6 shall be mailed to Class Members who are identified by Toyota as having previously had their Inverter and/or IPM replaced and who may be eligible for a potential Redistribution Check pursuant to Section III.A.3(c), above; and

(b)     The Direct Mail Notice attached hereto as Exhibit 7 shall be mailed to the balance of the Class Members who have not been identified by Toyota as having previously had their Inverter and/or IPM repaired or replaced.  This Direct Mail Notice shall request that Class Members complete and submit the separate Registration and Reimbursement Claim Form attached as Exhibit 1 no later than three (3) months from the Final Effective date to the extent they had their Inverter and/or IPM replaced and seek to be eligible for a potential Redistribution Check pursuant to Section III.A.3(c), above.

3.     The Direct Mail Notice shall comport with Due Process and shall, *inter alia,* inform potential Class Members of their rights and obligations under this Settlement Agreement (including the right to opt-out and/or object), and how to obtain the Long Form Notice via the settlement website, via regular mail or via a toll-free telephone number, pursuant to Sections IV.E and IV.F, below. In addition, the Settlement Notice Administrator shall: (a) re-mail any notices returned by the United States Postal Service with a forwarding address no later than the deadline found in the Preliminary Approval Order; (b) by itself or using one or more address research firms, as soon as practicable following receipt of any returned notices that do not include a forwarding address, use best efforts to conduct an advanced address search using all available information to try to obtain better addresses and promptly mail copies of the applicable notice to any better addresses so found.

WORKAMER\03145\197001\39200673.v8-10/14/21

C.    **Publication Notice**

The Settlement Notice Administrator shall cause the publication of the Publication Notice as described in the Declaration of the Settlement Notice Administrator, and in such additional newspapers, magazines and/or other media outlets as shall be agreed upon by the Parties. The form of the Publication Notice agreed upon by the Parties is in the form substantially similar to the one attached to the Agreement as Exhibit 8.

D.    **Internet Website**

The Settlement Notice Administrator shall establish a dedicated settlement website that will inform Class Members of the terms of this Settlement Agreement, including but not limited to (1) instructions on how to file a claim and obtain reimbursement, (2) instructions on how to contact the Settlement Claims Administrators for assistance with their claims, (3) frequently asked questions (FAQs) and answers, and (4) other information concerning their rights, dates and deadlines and related information. The dedicated settlement website shall be subject to search-engine optimization and shall remain active for the duration of the Customer Confidence Program.

The website shall also include, in .pdf format, materials agreed upon by the Parties and/or required by the Court, including, but not limited to, the Settlement Agreement; the Long Form Notice and Direct Mail Notice; all motions filed in connection with this Settlement, including the motions for preliminary and final approval and a motion for attorney's fees and costs; all Court orders concerning this settlement; documents necessary to submit an appeal, as described in Section III.C.2., above; and any other Court documents that may be of interest to most Class Members. After the Final Effective Date, the website may delete information that is no longer necessary to ongoing issues (such as motions that have been decided), to enable Class Members and subsequent Subject Vehicle owners to easily find information relevant to the ongoing

Customer Confidence Program and the Loaner/Towing Program, including the details of those programs, and the Appeal Form.  Relevant Court Orders will remain posted to the website for the duration.  The QR code associated with the Direct Notice shall remain active and the link associated with the QR code shall be manintained in proper working order by the Settlement Notice Administrator for the duration of the Customer Confidence Program.

**E.**     **Long Form Notice**

1.     Contents of Long Form Notice.

The Long Form Notice shall be in a form substantially similar to the document attached to this Settlement Agreement as Exhibit 4, and shall advise Class Members of the following:

(a)     General Terms:  The Long Form Notice shall contain a plain and concise description of the nature of the Action, the history of the litigation of the claims, the preliminary certification of the Class for settlement purposes, and the Settlement Agreement, including information on the identity of Class Members, how the Settlement Agreement would provide relief to the Class and Class Members, what claims are released under the Settlement Agreement and other relevant terms and conditions.

(b)     Opt-Out Rights:   The Long Form Notice shall inform Class Members that they have the right to opt out of the settlement. The Long Form Notice shall provide the deadlines and procedures for exercising this right.

(c)     Objection to Settlement:  The Long Form Notice shall inform Class Members of their right to object to the Settlement Agreement and to appear at the

Fairness Hearing. The Long Form Notice shall provide the deadlines and procedures for exercising these rights.

(d)     <u>Fees and Expenses</u>:   The Long Form Notice shall inform Class Members about the amounts being sought by Plaintiffs' Counsel as Attorneys' Fees and Expenses and individual awards to the Class Representatives, and shall explain that Toyota will pay the fees and expenses awarded to Plaintiffs' Counsel and individual awards to the Class Representatives in addition to amounts being made available for relief to Class Members by this Settlement Agreement.

2.     Registration and Reimbursement <u>Claim Forms</u>.

The Long Form Notice and settlement website shall include the Registration and Reimbursement Claim Form, which shall be in a form substantially similar to the document attached to this Settlement Agreement as Exhibit 1 and which shall inform the Class Member that he or she must fully complete and timely return the Registration and Reimbursement Claim Form within the Claim Period to be eligible to obtain relief pursuant to this Settlement Agreement.

3.     <u>Dissemination of Long Form Notice</u>.

The Long Form Notice shall be available on the settlement website. The Settlement Notice Administrator shall send via first-class mail, the Long Form Notice to those persons who request it in writing or through the toll-free telephone number.

**F.     Toll-Free Telephone Number**

The Settlement Notice Administrator shall establish a toll-free telephone number staffed by personnel who are trained to respond to questions about the settlement, answer questions about the status of submitted claims, claim payment, how to submit a claim, and other material aspects of the Settlement.  Live operators shall be available Monday through Friday, from 5:00 am to 5:00

pm, PST.  The phone number will also be configured to enable callers to leave a message after hours, which will be returned by the Settlement Notice Administrator the next business day.  In addition, Toyota shall take reasonable steps to ensure its customer service personnel are aware of the relevant provisions of the Settlement to provide meaningful assistance to Class Members and are able to direct Class Members who contact Toyota to the Settlement Notice Administrator for additional information.  The Settlement Notice Administrator and Toyota customer service personnel shall have the ability to, and will, live transfer calls between each other and to the Settlement Claims Administrators, to ensure callers obtain necessary information from the correct entity.

### G.     Internet Banner Notifications

The Settlement Notice Administrator shall, pursuant to the Parties' agreement, establish banner notifications on the internet that will provide settlement-related information to Class Members and shall utilize additional internet-based notice efforts as to be agreed to by the Parties, including but not limited to utilizing popular Prius forums, where possible to do so.

### H.     Class Action Fairness Act Notice

The Settlement Notice Administrator shall send to each appropriate State and Federal official, the materials specified in 28 U.S.C. § 1715, and shall otherwise comply with its terms. The identities of such officials and the content of the materials shall be mutually agreeable to the Parties and in all respects comport with statutory obligations.

### I.     Duties of the Settlement Notice Administrator

1.     The Settlement Notice Administrator shall be responsible for, without limitation: (a) printing, mailing or arranging for the mailing of the Direct Mail Notice; (b) handling returned mail not delivered to Class Members; (c) attempting to obtain updated address

information for any Direct Mail Notices and  all  other mail (including returned checks) returned without a forwarding address; (d) making any additional mailings required under the terms of this Settlement Agreement; (e) responding to requests for Long Form Notice; (f) receiving and maintaining on behalf of the Court any Class Member correspondence regarding requests for exclusion and/or objections to the Settlement Agreement; (g) forwarding written inquiries to Class Counsel or their designee for a response, if warranted; (h)   establishing a post-office box for the receipt of any correspondence; (i) responding to requests from Class Counsel and/or Toyota's Counsel; (j) establishing a website and a staffed toll-free telephone number with after-hours voice response unit with message capabilities to which Class Members may refer for information about the Action and the Settlement Agreement; (k) otherwise implementing and/or assisting with the dissemination of the notice of the Settlement Agreement; (l) receiving and processing of Claims, including for deficiencies; and (m) coordinating with the Settlement Claims Administrators regarding Claims, including the forwarding of Claims. The Settlement Notice Administrator shall also be responsible for, without limitation, implementing the terms of the Out-of-Pocket Claims Process and related administrative activities. The Settlement Notice Administrator shall be responsible for arranging for the publication of the Publication Notice, establishing internet banner notifications and for consulting on Class Notice. The Settlement Notice Administrator shall coordinate their activities to minimize costs in effectuating the terms of this Settlement Agreement.

2.     If the Settlement Notice Administrator makes a material or fraudulent misrepresentation to any party, conceals requested material information, or fails to perform adequately on behalf of Toyota or the Class, the Parties may agree to remove the Settlement Notice Administrator. Disputes regarding the retention or dismissal of the Settlement Notice Administrator shall be referred to the Court for resolution.

3.      The Settlement Notice Administrator shall maintain staffing sufficient to perform all duties delegated to the Settlement Notice Administrator in this Agreement.

4.      Not later than twenty (20) days before the date of the Fairness Hearing, the Settlement Notice Administrator shall file with the Court a list of those persons who have opted out or excluded themselves from this settlement and the terms of this Settlement Agreement. The Settlement Notice Administrator shall file with the Court the details outlining the scope, method and results of the notice program.

5.      The Settlement Notice Administrator and the Parties shall promptly after receipt provide copies of any requests for exclusion, objections and/or related correspondence to each other.

**J.      Self-Identification**

Persons or entities who believe that they are Class Members may contact Class Counsel or the Settlement Notice Administrator or complete and file a Registration and Reimbursment Claim Form and provide necessary documentation indicating that they wish to be eligible for the relief provided in this Settlement Agreement.

**V.      REQUESTS FOR EXCLUSION**

A.      Any Class Member who wishes to be excluded from the Class must mail a written request for exclusion to the Settlement Notice Administrator at the address provided in the Long Form Notice, specifying that he or she wants to be excluded and otherwise complying with the terms stated in the Long Form Notice and Preliminary Approval Order. The written request must include:

1.      The name of the Action;

2.      The excluding Class Member's full name, current residential address, mailing address (if different), and telephone number;

36

3.      the make, model year, and VIN(s) of the Subject Vehicle(s);

4.      A statement clearly indicating that the Class Member wants to be excluded from the Class; and

5.      The excluding Class Member's signature (an attorney's signature is not sufficient).

B.      The Settlement Notice Administrator shall forward copies of any written requests for exclusion to Class Counsel and Toyota's Counsel. A list reflecting all timely, valid requests for exclusion shall be filed with the Court by the Settlement Notice Administrator in connection with the motion for final approval. If a potential Class Member files a request for exclusion, he or she may not file an objection under Section VI, below.

C.      Any Class Member who does not file a timely, valid written request for exclusion as provided in this Section V shall be bound by all subsequent proceedings, orders, and judgments, including, but not limited to, the Release, Final Judgment, and Final Order in the Action. Toyota's Counsel shall provide to the Settlement Notice Administrator, within twenty (20) business days of the entry of the Preliminary Approval Order, a list of all counsel for anyone who has then-pending litigation against Toyota relating to claims involving the Subject Vehicles and/or otherwise covered by the Release.

## VI.     <u>OBJECTIONS TO SETTLEMENT</u>

A.      Any Class Member who wishes to object to the Settlement Agreement must mail their objection to the Settlement Notice Administrator, who shall provide scanned copies of all objections to Class Counsel and Toyota's counsel within one business day of receipt. Plaintiffs' counsel shall file all objections with the Court in connection with Plaintiffs' motion for final approval and response to objections.  For an objection to be considered by the Court, the objection must be received by the Settlement Notice Administrator on or before the deadline established by

the Court for submitting objections. For an objection to be considered by the Court, the objection

must also set forth:

      1.      The case name and number of the Action;

      2.      The objector's full name, current residential address, mailing address (if

different), telephone number, and e-mail address;

      3.      An explanation of the basis upon which the objector claims to be a Class

Member, including the make, model year, and VIN(s) of the Subject Vehicle(s);

      4.      An explanation of the objection, including the legal and factual bases and

copies of any documents supporting the objection;

      5.      The name and address of each lawyer (if any) who is representing the

objecting Class Member, or who may seek or claim entitlement to compensation for any reason in

connection with the objection;

      6.      The number of times the objector and the objector's counsel (if any) has

objected to a class action settlement within the five years preceding the date that the objector files

the objection; and the name and case number of each case in which the objector and/or the

objector's attorney has made such objection.  If the Class Member or the Class Member's counsel

has not made any prior objection in the past five years, the Class Member and Class Member's

counsel shall affirmatively so state in the written materials provided with the objection;

      7.      A statement as to whether the objecting Class Member intends to appear at

the Final Approval Hearing either individually or through counsel;

      8.      The full name, telephone number and address of all counsel who represent

the objector, including any former or current counsel who may be entitled to compensation for any

reason related to the objection to the Settlement Agreement;

9. The identity of all counsel (if any) who will appear on behalf of the objecting Class Member at the Final Approval Hearing;

10. A list of all persons who will or may offer testimony in support of the objection; and

11. The objector's signature and date of signature.

B. The Parties shall request that the Court issue an order declaring that any Class Member who fails to comply with the provisions of Section VI.A., above, shall be deemed to have waived and forfeited any and all rights he or she may have to have his, her or their objection considered and/or to appear separately and object, whether by a subsequent objection, intervention, appeal, or any other process, and shall be bound by all the terms of this Settlement Agreement and by all proceedings, orders and judgments, including, but not limited to, the Release, the Final Order, and the Final Judgment in the Action and the Related Action. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of this Section VI.B. Without limiting the foregoing, any challenge to the Settlement Agreement, Final Order, or Final Judgment shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through collateral proceedings. Class Members may not both object and request exclusion (opt out).

C. The Parties will ask the Court to enter an order providing that the filing of an objection allows Class Counsel or counsel for Toyota to, at their discretion, notice the deposition of the objecting Class Member and/or to seek the production of documents and tangible things relevant to the objections on an expedited basis, so as to promote and ensure the efficient administration of justice, the timely resolution of objections and of this Settlement, and the orderly presentation of any Class Member's objection to the settlement, in accordance with the due process

rights of all Class Members. Consistent with these objectives, service of a deposition notice and/or a request to produce documents and tangible things in lieu of a formal subpoena shall be sufficient. Likewise, any such deposition may take place remotely, or at an agreed upon location at an agreed upon date and time, but, in no event more than fifteen (15) days following service of a deposition notice, a request to produce documents and other tangible things. Any objections to the scope of a deposition notice or a request to produce documents or other tangible things issued or served in connection with this provision shall be brought before this Court for resolution on an expedited basis.

D.      In the event an objecting Class Member fails to appear for deposition or comply with a request to produce documents or other tangible things, may result in the Court striking the objection and denying the person the opportunity to be heard individually and/or through counsel.

E.      If the Court determines the objection is frivolous or made for an improper purpose, the Court may tax the costs of any such discovery under this section to the objecting Class Member or to the objecting Class Member's counsel. Prior to doing so, however, the objector shall be given the opportunity to withdraw his/her/their objection.

F.      The Parties shall promptly inform the Court of any consideration sought by any objector and the circumstances of such a request. Any objector who seeks fees, costs, or other consideration for their objection shall do so pursuant to Fed. R. Civ. P. 23(e)(5)(B).

G.      Any Class Member who objects to the Settlement Agreement shall be entitled to all the benefits of the Settlement Agreement if the Settlement Agreement and the terms contained herein are approved, as long as the objecting Class Member complies with all requirements of this Settlement Agreement applicable to Class Members.

## VII.   RELEASE AND WAIVER

A.      The Parties agree to the following release and waiver, which shall take effect upon

entry of the Final Judgment and Final Order.

B.      In consideration for the Settlement Agreement, Class Representatives, and each

Class Member, on behalf of themselves and any other legal or natural persons who may claim by,

through or under them, agree to fully, finally and forever release, relinquish, acquit, and discharge

the Released Parties from any and all claims, demands, suits, petitions, liabilities, causes of action,

rights, and damages of any kind and/or type regarding the Subject Matter of the Action, including,

but not limited to, compensatory, exemplary, punitive, expert and/or attorneys' fees or by

multipliers, whether past, present, or future, mature, or not yet mature, known or unknown,

suspected or unsuspected, contingent or non-contingent, derivative or direct, asserted or un-

asserted, whether based on federal, state or local law, statute, ordinance, regulation, code, contract,

common law, violations of any state's deceptive, unlawful, or unfair business or trade practices,

false, misleading or fraudulent advertising, consumer fraud or consumer protection statutes, any

breaches of express, implied or any other warranties, RICO, or the Magnuson-Moss Warranty Act,

or any other source, or any claim of any kind related arising from, related to, connected with,

and/or in any way involving the Subject Matter of the Action, and could have been defined, alleged

or described in the Amended Consolidated Master Complaint, the Action, or any amendments of

the Action. Notwithstanding the foregoing, Class Representatives and Class Members are not

releasing claims for (1) personal injury, (2) death, (3) property damage arising from an accident

involving a Subject Vehicle, (4) property damage to the Subject Vehicle arising from Inverter or

IPM failure, other than damage to the Inverter or IPM itself, or (5) subrogation.  This Release is

limited to, and does not extend beyond, issues pertaining to the Subject Matter of the Action, and

does not extend to failure of or damage to the Inverter or IPM caused by anything other than Thermal Stress

     C.     The Final Order will reflect these terms.

     D.     Class Representatives and Class Members expressly agree that this Release, the Final Order, and/or the Final Judgment is, will be, and may be raised as a complete defense to, and will preclude any action or proceeding encompassed by, this Release.

     E.     Class Representatives and Class Members shall not now or hereafter institute, maintain, prosecute, commence, or file any suit, action, and/or proceeding, against the Released Parties, on their own behalf, on behalf of a class or on behalf of any other person or entity with respect to the claims or causes of action included in the Subject Matter of the Action and released through this Settlement Agreement.  This provision does not include any action brought to enforce the terms of this Settlement Agreement and is not intended to prevent Class Members from communicating publicly or privately about the Subject Matter of the Action in a manner that is consistent with the Stipulated Protective Order and the Parties' Confidentiality Agreement.

     F.     In connection with the Settlement Agreement, Class Representatives and Class Members acknowledge that they and other Class Members may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Action and/or the Release herein. Nevertheless, it is the intention of Class Counsel and Class Representatives in executing this Settlement Agreement to fully, finally and forever settle, release, discharge, and hold harmless all such matters, and all claims relating thereto which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to the Action.

G.      Class Representatives expressly understand and acknowledge that they will be deemed by the Final Judgment and Final Order to acknowledge and waive Section 1542 of the Civil Code of the State of California, which provides that:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Class Representatives expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable or equivalent to Section 1542, to the fullest extent they may lawfully waive such rights.

H.      Class Representatives represent and warrant that they are the sole and exclusive owners of all claims that they personally are releasing under this Settlement Agreement. Class Representatives further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the claims they are personally releasing in this Action, including without limitation, any claim for benefits, proceeds or value under the Action, and that Class Representatives are not aware of anyone other than themselves claiming any interest, in whole or in part, in the claims that they are personally releasing under the Settlement Agreement or in any benefits, proceeds or values in the claims that they are personally releasing under the Settlement Agreement. Class Members submitting a Registration and Reimbursement Claim Form shall represent and warrant therein that they are authorized to submit all of the claims that they personally are releasing under the Settlement Agreement and that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or

claim arising out of or in any way whatsoever pertaining to the Action, including without limitation, any claim for benefits, proceeds or value under the Action.

I.      Without in any way limiting its scope, and, except to the extent otherwise specified in the Agreement, this Release covers by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, costs or any other fees, costs, and/or disbursements incurred by Class Counsel, Plaintiffs' Counsel, Class Representatives or Class Members who claim to have assisted in conferring the benefits under this Settlement Agreement upon the Class.

J.      In consideration for the Settlement Agreement, all Released Parties, including but not limited to Toyota and its past or present officers, directors, employees, agents, attorneys, predecessors, successors, affiliates, subsidiaries, divisions, and assigns shall be deemed to have, and by operation of the Final Order shall have, released Plaintiffs' Counsel, Class Counsel and each current and former Class Representatives from any and all causes of action that were or could have been asserted pertaining to the conduct in filing and prosecuting the litigation or in settling the Action.

K.      Class Representatives and Plaintiffs' Counsel acknowledge by their signatures below that they have conducted sufficient discovery to enter into this Settlement Agreement and, by executing this Settlement Agreement, state that they have not relied upon any statements or representations made by the Released Parties or any person or entity representing the Released Parties, other than as set forth in this Settlement Agreement.

L.      Nothing in this Release shall preclude any action to enforce the terms of the Agreement, including participation in any of the processes detailed herein.

44

M.     Class Representatives and Class Counsel hereby agree and acknowledge that the provisions of this Release together constitute an essential and material term of the Agreement and shall be included in any Final Judgment and Final Order entered by the Court.

## VIII.   ATTORNEYS' FEES, LITIGATION EXPENSES, AND INDIVIDUAL CLASS REPRESENTATIVE SERVICE AWARDS

A.     At the conclusion of the Parties' reaching agreement on the substantive material terms of this Agreement, the Parties mediated attorneys' fees, litigation expenses, and individual Class Representative service awards with the Settlement Special Master.  Following a series of discussions between the Parties over the course of several days, the Settlement Special Master proposed a mediators' number of $19 million in fees and $600,000 in costs, as well as individual Class Representative service awards of $5,000 for each individual Class Representative.  The Settlement Special Master is prepared to report to the Court his Recommendation Regarding Attorneys' Fees, Litigation Expenses, and Class Representative Service Awards, should the Court request.

B.     The Parties subsequently agreed to accept the Special Master's mediator number.

C.     The Parties have also agreed that if the Court does not award the full amount proposed by the Settlement Special Master, the difference between that amount and the amount awarded by the Court will be distributed to the Class through the Settlement Fund QSF, as set forth in Section III.A, above.

## IX.   PRELIMINARY APPROVAL ORDER, FINAL ORDER, FINAL JUDGMENT AND RELATED ORDERS

A.     The Parties shall seek from the Court, within fourteen (14) days after the execution of this Settlement Agreement, a Preliminary Approval Order in a form substantially similar to Exhibit 5. The Preliminary Approval Order shall, among other things:

45

1.     Certify a nationwide settlement-only Class, approve Class Representatives as Class Representatives and appoint Class Counsel as counsel for the Class, pursuant to Fed. R. Civ. P. 23;

2.     Preliminarily approve the Settlement Agreement;

3.     Require the dissemination of the Notice and the taking of all necessary and appropriate steps to accomplish this task;

4.     Determine that Class Notice complies with all legal requirements, including, but not limited to, the Due Process Clause of the United States Constitution;

5.     Schedule a date and time for a Fairness Hearing to determine whether the Settlement Agreement should be finally approved by the Court;

6.     Require Class Members who wish to exclude themselves to submit an appropriate and timely written request for exclusion as directed in this Settlement Agreement and Long Form Notice and that a failure to do so shall bind those Class Members who remain in the Class;

7.     Require Class Members who wish to object to this Settlement Agreement to submit an appropriate and timely written statement as directed in this Settlement Agreement and Long Form Notice;

8.     Require Class Members who wish to appear to object to this Settlement Agreement to submit an appropriate and timely written statement as directed in the Settlement Agreement and Long Form Notice;

9.     Require attorneys representing Class Members objecting to the Settlement Agreement, at such Class Members' expense, to file a notice of appearance as directed in this Settlement Agreement and Long Form Notice;

10.      Issue a preliminary injunction and stay all other actions, pending final approval by the Court;

11.      Issue a preliminary injunction enjoining potential Class Members, pending the Court's determination of whether the Settlement Agreement should be given final approval, from challenging in any action or proceeding any matter covered by this Settlement Agreement, except for proceedings in this Court to determine whether the Settlement Agreement will be given final approval;

12.      Appoint the Settlement Notice Administrator and the Settlement Claims Administrators;

13.      Authorize Toyota to take all necessary and appropriate steps to establish the means necessary to implement the Agreement; and

14.      Issue other related orders to effectuate the preliminary approval of the Agreement.

B.      After the Fairness Hearing, the Parties shall seek to obtain from the Court a Final Judgment and Final Order in the forms substantially similar to Exhibits 2 and 3, respectively.

C. Within ten (10) business days of the Final Effective Date, the Parties shall file a stipulation of dismissal with prejudice or substantial equivalent in the Related Action.

## X.      <u>MODIFICATION OR TERMINATION OF THIS SETTLEMENT AGREEMENT</u>

A.      The terms and provisions of this Settlement Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that after entry of the Final Judgment and Final Order, the Parties may by written agreement effect such amendments, modifications, or expansions of this Settlement Agreement and its implementing documents (including all exhibits hereto) by posting the information on the dedicated Settlement Website, without further approval by the Court if such changes are consistent

47

with the Court's Final Judgment and Final Order and do not limit the rights of Class Members under this Settlement Agreement.

B.      This Settlement Agreement shall terminate at the discretion of either Toyota or the Class Representatives, through Class Counsel, if: (1) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of the Settlement Agreement that results in a substantial modification to a material term of the proposed Settlement, including, without limitation, the amount and terms of relief, the findings, or conclusions of the Court, the provisions relating to notice, the definition of the Class, and/or the terms of the Release; or (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters, narrows or expands, any portion of the Final Order and Final Judgment, or any of the Court's findings of fact or conclusions of law, that results in a substantial modification to a material term of the proposed Settlement.  The terminating party must exercise the option to withdraw from and terminate this Settlement Agreement, as provided in this Section X, by a signed writing served on the other Parties no later than five (5) days after receiving notice of the event prompting the termination. The Parties will be returned to their positions status quo ante.

C.      If an option to withdraw from and terminate this Settlement Agreement arises under Section X.B, above, neither Toyota nor Class Representatives are required for any reason or under any circumstance to exercise that option and any exercise of that option shall be in good faith.

D.      If, but only if, this Settlement Agreement is terminated pursuant to Section X.B, above, then:

1.      This Settlement Agreement shall be null and void and shall have no force or effect, and no Party to this Settlement Agreement shall be bound by any of its terms, except for the terms of Section X.D, herein;

2.     The Parties will petition the Court to have any stay orders entered pursuant to this Settlement Agreement lifted;

3.     All of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of Toyota, Class Representatives, or any Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Settlement Agreement, except that the Parties shall cooperate in requesting that the Court set a new scheduling order such that no Party's substantive or procedural rights are prejudiced by the settlement negotiations and proceedings;

4.     Class Representatives and all other Class Members, on behalf of themselves and their heirs, assigns, executors, administrators, predecessors, and successors, expressly and affirmatively reserve and do not waive any and all motions as to, and arguments in support of, all claims, causes of actions or remedies that have been, could have been, or might later be asserted in the Action including, without limitation, any argument concerning liability, class certification, and entitlement to damages under any theory, including but not limited to, treble, punitive or exemplary damages;

5.     Toyota and the other Released Parties expressly and affirmatively reserve and do not waive all motions and positions as to, and arguments in support of, all defenses to the causes of action or remedies that have been sought or might be later asserted in the Action, including without limitation, any argument or position opposing class certification, liability or damages, or any argument that the Action may not be litigated as a class action;

6.     Neither this Settlement Agreement, the fact of its having been made, nor the negotiations leading to it, nor any discovery or action taken by a Party or Class Member pursuant to this Settlement Agreement shall be admissible or entered into evidence for any purpose

whatsoever, except as necessary to enforce the terms of this Settlement Agreement and then the Parties shall use best efforts to file said information under seal, *provided,* however, that in the event this Settlement Agreement is terminated, Plaintiffs shall retain the right to conduct discovery in accordance with applicable law, the Stipulated Protective Order, and the Confidentiality Agreement that the Parties executed on August 18-20, 2020;

7.      Any settlement-related order(s) or judgment(s) entered in this Action after the date of execution of this Settlement Agreement shall be deemed vacated and shall be without any force or effect; and

8.      All costs incurred in connection with the Settlement Agreement, including, but not limited to, notice, publication, claims administration and customer communications are the sole responsibility of Toyota and will be paid by Toyota. Neither the Class Representatives nor Class Counsel shall be responsible for any of these costs or other settlement-related costs; and

## XI.      **GENERAL MATTERS AND RESERVATIONS**

A.      Toyota has denied and continues to deny each and all of the claims and contentions alleged in the Action, and has denied and continues to deny that it has committed any violation of law or engaged in any wrongful act that was alleged, or that could have been alleged, in the Action. Toyota believes that it has valid and complete defenses to the claims asserted against it in the Action and denies that it committed any violations of law, engaged in any unlawful act or conduct, or that there is any basis for liability for any of the claims that have been, are, or might have been alleged in the Action. Nonetheless, Toyota has concluded that it is desirable that the Action be fully and finally settled in the matter and upon the terms and conditions set forth in this Settlement Agreement.

B.      The obligation of the Parties to conclude the Settlement Agreement is and shall be contingent upon each of the following:

1.      Entry by the Court of the Final Judgment and Final Order approving the

Settlement Agreement, from which the time to appeal has expired or which has remained

unmodified after any appeal(s); and

2.      Any other conditions stated in this Settlement Agreement.

C.      The Parties and their counsel agree to keep the existence and contents of this

Settlement Agreement confidential until the date on which the Motion for Preliminary Approval is

filed; provided, however, that this Section shall not prevent Toyota from disclosing such

information, prior to the date on which the Motion for Preliminary Approval is filed, to state and

federal agencies, independent accountants, actuaries, advisors, financial analysts, insurers or

attorneys. Nor shall it prevent the Parties and their counsel from disclosing such information to

persons or entities (such as experts, courts, co-counsel, and/or administrators) to whom the Parties

agree disclosure must be made in order to effectuate the terms and conditions of this Settlement

Agreement.

D.      Class Representatives and Class Counsel agree that the Stipulated Protective Order

that was adopted by the Court on July 5, 2019, and the Confidentiality Agreement that the parties

executed on August 18 through 20, 2020, shall remain in force and in effect, and that nothing in

this Settlement Agreement shall in any way alter, modify, or revise the parties' obligations under

the Stipulated Protective Order or the Confidentiality Agreement.

E.      Within ninety (90) days after the Final Effective Date (unless the time is extended

by agreement of the Parties), Plaintiffs' Counsel, and any expert or other consultant employed by

them in such capacity or any other individual with access to documents provided by Toyota, and/or

Toyota's Counsel, and/or the Settlement Special Master to Plaintiffs' Counsel shall either: (i) return

to Toyota's Counsel, all such documents and materials (and all copies of such documents in

whatever form made or maintained) produced during the litigation and the settlement process by Toyota and/or Toyota's Counsel, and/or the Settlement Special Master and any and all handwritten notes summarizing, describing or referring to such documents; or (ii) certify to Toyota's Counsel that all such documents and materials (and all copies of such documents in whatever form made or maintained) produced by Toyota, and/or Toyota's Counsel, and/or the Settlement Special Master and any and all handwritten notes summarizing, describing or referring to such documents have been destroyed, provided, however, that this Section IX shall not apply to any documents made part of the record in connection with a Claim, nor to any documents made part of a Court filing, nor to Plaintiffs' Counsel's work product. Six months after the final distribution of the settlement funds to Class Members in accordance with this Settlement Agreement, including any cy pres funds, the Settlement Notice Administrator shall return or destroy all documents and materials to Toyota and/or Toyota's Counsel and/or Plaintiffs' Counsel that produced the documents and materials, except that it shall maintain and shall  not destroy any and all communications with Class Members, and Registration and Reimbursement Claim Forms, including any and all information and/or documentation submitted by Class Members. Six months after the conclusion of the Customer Confidence Program, unless otherwise extended by agreement of the Parties, the Settlement Claims Administrators shall return or destroy all documents and materials to Toyota and/or Toyota's Counsel and/or Plaintiffs' Counsel that produced the documents and materials, except that it shall maintain and shall not destroy any and all communications with Class Members, and Registration and Reimbursement Claim Forms, including any and all information and/or documentation submitted by Class Members.  Nothing in this Settlement Agreement shall affect any confidentiality order or protective order in the Action.

52

F.     Class Counsel represent that: (1) they are authorized by the Class Representatives to enter into this Settlement Agreement with respect to the claims in this Action; and (2) they are seeking to protect the interests of the Class.

G.     Class Counsel further represent that the Class Representatives have authorized Class Counsel to execute this Settlement Agreement on their behalf.

H.     The Parties acknowledge and agree that no opinion concerning the tax consequences of the Settlement Agreement to Class Members is given or will be given by the Parties, nor are any representations or warranties in this regard made by virtue of this Settlement Agreement. Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

I.      Toyota represents and warrants that the individual(s) executing this Settlement Agreement is authorized to enter into this Settlement Agreement on behalf of Toyota.

J.      This Settlement Agreement, complete with its exhibits, sets forth the sole and entire agreement among the Parties with respect to its subject matter, and it may not be altered, amended, or modified except by written instrument executed by Class Counsel and Toyota's Counsel on behalf of Toyota. The Parties expressly acknowledge that no other agreements, arrangements, or understandings not expressed in this Settlement Agreement exist between them, and that in deciding to enter into this Settlement Agreement, they rely solely upon their judgment and knowledge. This Settlement Agreement supersedes any prior agreements, understandings, or undertakings (written or oral) by and between the Parties regarding the subject matter of this Settlement Agreement.

K.    This Settlement Agreement and any amendments thereto shall be governed by and interpreted according to the law of the State of California notwithstanding its conflict of laws provisions.

L.    Class Members will have the right to enforce this Agreement except they will not be able to challenge the Settlement Claims Administrators' final decision on eligibility and/or payment made as part of the Out-Of-Pocket Claims Process, provided eligibility was determined pursuant to the process outlined in Section III.D, herein.  Any disagreement and/or action to enforce this Settlement Agreement shall be commenced and maintained only in the United States District Court for the Central District of California.

M.    Whenever this Settlement Agreement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturdays, Sundays and Federal Holidays) express delivery service as follows:

1.    If to Toyota, then to:

John P. Hooper
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036
Tel.: (212) 556-2220
Fax: (212) 556-2000
E-mail: Jhooper@kslaw.com

2.    If to the Class, then to:

Jeffrey L. Fazio
Dina E. Micheletti
Fazio Micheletti LLP
1111 Broadway, Suite 400
Oakland, CA 94607
Tel.: (925) 543-2555
Fax:  (925) 369-0344
E-mail: jlf@fazmiclaw.com

and

Amnon Z. Siegel
Miller Barondess LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, CA 90067
Tel: (310) 552-4400
Fax: (310) 552-8400
E-mail: asiegel@millerbarondess.com

N.    All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by this Settlement Agreement or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a Federal Holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days. As used in this Section XI "Federal Holiday" includes New Year's Day, Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Juneteenth, Independence Day, Labor Day, Columbus Day, Veterans Day, Patriot's Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President, the Congress of the United States or the Clerk of the United States District Court for the Central District of California.

O.    The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

P.    The Class, Class Representatives, Class Counsel, Toyota and/or Toyota's Counsel shall not be deemed to be the drafter of this Settlement Agreement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter. All Parties

agree that this Settlement Agreement was drafted by counsel for the Parties during extensive arm's length negotiations. No parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Settlement Agreement was made or executed.

Q.      The Parties expressly acknowledge and agree that this Settlement Agreement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state. In no event shall this Settlement Agreement, any of its provisions or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this Settlement Agreement or the rights of the Parties or their counsel. Without limiting the foregoing, neither this Settlement Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession of any liability of wrongdoing whatsoever on the part of any person or entity, including but not limited to, the Released Parties, Class Representatives, or the Class or as a waiver by the Released Parties, Class Representatives or the Class of any applicable privileges, claims, arguments, positions, or defenses.

R.      Class Representatives expressly affirm that the allegations contained in the operative complaint and in subsequent motion practice were made in good faith, but consider it desirable for the Action to be settled and dismissed after considering the following: (1) the substantial benefits that the Settlement Agreement will provide to Class Members; (2) the attendant

difficulties, inherent risks, and uncertainty of litigation in this complex case, including certifying and maintaining a class through trial and appeal, as well as the delays inherent in such litgation; (3) the desirability of providing relief to Class Members now, as opposed to several years from now, after trial and resolution of all appeals.  Class Counsel agreed to this settlement only after being satisfied that their efforts in settlement discussions, including settlement discussions with the assistance of the Settlement Special Master, had achieved a maximum recovery for the Class.

S.     The Parties, their successors and assigns, and their counsel undertake to implement the terms of this Settlement Agreement in good faith, to cooperate with, *inter alia*, obtaining Final Approval, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Settlement Agreement.

T.     The waiver by one Party of any breach of this Settlement Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Settlement Agreement.

U.     If one Party to this Settlement Agreement considers another Party to be in breach of its obligations under this Settlement Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Settlement Agreement.  Unless a longer time is agreed to in writing by the parties, thirty (30) days is deemed a "reasonable opportunity to cure."

V.     The Parties, their successors and assigns, and their counsel agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use their best efforts to effect the prompt consummation of the Settlement Agreement.

W.     This Settlement Agreement may be signed with a facsimile signature and in counterparts, each of which shall constitute a duplicate original.

X.      In the event any one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision if Toyota, on behalf of Defendant, and Class Counsel, on behalf of Class Representatives and Class Members, mutually agree in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Settlement Agreement. Any such agreement shall be reviewed and approved by the Court before it becomes effective.

Agreed to on the date indicated below.

APPROVED AND AGREED TO AS TO FORM
BY CLASS COUNSEL

BY_____          DATE:  November 11, 2021
JEFFREY L. FAZIO
FAZIO MICHELETTI LLP

BY_____          DATE:  _____, 2021
AMNON Z. SIEGEL
MILLER BARONDESS LLP

58

X.      In the event any one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision if Toyota, on behalf of Defendant, and Class Counsel, on behalf of Class Representatives and Class Members, mutually agree in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Settlement Agreement. Any such agreement shall be reviewed and approved by the Court before it becomes effective.

Agreed to on the date indicated below.

APPROVED AND AGREED TO AS TO FORM
BY CLASS COUNSEL

BY_____      DATE: _____, 2021
JEFFREY L. FAZIO
FAZIO MICHELETTI LLP

BY_____      DATE:  November 11, 2021
_____
AMNON Z. SIEGEL
MILLER BARONDESS LLP

58

BY_____     DATE: _____, 2021
JEFFREY L. FAZIO
FAZIO MICHELETTI LLP


BY_____     DATE: _____, 2021
AMNON Z. SIEGEL
MILLER BARONDESS LLP


APPROVED AND AGREED BY CLASS REPRESENTATIVES

BY _____     DATE: __11 - 11 - __, 2021
     KATHLEEN RYAN-BLAUFUSS


BY_____     DATE: _____, 2021
     CATHLEEN MILLS


BY_____     DATE: _____, 2021
     KHEK KUAN


BY_____     DATE: _____, 2021
     STEVEN KOSAREFF


60

BY_____     DATE: _____, 2021
JEFFREY L. FAZIO
FAZIO MICHELETTI LLP


BY_____     DATE: _____, 2021
AMNON Z. SIEGEL
MILLER BARONDESS LLP


APPROVED AND AGREED BY CLASS REPRESENTATIVES

BY_____     DATE: _____, 2021
    KATHLEEN RYAN-BLAUFUSS

BY _Cathleen Mills_____     DATE: _11/11_____, 2021
    CATHLEEN MILLS

BY_____     DATE: _____, 2021
    KHEK KUAN

BY_____     DATE: _____, 2021
    STEVEN KOSAREFF

WORKAMER\03145\197001\39200673.v8-10/14/21

BY_____      DATE: _____, 2021
JEFFREY L. FAZIO
FAZIO MICHELETTI LLP


BY_____      DATE: _____, 2021
AMNON Z. SIEGEL
MILLER BARONDESS LLP


APPROVED AND AGREED BY CLASS REPRESENTATIVES


BY_____      DATE: _____, 2021
    KATHLEEN RYAN-BLAUFUSS


BY_____      DATE: _____, 2021
    CATHLEEN MILLS


BY_____      DATE:  Nov 12 , 2021
    KHEK KUAN


BY_____      DATE: _____, 2021
    STEVEN KOSAREFF

APPROVED AND AGREED BY CLASS REPRESENTATIVES


BY_____        DATE: _____, 2021
      KATHLEEN RYAN-BLAUFUSS


BY_____        DATE: _____, 2021
      CATHLEEN MILLS


BY_____        DATE: _____, 2021
      KHEK KUAN


BY_____        DATE: November 11_____, 2021
      STEVEN KOSAREFF


BY_____        DATE: _____, 2021
      LAURA NAWAYA (NEE KAKISH)

APPROVED AND AGREED BY CLASS REPRESENTATIVES

BY_____          DATE: _____, 2021
     KATHLEEN RYAN-BLAUFUSS


BY_____          DATE: _____, 2021
     CATHLEEN MILLS


BY_____          DATE: _____, 2021
     KHEK KUAN


BY_____          DATE: _____, 2021
     STEVEN KOSAREFF


BY_____          DATE: _11. 15 . 2021_, 2021
     LAURA NAWAYA (NEE KAKISH)

WORKAMER\03145\197001\39200673.v8-10/14/21

APPROVED AND AGREED TO BY TOYOTA

BY_____     DATE: _Navember 11_, 2021

SANDRA PHILIPS ROGERS
Group Vice President
General Counsel, Chief Legal Officer and
Chief Diversity Officer, Toyota Motor North
America, Inc.

BY_____     DATE: _NOV 11_, 2021

ELIZABETH GIBSON
Deputy General Counsel, Vice President,
Product & Legal Risk Support,
Toyota Motor North America, Inc.


APPROVED AND AGREED TO AS TO FORM
BY TOYOTA'S COUNSEL


BY_____     DATE: _____, 2021

JOHN P. HOOPER
KING & SPALDING LLP

60

APPROVED AND AGREED TO BY TOYOTA


BY_____     DATE: _____, 2021
SANDRA PHILIPS ROGERS
Group Vice President
General Counsel,  Chief Legal Officer and
Chief Diversity Officer, Toyota Motor North
America, Inc.


BY_____     DATE: _____, 2021
ELIZABETH GIBSON
Deputy General Counsel, Vice President,
Product & Legal Risk Support,
Toyota Motor North America, Inc.


APPROVED AND AGREED TO AS TO FORM
BY TOYOTA'S COUNSEL


BY_____     DATE:___November 11___, 2021
JOHN P. HOOPER
KING & SPALDING LLP

# EXHIBIT 1

**PRIUS IPM
REGISTRATION AND
REIMBURSEMENT CLAIM FORM**
*McCarthy, et al. v. Toyota Motor Corp., et al..*

**A SETTLEMENT FUND HAS BEEN CREATED, AND YOU MAY BE ENTITLED TO A CASH PAYMENT.**

<u>YOU MUST</u> <u>SUBMIT THIS FORM IF:</u>

1.  You are seeking reimbursement of certain eligible expenses you incurred related to the repair and/or replacement of the Inverter and/or IPM in a Subject Vehicle (defined below) prior to the Final Effective Date of this Settlement;

    **AND/OR**

2.  You wish to register to potentially receive up to a maximum of $250 from the Settlement Fund in the event sufficient funds are available after all out-of-pocket claims have been paid) (called a "Redistribution Check").  **Note: If you have received a post card indicating that you have automatically been registered to receive a Redistribution Check, and you are not filing a claim for reimbursement of the out-of-pocket expenses listed below, you do not need to fill out this form**.

    You are a Class Member if you currently own or lease or previously owned or leased a "Subject Vehicle," which means a 2010 to 2015 model year Prius or a 2012 to 2017 model year Prius V that was the subject of Safety Recalls E0E, F0R, J0V, or 20TA10, and you have not opted out of the Settlement.

To be eligible to receive settlement benefits described below, you must be a Class Member and you must fill out this Registration and Reimbursement Claim form and meet the following criteria:

(1)   You are a Class Member who has not opted out and you paid out-of-pocket for the expenses listed below which were incurred prior to the Final Effective Date and were not reimbursed by Toyota:

(a)   rental car expenses incurred in connection with the repair or replacement of an IPM or an Inverter in a Subject Vehicle;

(b)   towing charges incurred in connection with the repair or replacement of an IPM or an Inverter in a Subject Vehicle; and/or

(c)   the cost to repair or replace an IPM or an Inverter in a Subject Vehicle;

or

(2)   You are a Class Member who has not opted out of the Settlement and

(a)   the Inverter or IPM in your Subject Vehicle was replaced prior to the Final Effective Date; and

(b)   you want to be eligible to receive a Redistribution Check for up to $250 if funds are available after all Out-of-Pocket Expenses are paid.

Note:  You are eligible for a potential Redistribution Check if an IPM or Inverter was repaired or replaced in your Subject Vehicle, regardless of whether Toyota covered the repair or replacement under warranty.

If you received a postcard indicating that you have already been identified as a person who is eligible for a Redistribution Check, you do not have to fill out this form, unless you would like to update your contact information or are also submitting a claim for reimbursement of the out-of-pocket expenses listed in (1), above.

If you have questions about your status, please call XXXXXXXX.

(3)

The Final Effective Date is anticipated to be **[DATE]**.  This is subject to change.  Please check www.toyotapriusinvertersettlement.com for updates.

If you are submitting a Claim for reimbursement of eligible expenses you incurred related to repair and/or replacement of the Inverter and/or IPM, you may submit only one

Registration and Reimbursement Claim Form for each Subject Vehicle for which you are seeking payment in this class action settlement; however, you may use a single Registration and Reimbursement Claim Form to seek reimbursement for more than one covered expense in the same Subject Vehicle. For example, if you paid to have your Subject Vehicle towed to a repair shop and paid to have an Inverter replaced, you can include both expenses on this Registration and Reimbursement Claim Form.

To determine whether you are a Class Member eligible to make a Claim, or for more information regarding the class action settlement, please first visit www.toyotapriusinvertersettlement.com. If you still have questions regarding the claims process, *[call/email ___]*.

1.      Did you have the Inverter and/or IPM replaced in your Subject Vehicle prior to the [Final Effective Date]?

☐   No
☐   Yes

2.      Did you incur one or more of the out-of-pocket expenses listed in Section II, below, prior to the Final Effective Date in connection with the repair and/or replacement of the Inverter and/or IPM on your Subject Vehicle that have not been otherwise reimbursed by Toyota?

☐   No
☐   Yes

**If you answered "Yes" to questions 1 and 2 please complete Sections I, II, and III to submit a Claim for reimbursement of the out-of-pocket expenses you incurred.**

**If you answered "Yes" to question 1 and "No" to question 2, please skip to and complete Sections I and IV below to register for a potential payment of up to $250 from the Settlement Fund, unless you have already received a postcard advising you that you do not need to do so.**

**If you answered "No" to questions 1 and 2 then you are not eligible for the benefits related to this Registration and Reimbursement Claim Form.**

## <u>INSTRUCTIONS FOR COMPLETING THIS REGISTRATION AND REIMBURSEMENT CLAIM FORM AND SUBMITTING A CLAIM FOR PAYMENT</u>

1)  Filling this form out online will facilitate the processing of your claim.

2)  If you complete the Registration and Reimbursement Claim Form online at www.toyotapriusinvertersettlement.com, typing your VIN (Vehicle Identification Number) in Section I (Information on Class Member and Subject Vehicle) below will cause some of the boxes in this Registration and Reimbursement Claim Form to be filled in automatically.  Check the form carefully to make sure all of the information is correct and that you have filled in any missing information.

3)  If you are submitting a Claim for more than one Subject Vehicle by mail, you can photocopy this Registration and Reimbursement Claim Form and attach a separate sheet containing the information requested.  Alternatively, if you are submitting this Registration and Reimbursement Claim Form on-line, please check the box allowing you to include rows for more than one Subject Vehicle.  If you do not know your VIN, you may be able to find it from third parties, including the Toyota Dealer from which you purchased your Subject Vehicle, the DMV, your insurance agent, and/or your auto repair shop.

4)  Capitalized terms in this Registration and Reimbursement Claim Form have the same meaning as provided in the Settlement Agreement, which is available at www.toyotapriusinvertersettlement.com.

5)  If you are submitting a paper Claim Form, please type or print legibly in blue or black ink.  Do not use any highlighters.  Provide **all** requested information to complete and submit this Registration and Reimbursement Claim Form, attach supporting documentation, as specified below, and sign the Registration and Reimbursement Claim Form.

6)  **You must submit your completed Registration and Reimbursement Claim Form and any supporting documentation by mail or electronically no later than three months following the Final Effective Date.  Please check the settlement website, www.toyotapriusinvertersettlement.com, which will be periodically updated.  The completed Registration and Reimbursement Claim Form and any supporting documentation, can be submitted online at www.toyotapriusinvertersettlement.com or mailed to**:

**[Settlement Notice Administrator Address]**

*Important*: Keep a copy of your completed Registration and Reimbursement Claim Form and the supporting documents.  Any documents you submit with your Registration and Claim Form will not be returned.  Do not send original documents.  If your Claim is rejected for any reason, you will be notified and you will be given an opportunity to cure the defect(s) within 30 days of the mailing of the letter from the Settlement Notice Administrator.

**If you fail to timely and fully complete this Registration and Reimbursement Claim Form and submit the required supporting documentation, your Claim may be denied.**

**If your Claim is denied, you will not receive a cash payment for your Claim. The Settlement Claims Administrator has the right to request verification of eligibility to participate in this settlement.**

| SECTION I – CLASS MEMBER AND SUBJECT VEHICLE INFORMATION |
|---|

**Name:**

*Last*     *First*     *Middle Initial*

*Vehicle Identification Number (VIN): (COMPLETE THIS BOX FIRST AS IT MAY POPULATE OTHER BOXES IN THIS REGISTRATION AND REIMBURSEMENT CLAIM FORM AND BE SURE TO CORRECT ANY WRONG INFORMATION)*

*Make, Model, and Model Year of Vehicle*

*Your Address:*
*Number/Street/P.O. Box No.*

| City: | | State: | Zip Code: |
|---|---|---|---|

| Telephone Number: | Email Address: |
|---|---|

| SECTION II –CLAIM INFORMATION |
|---|

*The Settlement Claims Administrator will process and approve payments in accordance with the terms of the Settlement Agreement. Reimbursements for out-of-pocket expenses will be made on a first-in-first-out basis.*

Below please identify the eligible out-of-pocket expenses you incurred related to repair and/or replacement of your Subject Vehicle's Inverter and/or IPM that have not been reimbursed by Toyota. **The categories below are eligible for reimbursement.**

If you have any documents that support the expenses identified in your response below, including anything you wish to say regarding the necessity of the expenses you incurred, please submit them. The categories of supporting documentation identified in the bullet points below are examples of acceptable documentation for each type of eligible out-of-pocket expense. You may have other documents that satisfy this requirement.

| *Please fill in the dollart amounts for as many expenses as apply.* |
|---|

| | |
|---|---|
| Rental car expenses incurred prior to Final Effective Date in connections with the repair or replacement of the Inverter and/or IPM in a Subject Vehicle, which have not been fully reimbursed by Toyota<br><br>Supporting documentation can include, for example:<br><ul><li>Receipt(s) from a rental car company dated at the time of the repair or replacement of an Inverter and/or IPM.</li><li>Credit card payment to a rental car company dated at the time of the repair or replacement of an Inverter and/or IPM.</li><li>Invoice or service record showing the date and location of the repair or replacement of the Inverter and/or IPM.</li><li>Notarized, sworn statement outlining your expenses including the date the expense was incurred, what the expense was for, to whom the expense was paid, the reason why you do not have any Supporting Documentation, and the name and address of the Toyota Dealer or third-party service provider where your Subject Vehicle had its IPM and/or Inverter repaired and/or replaced (if applicable).  Use the Notary form for this purpose, which is available at www.toyotapriusinvertersettlement.com, only if you do <u>not</u> have other supporting documentation.  **Please note that all claims not supported by a receipt or other proof that an IPM/Inverter was repaired or replaced may be subject to additional and enhanced scrutiny for purposes of verification**.</li></ul> | $ |
| Towing charges incurred prior to the Final Effective Date in connection with the repair or replacement of the Inverter and/or IPM in a Subject Vehicle, which have not been fully reimbursed by Toyota**.**<br><br>Supporting documentation can include, for example:<br><ul><li>Receipt(s) from a towing company dated at the time of the repair or replacement of an Inverter and/or IPM.</li><li>Credit card payment to a towing company dated at the time of the repair or replacement of an Inverter and/or IPM.</li><li>Invoice or service record showing the date and location of the repair or replacement of the Inverter and/or IPM.</li></ul> | $ |

| | |
|---|---|
| • Notarized, sworn statement outlining your expenses including the date the expense was incurred, what the expense was for, to whom the expense was paid, the reason why you do not have any Supporting Documentation, and the name and address of the Toyota Dealer or third-party service provider where your Subject Vehicle was towed and had its IPM and/or Inverter repaired and/or replaced (if applicable).  Use the Notary form for this purpose, which is available at www.toyotapriusinvertersettlement.com, only if you do <u>not</u> have other supporting documentation. **Please note that all claims not supported by a receipt or other proof that an IPM/Inverter was repaired or replaced may be subject to additional and enhanced scrutiny for purposes of verification**. | |
| The cost to repair or replacement of the Inverter and/or IPM.<br><br>Supporting documentation can include, for example:<br>• Receipt(s) showing the date and location of the repair or replacement of the Inverter and/or IPM.<br>• Invoice or service record showing the date and location of the repair or replacement of the Inverter and/or IPM.<br>• Notarized, sworn statement outlining your expenses including the date the expense was incurred, what the expense was for, to whom the expense was paid (including the Toyota Dealer's or third-party service provider's name and address, if applicable), and the reason why you do not have any Supporting Documentation.  Use the Notary form for this purpose, which is available at www.toyotapriusinvertersettlement.com, only if you do <u>not</u> have other supporting documentation. **Please note that all claims not supported by a receipt or other proof that an IPM/Inverter was repaired or replaced may be subject to additional and enhanced scrutiny for purposes of verification**. | $ |
| *If you need more space, please submit a separate page with additional information.* | |

## SECTION III – ATTESTATION FOR REIMBURSEMENT OF OUT-OF-POCKET EXPENSES

By signing this form, you affirm that you **HAVE NOT** already been reimbursed by Toyota for the expenses for which you are seeking reimbursement under this Settlement.  If you were only partially reimbursed for certain expenses, you may only claim funds under this Settlement for the amounts for which you were **<u>not</u>** reimbursed.  You also affirm that you are authorized to submit all of the claims that you personally are releasing under the Settlement Agreement and you have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action, including without limitation, any claim for benefits, proceeds or value under the Action.

I affirm under the laws of the United States of America, that the information in this Registration and Reimbursement Claim Form is true and correct to the best of my knowledge, information and belief.  I understand that my Registration and Reimbursement Claim Form may be subject to audit, verification and review by the Settlement Claims Administrator and the Court.

Signature _____

Date _____

## SECTION IV – ATTESTATION FOR REGISTERING FOR REDISTRIBUTION CHECKS

I affirm under the laws of the United States of America, that the information in this Registration and Reimbursement Claim Form is true and correct to the best of my knowledge, information and belief.  I understand that my Registration and Reimbursement Claim Form may be subject to audit, verification and review by the Settlement Claims Administrator and the Court.

Signature _____

Date _____

## SECTION V – REGISTRATION AND REIMBURSEMENT CLAIM FORM COMPLETION AND SUBMISSION CHECKLIST

☐ Be sure that your completed Registration and Reimbursement Claim Form includes your current name, address, telephone number, contact information and the vehicle identification number (VIN) of your Subject Vehicle.

☐ Provide receipts or other evidence for the out-of-pocket expenses, as instructed above.

☐ Keep a copy of your completed Registration and Reimbursement Claim Form (plus documentation submitted) for your records.

☐ Sign and date your Registration and Reimbursement Claim Form.

☐ Finally, your completed Registration and Reimbursement Claim Form and documentation must be submitted electronically no later than [DATE] or postmarked no later than [DATE].  The completed Registration and Reimbursement Claim Form and documentation can be submitted online at www.toyotapriusinvertersettlement.com or mailed to:

[Settlement Notice Administrator Address]

\*\*\*\*\*

Claimants are encouraged to use the on-line Registration and Reimbursement Claim Form. Toyota, Class Counsel, the Settlement Claims Administrator, and/or the Settlement Notice Administrator are not responsible for any misdelivered, lost, illegible, damaged, destroyed, or otherwise not received mail.

Registration and Reimbursement Claim Forms will be processed and approved in accordance with the terms of the Settlement Agreement.  Please check the settlement website, www.toyotapriusinvertersettlement.com, for updates.

# EXHIBIT 1A

## ATTACHMENT TO EXHIBIT 1 - REGISTRATION AND REIMBURSEMENT CLAIM FORM

## SIGNATORY

DATED: _____, 202__          _____
                                 [Name]

## NOTARY ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE/COMMONWEALTH OF _____          )
                                            ) SS.
COUNTY/PARISH OF _____                   )

On _____, before me, _____,
                                          **(Notary Public)**

personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entities on behalf of which the person acted, executed the instrument.

I, the undersigned, hereby affirm under the laws of the United States of America that a Subject Vehicle required the repair or replacement of an IPM or Inverter while I owned or leased that Subject Vehicle (the "Repair"), and that I cannot locate documentation (*e.g.,* an invoice, a repair order, a receipt) pertaining to the Repair. Accordingly, I am providing the following information to the best of my recollection and knowledge:

Name and address of Toyota Dealer or third party that performed the Repair:
_____

_____

Date on which the Repair occurred: _____

Parts involved in the Repair: _____

Total amount you paid for the Repair: $_____

Total amount you paid for towing related to the Repair: $_____

Total amount you paid for a rental car related to the Repair: $_____

Reason(s) that you do not have a receipt, invoice, or other proof relating to the Repair:

_____

_____

I certify under PENALTY of PERJURY under the laws of the State/Commonwealth of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal/stamp.

[Notary Seal/Stamp]

# EXHIBIT 2

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| KATHLEEN RYAN-BLAUFUSS, CATHLEEN MILLS and KHEK KUAN, on behalf of themselves and all others similarly situated, | Case No. 8:18-CV-00201-JLS-KES |
| Plaintiffs, | **[PROPOSED] FINAL JUDGMENT** |
| vs. | |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., and DOE DEFENDANTS 1-10, | |
| Defendants. | |
| STEVEN KOSAREFF and LAURA KAKISH, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | |
| vs. | |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES USA, INC., and DOES 1-10, inclusive, | |
| Defendants. | |

– 1 –

IT IS on this _____ day of _____ 2021, HEREBY ADJUDGED AND DECREED PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 23 and 58 AS FOLLOWS:

(1)     On this date, the Court entered a Final Order Approving Class Action Settlement (Dkt. No. __ );

(2)     For the reasons stated in the Court's Final Order Approving Class Action Settlement, judgment is entered in accordance with the Final Order Approving Class Action Settlement and this Action is dismissed with prejudice; and

(3)     A copy of this Final Judgment shall be filed in, and applies to, this Action.

SO ORDERED this ____ day of _____ 2021.


_____
Honorable Josephine L. Staton
Judge of the United States District Court

# EXHIBIT 3

1

2

3

4

5

6

7

8         IN THE UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10              SOUTHERN DIVISION

11
   KATHLEEN RYAN-BLAUFUSS,
12 CATHLEEN MILLS and KHEK                Case No. 8:18-CV-00201-JLS-KES
   KUAN, on behalf of themselves
13 and all others similarly situated,
                                         **[PROPOSED] FINAL ORDER**
14 Plaintiffs,                           **APPROVING CLASS ACTION**
                                         **SETTLEMENT**
15 vs.

16 TOYOTA MOTOR  CORPORATION,
   TOYOTA MOTOR SALES, U.S.A.,
17 INC., and DOE DEFENDANTS 1-10,

18 Defendants.
   _____
19
   STEVEN KOSAREFF and
20 LAURA KAKISH, on behalf of
   themselves and all others similarly
21 situated,

22 Plaintiffs,

23 vs.

24 TOYOTA MOTOR  CORPORATION,
   TOYOTA MOTOR SALES, U.S.A.,
25 INC., and DOE DEFENDANTS 1-10,

26 Defendants.

27

28
                              – 1 –

WHEREAS, the Court, having considered the Settlement Agreement dated **[MONTH]** ____, 2021 (the "Settlement Agreement") between and among the Class Representatives, Class Counsel, and Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc., ("Toyota"), the Court's **[MONTH]** ____, 2021 Order Granting Preliminary Approval of the Class Settlement, Directing Notice to the Class, and Scheduling Fairness Hearing (Dkt. No. ____) (the "Preliminary Approval Order"), having held a Fairness Hearing on **[DATE]**, and having considered all of the submissions and arguments with respect to the Settlement, and otherwise being fully informed, and good cause appearing therefor (all capitalized terms as defined in the Settlement Agreement);

IT IS HEREBY ORDERED AS FOLLOWS:

1.     This Final Order Approving Class Action Settlement ("Final Order") incorporates herein and makes a part hereof the Settlement Agreement and its exhibits and the Preliminary Approval Order. Unless otherwise provided herein, the terms defined in the Settlement Agreement and Preliminary Approval Order shall have the same meanings for purposes of this Final Order and accompanying Final Judgment.

2.     The Court has personal jurisdiction over all parties in the Action, including, but not limited to all Class Members, and has subject matter jurisdiction over the Action, including, without limitation, jurisdiction to approve the Settlement Agreement, grant final certification of the Class, settle and release all claims released in the Settlement Agreement, and dismiss the Action with prejudice and enter final judgment in each Action.

## I.     THE SETTLEMENT CLASS

3.     Based on the record before the Court, including all submissions in support of the settlement set forth in the Settlement Agreement ("Settlement), objections and responses thereto and all prior proceedings in the Action, as well as the Settlement Agreement itself and its related documents and exhibits, the Court hereby confirms the

certification of the following nationwide Class (the "Class") for settlement purposes only:

> All persons, entities or organizations (a) who own or lease a Subject Vehicle as of the date of the entry of the Preliminary Approval Order or (b) who, at any time before the entry of the Preliminary Approval Order, owned or leased a Subject Vehicle. Excluded from the Class are: (a) Toyota, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; and Toyota Dealers and Toyota Dealers' officers and directors; (b) Plaintiffs' Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly exclude themselves from the Class as provided in this Settlement Agreement.

The Court finds that only those persons/entities/organizations listed on Appendix B to this Final Order have timely and properly excluded themselves from the Class and, therefore, are not bound by this Final Order or the accompanying Final Judgment.

4.     The Court confirms, for settlement purposes and conditioned upon the entry of the Final Order and Final Judgment and upon the occurrence of the Final Effective Date, that the Class meets all the applicable requirements of FED. R. CIV. P. 23(a) and (b)(3):

a.     *Numerosity*. The Class, which is ascertainable, consists of current and former owners and lessees of approximately 1.1 million vehicles located throughout the United States and satisfies the numerosity requirement of FED. R. CIV. P. 23(a)(1). Joinder of these widely-dispersed, numerous Class Members into one suit would be impracticable.

b.     *Commonality*. There are some questions of law or fact common to the Class with regard to the alleged activities of Toyota in this case. These issues are sufficient to establish commonality under FED. R. CIV. P. 23(a)(2).

c.     *Typicality*. The claims of Class Representatives are typical of the claims of the Class Members they seek to represent for purposes of settlement.

d.     *Adequate Representation*. Plaintiffs' interests do not conflict with those of absent members of the Class, and Plaintiffs' interests are co-extensive with those of absent Class Members. Additionally, this Court recognizes the experience of Class Counsel Jeffrey L. Fazio and Dina E. Micheletti of Fazio Micheletti LLP and Amnon Z. Siegel of Miller Barondess LLP. Plaintiffs and their counsel have prosecuted this Action vigorously on behalf of the Class. The Court finds that the requirement of adequate representation of the Class has been fully met under FED. R. CIV. P. 23(a)(4).

e.     *Predominance of Common Issues*. The questions of law or fact common to the Class Members, as pertains to consideration of the Settlement, predominate over any questions affecting any individual Class Member.

f.     *Superiority of the Class Action Mechanism*. The class action mechanism provides a superior procedural vehicle for settlement of this matter compared to other available alternatives. Class certification promotes efficiency and uniformity of judgment because the many Class Members will not be forced to separately pursue claims or execute settlements in various courts around the country.

5.     The designated Class Representatives are as follows: Kathleen Ryan-Blaufuss, Catherine Mills, Khek Kuan, Steven Kosareff, and Laura Kakish. The Court finds that these Class Members have adequately represented the Class for purposes of entering into and implementing the Settlement Agreement. The Court appoints Jeffrey L. Fazio and Dina E. Micheletti of Fazio Micheletti LLP and Amnon Z. Siegel of Miller Barondess LLP as Class Counsel.

6.     In making all of the foregoing findings, the Court has exercised its discretion in certifying the Class.

## II.     NOTICE TO CLASS MEMBERS

7.     The record shows and the Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order

(Dkt. No. ⬜). The Court finds that such Class Notice (a) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (b) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons who do not exclude themselves from the Class; (c) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (d) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED. R. CIV. P. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.

The Court further finds that Toyota, through the Settlement Notice Administrator, provided notice of the Settlement to the appropriate state and federal government officials pursuant to 28 U.S.C. § 1715. Furthermore, the Court has given the appropriate state and federal government officials the requisite ninety (90) day time period to comment or object to the Settlement before entering its Final Order and Final Judgment.

## III.   FINAL APPROVAL OF SETTLEMENT AGREEMENT

8.   The Court finds that the Settlement Agreement resulted from extensive arm's length good faith negotiations between Class Counsel and Toyota, through experienced counsel, with the assistance and oversight of Settlement Special Master Patrick A. Juneau.

9.   Pursuant to FED. R. CIV. P. 23(e), the Court hereby finally approves in all respects the Settlement as set forth in the Settlement Agreement and finds that the Settlement, the Settlement Agreement, and all other parts of the Settlement are, in all respects, fair, reasonable, and adequate, and in the best interest of the Class and are in

[PROPOSED] FINAL ORDER APPROVING CLASS ACTION SETTLEMENT
EXHIBIT 3

full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Class Action Fairness Act, and any other applicable law. The Court hereby declares that the Settlement Agreement is binding on all Class Members, except those identified on Appendix B, and it is to be preclusive in the Action. The decisions of the Settlement Notice Administrator relating to the review, processing, determination and payment of Claims submitted pursuant to the Settlement Agreement are final and not appealable.

10.     The Court finds that the Settlement is fair, reasonable and adequate based on, among other things, the following factors: (a) there is no fraud or collusion underlying the Settlement; (b) the complexity, expense, uncertainty, and likely duration of litigation in the Action favor settlement on behalf of the Class; (c) the Settlement provides meaningful benefits to the Class; and (d) any and all other applicable factors that favor final approval.

11.     The Parties are hereby directed to implement and consummate the Settlement according to the terms and provisions of the Settlement Agreement. In addition, the Parties are authorized to agree to and adopt such amendments and modifications to the Settlement Agreement as (a) shall be consistent in all material respects with this Final Order Approving Class Action Settlement, and (b) do not limit the rights of the Class.

12.     The Court has considered all objections, timely and proper or otherwise, to the Settlement and denies and overrules them as without merit.

**IV.     DISMISSAL OF CLAIMS, RELEASE, AND INJUNCTION**

13.     The Action is hereby dismissed with prejudice on the merits and without costs to any party, except as otherwise provided herein or in the Settlement Agreement.

14.     Upon entry of this Final Order and the Final Judgment, Plaintiffs, Class Representatives, and each member of the Class (except those listed on Appendix B), on behalf of themselves and any other legal or natural persons who may claim by, through or under them, agree to fully, finally, and forever release, relinquish, acquit, and

discharge the Released Parties from any and all claims, demands, suits, petitions, liabilities, causes of action, rights, and damages of any kind and/or type regarding the subject matter of the Action, including, but not limited to, compensatory, exemplary, punitive, expert and/or attorneys' fees or by multipliers, whether past, present, or future, mature, or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative or direct, asserted or un-asserted, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim of any kind related arising from, related to, connected with, and/or in any way involving the Action, the Subject Vehicles that are, or could have been, defined, alleged or described in the Amended Consolidated Master Complaint, or any amendments of the Action, including, but not limited to, the design, manufacturing, advertising, testing, marketing, functionality, servicing, distributing, sale, lease or resale of the Subject Vehicles. Notwithstanding the foregoing, Class Representatives, Plaintiffs, and Class Members are not releasing claims for (1) personal injury, (2) death, (3) property damage arising from an accident involving a Subject Vehicle, (4) property damage to the Subject Vehicle arising from Inverter or IPM failure, other than damage to the Inverter or IPM itself, or (5) subrogation. This Release is limited to, and does not extend beyond, issues pertaining to the Subject Matter of the Action.

15.     Notwithstanding the foregoing, the Released Parties shall be held harmless by any Class Representative or Class Member for a Released Claim against the Released Parties asserted by that Class Representative or Class Member, either brought directly or by any legal or natural persons who claim by, through, or under that Class Representative or Class Member.

16.     By not excluding themselves from the Action and to the fullest extent they may lawfully waive such rights, all Class Representatives, Plaintiffs, and Class Members are deemed to acknowledge and waive Section 1542 of the Civil Code of the State of California and any law of any state or territory that is equivalent to Section 1542. Section 1542 provides that:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

17.     The Court orders that the Settlement Agreement shall be the exclusive remedy for all claims released in the Settlement for all Class Members not listed on Appendix B.

18.     Therefore, except for those listed on Appendix B, all Class Members and their representatives are hereby permanently barred and enjoined from, either directly, through their representatives, or in any other capacity instituting, commencing, filing, maintaining, continuing, or prosecuting against any of the Released Parties (as that term is defined in the Settlement Agreement) any action or proceeding in any court or tribunal asserting any of the matters, claims, or causes of action described. In addition, all Class Members and all persons in active concert or participation with Class Members are permanently barred and enjoined from organizing Class Members who have not been excluded from the Class into a separate class for purposes of pursuing, as a purported class action, any lawsuit based on or relating to the claims and causes of action in the complaint in the Action, or the facts and circumstances relating thereto or the release in the Settlement Agreement. Pursuant to 28 U.S.C. §§ 1651(a) and 2283, the Court finds that issuance of this permanent injunction is necessary and appropriate in aid of its continuing jurisdiction and authority over the Settlement and the Action.

## V.     OTHER PROVISIONS

19.     Without affecting the finality of this Final Order or the accompanying Final Judgment, the Court retains continuing and exclusive jurisdiction over the Action and all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement and of this Final Order and the

accompanying Final Judgment, to protect and effectuate this Final Order and the accompanying Final Judgment, and for any other necessary purpose. The Parties, the Class Representatives, and each Class Member not listed on Appendix B are hereby deemed to have irrevocably submitted to the exclusive jurisdiction of this Court, for the purpose of any suit, action, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement, including the exhibits thereto, and only for such purposes.

20.    In the event that the Final Effective Date does not occur, certification of the Class shall be automatically vacated and this Final Order and the accompanying Final Judgment, and other orders entered in connection with the Settlement and releases delivered in connection with the Settlement, shall be vacated and rendered null and void as provided by the Settlement Agreement.

21.    Without further order of the Court, the Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement. Likewise, the Parties may, without further order of the Court, agree to and adopt such amendments to the Settlement Agreement (including exhibits) as are consistent with this Final Order and the accompanying Final Judgment and do not limit the rights of Class Members under the Settlement Agreement.

22.    Nothing in this Final Order or the accompanying Final Judgment shall preclude any action in this Court to enforce the terms of the Settlement Agreement.

23.    Neither this Final Order nor the accompanying Final Judgment (nor any document related to the Settlement Agreement) is or shall be construed as an admission by the Parties. Neither the Settlement Agreement (or its exhibits), this Final Order, the accompanying Final Judgment, or any document related to the Settlement Agreement shall be offered in any proceeding as evidence against any of the Parties of any fact or legal claim; provided, however, that Toyota and the Released Parties may file any and all such documents in support of any defense that the Settlement Agreement, this Final Order, the accompanying Final Judgment, and any other related document is binding

on and shall have res judicata, collateral estoppel, and/or preclusive effect in any pending or future lawsuit by any person who is subject to the release described above in Paragraph 14 asserting a released claim against any of the Released Parties.

24.    The Settlement Notice Administrator shall fulfill any escheatment obligations that arise.

25.    A copy of this Final Order shall be filed in, and applies to, the Action.

SO ORDERED this ____ day of _____ 2021.

_____
Honorable Josephine L. Staton
Judge of the United States District Court

[PROPOSED] FINAL ORDER APPROVING CLASS ACTION SETTLEMENT
EXHIBIT 3

# EXHIBIT 4

<u>**Authorized by the U.S. District Court for the Central District of California**</u>

**If You Currently or Previously Owned, Purchased, or Leased a 2010-2015 Prius or 2012-2017 Prius V, You Could Get Benefits from a Class Action Settlement.**
*Para ver este aviso en español, visita www.toyotapriusinvertersettlement.com*

- There is a proposed settlement of a class action lawsuit against Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. ("Toyota") concerning the Intelligent Power Modules ("IPMs"), which is a component in the hybrid inverter assemblies Toyota ("Inverters") installed in 2010-2015 Prius and 2012-2017 Prius V vehicles, which were the subject of Safety Recalls E0E, F0R, J0V, and/or 20TA10   (collectively, "Subject Vehicles"). If you currently own or lease, or once owned or leased, one or more Subject Vehicles, you are included in the settlement unless you exclude yourself from the Class in the manner described below. **This Notice contains important information about your legal rights and options and deadlines by which you must exercise them.**

- The proposed settlement provides the following benefits, subject to certain terms and conditions: (1) a Customer Confidence Program, which provides certain repairs to and/or replacement of the IPM and/or Inverter at no cost to you or subsequent owners of the Subject Vehicles for 20 years from the date the Subject Vehicle was first put into use; (2) free loaner vehicles and/or towing of the Subject Vehicle in certain situations for the duration of the Customer Confidence Program; (3) reimbursement for the following expenses not previously reimbursed by Toyota: (a) the cost to repair or replace an IPM or Inverter, (b) rental car expenses incurred in connection with the repair or replacement of an IPM or Inverter, (c) towing expenses incurred in connection with the repair or replacement of an IPM or Inverter; and (4) possible Redistribution Checks, subject to certain terms and conditions.

Please read this Notice carefully. It contains important information about your rights and how to exercise them, your options, and current deadlines. Your legal rights are affected, whether you act or do not act. All dates in this Notice are subject to change. You are encouraged to periodically check the settlement website, **www.toyotapriusinvertersettlement.com**, because it will be updated with additional information.

## A.      BASIC INFORMATION

| 1.      What is this Notice about? |
| --- |

A Court authorized this Notice because you have a right to know about a proposed settlement of two class action lawsuits and about all of your options and associated deadlines before the Court decides whether to give final approval to the settlement. The class actions were

consolidated by the Court under the name of *Remy McCarthy, et al., v. Toyota Motor Corp., et al.,* No. 8:18-CV-00201-JLS-KES. The defendants are Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (hereinafter, "Toyota"). This Notice explains the claims and allegations in the litigation, the settlement, and your legal rights.

You are NOT being sued. The Court still has to decide whether to finally approve the settlement. Payments and other benefits will be distributed only if the Court finally approves the settlement and after any appeals are resolved in favor of the settlement. Please be patient and check **www.toyotapriusinvertersettlement.com** regularly for updates. Please do not contact the Court or Toyota Dealers regarding the details of this settlement while it is pending before the Court. All questions should be directed to the Settlement Notice Administrators at [NUMBER].

*Your legal rights may be affected even if you do not act.*
*Please read this Notice carefully. All capitilized words and terms are defined in the Settlement Agreement, which can be found at www.toyotapriusinvertersettlement.com*

## YOUR RIGHTS AND CHOICES

| *YOU MAY:* | | *DATE/CLAIM PERIOD* |
|---|---|---|
| **FILE A REGSTRATION AND REIMBURSEMENT CLAIM FORM TO SEEK REIMBURSEMENT** | You may submit Claims for the following Out-Of-Pocket costs on a Subject Vehicle that were incurred prior to the Final Effective Date and that were not otherwise reimbursed by Toyota: (a) the cost to repair or replace an IPM or Inverter, (b) rental car expenses incurred in connection with the repair or replacement of an IPM or Inverter and/or (c) towing expenses incurred in connection with the repair or replacement of an IPM or Inverter. Filing a claim is the <u>only</u> way that you can get reimbursed for these Out-Of-Pocket Costs. | *The deadline to submit the Registration and Reimbursment Claim Form is three months after the Final Effective Date*<br><br>*The Final Effective Date is currently anticpated to be ___. This date is subject to change.   Changes will be posted at www.toyotapriusinverterrsettlement.com* |
| **FILE A REGISTRATION AND REIMBURSEMENT CLAIM** | If you are a Class Member who had the Inverter and/or IPM in your Subject Vehicle replaced (at your own expense or under warranty) prior to the Final Effective Date, you may be eligible for a Redistribution Check, once all valid Out-of-Pocket Claims have been paid out of the | *The deadline to submit the Registration and Reimbursment Claim Form is three months following the Final* |

| *YOU MAY:* | | *DATE/CLAIM PERIOD* |
|---|---|---|
| **FORM FORM FOR POTENTIAL PAYMENT** | Settlement Fund, if sufficient funds remain, unless it is administratively unfeasible.<br><br>To the extent Toyota posseses information sufficient to determine that your Subject Vehicle has had its IPM or Inverter replaced and how to contact you, a Redistribution Check for up to $250 will be sent to you if money remains in the Settlement Fund after all claims for reimbursement of Out-of-Pocket expenses have been paid, unless it is administratively unfeasible.<br><br>**Unless you have received notice that you are automatically registered for this benefit, you must submit a timely Registration and Reimbursement Claim Form to be eligible If you wish to be eligible for Redistribution Funds (if available and administratively feasible)**. | *Effective Date*<br>*Changes will be posted to*<br>*www.toyotapriusinverter settlement.com* |
| **OBTAIN OTHER SETTLEMENT BENEFITS** | Upon the Final Effective Date, Toyota will implement the Customer Confidence Program. If you have not opted out of the settlement, your Subject Vehicle will be covered by the Customer Confidence Program, which enhances existing warranties by providing certain cost-free repairs or replacements of the IPM and/or Inverter for twenty (20) years from the date of First Use of the Subject Vehicle pursuant to certain terms, and also includes a Loaner/Towing Program, whereby, under certain conditions and without cost to Class Members Toyota shall provide (i) a complimentary Loaner Vehicle as set forth in the Settlement Agreement and/or (ii) reimbursement for towing expenses to the Toyota Dealer as set forth in the Settlement Agreement, in order for the Subject Vehicle to undergo an Inverter and/or IPM repair and/or replacement pursuant to certain terms. | *Shall begin on Final Effective Date* |
| **OBJECT** | Write to the Court about why you do not like the proposed settlement. Section F of this Notice contains important information about what you must do if you would like to object to this Settlement. | *[date]* |

| *YOU MAY:* | | *DATE/CLAIM PERIOD* |
|---|---|---|
| **EXCLUDE YOURSELF** | Ask to get out (opt out) of the Class and the proposed settlement.  If you do this, you are not entitled to any of the settlement benefits, but you keep your right to sue Toyota about the issues in your own lawsuit, with your own lawyers.   If you exclude yourself you cannot object to the settlement. Section D of this Notice contains important information about what you must do if you choose to exclude yourself from this Settlement. | *[date]* |
| **APPEAR IN THE LAWSUIT OR GO TO THE FAIRNESS HEARING** | You are not required to enter an appearance in the lawsuit in order to participate in the proposed settlement, but, if you want to, you may enter an appearance on your own or through your own lawyer in addition to filing an objection. You can also ask to speak in Court at the Fairness Hearing about the proposed settlement, if you have previously filed an objection and submitted a timely notice of intention to appear at the Fairness Hearing. Section G of this Notice contains important information about what you must do if you would like to exercise this option | *[Appearance deadline - date]*<br><br>*[Fairness Hearing date and time]* |
| **DO NOTHING** | You may not receive certain settlement benefits that you may otherwise be eligible for and you give up the right to sue Toyota about the issues in the lawsuit. | |

| 2. | What is the lawsuit about? |
|---|---|

The Plaintiffs in this case alleged that thermal and electrical stress resulted in the failure of transistors in the IPMs Toyota installed in 2010 to 2014 model year Prius and 2012 to 2014 model year Prius V hybrid vehicles, causing the vehicles to suddenly decelerate and stall while being driven, despite Toyota's claim that Safety Recalls E0E and F0R, which it conducted in 2014 and 2015, respectively, corrected the problem.

In late January and early February 2018, the Plaintiffs brought two separate class actions against Toyota, which were later consolidated in the U.S. District Court for the Central District of California, alleging violations of consumer-protection laws, breaches of warranty, and unjust enrichment. The Amended Consolidated Class Action Complaint, which contains each of the allegations and claims that the Plaintiffs have made in this case, is available online at **www.toyotapriusinvertersettlement.com**.

During the course of the litigation, Toyota conducted two additional safety recalls—Safety Recall J0V in late 2018/early 2019, which involved all the vehicles that were the subject of Safety Recalls E0E and F0R, and Safety Recall 20TA10 in mid-2020, which involved the third-generation Prius and Prius V vehicles that were not subject to any of the previous safety recalls (*i.e.,* certain 2013 to 2015 Prius and certain 2014 to 2017 Prius V vehicles)—for the purpose of installing new software to prevent the Subject Vehicles from stalling in the event of an IPM or Inverter malfunction or failure and allow Subject Vehicles to continue driving at speeds of up to ~60 miles per hour.

After more than three years of litigation and more than a year of settlement negotiations, the Plaintiffs and Toyota reached an agreement to settle this case, which is described in this Notice.

| 3. | What vehicles are included in the settlement? |
|---|---|

This settlement involves 2010 to 2015 model year Prius vehicles and 2012 to 2017 model year Prius V vehicles that were the subject of Safety Recall E0E, F0R, J0V, and/or 20TA10 (called the "Subject Vehicles").

| 4. | Why is this a class action? |
|---|---|

In a class action, people called "class representatives" sue on behalf of other people who have similar claims so their claims can be resolved in a single case if the Court certifies the case as a class action. Together, these people are called the "Class" or "Class Members." Once a settlement of a class action is approved, the Court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

| 5. | Why is there a settlement? |
|---|---|

Both sides in the lawsuit agreed to a settlement to avoid the cost and risk of further litigation, including a potential trial, and so that eligible Class Members will receive benefits under the Settlement Agreement. All Class Members who do not opt out of the settlement will also be

releasing Toyota from liability.   The settlement does not mean that Toyota broke any laws or did anything wrong, and the Court did not decide which side was right.   This settlement has been preliminarily approved by the Court, which authorized the issuance of this Notice. The Class Representatives and the lawyers representing them (called "Class Counsel"), believe that the settlement is in the best interests of all Class Members.

The essential terms of the settlement are summarized in this Notice.   The Settlement Agreement, which includes several exhibits and addenda, sets forth in greater detail the rights and obligations of the parties.   If there is any conflict between this Notice and the Settlement Agreement, the Settlement Agreement governs.

## B.    WHO IS IN THE SETTLEMENT?

To see if you are affected or if you can get money or benefits, you first have to determine whether you are a Class Member.

| 6. | How do I know if I am part of the settlement? |
|---|---|

You are part of the settlement if you are a person, entity or organization (a) who, as of the entry of the Preliminary Approval Order, owns or leases a Subject Vehicle, or (b) who, at any time before the entry of the Preliminary Approval Order, owned or leased a Subject Vehicle. This is called the "Class."

Excluded from the Class are (a) Toyota, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; and Toyota Dealers and Toyota Dealers' officers and directors; (b) Plaintiffs' Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly exclude themselves from the Class.

| 7. | I'm still not sure if I'm included in the settlement. |
|---|---|

If you are not sure whether you are included in the Class, you may call [**toll free number**]. Please do not contact Toyota Dealers regarding the details of this settlement while it is pending before the Court, as the Court has ordered that all questions should be directed to the Settlement Notice Administrators.

## C.    THE SETTLEMENT BENEFITS —WHAT YOU GET AND HOW TO GET IT

| 8. | When do I get benefits and what does the settlement provide? |
|---|---|

If you are a Class Member, whether and what you are eligible to receive depends on several

factors. The settlement benefits are outlined generally below, and more information can be found on **www.toyotapriusinvertersettlement.com**. The Court still has to decide whether to finally approve the settlement.   However, no benefits have to be provided and no releases of liability will be given until and unless the Court finally approves the settlement and only after any appeal period expires or any appeals are resolved in favor of the settlement.   We do not know if or when the Court will finally approve the settlement or whether there will be any appeals that would have to be resolved in favor of the settlement before certain benefits would be provided, so we do not know precisely when any benefits may be available.   Please check **www.toyotapriusinvertersettlement.com** regularly for updates regarding the settlement.

*Please note that you may have to take action within certain deadlines to receive certain benefits, such as completing and submitting a Registration and Reimbursement Claim Form.* If you do nothing, you may not receive certain benefits from the settlement, and, as a Class Member, you will not be able to sue Toyota about the issues in the lawsuit.

| a. | What is the Customer Confidence Program? |
|---|---|

As of the Final Effective Date, Toyota will implement a Customer Confidence Program, which will enhance existing warranties by providing certain repairs or replacements of the IPM or Inverter in Subject Vehicles (or to subsequent owners of those Subject Vehicles) at no cost to Class Members for twenty (20) years/inlimited miles from the date of First Use of the Subject Vehicle on the following terms:

(i)   Toyota shall extend coverage for the Subject Vehicles under the Current Warranty Enhancement Programs (which relates to diagnostic trouble codes ("DTCs") P0A94, P0A1A, P324E, and P3004) to provide coverage for a total of twenty (20) years from the date of First Use of the Subject Vehicle.

(ii)   In addition to the coverage provided for in Section C.1(a) above, Toyota shall repair and/or replace the Inverter if a Toyota Dealer: (i) identifies that either DTC P0A7A and/or DTC P0A78 have been triggered; (ii) confirms that the Inverter has failed; and (iii) determines that the Inverter needs to be repaired and/or replaced.

(iii)   Toyota shall also repair and/or replace the Inverter if a Toyota Dealer: (i) confirms that the Inverter has failed due to a Thermal Event, regardless of what DTC is triggered; and (ii) determines that the Inverter needs to be repaired and/or replaced.

(iv)   Toyota shall also repair and/or replace the IPM regardless of what DTC (if any) is triggered if a Toyota Dealer: (i) confirms that the IPM has failed; and (ii) cannot demonstrate that the IPM failure was due to anything other than Thermal Stress.

A Class Member's rights under the Customer Confidence Program are transferred with the

Subject Vehicle.

Class Members who are denied coverage under the Customer Confidence Program and wish to appeal the denial must submit an Appeal Form to the Settlement Claims Administrators electronically via the settlement website or by regular mail. An Appeal Form will be made available to Class Members on the settlement website at **www.toyotapriusinvertersettlement.com** and by scanning the QR code that appears on the Direct Notice that all Class Members will receive, which should be kept in the glovebox of your Subject Vehicle. An Appeal Form is also attached as Appendix C to this Notice. After reviewing the completed Appeal Form and the accompanying documentation, the Settlement Claims Administrators shall make a final determination as to whether coverage should be provided pursuant to the Customer Confidence Program.

| **b.** | **How will I be reimbursed for Out-of-Pocket Expenses?** |
|---|---|

As part of this settlement, Toyota agrees to pay a total of $20,000,000.00 into a non-reversionary Qualified Settlement Fund ("QSF"). The settlement amount is to be used to fund the Out-Of-Pocket Claim Reimbursement Process and to pay for tax preparation associated with the QSF. All other expenses related to the settlement, including notice and administrative fees and costs, attorneys' fees and costs and incentive awards to class representatives, as awarded by the Court, are being separately paid by Toyota.

If there is a sufficient balance in the QSF after all eligible Out-Of-Pocket Claims have been paid and after all uncashed checks are redeposited, as determined by the Settlement Clams Administrators, the balance shall be distributed pro rata as Redistribution Checks to Class Members who cashed their initial Reimbursement payment, and to Class Members who had their Inverter and/or IPM replaced prior to the Final Effective Date, but who did not incur reimbursable Out-of-Pocket expenses, unless it would be administratively unfeasible to do so. Redistribution Checks will be distributed pro-rata and capped at $250 per person, and shall be treated in the same manner as Reimbursement payments, with the exception that, after the Reimbursement payment and Redistributuon Check processes have been completed, uncashed checks will be distributed *cy pres* to the Texas A & M University Transportation Institute.

If the amount in this Settlement Fund is insufficient to pay eligible Out-Of-Pocket Claims, Toyota shall provide additional funds sufficient to pay all such eligible Out-Of-Pocket Claims, as directed by the Settlement Claims Administrators. Toyota shall not, however, add additinal funds to cover Redistribution Checks. If it is administratively unfeasible = to provide Redistribution Checks after eligible Out-of-Pocket expenses are paid, there will be no Redistribution Payment.

| **c.** | **What does the Out-Of-Pocket Claims Process Require?** |
|---|---|

If you submit a valid and timely Registration and Reimbursement Claim Form and the

settlement is finally approved, including resolving any appeals in favor of upholding the settlement, you will be reimbursed for the following expenses, provided they were not previously reimbursed by Toyota:

> (i)    rental car expenses incurred in connection with the repair or replacement of an IPM or an Inverter;

> (ii)   towing charges that had been incurred in connection with the repair or replacement of an IPM or an Inverter; and

> (iii)  the cost of repairing or replacing an IPM or an Inverter.

To be eligible for reimbursement, you must submit a Registration and Reimbursement Claim Form and the expenses must have been incurred prior to the Final Effective Date**.** For ease of reference, the Registration and Reimbursement Claim Form is attached to this Notice and is also available on the settlement website, **www.toyotapriusinvertersettlement.com,** where it can be filled out and submitted electronically.

You must submit your Registration and Reimbursement Claim Form and any supporting documentation to the Settlement Notice Administrators by [DATE].

The Settlement Claims Administrators will determine whether Registration and Reimbursement Claim Forms are complete and timely. If your Claim is deficient, the Settlement Claims Administrators will mail you a letter requesting that you complete the deficiencies and resubmit the Registration and Reimbursement Claim Form within sixty (60) days of the date of the letter from the Settlement Notice Adminstrator. If you fail to provide the requested documentation or information, your Claim will be denied.

The Settlement Claims Administrators will review your Registration and Reimbursement Claim Form and other Claims that are submitted and determine if reimbursement is owed. Review of Claims should be completed within ninety (90) days of receipt, but no payment will be made unless and until the Final Effective Date occurs.

If your Claim for reimbursement is rejected, the Settlement Claims Administrators will notify Toyota and Class Counsel of the rejection of the Claim and the reason(s) why. Class Counsel may review the rejected Claim and may consult with Toyota in an attempt to resolve these denied Claims. If Class Counsel and Toyota jointly recommend payment of the Claims or payment of a reduced claim amount, the Settlement Claims Administrators will be instructed to pay those Claims. If Class Counsel and Toyota's Counsel disagree, the Settlement Claims Administrators will make a final determination as to whether the Claims should be paid.

| d. | **What is the Loaner/Towing Program?** |
| --- | --- |

Pursuant to the Loaner/Towing Program, and without cost to Class Members and upon request from the Class Member, Toyota shall provide:

(i)   A complimentary Loaner Vehicle, while the repair and/or replacement of the Subject Vehicle's IPM and/or Inverter is being performed, only if the repair and/or replacement exceeds four (4) hours to perform and/or the Subject Vehicle is required by the Toyota Dealer to remain at the dealership overnight. A Loaner Vehicle is available starting with the day on which the Subject Vehicle is brought to a Toyota Dealer for repair and/or replacement of the Inverter and/or IPM until the day that work is completed.

(ii)   A complimentary tow to a Toyota Dealer in order for the Subject Vehicle to undergo an Inverter and/or IPM repair and/or replacement pursuant to the terms of this Settlement Agreement (towing and inspection charges may apply if the Subject Vehicle does not require repair or replacement of an IPM or Inverter), as follows:

a.   If a Class Member or subsequent purchaser or transferee of a Subject Vehicle is uncomfortable driving their Subject Vehicle to a Toyota Dealer, and the Subject Vehicle is not on a public roadway, they must contact a Toyota Dealer to arrange for towing. If a Class Member or subsequent purchaser or transferee of a Subject Vehicle is uncomfortable driving their Subject Vehicle to a Toyota Dealer and the Subject Vehicle is on a public roadway, they should contact a Toyota Dealer to arrange for towing and/or contact Toyota's 24/7 Roadside Assistance Hotline at 1-800-444-4195 to obtain towing to the nearest Toyota Dealer.

b.   If a Class Member is uncomfortable driving their Subject Vehicle to a Toyota Dealer and the Class Member is unable to obtain a tow from a Toyota Dealer or Toyota's 24/7 Roadside Assistance Hotline within a reasonable amount of time, then Toyota will reimburse reasonable towing expenses to the nearest Toyota Dealer, up to a maximum of $250 per tow. Toyota Dealers shall provide reimbursement for such towing expenses

## 9.   What am I giving up by remaining in the Class?

If the settlement becomes final, Class Members who do not exclude themselves from the Class will release Toyota from liability and will not be able to sue Toyota about the issues in the lawsuit. The Settlement Agreement at Section VII describes the released claims in necessary legal terminology, so read it carefully. For ease of reference, we also attach the full release section in Appendix A to this Notice. The Settlement Agreement is available at **www.toyotapriusinvertersettlement.com.** You can talk to one of the lawyers listed in Question 13 below for free or you can, of course, talk to your own lawyer at your own expense if you have questions about the released claims or what they mean. Class Members

are not precluded from addressing, dealing with, or complying with requests or inquiries from governmental authorities relating to the issues raised in this class action settlement.

### D.    EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to keep the right to sue or continue to sue Toyota over the legal issues in the lawsuit, then you must take steps to exclude yourself from this settlement.  This is also known as "opting out" of the Class.

| 10.    If I exclude myself, can I get anything from this settlement? |
| --- |

If you exclude yourself, you do not get settlement benefits. If you ask to be excluded, you cannot object to the settlement. But, if you timely and properly request exclusion, the settlement will not prevent you from suing, continuing to sue or remaining or becoming part of a different lawsuit against Toyota in the future about the issues in the lawsuit.  If you exclude yourself, you will not be bound by anything that happens in this lawsuit and you may not object to the settlement.

| 11.    If I do not exclude myself, can I sue later? |
| --- |

Unless you exclude yourself, you give up the right to sue Toyota for the claims resolved by this settlement. If the settlement is finally approved, you will be permanently enjoined and barred from initiating or continuing any lawsuit or other proceeding against Toyota about the issues in the lawsuit.

| 12.    How do I get out of the settlement? |
| --- |

To exclude yourself from the settlement, you must mail a written request for exclusion to the Settlement Notice Administrators specifying that you want to be excluded from the settlement. **The letter must include all of the following:**

- **your full name, current residential address, mailing address (if different), and telephone number.**

- **the model year, make, model, and VIN number of your vehicle(s)**

- **the name of the Action, *Remy McCarthy, et al., v. Toyota Motor Corp.,* and the case number (8:18-CV-00201-JLS-KES)**

- **a statement clearly indicating that you want to be excluded from the Class (*e.g.*, "please exclude me from the class"); and**

- **signed and dated by you (an attorney's signature is not sufficient).**

You cannot ask to be excluded over the phone or at the settlement website. You **must** mail

your request for exclusion postmarked no later than **[date]** to:

**[contact and address]**

Your request for exclusion form must be postmarked no later than **[date],** to be considered by the Court. The deadlines found in this Notice may be changed by the Court. Please check **www.toyotapriusinvertersettlement.com** regularly for updates regarding the settlement.

## E.  THE LAWYERS REPRESENTING THE CLASS

| **13.  Who Are the Class Counsel in the case?** |
| --- |

The Court has appointed lawyers to collectively represent Class Members.  These lawyers are called "Class Counsel":  Jeffrey L. Fazio and Dina E. Micheletti of Fazio Micheletti LLP and Amnon Z. Siegel of Miller Barondess LLP are Class Counsel. If you want to be represented by another lawyer, you may hire one to appear in Court for you at your own expense. Their contact information is as follows:

Jeffrey L. Fazio
Dina E. Micheletti
Fazio Micheletti LLP
1111 Broadway, Suite 400
Oakland, CA 94607
Tel: (925) 543-2555
Fax: (925) 369-0344
Website: www.fazmiclaw.com

Amnon Z. Siegel
Miller Barondess LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, CA 90067
Tel: (310) 552-4400
Fax: (310) 552-8400
Website: www.millerbarondess.com

| **14.  How will the lawyers be paid?** |
| --- |

The law firms that worked on this Action on behalf of the Class will ask the Court for an award of attorneys' fees in the amount recommended by the Settlement Special Master appointed by the Court, which is $19 million, and for reimbursement of their litigation expenses in an amount not to exceed $600,000. Toyota will not oppose the request for attorneys' fees, costs and expenses in these amounts.

Class Counsel will also ask the Court to award each of the Class Representatives service awards in the amount of $5,000 for the time and effort each spent assisting Class Counsel, participating in discovery (including having their depositions taken), and representing Class Members. Toyota will not oppose the request for Class Representative service awards in this amount.

The Court must approve the request for attorneys' fees, litigation expenses and the request for service awards. The amounts awarded by the Court will be paid by Toyota in addition to all other settlement benefits. Under no circumstances will Toyota's payment of attorneys' fees, costs and expenses and Class Representative service awards reduce your settlement benefits. In the event that the Court awards less than $19 million in attorneys' fees, the difference between the amount requested and the amount awarded will be deposited into the Settlement Fund and distributed to Class Members.

## F.   OBJECTING TO THE SETTLEMENT

You can tell the Court if you do not agree with the settlement or some part of it.

---

**15.   How do I tell the Court if I do not like the settlement?**

---

If you are a Class Member, and you do not exclude yourself from the Class, you can object to the settlement if you do not like some part of it or all of it.

To object, you must send (either electronically or via the mail) a written objection containing all of the following **no later than [DATE]** to the Settlement Notice Administrator at [ADDRESS].

Failure to include all of the following information could result in the striking of your objection:

- The name of the action (*Remy McCarthy, et al., v. Toyota Motor Corp., et al.,* No. 8:18-CV-00201-JLS-KES (C.D. Cal.))
- your full name, current residential address, mailing address (if different from the address of your residence), telephone number, and e-mail address;
- the make, model year, and Vehicle Identification Number ("VIN") of each Subject Vehicle you purchased or leased;
- an explanation of your objection, including the legal and factual bases for your objection and copies of any documents supporting your objection;
- the full name, address and telephone number of each lawyer (if any) who is representing you, or who may seek or claim entitlement to compensation for any reason in connection with your objection;
- the number of times you or your lawyer (if any) has objected to a class action settlement within the past five years;
- the name and case number of each case in which you and/or your lawyer has made such objection.   If the you or your lawyer have ***not*** made any prior objection in the past five years, you must affirmatively and explicitly state this in the written materials provided with the objection;
- a statement as to whether you intend to appear at the Final Approval Hearing either individually or through your lawyer;
- the identity of all lawyers (if any) who will appear on your behalf of the at the Final Approval Hearing;

- a list of all persons who will or may offer testimony in support of the objection (if the answer is none, you must say so in the objection); and
- your signature and date of signature.

Objections must be mailed to the following address no later than [DATE]:

[Settlement Notice Administrator's Address]

The Court has ordered that all persons submitting an objection are subject to deposition and to document discovery via service of a notice of deposition notice and document request. Please see the [ORDER, paragraph ____]

---

### 16.   What is the difference between objecting and excluding yourself?

Excluding yourself is telling the Court that you do not want to be part of the Class.   If you exclude yourself, you have no basis to object because the settlement no longer affects you. Objecting is telling the Court that you do not like something about the settlement.   You can object only if you stay in the Class.

If you are a Class Member and you do nothing, you will remain a Class Member and all of the Court's orders will apply to you, you will be eligible for the settlement benefits described above as long as you satisfy the conditions for receiving each benefit, and you will not be able to sue Toyota over the issues in the lawsuit.

## G.       THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to grant final approval to the settlement.   If you have filed a valid objection on time and attend the hearing, you may ask to speak (provided you have previously filed a timely notice of intention to appear), but you do not have to attend or speak.

---

### 17.   When and where will the Court decide whether to grant final approval of the settlement?

The Court will hold a Fairness Hearing at **[time a/p.m.] Pacific time** on **[date],** at the Ronald Reagan Federal Building and United States Courthouse, 411 W. Fourth St., Courtroom 10A, Santa Ana, CA, 92701.   At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will only listen to people who have met the requirement to speak at the hearing (*See* Question 19 below). After the hearing, the Court will decide whether to grant final approval of the settlement, and, if so, how much to pay the lawyers representing Class Members.   We do not know how long these decisions will take. **The Court may reschedule the Fairness Hearing, so check the website periodically for further updates.**

---

### 18.   Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. But you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it – but you can if you provide advance notice of your intention to appear (*See* Question 19 below). As long as you filed a written objection with all of the required information on time with the Court, the Court will consider it. You may also pay another lawyer to attend, but it is not required.

| 19. | May I speak at the hearing? |
|---|---|

You or your attorney may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intent to Appear in *Remy McCarthy, et al., v. Toyota Motor Corp., et al.*." to the Clerk of Court so that it is received and filed no later than **[date]**. You must include your name, address, telephone number, the year, make and model and VIN number of your vehicle, and your signature. Anyone who has requested permission to speak must be present at the start of the Fairness hearing at **[time a/p.m.] Pacific time** on **[date]**. You cannot speak at the hearing if you excluded yourself from the Class.

## H.   GETTING MORE INFORMATION

| 20. | How do I get more information? |
|---|---|

This Notice summarizes the proposed settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement and other information about the settlement and the Registration and Reimbursement Claim Form, at **www.toyotapriusinvertersettlement.com.** You can also call the toll-free number, **[number]** or write the Settlement Notice Administrators at **[contact and address].** You can also look at the documents filed in the lawsuit at the Court at the address provided above in response to Question 15.

| 21. | When will the settlement be final? |
|---|---|

The settlement will not be final unless and until the Court grants final approval of the settlement at or after the Fairness Hearing and after any appeals are resolved in favor of the settlement. Please be patient and check the website identified in this Notice regularly. Please do not contact the Court. All questions should be directed to the Settlement Notice Administrators.

**II.    Appendix A – Section VII from the Settlement Agreement – Release and Waiver**

A.      The Parties agree to the following release and waiver, which shall take effect upon entry of the Final Judgment and Final Order.

B.      In consideration for the Settlement Agreement, Class Representatives, and each Class Member, on behalf of themselves and any other legal or natural persons who may claim by, through or under them, agree to fully, finally and forever release, relinquish, acquit, and discharge the Released Parties from any and all claims, demands, suits, petitions, liabilities, causes of action, rights, and damages of any kind and/or type regarding the subject matter of the Action, including, but not limited to, compensatory, exemplary, punitive, expert and/or attorneys' fees or by multipliers, whether past, present, or future, mature, or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative or direct, asserted or un-asserted, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, violations of any state's deceptive, unlawful, or unfair business or trade practices, false, misleading or fraudulent advertising, consumer fraud or consumer protection statutes, any breaches of express, implied or any other warranties, RICO, or the Magnuson-Moss Warranty Act, or any other source, or any claim of any kind related arising from, related to, connected with, and/or in any way involving the Action, the Subject Vehicles' inverters and/or associated parts that are, or could have been, defined, alleged or described in the Amended Consolidated Master Complaint, the Action, or any amendments of the Action. Notwithstanding the foregoing, Class Representatives and Class Members are not releasing claims for personal injury, wrongful death or actual physical property damage arising from an accident involving a Subject Vehicle.

C.      Notwithstanding the foregoing, the Released Parties shall be held harmless by any Class Representative or Class Member for a Released Claim against the Released Parties asserted by that Class Representative or Class Member, either brought directly or by any legal or natural persons who claim by, through, or under that Class Representative or Class Member.

D.      The Final Order will reflect these terms.

E.      Class Representatives and Class Members expressly agree that this Release, the Final Order, and/or the Final Judgment is, will be, and may be raised as a complete defense to, and will preclude any action or proceeding encompassed by, this Release.

F.      Class Representatives and Class Members shall not now or hereafter institute, maintain, prosecute, assert, and/or cooperate in the institution, commencement, filing, or prosecution of any suit, action, and/or proceeding, against the Released Parties, either directly or indirectly, on their own behalf, on behalf of a class or on behalf of any other person or entity with respect to the claims, causes of action and/or any other matters released through this settlement and the Settlement Agreement.

G.      In connection with the Settlement Agreement, Class Representatives and Class Members acknowledge that they and other Class Members may hereafter discover

claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Action and/or the Release herein. Nevertheless, it is the intention of Class Counsel and Class Representatives in executing this Settlement Agreement to fully, finally and forever settle, release, discharge, and hold harmless all such matters, and all claims relating thereto which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to the Action.

     H.     Class Representatives expressly understand and acknowledge that they will be deemed by the Final Judgment and Final Order to acknowledge and waive Section 1542 of the Civil Code of the State of California, which provides that:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Class Representatives expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable or equivalent to Section 1542, to the fullest extent they may lawfully waive such rights.

     I.     Class Representatives represent and warrant that they are the sole and exclusive owners of all claims that they personally are releasing under this Settlement Agreement. Class Representatives further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action, including without limitation, any claim for benefits, proceeds or value under the Action, and that Class Representatives are not aware of anyone other than themselves claiming any interest, in whole or in part, in the claims that they are releasing under the Settlement Agreement or in any benefits, proceeds or values in the claims that they are releasing under the Settlement Agreement. Class Members submitting a Registration and Reimbursement Claim Form shall represent and warrant therein that they are the sole and exclusive owner of all claims that they personally are releasing under the Settlement Agreement and that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action, including without limitation, any claim for benefits, proceeds or value under the Action, and that such Class Member(s) are not aware of anyone other than themselves claiming any interest, in whole or in part, in the claims that they are releasing under the Settlement Agreement or in any benefits, proceeds or values in the claims that they are releasing under the Settlement Agreement.

     J.     Without in any way limiting its scope, and, except to the extent otherwise specified in the Agreement, this Release covers by example and without limitation, any and

all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, costs or any other fees, costs, and/or disbursements incurred by Class Counsel, Plaintiffs' Counsel, Class Representatives or Class Members who claim to have assisted in conferring the benefits under this Settlement Agreement upon the Class.

K.     In consideration for the Settlement Agreement, Toyota and its past or present officers, directors, employees, agents, attorneys, predecessors, successors, affiliates, subsidiaries, divisions, and assigns shall be deemed to have, and by operation of the Final Order shall have, released Plaintiffs' Counsel, Class Counsel and each current and former Class Representatives from any and all causes of action that were or could have been asserted pertaining solely to the conduct in filing and prosecuting the litigation or in settling the Action.

L.     Class Representatives, Plaintiffs' Counsel and any other attorneys who receive attorneys' fees and costs from this Settlement Agreement acknowledge that they have conducted sufficient independent investigation and discovery to enter into this Settlement Agreement and, by executing this Settlement Agreement, state that they have not relied upon any statements or representations made by the Released Parties or any person or entity representing the Released Parties, other than as set forth in this Settlement Agreement.

M.     The Parties specifically understand that there may be further pleadings, discovery requests and responses, testimony, or other matters or materials owed by the Parties pursuant to existing pleading requirements, discovery requests, or pretrial rules, procedures, or orders, and that, by entering into this Settlement Agreement, the Parties expressly waive any right to receive, hear, or inspect such pleadings, testimony, discovery, or other matters or materials.

N.     Nothing in this Release shall preclude any action to enforce the terms of the Agreement, including participation in any of the processes detailed herein.

O.     Class Representatives and Class Counsel hereby agree and acknowledge that the provisions of this Release together constitute an essential and material term of the Agreement and shall be included in any Final Judgment and Final Order entered by the Court.

**Appendix B – Registration and Reimbursement Claim Form**

**Appendix C – Appeal Form**

# EXHIBIT 5

1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION

10
11   KATHLEEN RYAN-BLAUFUSS,
     CATHLEEN MILLS and KHEK
12   KUAN, on behalf of themselves        Case No. 8:18-CV-00201-JLS-KES
     and all others similarly situated,
13              Plaintiffs,                **[PROPOSED] ORDER (1)
                                           GRANTING MOTION FOR
14   vs.                                   PRELIMINARY APPROVAL OF
                                           CLASS SETTLEMENT,
15   TOYOTA MOTOR                          CERTIFYING SETTLEMENT
     CORPORATION, TOYOTA                   CLASS, AND DIRECTING NOTICE
16   MOTOR SALES, U.S.A., INC.,            TO THE CLASS; AND (2) SETTING
     and DOE DEFENDANTS 1-10,              A FAIRNESS HEARING
17                                         FOR _____**
                Defendants.
18
     STEVEN KOSAREFF and
19   LAURA KAKISH, on behalf of
     themselves and all others similarly
20   situated,
21              Plaintiffs,
22   vs.
23   TOYOTA MOTOR
     CORPORATION, TOYOTA
24   MOTOR SALES USA, INC., and
     DOES 1-10, inclusive,
25
                Defendants.
26
27                                   – 1 –
28   [PROPOSED] ORDER (1) GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT,
        CERTIFYING SETTLEMENT CLASS, AND DIRECTING NOTICE TO THE CLASS; AND (2) SETTING A
                                   FAIRNESS HEARING
                                     EXHIBIT 5

On _____ [DATE], at 10:00 a.m., this Court, with the Honorable Josephine L. Staton presiding, conducted a hearing regarding *Plaintiffs' Motion for Entry of an Order Granting Preliminary Approval of Class Action Settlement and Issuance of Related Orders* (the "Motion").  In the Motion, the Parties ask the Court to (1) preliminarily approve the terms of the settlement of the consolidated class actions (collectively, the "Action"); (2) certify the proposed class for settlement purposes; (3) appoint Kathleen Ryan-Blaufuss, Catherine Mills, Khek Kuan, Steven Kosareff, and Laura Kakish as Class Representatives; (4) appoint Jeffrey L. Fazio and Dina E. Micheletti of Fazio Micheletti LLP and Amnon Z. Siegel of Miller Barondess LLP as Class Counsel; (5) authorize R.L. Polk & Company to compile and provide Class Members' identities and contact information to Defendants; (6) appoint Patrick A. Juneau and Thomas Juneau of Juneau David, APLC, as Settlement Claims Administrators; (7) appoint Jeanne Finnegan of Kroll Notice Media as Settlement Notice Administrator; (8) approve the form and manner of class notice; and (9) schedule (a) the briefing pertaining to final approval of the settlement, (b) Class Counsel's application for an award of attorneys' fees and litigation expenses and service awards to each Class Representative, and (c) the date of a Fairness Hearing.

After considering the papers and arguments of counsel, and good cause appearing, **THE COURT HEREBY GRANTS THE MOTION FOR PRELIMINARY APPROVAL AND MAKES THE FOLLOWING FINDINGS AND ORDERS**:

1.    For purposes of this Order, the Court adopts and incorporates all terms and definitions set forth in the Settlement Agreement dated [MONTH DAY], 2021, including all exhibits and related documents thereto (collectively, the "Settlement Agreement," which is attached to the Motion as Exhibit A).  All capitalized terms are as defined in the Settlement Agreement.

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND DIRECTING NOTICE TO THE CLASS, AND SETTING A FINAL FAIRNESS HEARING

2.     The Court finds that it has jurisdiction over the Action and each of the Parties for purposes of settlement and asserts jurisdiction over the Class Members for purposes of effectuating this settlement and releasing their claims.  The Court shall retain continuing jurisdiction for the purpose of enforcing the Settlement Agreement after the entry of a Final Order and Judgment.

3.     The Court finds that the requirements of Rule 23 of the Federal Rules of Civil Procedure and other laws and rules applicable to preliminary settlement approval of class actions have been satisfied.  The proposed settlement appears to be the product of serious, informed negotiations that were conducted in good faith and at arms' length between the Parties' counsel, and falls within the range of possible approval as fair, reasonable, and adequate.  Therefore, the Court preliminarily approves the settlement of this Action as memorialized in the Settlement Agreement, subject to further consideration at the Fairness Hearing.

4.     Upon preliminary evaluation, there are no indications that the settlement is the product of fraud or overreaching by, or collusion between, the negotiating parties. The settlement appears to be the result of extensive, good-faith, arm's-length negotiations that took place between the parties' by counsel who are experienced in similar litigation along with the assistance of the Settlement Special Master Patrick A. Juneau – who was appointed Settlement Special Master by this Court – and which followed substantial discovery that was sufficient to enable counsel and the Court to make informed decisions.

5.     The proposed Settlement Agreement provides consideration to the Class consisting of the following:

- Customer Confidence Program: A 20-year/unlimited-mileage warranty enhancement, providing cost-free repair or replacement of the IPM or

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND DIRECTING NOTICE TO THE CLASS, AND SETTING A FINAL FAIRNESS HEARING

WORKAMER\03145\197001\39502591.v4-11/23/21

Inverter under certain conditions, starting from your Prius or Prius V's first day in service, with an appeal process for any denials.

- Cost-free loaner and/or towing program if certain conditions are met.

- Reimbursement: There is a $20,000,000 settlement fund to pay for reimbursement of unreimbursed IPM and Inverter repairs and replacements and/or related towing and rental car expenses incurred before Month 00, 2021.

- Redistrbution Check: If there is any money left in the settlement fund after reimbursement claims are paid, Class Members may get a check from the Redistribution Fund, unless it is administratively unfeasible.

- Possible charitable, *cy pres*, payments. If the Settlement Fund has a balance after Redistribution Checks are sent, that balance will go to Texas A&M University Transportation Institute.

6.    Having read and considered the papers on file, held a hearing, and taken the matter under submission, the Court GRANTS the Parties' Motion and sets a Fairness Hearing for _____ [DATE]. The Fairness Hearing will be held before the Honorable Josephine L. Staton at the United States District Court, Central District of California, 411 W. Fourth St., Santa Ana, CA 92701, Courtroom 10A, 10th Floor, to consider, *inter alia*, the following: (a) whether the Class should be certified for settlement purposes; (b) whether the settlement and Settlement Agreement should be finally approved as fair, reasonable and adequate; and (c) Class Counsel's application for attorneys' fees and litigation expenses ("Fee Request") and the Class Representatives' service awards.

7.    For purposes of settlement only, this action meets all the prerequisites of the Federal Rules of Civil Procedure 23(a) and 23(b)(3) for class certification including

4
[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND DIRECTING NOTICE TO THE CLASS, AND SETTING A FINAL FAIRNESS HEARING

WORKAMER\03145\197001\39502591.v4-11/23/21

numerosity, commonality, typicality, ascertainability, adequacy of representation, predominance of common issues, and superiority.

8.   Certification of the Settlement Class shall be solely for settlement purposes, without prejudice to the Parties in the event the Settlement Agreement is not finally approved by this Court or otherwise does not take effect. In the event that the Settlement Agreement is not finally approved, certification of the settlement Class shall be vacated and have no effect.

9.   The Court conditionally certifies the settlement Class, defined as follows: "Class" means, for settlement purposes only, all persons, entities or organizations (a) who own or lease a Subject Vehicle as of the date of the entry of the Preliminary Approval Order, or (b) who, at any time before the entry of the Preliminary Approval Order, owned or leased a Subject Vehicle.  Excluded from the Class are: (a) Toyota, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; and Toyota Dealers and Toyota Dealers' officers and directors; (b) Plaintiffs' Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly exclude themselves from the Class as provided in this Settlement Agreement.

10.   "Subject Vehicles" means 2010 to 2015 model year Prius vehicles and 2012 to 2017 model year Prius V vehicles that were the subject of Safety Recalls E0E, F0R, J0V, and/or 20TA10.

11.   Proposed Class Counsel have submitted declarations and firm resumes demonstrating their extensive class action experience, and their qualifications and experience are not disputed by Defense counsel.  Therefore, the Court finds that Jeffrey L. Fazio and Dina E. Micheletti of Fazio Micheletti LLP and Amnon Z. Siegel of Miller

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND DIRECTING NOTICE TO THE CLASS, AND SETTING A FINAL FAIRNESS HEARING

WORKAMER\03145\197001\39502591.v4-11/23/21

1  Barondess LLP are qualified and adequate to serve the settlement Class and are
2  appointed Class Counsel.

3       12.    Proposed Class Counsel have included in declaration testimony a
4  description of proposed Class Representatives Kathleen Ryan-Blaufuss, Catherine
5  Mills, Khek Kuan, Steven Kosareff, and Laura Kakish's involvement and contributions
6  to the prosecution and settlement of the Action, and that they are adequate
7  representatives testimony who have no apparent conflict with the settlement Class.
8  Therefore, the Court appoints Ms. Ryan-Blaufuss, Ms. Mills, Mr. Kuan, Mr. Kosareff,
9  and Ms. Kakish as Class Representatives.

10      13.    The Court has considered the form and content of the Class Notice (copies
11 of which are attached to the Settlement Agreement as Exhibit Nos. 4, 6, 7, 8), and finds
12 that the Class Notice and methodology as described in the Settlement Agreement,
13 Notice Plan, and in the Declaration of the Settlement Notice Administrator: (a) meet
14 the requirements of due process and Federal Rules of Civil Procedure 23(c) and (e);
15 (b) constitutes the best notice practicable under the circumstances to all persons entitled
16 to notice; and (c) satisfies the Constitutional requirements regarding notice.

17      14.    In addition, the Court finds that the Class Notice (a) apprises Class
18 Members of the pendency of the Action, the terms of the proposed settlement, their
19 rights and deadlines under the settlement; (b) is written in simple terminology; (c) is
20 readily understandable by Class Members; (d) provides sufficient notice of Class
21 Counsel's request for attorneys' fees and costs and incentive awards to Class
22 Representatives;  and (e) complies with the Federal Judicial Center's illustrative class
23 action notices.

24      15.    The Court hereby approves the Class Notice and the methodology
25 described in the Settlement Agreement and in the Declaration of the Settlement Notice

26
27
28

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND DIRECTING NOTICE TO THE CLASS, AND SETTING A FINAL FAIRNESS HEARING

Administrator in all respects, and it hereby orders that notice be commenced no later than _____ [DATE].

16. The Court understands, however, that the Parties must obtain Toyota customer data from a third-party before distribution of the Direct Mail Notice, and that the time within which that data can be obtained is not certain. The Parties have proposed R.L. Polk & Company as the third-party data provider and the Court approves their selection. All address information shall be updated as described in the Settlement Agreement and in the Declaration of the Settlement Notice Administrator.

17. The Parties have also proposed the appointment of Patrick A. Juneau and Thomas Juneau of Juneau David, APLC, as Settlement Claims Administrators and Jeanne Finnegan of Kroll Notice Media as Settlement Notice Administrator. Having considered the resumes and declarations of each, the Court hereby approves these appointments.

18. The Settlement Notice Administrator shall send the Direct Mail Notice, substantially in the forms attached to the Settlement Agreement as Exhibit 6 (for those Class Members identified as having had their Subject Vehicle's Inverter and/or IPM replaced) and Exhibit 7 (for the balance of the Class Members), by first-class U.S. Mail, proper postage prepaid to current and former registered owners of Subject Vehicles, as identified by data to be provided to the Settlement Notice Administrator by R.L. Polk & Co. The mailings of the Direct Mail Notice to the persons and entities identified by R.L. Polk & Co. shall be substantially completed by _____ [DATE].

19. The Court further approves, as to form and content, the Long-Form Notice and the Publication Notice , which are attached to the Settlement Agreement as Exhibits 4 and 8, respectively. The Court also approves the establishment of an internet website for the settlement. The website shall conform to the terms of the Settlement Agreement, and shall include documents relating to the settlement, orders of the Court

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND DIRECTING NOTICE TO THE CLASS, AND SETTING A FINAL FAIRNESS HEARING

WORKAMER\03145\197001\39502591.v4-11/23/21

relating to the settlement and such other information as Toyota and Class Counsel mutually agree would be beneficial to potential Class Members.  The Website shall also accept electronically filed claim forms and shall be optimized for search engines and for use on mobile phones.  Toyota shall pay the costs of the Class Notice in accordance with the Settlement Agreement.  The Parties are hereby authorized to establish the means necessary to implement the notice and/or other terms of the Settlement Agreement.

20.    Not later than twenty (20) days before the date of the Fairness Hearing, the Settlement Notice Administrator shall file with the Court: (a) a list reflecting all timely, valid requests for exclusion; and (b) the details outlining the scope, methods of distribution, and results of the Class Notice.

21.    The Parties are authorized to take all necessary and appropriate steps to establish the means necessary to implement the Settlement Agreement. Class Counsel and Toyota's Counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the settlement that are not materially inconsistent with this Order or the Settlement Agreement, including making, without further approval of the Court, minor changes to the Settlement Agreement, to the form or content of the Class Notice or to any other exhibits that the Parties jointly agree are reasonable or necessary.

22.    Class Members who wish to be excluded from the Class must mail a written request for exclusion to the Settlement Notice Administrator at the address provided in the Long Form Notice, specifying that he or she wants to be excluded and otherwise complying with the terms stated in the Long Form Notice.  Any request for exclusion must be signed by the potential Class Member and contain the following information: the name of the Action; the full name, current residential and mailing addresses (if different), and telephone number of the excluding Class Member; the

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND DIRECTING NOTICE TO THE CLASS, AND SETTING A FINAL FAIRNESS HEARING

model year, make, model, and vehicle identification number ("VIN") of the Class Member's Subject Vehicle(s); a statement clearly indicating that the Class Member wants to be excluded from the Class; and the excluding Class Member's signature (an attorney's signature is not sufficient).

23.     Potential Class Members who timely and validly exclude themselves from the Class shall not be bound by the Settlement Agreement, the settlement, or the Final Order and Final Judgment.  If a potential Class Member files a request for exclusion, they may not assert an objection to the settlement.   The Settlement Notice Administrator shall provide copies of any requests for exclusion to Class Counsel and Toyota's Counsel as provided in the Settlement Agreement.

24.     Any potential Class Member that does not properly and timely exclude themself from the Class shall remain a Class Member and shall be bound by all the terms and provisions of the Settlement Agreement and the settlement and the Final Order and Final Judgment, whether or not such Class Member objected to the settlement or submits a Claim Form.

25.     Any Class Member who has not requested exclusion and who wishes to object to the settlement or Fee or Costs Request or service awards to the Class Representatives must mail their objection to the Settlement Administrator, who shall provide scanned copies of all objections to Class Counsel and Toyota's Counsel within one business day of receipt. Plaintiffs' counsel shall file all objections with the Court in connection with Plaintiffs' motion for final approval and response to objections. For an objection to be considered by the Court, the objection must be received by the Settlement Administrator on or before _____ [DATE].

26.     For an objection to be considered by the Court, the objection must also set forth: (a) the case name and number of the Action; (b) the objector's full name, current residential address, mailing address (if different), telephone number, and e-mail

9
[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND DIRECTING NOTICE TO THE CLASS, AND SETTING A FINAL FAIRNESS HEARING

WORKAMER\03145\197001\39502591.v4-11/23/21

address; (c) an explanation of the basis upon which the objector claims to be a Class Member, including the make, model year, and VIN(s) of the Subject Vehicle(s); (d) an explanation of the objection including the legal and factual bases and copies of any documents supporting the objection; (e) the name and address of each lawyer (if any) who is representing the objecting Class Member, or who may seek or claim entitlement to compensation for any reason in connection with the objection; (f) the number of times the objector and the objector's counsel (if any) has objected to a class action settlement within the five years preceding the date that the objector files the objection; and the case number of each case in which the objector and/or the objector's attorney has made such objection. If the Class Member or the Class Member's counsel has not made any prior objection in the past five years, the Class Member and Class Member's counsel shall affirmatively so state in the written materials provided with the objection; (g) a statement as to whether the objecting Class Member intends to appear at the Final Approval Hearing either individually or through counsel; (h) the full name, telephone number and address of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement Agreement; (i) the identity of all counsel (if any) who will appear on behalf of the objecting Class Member at the Final Approval Hearing; (j) a list of all persons who will or may offer testimony in support of the objection; and (k) the objector's signature and date of signature.  Any documents supporting the objection must also be attached to the objection.

27.    No objection that fails to satisfy these requirements and any other requirements found in the Long-Form Notice shall be considered by the Court.  For mailing objections, the Settlement Administrator's address is as follows:

[Settlement Administrator's Address]

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND DIRECTING NOTICE TO THE CLASS, AND SETTING A FINAL FAIRNESS HEARING

28.     The filing of an objection shall allow Class Counsel or counsel for Toyota to, at their discretion, notice the deposition of the objecting Class Member and/or to seek the production of documents and tangible things relevant to the objections on an expedited basis, so as to promote and ensure the efficient administration of justice, the timely resolution of objections and of this settlement, and the orderly presentation of any Class Member's objection to the settlement, in accordance with the due process rights of all Class Members.  Consistent with these objectives, service of a deposition notice and/or a request to produce documents and tangible things in lieu of a formal subpoena shall be sufficient.  Likewise, any such deposition may take place remotely, or at an agreed upon location at an agreed upon date and time, but, in no event more than 15 days following service of a deposition notice, a request to produce documents and other tangible things. Any objections to the scope of a deposition notice or a request to produce documents or other tangible things issued or served in connection with this provision shall be brought before this Court for resolution on an expedited basis.

29.     In the event an objecting Class Member fails to appear for deposition or comply with a request to produce documents or other tangible things, such conduct may result in the Court striking the objection and denying the person the opportunity to be heard individually and/or through counsel.

30.     If the Court determines the objection is frivolous or made for an improper purpose, the Court may tax the costs of any such discovery to the objecting Class Member or to the objecting Class Member's counsel. Prior to doing so, however, the objector shall be given the opportunity to withdraw their objection.

31.     Plaintiffs shall file their motion for final approval, which shall include Plaintiffs' response to validly submitted objections (if any), and Class Counsel's application for attorneys' fees and litigation expenses, no later than _____ [DATE]. Copies of Plaintiffs motion for final approval and Class Counsel's application for

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT,
CERTIFYING SETTLEMENT CLASS, AND DIRECTING NOTICE TO THE CLASS, AND SETTING A FINAL
FAIRNESS HEARING

attorneys' fees and litigation expenses shall be posted on the settlement website. Responses to validly submitted objections shall also be served on the person making the objection.

32.     Pending the Fairness Hearing and the Court's decision whether to finally approve the settlement, all proceedings in the Action, other than proceedings necessary to carry out or enforce the Settlement Agreement or this Order, are stayed and suspended, until further order from this Court.  The Court further enjoins potential Class Members from challenging in any action or proceeding any matter covered by this Settlement Agreement, except for proceedings in this Court to determine whether the Settlement Agreement will be given final approval.  Pursuant to 28 U.S.C. § 1651(a) and 2283, the Court finds that issuance of this preliminary injunction is necessary and appropriate in aid of the Court's continuing jurisdiction and authority over the Action.Upon final approval of the settlement, all Class Members who do not timely and validly exclude themselves from the Class shall be forever enjoined and barred from asserting any of the matters, claims or causes of action released pursuant to the Settlement Agreement against any of the Released Parties, and any such Class Member shall be deemed to have forever released any and all such matters, claims, and causes of action as provided for in the Settlement Agreement.

33.     Any Class Member who has not excluded themself from the Class may appear at the Fairness Hearing in person or by counsel (at his/her/its own expense) and may be heard, to the extent allowed by the Court, either in support of or in opposition to the settlement and/or the Fee Request.  However, no Class Member shall be heard at the Fairness Hearing unless such person/entity files a "Notice of Intent to Appear in *Remy McCarthy et al., v. Toyota Motor Corp., et al.*" with the Clerk of Court on or before the date listed in the Schedule.  In the notice, the Class Member must include his/her/its name, address, telephone number, the make, model year, and VIN number

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND DIRECTING NOTICE TO THE CLASS, AND SETTING A FINAL FAIRNESS HEARING

WORKAMER\03145\197001\39502591.v4-11/23/21

of his/her/its Subject Vehicle(s), and a signature.  The Clerk of Court's address is as follows:

> Clerk of Court
>
> Ronald Reagan Federal Building and United States Courthouse
>
> 411 W. Fourth St., Courtroom 10A, 10th Floor
>
> Santa Ana, CA 92701

34.     Class Members who intend to object at the Fairness Hearing must also have followed the procedures for objecting in writing as set forth in this Order.  Any Class Member who has requested permission to speak must be present at the start of the Fairness Hearing at _____ [DATE/TIME].

35.     The deadlines set forth in this Order, including the date and time of the Fairness Hearing shall be subject to extension by the Court without further notice to the Class Members other than that which may be posted at the Court, on the Court's website, and/or the settlement website at www.toyotapriusinvertersettlement.com.  The Court retains jurisdiction to consider all further applications arising out of or in connection with the settlement. The Court may approve the settlement, with such modifications as may be agreed to by the Parties to the settlement, if appropriate, without further notice to the Class, except that notice of such modifications shall be posted on the settlement website.  Class Members should check the settlement website regularly for updates and further details regarding the settlement.

36.     Any Class Member may hire an attorney at their own expense to appear in the Action.  Such attorney shall serve a Notice of Appearance on Class Counsel and Toyota's Counsel so that it is received on or before the date listed in the Schedule and file it with the Court on or before the date listed in the Schedule.  The following is Class Counsel's and Toyota's Counsel's mailing addresses:

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND DIRECTING NOTICE TO THE CLASS, AND SETTING A FINAL FAIRNESS HEARING

WORKAMER\03145\197001\39502591.v4-11/23/21

**Class Counsel**

Jeffrey L. Fazio

Dina E. Micheletti

FAZIO MICHELETTI LLP

1111 Broadway, Suite 400

Oakland, CA 94607


and


Amnon Z. Siegel

MILLER BARONDESS LLP

1999 Avenue of the Stars, Suite 1000

Los Angeles, CA 90067


**Toyota's Counsel**

John P. Hooper

KING & SPALDING LLP

1185 Avenue of the Americas

New York, NY 10036

37.     As set forth in the Settlement Agreement, if the Settlement Agreement is not finally approved by the Court or is terminated for any reason (in whole or in part) the settlement will be rescinded and will be without further legal effect.  The Parties will then litigate the lawsuit as if this settlement had never occurred, without prejudice to any claims or defenses they may have.  Pursuant to Fed. R. Evid. 408, the settlement, the Settlement Agreement, and all related briefing, arguments, transcripts, and documents will be inadmissible in any proceeding to prove or disprove the validity of

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND DIRECTING NOTICE TO THE CLASS, AND SETTING A FINAL FAIRNESS HEARING

any claim, defense, or allegation asserted in the Action.  The provisional certification of the Class pursuant to this Order shall be vacated automatically and the Action shall proceed as though the Class had never been certified.  The Parties shall have all of the rights, defenses, and obligations they would have had absent the Settlement Agreement.

38.   The Court hereby establishes the following Schedule, in accordance with the Parties' agreement, which shall govern the settlement proceedings in this Action unless continued or otherwise modified by the Court:

| EVENT | DEADLINES |
| --- | --- |
| Initial Class Notice to be Disseminated | Within 45 days of Preliminary Approval Order |
| Direct Mail Notice to be Substantially Completed | Within 120 days of Preliminary Approval Order |
| Plaintiffs' Motion, Memorandum of Law and Other Materials in Support of their Requested Award of Attorneys' Fees, Reimbursement of Expenses, and Request for Class Representatives' Service Awards to be Filed with the Court | 130 days after Preliminary Approval Order |
| Deadline for Receipt by the Clerk of All Objections Filed and/or Mailed by Class Members | 160 days after Preliminary Approval Order |
| Deadline for filing Notice of Intent to Appear at Fairness Hearing by Class Members and/or their Personal Attorneys | 160 days after Preliminary Approval Order (filing is to be with Clerk of the Court with copies served on Class Counsel and Toyota's Counsel) |
| Postmark Deadline for Class Members to Mail their Request to Exclude Themselves (Opt-Out) to Settlement Notice Administrator | 160 days after Preliminary Approval Order |
| Settlement Notice Administrator Shall File List of Opt-Outs and the Results of the Dissemination of the Notice with the Court | 180 days after Preliminary Approval Order |

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND DIRECTING NOTICE TO THE CLASS, AND SETTING A FINAL FAIRNESS HEARING

| Parties' Motion for Final Approval, Memoranda of Law, and Other Materials in Support of Final Approval to be Filed with the Court | 180 days after Preliminary Approval Order |
| Parties' Supplemental Memorandum of Law in Further Support of the Settlement to be Filed with the Court and Response to Objections and Requests for Exclusion from the Class | 195 days after Preliminary Approval Order |
| Fairness Hearing | [Date] at _____ [a.m. or p.m.] - No sooner than 210 days after Preliminary Approval Order |

**IT IS SO ORDERED**:

Date: _____     _____

HON. JOSEPHINE L. STATON
United States District Court

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND DIRECTING NOTICE TO THE CLASS, AND SETTING A FINAL FAIRNESS HEARING

# EXHIBIT 6

Toyota Prius Settlement
c/o Settlement Administration
P.O. Box 0000
New York, NY 00000-0000

FIRST-CLASS MAIL
U.S. POSTAGE PAID
CITY, ST
PERMIT NO.
XXXX<<Barcode>>

Class Member ID: <<Refnum>>

<<FirstName>> <<LastName>>
<<Address>>
<<Address2>>
<<City>>, <<ST>> <<Zip>>-<<zip4>>

*Para una notificación en Español, visite nuestro sitio de Web.*

**NOTICE OF CLASS ACTION SETTLEMENT**
**A Settlement has been reached involving Certain**
**2010-2015 Toyota Prius and**
**2012-2017 Toyota Prius V vehicles**

**The Settlement does not involve claims of**
**personal injury, death, or property damage.**

**Toyota records indicate you own(ed) or lease(d)**
**an affected vehicle & may be entitled to benefits**

**KEEP THIS IN YOUR GLOVEBOX**
**If certain warning lights/messages appear on**
**your dashboard, point your smartphone camera**
**at the QR Code below to obtain instructions**
**about eligibility for a cost-free tow or loaner**
**vehicle and other warranty-related information.**

**[QR CODE]**

A proposed class action settlement has been reached alleging certain Toyota Prius and Prius V vehicles contained defective inverters. Toyota denies the allegations and the Court has not decided who is right. This notice is to inform you about the settlement and your options. **You have been identified by Toyota as a person who has had an IPM or Inverter in a Subject Vehicle repaired or replaced.**

### Who is Included?

You are a Class Member and may be eligible for benefits if you:

(a) Currently own or lease a 2010-2015 Prius or 2012-2017 Prius V vehicle that was the subject of Safety Recalls E0E, F0R, J0V, and/or 20TA10 ("Subject Vehicle"), as of Month 00, 2021; or

(b) Owned or leased a Subject Vehicle any time before **Month 00, 2021.**

### What are the Settlement Benefits?

(i) <u>Customer Confidence Program</u>: A 20-year/unlimited-mileage warranty enhancement, providing cost-free repair or replacement of the IPM or Inverter, starting from your Prius or Prius V's first day in service and an appeal process for any denials. For important details re benefits and appeal rights/deadlines See FAQ #XX at the settlement website and QR code

(ii) <u>Cost-free loaner and/or towing</u>. Available if certain conditions are present. See QR Code and FAQ #XX at the settlement website for details about benefits and appeal rights, deadlines, and appeal form.

(iii) <u>Reimbursement</u>: A $20,000,000 settlement fund to pay for reimbursement of unreimbursed IPM and Inverter repairs and replacements and/or related towing and rental car expenses incurred before Month 00, 2021. For details see FAQ #XX at the settlement website. To be reimbursed, you must file a timely claim.

(iv) <u>Possible Redistribution Check:</u> If there is money left in the settlement fund after all out-of-pocket reimbursement claims are paid, you may get a check ("Redistribution Check"). Because you have been identified by Toyota as a person who has had an IPM or Inverter in a Subject Vehicle replaced, you are automatically registered to receive a Redistribution Check, if there is one.

(v) Possible charitable, *cy pres* payments. If the Settlement Fund still has a balance after Redistribution Checks are sent, it will go to Texas A&M University Transportation Institute.

### What are Your Options?

● **Do Nothing.** You will be legally bound by decisions of the Court and you will give up any rights to sue for the claims in this case.

● **Opt-Out**. If you do not want to be legally bound by the Settlement, you must exclude yourself by **Month 00, 2021**.

● **Object to the Settlement.** You may write to the Court and explain why you do not like the settlement by **Month 00, 2021**. You cannot both exclude yourself from, and object to, the settlement. See XX for important requirements.

● **File a Reimbursement Claim**: You must submit a Registration and Reimbursement Claim Form to get reimbursed for out-of-pocket expenses by **Month 00, 2021.**

The Court will hold a hearing on **Month 00, 2021** to hear any objections, determine if the Settlement is fair, and consider the Settlement Special Master's recommendation that Class Counsel be awarded $19.6 million for fees and expenses and a $5,000 Service Award for each Class Representative.. For details review FAQ #XX at the settlement website

### How Can I Get More Information?

*This is only a summary*. If you have questions or want more information about this lawsuit, the settlement and your rights, visit the settlement website at www.toyotapriusinvertersettlement.com, call **000-000-0000**, or write to the Settlement Notice Administrator, Address, City, ST 00000-0000.

[INFORMATION ON WEBSITE RE QR CODE]

If you own or lease a Subject Vehicle[1] on or after [**Final Effective Date**], you may be eligible to receive certain benefits under the Settlement's Loaner/Towing Program, as further described below.

**Loaner/Towing Program**

If after [**Final Effective Date**] these Warning Messages appear on your Subject Vehicle's dashboard, you may be eligible for a loaner vehicle or tow to your nearest Toyota Dealer if your Subject Vehicle requires repair or replacement of its IPM or Inverter pursuant to the terms of the Settlement Agreement.

| | *Warning messages* |
|---|---|
| CHECK HYBRID SYSTEM | Hybrid system warning message |
| CHECK PCS SYSTEM | PCS system warning message (if equipped)<br><br>*Note: Display may switch between Check Hybrid System and Check PCS System* |

The presence or absence of a Warning Message is not determinative as to whether the Subject Vehicle is or is not entitled to a cost-free repair or replacement of the IPM or Inverter. If the Subject Vehicle's IPM or Inverter does not require repair or replacement, you will not be eligible for a cost-free tow or a cost-free loaner vehicle under the terms of the Settlement Agreement.  If your vehicle was towed by Toyota, this means you may be responsible for paying the towing costs.  However, if the Subject Vehicle does not require repair or replacement of the IPM or Inverter, you may request that Toyota or a Toyota Dealer discount or absorb the cost of towing as goodwill, though neither Toyota nor the Toyota Dealer is obligated to do so.

To obtain a tow and/or a loaner vehicle, please follow the instructions below.

- **Towing the Subject Vehicle to the Nearest Toyota Dealer**: If you do not feel comfortable driving your Subject Vehicle, you may request a tow by:

---

[1] All capitalized terms are as defined in the Settlement Agreement.   "Subject Vehicle" means 2010 to 2015 model year Prius vehicles and 2012 to 2017 model year Prius V vehicles that were the subject of Safety Recalls E0E, F0R, J0V, and/or 20TA10.

- o **If your Subject Vehicle is not on a public roadway**, calling the nearest Toyota Dealer to arrange for a cost-free tow of your Subject Vehicle to the Toyota Dealer.

- o **If your Subject Vehicle is on a public roadway**, calling the nearest Toyota Dealer to arrange for a cost-free tow of your Subject Vehicle to the Toyota Dealer; OR calling Toyota's 24/7 Roadside Assistance Hotline at [XXX-XXX-XXXX] and a Toyota representative will arrange for your Subject Vehicle to be towed cost-free to the nearest Toyota Dealer.

- o **Inability to obtain a tow from Toyota**: If you are unable to arrange a tow from a Toyota Dealer or Toyota's 24/7 Roadside Assistance Hotline within a reasonable amount of time, Toyota will reimburse reasonable towing expenses, up to a maximum of $250.00, for a tow.

- **Loaner Vehicle**: If your Subject Vehicle requires repair or replacement of its IPM or Inverter, and the repair or replacement will exceed four (4) hours and/or will require your Subject Vehicle to remain at the Toyota Dealer overnight, you are entitled to a complimentary Loaner Vehicle starting with the day on which the Subject Vehicle is brought to a Toyota Dealer for repair and/or replacement of the Inverter and/or IPM until the day that work is completed.

**Customer Confidence Program**

In addition to a complimentary tow and complimentary rental car as described above, you are also entitled to benefits under the Customer Confidence Program.

As of the Final Effective Date, subject to the conditions set forth below, Toyota will implement the Customer Confidence Program under which it will pay to repair or replace the IPM or Inverter installed in Subject Vehicles for twenty (20) years from the date of first use, with no mileage limitation, subject to the terms described below.

When the Customer Confidence Program is operational, only repairs or replacements performed by a Toyota Dealer will be eligible for coverage. PLEASE NOTE: You are entitled to this coverage even if your Subject Vehicles have not been brought into a Toyota Dealer in response to Safety Recalls E0E, F0R, J0V, or 20TA10.

The terms of the Customer Confidence Program are as follows:

(a)     Extended coverage of the Subject Vehicles under the Current Warranty Enhancement Programs (which relates to DTCs P0A94, P0A1A, P324E, and P3004) for a total of twenty (20) years from the date of First Use of the Subject Vehicle;

(b)     Coverage for repairs and/or replacement of a Subject Vehicle's Inverter if a Toyota Dealer: (i) identifies that either DTC P0A7A and/or DTC P0A78 have been triggered; (ii) confirms that the Inverter has failed; and (iii) determines that the Inverter needs to be repaired and/or replaced;

(c)     Coverage for repairs and/or replacement of the Inverter, at no cost to the Class Member, if a Toyota Dealer: (i) confirms that the Inverter has failed due to a Thermal Event, regardless of what DTC is triggered; and (ii) determines that the Inverter needs to be repaired and/or replaced; and

(d)     Toyota shall also provide coverage for repairs and/or replacement of the IPM, regardless of which DTC is triggered (if any), if a Toyota Dealer: (i) confirms that the IPM has failed; and (ii) cannot demonstrate that the IPM failure was due to anything other than Thermal Stress.

## Right to Appeal Denial of Benefits

Toyota Dealers are to provide each Class Member or subsequent purchaser/transferee who is denied coverage or other benefits eligible for payment under the Customer Confidence Program and/or the Loaner/Towing Program with a repair order or work order that includes the following language: "To appeal the denial of a loaner, tow or repair related to the Inverter and/or IPM, you must submit an Appeal Form, which can be found at www.toyotapriusinvertersettlement.com."   If this language is included on your repair or work order, your appeal must be submitted within 45 days from the date on this document.

In the event a Toyota Dealer fails to include the required language on a work or repair order, a Class Member or subsequent purchaser/transferee shall have the right to appeal for one year from the date of the denial of such coverage.

The Appeal Forms is available at www.priusinvertersettlement.com.

The Settlement Claims Administrators shall make a final determination as to whether coverage or other benefits should be provided in accordance with the terms of this Settlement Agreement, and shall do so within forty-five (45) days of the Appeal Form's submission. In the event an appeal of a denial related to the Customer Confidence Program is decided in the favor of the Class Member or subsequent purchaser/transferee, and the Class Member and/or subsequent purchaser or transferee of a Subject Vehicle paid to replace or repair an IPM or Inverter in the

Subject Vehicle during this time (whether at a Toyota Dealer or an independent mechanic) a check for the amount of the repair will be sent as soon as practicable after that decision, subject to the submission of proof of payment for that IPM/Inverter repair or replacement.

# EXHIBIT 7

Toyota Prius Settlement
c/o Settlement Administration
P.O. Box 0000
New York, NY 00000-0000

FIRST-CLASS MAIL
U.S. POSTAGE PAID
CITY, ST
PERMIT NO.
XXXX<<Barcode>>

Class Member ID: <<Refnum>>

<<FirstName>> <<LastName>>
<<Address>>
<<Address2>>
<<City>>, <<ST>> <<Zip>>-<<zip4>>

*Para una notificación en Español, visite nuestro sitio de Web.*

**NOTICE OF CLASS ACTION SETTLEMENT**
**A Settlement has been reached involving Certain**
**2010-2015 Toyota Prius and**
**2012-2017 Toyota Prius V vehicles**

**The Settlement does not involve claims of**
**personal injury, death, or property damage.**

**Toyota records indicate you own(ed) or lease(d) an**
**affected vehicle & may be entitled to benefits**

**KEEP THIS IN YOUR GLOVEBOX**
**If certain warning lights/messages appear on your**
**dashboard, point your smartphone camera at the**
**QR Code below to obtain instructions about**
**eligibility for a cost-free tow or loaner vehicle and**
**other warranty-related information.**

**[QR CODE]**

A proposed class action settlement has been reached alleging certain Toyota Prius and Prius V vehicles contained defective inverters. Toyota denies the allegations and the Court has not decided who is right. This notice is to inform you about the settlement and your options.

### Who Is Included?

You are a Class Member and may be eligible for benefits if you:

(a)   Currently own or lease a 2010-2015 Prius or 2012-2017 Prius V vehicle that was the subject of Safety Recall E0E, F0R, J0V, and/or 20TA10 ("Subject Vehicle"), as of Month 00, 2021; or

(b)   Owned or leased a Subject Vehicle any time before **Month 00, 2021.**

### What are the Settlement Benefits?

(i)    Customer Confidence Program: A 20-year/unlimited-mileage warranty enhancement, providing cost-free repair or replacement of the IPM or Inverter, starting from your Prius or Prius V's first day in service, with an appeal process for any denials. For important details re benefits and appeal rights/deadlines See FAQ #XX at www.toyotapriusinvertersettlement.com and QR code

(ii)   Cost-free loaner and/or towing: Available if certain conditions are present. See QR Code and FAQ #XX at the settlement website for details about benefits and appeal rights, deadlines, and appeal form.

(iii)  Reimbursement: A $20,000,000 settlement fund to pay for reimbursement of unreimbursed IPM and Inverter repairs/replacements and/or related towing and rental car expenses incurred before Month 00, 2021. For details see FAQ #XX at the settlement website. To be reimbursed, you must file a timely claim.

(iv)  Possible Redistribution Check: If there is money left in the settlement fund after all out-of-pocket reimbursement claims are paid, you may get a check ("Redistribution Check"), but you MUST submit a timely Registration and Reimbursement Claim Form to be eligible. See FAQ #XX at the settlement website.

(v)   Possible charitable, *cy pres* payments. If the Settlement Fund has a balance after Redistribution Checks are sent, it will go to Texas A&M University Transportation Institute.

### What are Your Options?

- **Do Nothing.** You will be legally bound by decisions of the Court and you will give up any rights to sue for the claims in this case.

- **Opt-Out**. If you do not want to be legally bound by the Settlement, you must exclude yourself by **Month 00, 2021.**

- **Object to the Settlement.** You may write to the Court and explain why you do not like the settlement by **Month 00, 2021.** You cannot both exclude yourself from, and object to, the settlement. See XX for important requirements.

- **File a Reimbursement Claim or Register for Redistribution Check**: You must submit a Registration and Reimbursement Claim Form to get reimbursement for out-of-pocket expenses. You must also register to be eligible to potentially receive a Redistribution Check. The deadline to submit is **Month 00, 2021.**

The Court will hold a hearing on **Month 00, 2021** to hear any objections, determine if the Settlement is fair, and consider the Settlement Special Master's recommendation that Class Counsel receive $19.6 million for fees and expenses and a $5,000 Service Award for each Class Representative. For details review FAQ #XX at the settlement website.

### How Can I Get More Information?

***This is only a summary***. If you have questions or want more information about this lawsuit, the settlement and your rights, visit the settlement website at **www.toyotapriusinvertersettlement.com**, call **000-000-0000**, or write to the Settlement Notice Administrator, Address, City, ST 00000-0000

[INFORMATION ON WEBSITE RE QR CODE]

If you own or lease a Subject Vehicle[1] on or after [**Final Effective Date**], you may be eligible to receive certain benefits under the Settlement's Loaner/Towing Program, as further described below.

**Loaner/Towing Program**

If after [**Final Effective Date**] these Warning Messages appear on your Subject Vehicle's dashboard, you may be eligible for a loaner vehicle or tow to your nearest Toyota Dealer if your Subject Vehicle requires repair or replacement of its IPM or Inverter pursuant to the terms of the Settlement Agreement.

| | *Warning messages* |
|---|---|
| CHECK HYBRID SYSTEM | Hybrid system warning message |
| CHECK PCS SYSTEM | PCS system warning message (if equipped) *Note: Display may switch between Check Hybrid System and Check PCS System* |

The presence or absence of a Warning Message is not determinative as to whether the Subject Vehicle is or is not entitled to a cost-free repair or replacement of the IPM or Inverter. If the Subject Vehicle's IPM or Inverter does not require repair or replacement, you will not be eligible for a cost-free tow or a cost-free loaner vehicle under the terms of the Settlement Agreement.  If your vehicle was towed by Toyota, this means you may be responsible for paying the towing costs.  However, if the Subject Vehicle does not require repair or replacement of the IPM or Inverter, you may request that Toyota or a Toyota Dealer discount or absorb the cost of towing as goodwill, though neither Toyota nor the Toyota Dealer is obligated to do so.

To obtain a tow and/or a loaner vehicle, please follow the instructions below.

- **Towing the Subject Vehicle to the Nearest Toyota Dealer**: If you do not feel comfortable driving your Subject Vehicle, you may request a tow by:

---

[1] All capitalized terms are as defined in the Settlement Agreement.   "Subject Vehicle" means 2010 to 2015 model year Prius vehicles and 2012 to 2017 model year Prius V vehicles that were the subject of Safety Recalls E0E, F0R, J0V, and/or 20TA10.

- o **If your Subject Vehicle is not on a public roadway**, calling the nearest Toyota Dealer to arrange for a cost-free tow of your Subject Vehicle to the Toyota Dealer.

- o **If your Subject Vehicle is on a public roadway**, calling the nearest Toyota Dealer to arrange for a cost-free tow of your Subject Vehicle to the Toyota Dealer; OR calling Toyota's 24/7 Roadside Assistance Hotline at [XXX-XXX-XXXX] and a Toyota representative will arrange for your Subject Vehicle to be towed cost-free to the nearest Toyota Dealer.

- o **Inability to obtain a tow from Toyota**: If you are unable to arrange a tow from a Toyota Dealer or Toyota's 24/7 Roadside Assistance Hotline within a reasonable amount of time, Toyota will reimburse reasonable towing expenses, up to a maximum of $250.00, for a tow.

- **Loaner Vehicle**: If your Subject Vehicle requires repair or replacement of its IPM or Inverter, and the repair or replacement will exceed four (4) hours and/or will require your Subject Vehicle to remain at the Toyota Dealer overnight, you are entitled to a complimentary Loaner Vehicle starting with the day on which the Subject Vehicle is brought to a Toyota Dealer for repair and/or replacement of the Inverter and/or IPM until the day that work is completed.

**Customer Confidence Program**

In addition to a complimentary tow and complimentary rental car as described above, you are also entitled to benefits under the Customer Confidence Program.

As of the Final Effective Date, subject to the conditions set forth below, Toyota will implement the Customer Confidence Program under which it will pay to repair or replace the IPM or Inverter installed in Subject Vehicles for twenty (20) years from the date of first use, with no mileage limitation, subject to the terms described below.

When the Customer Confidence Program is operational, only repairs or replacements performed by a Toyota Dealer will be eligible for coverage. PLEASE NOTE: You are entitled to this coverage even if your Subject Vehicles have not been brought into a Toyota Dealer in response to Safety Recalls E0E, F0R, J0V, or 20TA10.

The terms of the Customer Confidence Program are as follows:

(a)     Extended coverage of the Subject Vehicles under the Current Warranty Enhancement Programs (which relates to DTCs P0A94, P0A1A, P324E, and P3004) for a total of twenty (20) years from the date of First Use of the Subject Vehicle;

(b)     Coverage for repairs and/or replacement of a Subject Vehicle's Inverter if a Toyota Dealer: (i) identifies that either DTC P0A7A and/or DTC P0A78 have been triggered; (ii) confirms that the Inverter has failed; and (iii) determines that the Inverter needs to be repaired and/or replaced;

(c)     Coverage for repairs and/or replacement of the Inverter, at no cost to the Class Member, if a Toyota Dealer: (i) confirms that the Inverter has failed due to a Thermal Event, regardless of what DTC is triggered; and (ii) determines that the Inverter needs to be repaired and/or replaced; and

(d)     Toyota shall also provide coverage for repairs and/or replacement of the IPM, regardless of which DTC is triggered (if any), if a Toyota Dealer: (i) confirms that the IPM has failed; and (ii) cannot demonstrate that the IPM failure was due to anything other than Thermal Stress.

## Right to Appeal Denial of Benefits

Toyota Dealers are to provide each Class Member or subsequent purchaser/transferee who is denied coverage or other benefits eligible for payment under the Customer Confidence Program and/or the Loaner/Towing Program with a repair order or work order that includes the following language: "To appeal the denial of a loaner, tow or repair related to the Inverter and/or IPM, you must submit an Appeal Form, which can be found at www.toyotapriusinvertersettlement.com."   If this language is included on your repair or work order, your appeal must be submitted within 45 days from the date on this document.

In the event a Toyota Dealer fails to include the required language on a work or repair order, a Class Member or subsequent purchaser/transferee shall have the right to appeal for one year from the date of the denial of such coverage.

The Appeal Forms is available at www.priusinvertersettlement.com.

The Settlement Claims Administrators shall make a final determination as to whether coverage or other benefits should be provided in accordance with the terms of this Settlement Agreement, and shall do so within forty-five (45) days of the Appeal Form's submission. In the event an appeal of a denial related to the Customer Confidence Program is decided in the favor of the Class Member or subsequent purchaser/transferee, and the Class Member and/or subsequent purchaser or transferee of a Subject Vehicle paid to replace or repair an IPM or Inverter in the

Subject Vehicle during this time (whether at a Toyota Dealer or an independent mechanic) a check for the amount of the repair will be sent as soon as practicable after that decision, subject to the submission of proof of payment for that IPM/Inverter repair or replacement.

# EXHIBIT 8

# IF YOU OWN OR LEASE OR PREVIOUSLY OWNED, PURCHASED OR LEASED A 2010-2015 PRIUS OR 2012-2017 PRIUS V, YOU COULD GET BENEFITS FROM A CLASS ACTION SETTLEMENT.

*The Settlement does not involve personal injury, death, or property damage.*

*Para una notificación en Español, visite nuestro sitio de Web.*

There is a proposed class action settlement alleging certain Toyota Prius and Prius V vehicles contained defective inverters. Toyota denies the allegations. The Court has not decided who is right. This notice is to inform you about the settlement and your options.

### Who Is Included?

You are a Class Member and may be eligible for benefits if you:

(a) Currently own or lease a 2010-2015 Prius or 2012-2017 Prius V vehicle that was the subject of Safety Recall E0E, F0R, J0V, and/or 20TA10 ("Subject Vehicle"), as of Month 00, 2021; or

(b) Owned or leased a Subject Vehicle any time before **Month 00, 2021**.

### What Does the Settlement Provide?

The settlement provides these benefits:

(i) <u>Customer Confidence Program</u>: A 20-year/unlimited-mileage warranty enhancement, providing cost-free repair or replacement of the IPM or Inverter under certain conditions, starting from your Prius or Prius V's first day in service, with an appeal process for any denials. For important details about benefits and appeal rights/deadlines review FAQ #XX at www.toyotapriusinvertersettlement.com.

(ii) <u>Cost-free loaner and/or towing program if certain conditions are met</u>. For details about benefits and appeal rights/deadlines see FAQ #XX at www.toyotapriusinvertersettlement.com.

(iii) <u>Reimbursement</u>: There is a $20,000,000 settlement fund to pay for reimbursement of unreimbursed IPM and Inverter repairs and replacements and/or related towing and rental car expenses incurred before Month 00, 2021. To receive a reimbursement, you must file a claim. For details see FAQ #XX at www.toyotapriusinvertersettlement.com.

(iv) <u>Redistribution Check:</u> If there is any money left in the settlement fund after reimbursement claims are paid, you may get a check from the Redistribution Fund, unless it is administratively unfeasible. **Unless you have received notice that you are automatically registered for this potential benefit, you must submit a timely Registration and Reimbursement Claim Form to be eligible**. For details review FAQ #XX at www.toyotapriusinvertersettlement.com.

(v) Possible charitable, *cy pres*, payments. If the Settlement Fund has a balance after Redistribution Checks are sent, that balance will go to Texas A&M University Transportation Institute.

### What are Your Options?

- **Do Nothing**. You will be legally bound by decisions of the Court and you will give up any rights to sue for these claims.

- **Opt-Out**. If you do not want to be bound by the Settlement, you must exclude yourself by **Month 00, 2022**.

- **Object to the Settlement.** You may write to the Court and explain why you do not like the settlement by **Month 00, 2022**. You cannot both exclude and object to the settlement. Please see FAQ #XX at www.toyotapriusinvertersettlement.com for important details/requirements.

- **File a Claim for Reimbursement or Register for Redistribution Fund**: You must submit a Registration and Reimbursement Claim Form to get reimbursement for out-of-pocket expenses. **Unless you have received notice**

**that you are automatically registered for the Redistribution benefit,** you must also register to be eligible to receive money from the Redistribution Fund, if available. The deadline to submit is **Month 00, 2021**.

The Court will hold a hearing on **Month 00, 2022** to hear any objections, determine if the Settlement is fair, and consider Class Counsel's request for $19.6 million in fees and expenses and a Service Award for Class Representatives of $5,000 each. For details review FAQ #XX at www.toyotapriusinvertersettlement.com. You may attend the Hearing, but you don't have  to.

### How Can I Get More Information?

***This is only a summary***. If you have questions or want more information about this lawsuit, the settlement and your rights, visit **www.toyotapriusinvertersettlement.com**. call **000-000-0000**, or write to the Settlement Notice Administrator, Address, City, ST 00000-0000. ALL DATES ARE SUBJECT TO CHANGE.  CHECK WEBSITE FOR UPDATES.

### www.toyotapriusinvertersettlement.com
### 000-000-0000

# EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KATHLEEN RYAN-BLAUFUSS, CATHLEEN MILLS and KHEK KUAN, on behalf of themselves and all others similarly situated, | **Case No. 8:18-CV-00201-JLS-KES** |

Plaintiffs,

vs.

TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., and DOE DEFENDANTS 1-10,

Defendants.

STEVEN KOSAREFF and LAURA KAKISH, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES USA, INC., and DOES 1-10, inclusive,

Defendants.

Declaration of Jeanne C. Finegan, APR
EXHIBIT 9

I, Jeanne C. Finegan, declare and state as follows:

## MY BACKGROUND AND QUALIFICATIONS

1.      I am the Managing Director of Kroll Notice Media Solutions, an affiliate company of Kroll Settlement Administrations, *f.k.a.,* Heffler Claims LLC ("Heffler"). This Declaration is based upon my personal knowledge as well as information provided to me by my associates and staff, including information reasonably relied upon in the fields of advertising media and communications.

2.      Heffler has been engaged by the Parties as the Settlement Notice Administrator to develop and implement a proposed legal notice program as part of the Parties' proposed class action settlement.

3.      This Declaration describes my extensive experience in designing and implementing notices and notice programs, as well as my credentials to opine on the overall adequacy of the notice effort.

## RELEVANT COMMUNICATIONS AND ADVERTISING EXPERIENCE, NOTICE EXPERTISE AND QUALIFICATIONS

4.      My credentials, expertise, and experience that qualify me to provide an expert opinion and advice regarding notice class action cases include more than 30 years of communications and advertising experience, specifically in class action and bankruptcy notice context.  My Curriculum Vitae delineating my experience is attached hereto as **Exhibit A**.

5.      I have served as an expert and have been directly responsible for the design and implementation of numerous notice programs, including some of the largest and most complex programs ever implemented in the United States as well as globally in over 140 countries and thirty-seven (37) languages.  I have been recognized by numerous courts in the United States as an expert on notification and outreach.

6.   During my career, I have planned and implemented over 1,000 complex notice programs for a wide range of class action, bankruptcy, regulatory, and consumer matters. The subject matters of which have included product liability, construction defect, antitrust, asbestos, medical, pharmaceutical, human rights, civil rights, telecommunications, media, environmental, securities, banking, insurance and bankruptcy.

7.   I have relevant experience planning and implementing complex court-approved notice programs in other automobile class action settlements including:

- ***Simerlein et al., v. Toyota Motor Corporation***, Case No. 3:17-cv-01091-VAB (D. Conn. 2019); and

- ***Warner v. Toyota Motor Sales, U.S.A. Inc.,*** Case No 2:15-cv-02171-FMO FFMx (C.D. Cal. 2017).

8.   I am the only notice expert regularly recognized by courts who is accredited in Public Relations by the Universal Accreditation Board, a program administered by the Public Relations Society of America.  I have provided testimony before the United States Congress on issues of notice.[1]  I have lectured, published, and been cited extensively on various aspects of legal noticing, product recall, and crisis communications.  I have served the Consumer Product Safety Commission ("**CPSC**") as an expert to determine ways in which the CPSC can increase the effectiveness of its product recall campaigns.  Additionally, I have published and lectured extensively on various aspects of legal noticing and taught continuing education courses for Jurists and lawyers alike on best practice methods for providing notice in various contexts.

---

[1] *See, e.g.*, Report on the Activities of the Committee on the Judiciary of the House of Representatives: "Notice" Provision in the *Pigford v. Glickman* Consent Decree: Hearing Before Subcommittee on the Constitution, 108th Cong. 2nd Sess. 805 (2004) (statement of Jeanne C. Finegan); *Pigford v. Glickman & U.S. Dep't of Agric.*, 185 F.R.D. 82, 102 (D.D.C. Apr. 14, 1999) (J. Finegan provided live testimony and was cross-examined before Congress in connection with a proposed consent decree settling a class action suit against the U.S. Department of Agriculture.  In the court opinion that followed, the Honorable Paul L. Friedman approved the consent decree and commended the notice program, stating, "The [c]ourt concludes that class members have received more than adequate notice . . . the timing and breadth of notice of the class settlement was sufficient . . . The parties also exerted extraordinary efforts to reach class members through a massive advertising campaign in general and African American targeted publications and television stations.")

9.   I worked with the Special Settlement Administrator's team to assist with the outreach strategy for the historic Auto Airbag Settlement.  *In re Takata Airbag Prods. Liab. Litig.*, No. 15-MD-2599-FAM (S.D. Fla.).  I was extensively involved as a lead contributing author for *"Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions"* published by Duke University School of Law.   I was involved with New York University School of Law and The Center on Civil Justice assisting with a class action settlement data analysis and comparative visualization tool called the *Aggregate Litigation Project*, designed to help judges make decisions in aggregate cases on the basis of data as opposed to anecdotal information.

10. I am a member of the Board of Directors for the Alliance for Audited Media ("AAM"), which is the recognized advertising industry leader in cross-media verification with unparalleled expertise across all brand platforms including web, mobile, email, and print. It was founded in 1914 as the Audit Bureau of Circulations to bring order and transparency to the media industry. Today, more than 4,000 publishers, advertisers, agencies, and technology vendors depend on its data-driven insights, technology certification audits, and information services to transact with trust. Its leadership consists directors of ad agencies, vice presidents of major national brands, and publishers of leading newspapers and magazines.

11. Further, I have been recognized as being at the forefront of modern notice practices,[2] and I was one of the first notice experts to integrate digital media,[3] social media and influencers[4] into court-approved legal notice programs. My recent work includes:

- ***In re Purdue Pharma L.P.***, No. 19-23649 (Bankr. S.D.N.Y. 2019).
- ***In Re: PG&E Corporation*** Case No . 19-30088 Bankr. (N.D. Cal. 2019).
- ***Yahoo! Inc. Customer Data Security Breach Litigation***, Case No. 5:16-MD-02752 (N.D. Cal. 2010).
- ***Hill's Pet Nutrition, Inc., Dog Food Products Liability Litigation***, Case No.

---

[2] *See, e.g.*, Deborah R. Hensler et al., *Class Action Dilemmas, Pursuing Public Goals for Private Gain*, RAND (2000).

[3] *See In re La.-Pac. Inner-Seal Siding Litig.*, Nos. 879-JE, 1453-JE (D. Or. 1995).

[4] See: *In Re: PG&E Corporation* Case No . 19-30088 Bankr. (N.D. Cal. 2019)

19-MD-2887 (D. Kan. 2021).
- ***Pettit et al., v.  Procter & Gamble Co.***, Case No. 15-cv-02150-RS (N.D. Cal. 2019*).*
- ***Carter v Forjas Taurus S.S., Taurus International Manufacturing***, **Inc.**, Case No. 1:13-CV-24583 PAS (S.D. Fla. 2016).
- ***Cook et. al., v. Rockwell International Corp. and the Dow Chemical Co.***, No. 90-cv-00181- KLK (D. Colo. 2017).
- ***In re Purdue Pharma L.P.***, No. 19-23649 (Bankr. S.D.N.Y. 2019).
- ***In Re: PG&E Corporation*** Case No . 19-30088 Bankr. (N.D. Cal. 2019).

12.     As further reference, in evaluating the adequacy and effectiveness of my notice programs, courts have repeatedly recognized my work as an expert.  For example:

a.     ***Yahoo! Inc. Customer Data Security Breach Litigation,*** Case No. 5:16-MD-02752 (N.D. Cal 2010). In the Order Preliminary Approval, dated July 20, 2019, the Honorable Lucy Kho stated, para 21,
> *"The Court finds that the Approved Notices and Notice Plan set forth in the Amended Settlement Agreement satisfy the requirements of due process and Federal Rule of Civil Procedure 23 and provide the best notice practicable under the circumstances."*

b.     ***Hill's Pet Nutrition, Inc., Dog Food Products Liability Litigation,*** Case No. 19-MD-2887 (D. Kan. 2021). In the Preliminary Approval Transcript, February 2, 2021 p. 28-29, the Honorable Julie A. Robinson stated:
> *"I was very impressed in reading the notice plan and very educational, frankly to me, understanding the communication, media platforms, technology, all of that continues to evolve rapidly and the ability to not only target consumers, but to target people that could rightfully receive notice continues to improve all the time."*

c.     ***Carter v. Forjas Taurus S.S., Taurus International Manufacturing, Inc.,*** Case No. 1:13-CV-24583- PAS (S.D. Fla. 2016). In her Final Order and Judgment Granting Plaintiffs' Motion for Final Approval of Class Action Settlement, the Honorable Patricia Seitz stated:
> *"The Court considered the extensive experience of Jeanne C. Finegan and the notice program she developed. . . . There is no national firearms registry and Taurus sale records do not provide names and addresses of the ultimate purchasers... Thus, the form and method used for notifying Class Members of the terms of the Settlement was the best notice practicable. . . . The court-approved notice plan used peer-accepted national research to identify the optimal traditional, online, mobile and social media platforms to reach the Settlement Class Members."*

Additionally, in the January 20, 2016, Transcript of Class Notice Hearing, p. 5, Judge Seitz noted:

*"I would like to compliment Ms. Finegan and her company because I was quite impressed with the scope and the effort of communicating with the Class."*

    d.    **In re Purdue Pharma L.P.,** No. 19-23649 (Bankr. S.D.N.Y. 2019). Omnibus Hearing, Motion Pursuant to 11 U.S.C. §§ 105(a) and 501 and Fed. R. Bankr. P. 2002 and 3003(c)(3) for Entry of an Order (I) Extending the General Bar Date for a Limited Period and (II) Approving the Form and Manner of Notice Thereof, June 3, 2020, transcript p. 88:10, the Honorable Robert Drain stated:

*"The notice here is indeed extraordinary, as was detailed on page 8 of Ms. Finegan's declaration in support of the original bar date motion and then in her supplemental declaration from May 20th in support of the current motion, the notice is not only in print media, but extensive television and radio notice, community outreach, -- and I think this is perhaps going to be more of a trend, but it's a major element of the notice here -- online, social media, out of home, i.e. billboards, and earned media, including bloggers and creative messaging. That with a combined with a simplified proof of claims form and the ability to file a claim or first, get more information about filing a claim online -- there was a specific claims website -- and to file a claim either online or by mail. Based on Ms. Finegan's supplemental declaration, it appears clear to me that that process of providing notice has been quite successful in its goal in ultimately reaching roughly 95 percent of all adults in the United States over the age of 18 with an average frequency of message exposure of six times, as well as over 80 percent of all adults in Canada with an average message exposure of over three times."*

    e.    ***Simerlein et al. v. Toyota Motor Corporation,*** Case No. 3:17-cv-01091-VAB (D. Conn. 2019). In the Ruling and Order on the Motion for Preliminarily Approval, dated January 14, 2019, p. 30, the Honorable Victor Bolden stated:

*"In finding that notice is sufficient to meet both the requirements of Rule 23(c) and due process, the Court has reviewed and appreciated the high-quality submission of proposed Settlement Notice Administrator Jeanne C. Finegan. See Declaration of Jeanne C. Finegan, APR, Ex. G to Agrmt., ECF No. 85-8."*

    f.    ***In Re: PG&E Corporation,*** Case No. 19-30088 Bankr. (N.D. Cal. 2019). Hearing Establishing, Deadline for Filing Proofs of Claim, (II) establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to all Creditors and Potential Creditors PG&E. June 26, 2019, Transcript of Hearing p. 21:1, the Honorable Dennis Montali stated:

*...the technology and the thought that goes into all these plans is almost*

*incomprehensible.  He further stated p. 201:20 ... Ms. Finegan has really impressed me
today...*

13.     Additionally, I have published extensively on various aspects of legal noticing,
including the following publications and articles:

a.  Interview, *"One Media Buyer's Journey Toward Transparency,"* BoSacks Media
    Intelligence/Heard on the Web, April, 2021.
b.  Interview, *"One Media Buyer's Journey Toward Transparency,"* The Drum /Open
    Mic Blog, April 21, 2021.
c.  Interview, *"How Marketers Achieve Greater ROI Through Digital Assurance,"*
    Alliance for Audited Media ("AAM"), white paper, January 2021.
d.  Tweet Chat: Contributing Panelist *#Law360SocialChat*, A live Tweet workshop
    concerning the benefits and pitfalls of social media, Lexttalk.com, November 7,
    2019.
e.  Author, "Top Class Settlement Admin Factors to Consider in 2020" Law360, New
    York, (October 31, 2019, 5:44 PM ET).
f.  Author, *"Creating a Class Notice Program that Satisfies Due Process,"* Law360,
    New York (February 13, 2018 12:58 PM ET).
g.  Author, *"3 Considerations for Class Action Notice Brand Safety,"* Law360, New
    York (October 2, 2017 12:24 PM ET).
h.  Author, *"What Would Class Action Reform Mean for Notice?"* Law360, New
    York (April 13, 2017 11:50 AM ET).
i.  Author, *"Bots Can Silently Steal your Due Process Notice"* Wisconsin Law
    Journal (April 2017).
j.  Author, *"Don't Turn a Blind Eye to Bots.* Ad Fraud and Bots are a Reality of the
    Digital Environment," LinkedIn (March 6, 2017).
k.  Co-Author, "Modern Notice Requirements Through the Lens of Eisen and
    Mullane," *Bloomberg BNA Class Action Litigation Report*, 17 CLASS 1077
    (October 14, 2016).
l.  Author, *"Think All Internet Impressions are the Same?* Think Again,"
    Law360.com, New York (March 16, 2016).
m.  Author, *"Why Class Members Should See an Online Ad More Than Once,"*
    Law360.com, New York (December 3, 2015).
n.  Author, *"'Being 'Media-Relevant' — What It Means and Why It Matters,"*
    Law360.com, New York (September 11, 2013, 2:50 PM ET).
o.  Co-Author, *"New Media Creates New Expectations for Bankruptcy Notice
    Programs,"* ABI Journal, Vol. XXX, No. 9 (November 2011).
p.  Quoted Expert, *"Effective Class Action Notice Promotes Access to Justice: Insight
    from a New U.S. Federal Judicial Center Checklist,"* Canadian Supreme Court
    Law Review, 53 S.C.L.R. (2d) (2011).
q.  Co-Author, with Hon. Dickran Tevrizian, "Expert Opinion: *It's More Than Just a
    Report...Why Qualified Legal Experts Are Needed to Navigate the Changing*

*Media Landscape,"* BNA Class Action Litigation Report, 12 CLASS 464 (May 27, 2011).

r.  Co-Author, with Hon. Dickran Tevrizian, *"Your Insight: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape,* TXLR, Vol. 26, No. 21 (May 26, 2011).

s.  Author, *"Five Key Considerations for a Successful International Notice Program,* BNA Class Action Litigation Report," Vol. 11, No. 7 p. 343 (April 9, 2010).

t.  Quoted, *"Technology Trends Pose Novel Notification Issues for Class Litigators,"* BNA Electronic Commerce and Law Report, 15, ECLR 109 (January 27, 2010).

u.  Author, *"Legal Notice: R U ready 2 adapt?"* BNA Class Action Litigation Report, Vol. 10, No. 14, pp. 702-703 (July 24, 2009).

v.  Author, *"On Demand Media Could Change the Future of Best Practicable Notice,"* BNA Class Action Litigation Report, Vol. 9, No. 7, pp. 307-310 (April 11, 2008).

w.  Quoted, *"Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty,"* Warranty Week (February 28, 2007), available at www.warrantyweek.com/archive/ww20070228.html.

x.  Co-Author, *"Approaches to Notice in State Court Class Actions, For the Defense,"* Vol. 45, No. 11 (November, 2003).

y.  Author, *"The Web Offers Near, Real-Time Cost-Efficient Notice,"* American Bankruptcy Institute Journal, Vol. XXII, No. 5 (2003).

z.  Author, *"Determining Adequate Notice in Rule 23 Actions,"* For the Defense, Vol. 44, No. 9 (September 2002).

aa. Co-Author, *"The Electronic Nature of Legal Noticing",* American Bankruptcy Institute Journal, Vol. XXI, No. 3 (April 2002).

bb. Author, "Three Important Mantras for CEO's and Risk Managers in 2002," International Risk Management Institute, irmi.com/ (January 2002).

cc. Co-Author, *"Used the Bat Signal Lately,"* The National Law Journal, Special Litigation Section (February 19, 2001).

dd. Author, *"How Much is Enough Notice,"* Dispute Resolution Alert, Vol. 1, No. 6, (March 2001).

ee. Author, *"High-Profile Product Recalls Need More Than the Bat Signal,"* International Risk Management Institute, irmi.com/ (July 2001).

ff. Author, *"The Great Debate - How Much is Enough Legal Notice?*: American Bar Association -- Class Actions and Derivatives Suits Newsletter (Winter 1999).

gg. Author, "*What are the best practicable methods to give notice?*" Georgetown University Law Center Mass Tort Litigation Institute, CLE White Paper: Dispelling the communications myth -- A notice disseminated is a notice communicated (November 1, 2001).

14.  In addition, I have lectured or presented extensively on various aspects of legal noticing.  A sample list includes the following:

a.  American Bar Association Faculty Panelist, 4th Annual Western Regional CLE Class Actions: "Big Brother, Information Privacy, and Class Actions: How Big

Data and Social Media are Changing the Class Action Landscape," San Francisco, CA, June, 2017.

b. Miami Law Class Action & Complex Litigation Forum, Faculty Panelist, "Settlement and Resolution of Class Actions." Miami. FL, December 2, 2016.

c. The Knowledge Group, Faculty Panelist, "Class Action Settlements: Hot Topics 2016 and Beyond," Live Webcast, www.theknowledgegroup.org/, October 2016.

d. Bar Association National Symposium, Faculty Panelist, "Ethical Considerations in Settling Class Actions," New Orleans, LA March 2016.

e. SF Banking Attorney Association, Speaker, "How a Class Action Notice Can Make or Break your Client's Settlement," San Francisco, CA May 2015.

f. Perrin Class Action Conference, Faculty Panelist, "Being Media Relevant, What it Means and Why It Maters – The Social Media Evolution: Trends Challenges and Opportunities," Chicago, IL May 2015

g. Bridgeport Continuing Ed. Faculty Panelist, "Media Relevant in the Class Notice Context," April 2014.

h. CASD 5th Annual Speaker, "The Impact of Social Media on Class Action Notice." Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, September 2012.

i. Law Seminars International, Speaker, "Class Action Notice: Rules and Statutes Governing FRCP (b)(3) Best Practicable… What constitutes a best practicable notice? What practitioners and courts should expect in the new era of online and social media." Chicago, IL, October 2011.

j. CLE International, Faculty Panelist, Building a Workable Settlement Structure, CLE International, San Francisco, California May, 2011.

k. Consumer Attorneys of San Diego (CASD), Faculty Panelist, "21st Century Class Notice and Outreach," 2nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2010.

l. Consumer Attorneys of San Diego (CASD), Faculty Panelist, "The Future of Notice," 2nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2009.

m. American Bar Association, Speaker, 2008 Annual Meeting, "Practical Advice for Class Action Settlements: The Future of Notice in the United States and Internationally – Meeting the Best Practicable Standard."

n. American Bar Association, Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee, New York, NY, August 2008.

o. Faculty Panelist, Women Lawyers Association of Los Angeles (WLALA) CLE Presentation, "The Anatomy of a Class Action." Los Angeles, CA, February 2008.

p. Faculty Panelist, Practicing Law Institute (PLI) CLE Presentation, 11th Annual Consumer Financial Services Litigation. Presentation: Class Action Settlement Structures -- "Evolving Notice Standards in the Internet Age." New York/Boston (simulcast) March, 2006; Chicago, April, 2006; and San Francisco, May 2006.

q. Expert Panelist, U.S. Consumer Product Safety Commission. I was the only legal notice expert invited to participate as an expert to the Consumer Product Safety Commission to discuss ways in which the CPSC could enhance and measure the

recall process.  As an expert panelist, I discussed how the CPSC could better motivate consumers to take action on recalls and how companies could scientifically measure and defend their outreach efforts.  Bethesda, MD, September 2003.

r. Expert Speaker, American Bar Association.  Presentation: "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits, Chicago, August 6, 2001.

15. I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, under the laws of

the United States of America, that the foregoing is true and correct.

Executed:  _____, 2021, in  Tigard, Oregon.

_____
Jeanne C. Finegan

*McCarthy v. Toyota Motor Sales, U.S.A, Inc. Settlement Notice Program*

This Notice Program is designed to inform Class Members of the proposed class action settlement between Plaintiffs and Defendants as described in the Settlement Agreement. In the Settlement Agreement, the class is defined as: all persons, entities or organizations (a) who own or lease a 2010 to 2015 model year Prius vehicles, and 2012 to 2017 model year Prius V vehicles that were the subject of Safety Recall E0E, F0R, J0V, and/or 20TA10, ("Subject Vehicle") as of the entry of the Preliminary Approval Order or (b) who, at any time before the entry of the Preliminary Approval Order, owned or leased a Subject Vehicle. Excluded from the Class are: (a) Toyota, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; and Toyota Dealers and Toyota Dealers' officers and directors; (b) Plaintiffs' Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly exclude themselves from the Class as provided in this Settlement Agreement.

A list of the vehicles included in the Settlement are   found in the Settlement Agreement and also can be obtained by visiting the Settlement Website, which contains a VIN lookup tool, calling the Settlement toll-free telephone number, or contacting the Settlement Notice Administrator and requesting the Long Form Notice.

Class Notice will be accomplished through a combination of Direct Mail Notice, Publication Notice, notice through the settlement website, Long Form Notice, social media notice, and other applicable notice.

The proposed Notice Program includes the following components:

- Direct mail notice of postcards by first-class postage prepaid U.S.[5] mail to reasonably identifiable Class Members;

- Publication Notice in two general circulation magazines, published in English with Spanish sub-headlines;

- Publication Notice in USA Today, Los Angeles edition;

- Publication Notice in nine (9) territorial newspapers along with banner advertising on the newspapers' web property;

---

[5] RL Polk does not provide vehicle registration data for residents of the U.S. territories. Given there are no name and address records for Class Members in the territories, notice in the territories will be accomplished through publication.

- Social media advertising in the United States and U.S. territories through Facebook, Instagram and Twitter in English and Spanish;

- Online display banner advertising specifically targeted to reach Class Members in the United States and U.S. territories in English and Spanish, including but not limited to utilizing popular Prius forums, where possible to do so;

- An informational website: www.toyotapriusinvertersettlement.com/ that contains important deadlines on which notices (English and Spanish) and other important Court information are posted and includes a VIN lookup function for Class Membership;

- A toll-free information line  for Class Members;

- A press release in English and Spanish distributed in the United States and U.S. territories;

- CAFA Notice to appropriate state and federal government officials; and

### DIRECT MAIL NOTICE

Kroll Settlement Administration has been informed that there are approximately 1,087,000 vehicles that are potentially affected. Toyota shall identify the VIN numbers for the Subject Vehicles utilizing R.L. Polk & Co. ("IHS Markit") data to identify current names and addresses for Class Members.  Based on information provided by IHS Markit[6], a list of the Class Members will be compiled. Pursuant to the terms of the Settlement Agreement, Kroll Settlement Administration shall send more than one type of customized and individualized Direct Mail Notices via postage prepaid first-class U.S. mail to these identified Class Members.

Prior to the mailing, all addresses will be checked against the National Change of Address ("NCOA") database, which is maintained by the United States Postal Service ("USPS"). Notices that are returned as non-deliverable will be re-mailed to any address indicated by the postal service in the case of an expired automatic forwarding order.  Notices returned as non-deliverable, but for which a new address is not indicated by the USPS, will be further searched through a third-party

---

[6] In July 2013, IHS Markit ("IHS"), acquired R.L Polk & Co., including Polk and CARFAX.  IHS automotive solutions gives automotive companies the ability to capitalize on cross-industry, expertise, and advanced analytics, software tools and extensive vehicle histories for a complete picture of the automotive industry. IHS provides the most accurate and trusted owner information for each motor vehicle affected by a class action lawsuit. IHS leverages a database with over eleven billion vehicle records of owner information by VIN. The IHS vehicle data repository undergoes daily updates of state registration and title data, including name and address standardization as well as National Change of Address ("NCOA") processing to increase successful delivery. IHS works closely with both unrestricted and restricted states to ensure access to all of the current and historical owners included the Settlement Notice. See:  https://ihsmarkit.com/products/automotive-class-action-and-litigation-service.html/.

vendor to obtain a more current address using best efforts to conduct an advanced address search using all available information. If any such address is found, these types of customized and individualized Direct Mail Notices will be re-mailed prior to the Fairness Hearing. Upon completion of these duties, Kroll Settlement Administration will submit a complete report on the deliverable results of the direct outreach effort.

Based on past experience with direct mail in related cases, we anticipate that the direct mail outreach alone is estimated to reach at least 78% of targeted Class Members residing in the 50 United States and the District of Columbia. When combined with the publication outreach, this notice program is estimated to reach at least 92% of this target audience over 3 times.

## PUBLICATION NOTICE

The proposed Publication component of the Notice Plan will employ a mix of newspaper, magazines, online display, social media and press releases to target Class Members in the United States and the United States Territories[7] of American Samoa, Guam, the Northern Mariana Islands, Puerto Rico, and the U.S. Virgin Islands[8].

### UNITED STATES OUTREACH

The Summary Notice will be published once (1x) in the following generally circulated magazines:

| Publication | Circulation | Language | Territory |
|---|---|---|---|
| People Magazine | 3,502,833 | English | United States and Territories |
| Time Magazine | 1,617,447 | English | United States and Territories |

Combined, these magazines have a total circulation of over 5,120,000 with over 44,097,000 readers[9].

These magazines were selected based on media research data provided by Simmons-MRI.  The titles were selected based on their reach or index against this target audience. Nearly 11% of Prius owners read People and Prius owners are 44% more likely to read Time magazine than the

---

[7] ComScore does not measure the territories, with exception of Puerto Rico which is reported on a limited basis by age group.

[8] The total population of the U.S. territories is 3.6 million.  Note: this number was produced by adding four July 2020 population estimates presented by the CIA World Factbook for the five permanently inhabited territories with Puerto Rico excepted, plus the July 1, 2019 U.S. Census Bureau estimate for Puerto Rico.

[9] Readers are calculated using a pass-along factor of readers in addition to the subscriber who reads the magazine.

average adult.

Both magazines have distribution in the United States and United States Territories.

<u>ONLINE DISPLAY ADS  - UNITED STATES AND UNITED STATES TERRITORIES</u>

Display ads will be targeted to people who have been identified as Prius owners*. The* Notice Program will employ cutting edge technology and data to target potential Settlement Class Members. The foundation for our analysis is derived from 2020 *comScore/GfK Mediamark Research and Intelligence+Fusion* ("MRI") software. As its name suggests, this media research technology allows us to fuse data and accurately target Class Members from data collected from dealerships and service departments throughout the U.S.

Here, we will target Class Members by using the Fusion definition to profile and create a highly specific and appropriate target audience of: *Owners or Those Who Lease a Toyota Prius*. To squarely focus on this target, we are applying a programmatic[10] approach to digital advertising. Programmatic is a computerized approach to buying ads online, which uses an algorithm to show a specific ad to a specific visitor in a specific context, where class members are visiting across an allow list[11] of approximately 4,000 websites. These ads are device agnostic and will appear across desktop, laptop, tablet, or mobile devices.  Display ads will run in both the United States and United States Territories.

<u>SOCIAL MEDIA ADS- UNITED STATES AND UNITED STATES TERRITORIES</u>

Social Media ads will follow the targeted Class Members social media journey across user's newsfeeds, stories and videos. Social ads will target those who have liked or follow Toyota, Toyota Prius V Owners and Clubs and various other Prius clubs and pages across Facebook and Instagram.

16.     On Twitter, the campaign ads will target those who follow or interact with handles such as @Toyota, @ToyotaMotorCorp and others. Social media ads will run in both the United

---

[10] Programmatic refers to computerized media buying of advertising inventory. The mechanics of programmatically serving an online ad are as follows: A user visits a website and the browser sends a request to the publisher's web server asking for the page's content (*i.e*., HTML). An invocation code placed on the page loads an external static ad tracker code.  The ad tracker makes a request to the ad server querying for an ad markup (also called creative tag) to be loaded into the ad slot. The ad server responds with the ad markup code (before it is returned, the ad server executes all targeting/campaign matching logic). Finally, the publisher's web server returns the information, rendering the page's content with specifically targeted ads to that user.

[11] An "allow list" is a custom list of acceptable websites where ad content may be served. Creating a whitelist helps to mitigate ad fraud, ensure ads will be served in relevant digital environments to the target audience and helps to ensure that ads will not appear next to offensive or objectionable content.

States and United States Territories.

RETARGETING

Online and social ads will also target this audience through re-targeting, or reminder ads for those who visit the Settlement website. Retargeting tags online users by including a pixel within the target webpage which sets a cookie in the user's browser. Once the cookie is set, the campaign ads will be displayed to that user anywhere that user visits.

TERRITORIAL OUTREACH – NEWSPAPERS

The Summary Notice will be published once (1x) in the following U.S. Territory newspapers:

| Publication | Circulation | Language | Territory |
|---|---|---|---|
| Samoa News | 7,000 | English | American Samoa |
| Pacific Daily News | 20,000 | English | Guam |
| Saipan Tribune | 8,000 | English | Mariana Islands |
| El Nuevo Dia | 250,000 | Spanish | Puerto Rico |
| San Juan Daily Star | 62,000 | English | Puerto Rico |
| Primera Hora | 187,000 | Spanish | Puerto Rico |
| Virgin Islands Daily News | 19,000 | English | U.S. Virgin Islands – St. Thomas |
| Love City Trader | 6,000 | English | U.S. Virgin-Islands- St. John |
| St. Croix Avis | 14,000 | English | U.S. Virgin-Islands - St, Croix |

Combined, the territorial newspapers have a total circulation of 573,000 with over 1,317,900 readers[12]. Additionally, online display ads will run each of the newspaper's web properties.

In total, the Notice Program will serve over 21,000,000 digital and social impressions[13], in the United States and its Territories. Digital media will run in English and Spanish.

PRESS RELEASE IN THE UNITED STATES AND UNITED STATES TERRITORIES

A press release will be issued over PR Newswire's U.S.1, Guam, Puerto Rico, U.S. Virgin Island and Pacific Islands Newslines. PR Newswire distributes to thousands of print and broadcast newsrooms, as well as websites, databases and online services including featured placement in the

---

[12] Readers are calculated using a pass-along factor of 2.3 readers in addition to the subscriber who read the newspaper. See: National Newspaper Association, nnaweb.org/.

[13] An impression is a metric used to quantify the number of digital views or engagements of an ad. It is also referred to as an opportunity to see an ad.

news sections of leading portals. Kroll will monitor for resulting news mentions and at the conclusion of the Notice Plan, Kroll will provide a final report to the Court.

OFFICIAL SETTLEMENT WEBSITE

17. An informational, interactive website is an important component of the Notice Program. In accordance with the terms of the Settlement Agreement, a website will be established at: www.toyotapriusinvertersettlement.com to enable potential Class Members to get information about the Settlement. Each Class Member who is mailed a direct notice will receive a unique identifier which will be easily located on the website. Visitors will be able to obtain additional information about the Settlement and its benefits, including downloading Court documents related to the case, read the list of Frequently Asked Questions, and looking up their vehicle's VIN to determine if it is included in the class settlement. Additionally, Class Members will have ability to send communications to Kroll Settlement Administration's client service team through the website. The website will be active during the duration of the Customer Confidence Program.

Further, the website will serve as a "landing page for the banner advertising," where Class Members may continue to obtain further information about the class action, their rights, and view Plaintiff's Motion for Approval of Fees, Expenses, and Incentive Awards. The website will be accessible 24-hours a day, 7-days a week.

TOLL FREE INFORMATION LINE

Additionally, Kroll Settlement Administration will establish and maintain a 24-hour toll-free telephone line where callers may obtain information about the class action Settlement. Kroll will provide both automated and agent answered call center services. Live operators shall be available Monday through Friday, from 5:00 am to 5:00 pm, PST and shall be trained to respond to questions about the settlement, answer questions about the status of submitted claims, claim payment, how to submit a claim, and other material aspects of the Settlement. The phone number will also be configured to enable callers to leave a message after hours, which will be returned by Kroll the next business day.

Further, Kroll Settlement Administration can receive calls transferred from Toyota for callers that have questions related to the Settlement. We also have the ability to transfer callers to Toyota for non-settlement related questions.

Kroll Settlement Administration agents will have access to the same application developed for the website and will be able to look up callers' VINs to determine if their vehicles are included in the Settlement.

CAFA NOTICE

Pursuant to the Settlement Agreement, Section 4, Kroll Settlement Administration will provide notice of the proposed Settlement under CAFA, 28 U.S.C. §1715(b), to appropriate state and federal government officials.

METHODOLOGY FOR PUBLICATION/INTERNET NOTICE

Experts have commonly and reasonably relied upon data from highly regarded media research bureaus such as MRI or comScore to select appropriate media based on the target audience's demographic characteristics and media use habits.

To this end, in developing the proposed notice program, we were guided by well-established principles of communication and utilized best-in-class nationally syndicated media research data provided by MRI-Simmons ("MRI") in its MRI 2020 Doublebase Study[14] to provide media consumption habits of the potentially affected population. These data resources are used by advertising agencies nationwide as the basis to select the most appropriate media to reach specific target audiences. Specifically, this research identifies which media channels are favored by the target audience (i.e., the Class members), for instance, browsing behaviors on the Internet and social media channels that are used.

Based on this research, a mix of print, online and social outreach are particularly useful to buttress this outreach. According to MRI, over 96% of those who currently own or lease a Prius have gone online in the last 30 days and approximately 68% have used Facebook in the last 30 days. Further, MRI provides instruction concerning language spoken most often at home.  Here, MRI[15] reports that 94% of this target audience speaks English most often at home, with 3% reporting they speak Spanish most often at home.

DIGITAL AD FRAUD MITIGATION AND VALIDATED HUMAN IMPRESSIONS

---

[14] MRI-Simmon's ("MRI") MRI *Survey of the American Consumer* is used in the majority of U.S. media and marketing plans. Over 24,000 in-person interviews each year provide the basis for this research. MRI is the leading supplier demographic, psychographic, attitudinal, intent and behavioral data including product usage, and media exposure, along with of multi-media audience research. *See generally* mrisimmons.com.

[15] *Source:* MRI 2020 Doublebase Study- *Toyota Prius Owned/Leased Languages Spoken Most Often at Home*. (Note: MRI data resides behind a paid subscription wall). Report date, September 10, 2021.

Ad verification metrics reveal campaign effectiveness. Kroll optimizes media based on verification metrics. This helps to improve Class Members' "opportunity to see" the campaign creative. Legal Notice advertising is intended to create awareness and provide due process for consumers to exercise their rights, if they so choose. Keeping with the highest standards in the advertising industry, we have evolved from traditional ad effectiveness practice of defining campaign exposure by bulk ads served, to one that determines exposure by a human audience that had the opportunity to see the digital ads.

To mitigate digital ad fraud, or non-human viewership of the digital campaign and to validate impression delivery, Kroll engages validation technology, from among others: Integral Ad Science ("IAS"), comScore's Content Activation, Grapeshot and DoubleVerify.  These layers of validation and verification help to ensure that our ads are being targeted to real websites where actual (human) Settlement Class Members are likely to visit, rather than serving ads to websites and fraudsters attempting to fraudulently earn advertising revenue from the campaign[16].

To this end, online ads will be tagged with specific codes which will validate the impressions, plus further analysis will be provided by our independent Cybersecurity Expert[17]. As an added step, ad logs will be monitored for fraudulent anomalies such as ads being called to data centers, uncommon browser sizes, and outdated browser versions as well as other parameters that indicate non-human traffic. In addition, through these efforts, we will identify which websites are generating validated human click-throughs to the Settlement website and in turn, we are able to optimize impressions to those sites.  Any online impressions identified as invalid will be culled from the final reach calculation reported to the Court.

---

[16] *See:* You Probably Don't Think Digital Ad Fraud Doesn't Affect You. Think Again.
https://innovation.media/magazines/how_digital_ad_fraud_affects_everyone

[17] Dr. Augustine Fou.  A Brief History of Ad Fraud.  https://www.linkedin.com/pulse/brief-history-digital-ad-fraud-dr-augustine-fou-ad-fraud-historian

# EXHIBIT 10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN RYAN-BLAUFUSS, CATHLEEN MILLS and KHEK KUAN, on behalf of themselves and all others similarly situated,<br>        Plaintiffs<br><br>v.<br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., and DOES 1-10, inclusive<br>        Defendants | No. 8:18-CV-00201-JLS-KES<br><br>**FINDINGS REGARDING CATALYST ISSUES** |
| STEVEN KOSAREFF and LAURA KAKISH, on behalf of themselves and all others similarly situated,<br>        Plaintiffs<br><br>v.<br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES USA, INC., and DOES 1-10, inclusive,<br>        Defendants | Special Master Patrick A. Juneau |

The catalyst theory permits an award of attorney fees "'without a corresponding alteration in the legal relationship of the parties.'" *Graham v. DaimlerChrysler Corp.*, 34 Cal. 553, 570 (2004) (quoting *Buckhannon Board & Home Care, Inc. v. W. Va. Dept. of Health and Human Servs.*, 532 U.S. 598, 605 (2001)) (emphasis in original). Because the parties' settlement agreement has altered their legal relationship (or will, assuming that the Court ultimately approves the parties' agreement), there are common law and statutory bases for awarding attorney fees. *See* Cal. Civ. Code § 1780(e); Cal. Code Civ. Proc. § 1021.5; *Fletcher v. A. J. Indus., Inc.*, 266 Cal. App. 2d 313, 324–25 (1968). Thus, to that extent, the catalyst theory is inapplicable. *Vasquez v. State of California*, 45 Cal. 4th 243, 260 (2008).

Nonetheless, Plaintiffs seek an independent assessment of whether the Litigation was a catalyst that motivated Toyota to conduct Safety Recalls J0V and 20TA10 to determine the value

of the benefits conferred by their settlement of the Litigation, and whether Plaintiffs are entitled to "credit" for the monetary value of the recall software as determined from Settlement Class Members' perspective. Accordingly, the causation aspect of the catalyst issue is the important issue here.

Having considered Plaintiffs' Memorandum of Points and Authorities regarding Catalyst Issues, the evidence submitted therewith, and the parties' oral presentations regarding this matter, I hereby make the findings set forth below, each of which is based on substantial evidence. *See Godinez v. Schwarzenegger*, 132 Cal. App. 4th 73, 91-92 (2005) (discussing substantial evidence requirement).

1. <u>Catalytic Effect</u>. The prosecution of the above-captioned consolidated class-action lawsuits (the "Litigation") was a catalyst motivating Defendants Toyota Motor Corporation and Toyota Motor Sales U.S.A., Inc. (collectively, "Toyota") to provide the primary relief sought by Plaintiffs Kathleen Ryan-Blaufuss, Cathleen Mills, Khek Kuan, Steven Kosareff, and Laura Kakish, on behalf of themselves and all others simarly situated (collectively, "Plaintiffs"). Having reviewed the materials that Plaintiffs have provided to me, I find that Safety Recalls J0V and 20TA10 have achieved the primary relief Plaintiffs sought in the Litigation, and that the Litigation was a catalyst in Toyota providing that relief, as well as an extended warranty (Warranty Enhancement Program 20TE10) that extends coverage to 20 years from first use without no mileage limitation, which has been modified to provide additional benefits by virtue of the Settlement Agreement the parties negotiated.

2. <u>Merits of the Litigation</u>. The claims Plaintiffs have alleged in the Litigation seek to benefit hundreds of thousands of consumers. Having become familiar with the claims and the defenses at issue in the Litigation before and after my appointment as Special Master, I find that the Litigation achieved its catalytic effect as a result of its merit, and not due to nuisance or expense.

3. <u>Reasonable Attempts to Resolve the Litigation</u>. I find Plaintiffs' efforts to resolve the litigation by sending demand letters at the outset of the Litigation constituted a sufficient attempt to resolve their dispute with Toyota. *See, e.g., Graham*, 34 Cal. at 577 ("Lengthy prelitigation negotiations are not required, nor is it necessary that the settlement demand be made by counsel, but a plaintiff must at least notify the defendant of its grievances and proposed remedies and give the defendant the opportunity to meet its demands within a reasonable time"); *see also Vasquez*, 45 Cal. 4th at 257-60.

DATED: November 11, 2021

PATRICK A. JUNEAU
Special Master

# EXHIBIT 11

**PRIUS IPM
APPEAL FORM**
*McCarthy, et al. v. Toyota Motor Corp., et al..*

Please complete this Request to Appeal Form if you were denied certain coverage or other benefits provided by the Settlement's Customer Confidence Program and/or Loaner/Towing Program (summarized below) and you wish to appeal that denial.

In order to fill out this Appeal Form, you cannot have excluded yourself from the Class.

This Appeal Form only pertains to a denial of benefits under the settlement's Customer Confidence Program and Loaner/Towing Program that will be implemented after [FINAL EFFECTIVE DATE].

A "Subject Vehicle" is any 2010 to 2015 model year Prius or 2012 to 2017 model year Prius V vehicle that was the subject of Safety Recalls E0E, F0R, J0V, and/or 20TA10. NOTE: Settlement benefits are available even if the Subject Vehicle has not yet received the software updates provided under these recalls.

If a Subject Vehicle was acquired from a person who was excluded from the Class, that Subject Vehicle is not eligible for coverage under this settlement, but you may have other rights under pre-existing warranties. Please consult your warranty handbook and information regarding the extended warranties available as a result of Recalls E0E, F0R, and and/or 20TA10 for information about such warranties.

If you have questions about whether a Subject Vehicle is included in the Settlement, please call 800-XX-XXXX and provide the Settlement Notice Administrator with the Subject Vehicle's VIN.

## <u>INSTRUCTIONS FOR COMPLETING THIS APPEAL FORM</u>

1)   You may complete this Appeal Form online at **www.toyotapriusinvertersettlement.com**.

2)   You must complete this form if you wish to appeal the denial by a Toyota Dealer of any of the following benefits provided by the settlement's Customer Confidence Program and/or Loaner/Towing Program on or after [DATE]:

       (a)   the cost-free repair or replacement of an IPM or an Inverter under the terms outlined in the Settlement Agreement (available at XXXXXX).

       (b)   rental car expenses incurred in connection with the repair or replacement of an IPM or an Inverter under the terms outlined in the Settlement Agreement; and/or

       (c)   towing charges that had been incurred in connection with the repair or replacement of an IPM or an Inverter under the terms outlined in the Settlement Agreement.

3) If you complete the Appeal Form online at **www.toyotapriusinvertersettlement.com**, when you type your VIN (Vehicle Identification Number) in Section I (Information on Class Member and Subject Vehicle) below, some of the boxes in this Appeal Form will be automatically filled in.  Check the form carefully to make sure all of the information is correct and that you have filled in any missing information. Your VIN should be on the paperwork you received from the Toyota Dealer at the time your claim for the settlement benefits under the Customer Confidence Program and/or Loaner/Towing Program and described in paragraph 2, above, was denied.  If you do not know your VIN, and no longer have the Subject Vehicle, you may also be able to find it from third parties, including the Toyota Dealer from which you purchased your Subject Vehicle, the DMV, your insurance agent, and/or your auto repair shop.

4) Capitalized terms in this Appeal Form have the same meaning as provided in the Settlement Agreement, which is available at **www.toyotapriusinvertersettlement.com**.

5) If you are submitting a paper Appeal Form, please type or print legibly in blue or black ink. Do not use any highlighters. Provide **all** requested information to complete and submit this Appeal Form, attach supporting documentation, as specified below, and sign the Appeal Form.

6) **IMPORTANT INFORMATION**: Please attach all paperwork given to you at the time one or more of the settlement benefits listed in paragraph 2, above, were denied. If you no longer have the paperwork, please visit your Toyota Dealer and request a copy. If you are unable to obtain a copy, please explain this in the comment section below, and the Settlement Claims Administrators will make a good faith effort to retrieve it from the Toyota Dealer.

7) **TIME LIMITS FOR APPEAL:** If, at the time you were denied one or more of the settlement benefits described in paragraph 2, above, and the Toyota Dealer provided you with paperwork advising you that you had 45 days within which to appeal that denial, then you must submit your completed Appeal Form and any supporting documentation by mail or electronically no later than forty-five (45) days following the date on that paperwork. If the Toyota Dealer did not provide you with paperwork advising you of your right to appeal and where to find a copy of the Appeal Form, you must submit your completed Appeal Form and any supporting documents by mail or electronically no later than one (1) year from the date you were denied benefits.

**The completed Appeal Form and any supporting documentation, can be submitted online at www.toyotapriusinvertersettlement.com or mailed to**:

**[Settlement Notice Administrator Address]**

*Important*: Keep a copy of your completed Appeal Form and the supporting documents.  Any documents you submit with your Appeal Form will not be returned.  Do not send original documents.

**It is your duty to submit a complete and timely Appeal Form and supporting documents.**

**If you fail to timely and fully complete this Appeal Form and submit the required supporting documentation, your appeal may be denied. The Settlement Claims Administrators have the right to request verification of eligibility to participate in this settlement.**

**SECTION I – APPEAL INFORMATION**

1.    **Full Name:**_____

2.    **Current Address:** _____

3.    **Telephone Number:** _____

4.    **E-mail Address:** _____

5.    **Vehicle Information:**

Model: _____    Year: _____

Vehicle Identification Number ("VIN"): _____

**I hereby notify the Settlement Claims Administrators that I am appealing because of the following (check the box(es) that apply):**

☐ **I have been denied a free IPM or Inverter repair or replacement under the Customer Confidence Program**

**Date of Denial:** _____

**Name and Address of Toyota Dealer where a free IPM or Inverter repair or replacement under the Customer Confidence Program was requested:**

_____

_____

_____

_____

☐ **I have been denied a free loaner car under the Loaner/Towing Program**

**Date of Denial:** _____

**Name and Address of Toyota Dealer where coverage under the Loaner/Towing Program was requested:**

_____

_____

_____

_____

☐ **I have been denied free towing under the Loaner/Towing Program**

**Date of Denial:** _____

**Name and Address of Toyota Dealer where free towing coverage under the Loaner/Towing Program was requested.  If towing was denied by the Toyota hotline, and not by a Toyota dealer, please simply state that below:**

_____

_____

_____

_____

**In the text box below, please include any additional information regarding your appeal, including, for example, the reason(s) for the denial.  If you need more room, you may include an additional page.**

```



```

## SECTION II – ATTESTATION

I affirm under the laws of the United States of America, that the information in this Request to Appeal Form is true and correct to the best of my knowledge, information and belief.  I understand

that my Request to Appeal Form may be subject to audit, verification and the Settlement Claims Administrators' and Court's review.

Signature _____

Date _____

## SECTION III – REQUEST TO APPEAL FORM COMPLETION AND SUBMISSION CHECKLIST

☐ Be sure that your completed Appeal Form includes your current name, address, telephone number, contact information and the vehicle identification number (VIN) of your Subject Vehicle.

☐ Be sure to attach the paperwork (if any) given to you at the time coverage under this program was denied, along with any other documentation you think are relevant.

☐ If you no longer have the paperwork given to you at the time coverage was denied, please make sure to try to obtain it from your Toyota Dealer.

☐ If you are unable to obtain paperwork from your Toyota dealer indicating why coverage was denied, make sure to state this in the comments section, above.

☐ Keep a copy of your completed Appeal Form (plus documentation submitted) for your records.

☐ Sign and date your Appeal Form.

☐ The completed Appeal Form and documentation can be submitted online at **www.toyotapriusinvertersettlement.com** or mailed to:

[Settlement Notice Administrator Address]

*****

Toyota, the Settlement Claims Administrator, and/or the Settlement Notice Administrator are not responsible for any misdelivered, lost, illegible, damaged, destroyed, or otherwise not received mail or e-mail.

Appeal Forms will be processed and approved in accordance with the terms of the Settlement Agreement. Please check the settlement website, **www.toyotapriusinvertersettlement.com**, for updates.